IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **FUJITSU LIMITED** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CASE NO. 6:08 CV 22 |
| | § | PATENT CASE |
| **TELLABS, INC., and TELLABS** | § | |
| **OPERATIONS INC.,** | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Tellabs, Inc. ("Tellabs") and Tellabs Operations, Inc.'s ("Tellabs Operation" and collectively "Defendants") motion to transfer venue to the Northern District of Illinois (Docket No. 55). After review of the parties' briefing the Court **GRANTS** Defendants' motion and transfers this case to Chief Judge James F. Holderman of the Northern District of Illinois.

## BACKGROUND

On January 29, 2008 Fujitsu, Ltd. ("Fujitsu") filed this action claiming that Defendants infringed U.S. Patent Nos. 5,526,163 (the "'163 patent"), 5,521,737 (the "'737 patent"), and 5,386,418 (the "'418 patent"). On June 11, 2008, Tellabs Operations filed a complaint in the Norther District of Illinois (the "Illinois action") against Fujitsu and its subsidiary, Fujitsu Network Communications, Inc. ("FNC"), claiming infringement of U.S. Patent No. 7,369,772 (the "'772 patent"). Fujitsu counterclaimed in the Illinois action asserting that Tellabs infringed U.S. Patent Nos. 5,533,066 (the "'006 patent") and 7,227,681 (the "'681 patent"). All of the patents in this

1

action and the Illinois action generally relate to optical communication systems.

Fujitsu is a Japanese corporation with its principal place of business in Kanagawa-ken, Japan. Tellabs and Tellabs Operations are both Delaware corporations with principal places of business in Naperville, Illinois. Tellabs is Tellabs Operations' parent corporation. FNC is a California corporation with its principal place of business in Richardson, Texas. FNC is a wholly owned subsidiary of Fujitsu, but is not a party to this suit.[1] All of the inventors of the Fujitsu patents (the '163, '737, '006 and '681 patents) reside in Japan.

**APPLICABLE LAW**

Defendants move to transfer to the Northern District of Illinois under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As always, a district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative

---

[1] FNC is a non-exclusive licensee under the asserted patents. It was originally joined in the case, but dismissed for lack of standing on August 14, 2008. *See* Order Granting Unopposed Motion to Dismiss, Docket No. 42.

ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

## APPLICATION

### *Jurisdiction*

The parties do not contest that this action "could have been brought" in the Northern District of Illinois. Thus, the Court assumes that the threshold inquiry has been satisfied.

### *The Cost of Attendance for Willing Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. Further, regardless of the actual likelihood of a particular witness testifying at trial, the relative materiality

of witnesses' testimony is irrelevant to this inquiry. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4 (Fed. Cir. May 22, 2009) ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, all potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case.

The Fifth Circuit has also adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

Because the Eastern District of Texas and Northern District of Illinois are clearly more than 100 miles apart, the 100 mile rule applies. Defendants urge that while they have employees located across the United States, 1,250 of Defendants' 2000 employees are located in either Naperville or Bolingbrook, Illinois. Defendants also suggest that the accused products are primarily designed,

4

developed, and maintained in Illinois. Conversely, Defendants' Texas facilities (a sales office in San Antonio and a research facility in Dallas) are unrelated to the accused products in this case. The approximate distance between Naperville, Illinois and Tyler, Texas is approximately 940 miles, while the distance between Naperville and Chicago is 30 miles. Thus, Defendants' Illinois employee witnesses will be required to travel an additional 900 miles to trial if this case proceeds in Texas. Additionally, Defendants note that the prosecuting attorneys for the patents-in-suit are located in Chicago, Washington, D.C., and New York and thus closer to Illinois than Texas.

Fujitsu asserts that while Tellabs's principal place of business is in Illinois, it has a global presence. This presence includes business operations throughout the United States as well as research and development personnel located in the United Kingdom, Denmark, China, and the United States. Additionally, Fujitsu asserts that Tellabs maintains offices and sells infringing products in this District. Between the parties, Fujitsu identifies 27 witnesses residing in Texas, 26 witnesses residing in Illinois, and 239 witnesses residing outside of either Texas or Illinois (including locations such as California, Washington, D.C., Massachusetts, and abroad). *See* Jansen Decl Ex. 37, Docket No. 68-38. Of the Texas witnesses, Fujitsu declares that 17 are employees of either Fujitsu or FNC. It is unclear based on Fujitsu's briefing which entity employs those 17 people or their specific relevance to the case.

Along these lines, Fujitsu alleges that FNC employees residing in this District should be included in the transfer analysis. As noted, FNC is not a party in this case and holds a non-exclusive license to the asserted patents. However, Fujitsu alleges that it "is the entity most responsible for the U.S.-based activities involving the 'covered products.'" *See* Fujitsu's Response, Docket No. 68 at 7. Allegedly, these third-party witnesses have relevant knowledge over the development,

5

structure, function, and operation of some FNC products covered by the patents-in-suit. However, Fujitsu has made no attempt to explain why anything regarding FNC's products is relevant to an action where Fujitsu is asserting patent infringement. Though the transfer analysis only requires a threshold showing with regard to potential witnesses, a party must show that a witnesses testimony is material and relevant. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4. Given FNC and its employees' tenuous connection with this case, along with Fujitsu's failure to explain the relevance of any FNC employee testimony, the threshold showing of materiality and relevance has not been met. As a result, these "identified witnesses" are excluded from the transfer analysis.

Further, out of the 239 witnesses not residing in either this district or Illinois, Fujitsu has identified approximately 150 witness residing outside of the United States. With regard to these witnesses, the Federal Circuit has suggested that the "100 mile rule" should not be rigidly applied. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *Id.* at *4, *6 (discounting European witnesses when reviewing a denial of transfer from Texas to California). Therefore, discounting the majority of overseas witnesses and the immaterial FNC "witnesses," Fujitsu's own evidence suggests that the majority of witnesses relevant to analysis of this factor either reside in Illinois or significantly closer to Illinois than Texas. *See* Jansen Decl. Ex. 37, Docket No. 68-39 at 2. As a result, it would be clearly more convenient for the potential relevant and material witnesses in this action to appear before the Northern District of Illinois. Accordingly, this factor favors transfer.

***The Relative Ease of Access to Sources of Proof***

Despite technological advances that certainly lighten the relative inconvenience of

transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Therefore, courts have analyzed this factor in light of the fiction that voluminous documents must be transported from their physical location (supposing that electronically stored documents are, in fact, physical) to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. Thus, almost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *Jackson v. Intel Corp.*, 2:08-cv-154, 2009 WL 749305 at *2 (E.D. Tex. March 19, 2009) (Ward, J.) (analyizing the volume and location of parties documentary evidence); *Robles v. USA Truck, Inc.*, L-08-122, 2009 WL 677835 at *5 (S.D. Tex. Mar 12, 2009) (same).

Defendants allege that the technical specifications describing the accused devices and sales records for the accused devices are located at their principal places of business in Illinois. Fujitsu agrees that documents relevant to this litigation are located in Japan and Illinois. However, Fujitsu again alleges that FNC holds relevant documents to this litigation in Texas. For the reasons stated above, these documents are discounted for the purposes of the transfer analysis. Also, since it is equally burdensome to transport documents from Japan to either Texas or Illinois, Japanese documents are discounted under this factor. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *4, *6 (discounting documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California). Thus, the remaining documents undisputedly material to this litigation are located in Illinois. Because it would be clearly more convenient for the Illinois documents to remain in Illinois rather than transported to Texas, this factor weighs in favor of transfer.

7

*The Availability of Compulsory Process to Secure the Attendance of Witnesses*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is simply the concept that all relevant and material third-party witnesses reside within the subpoena power of a particular court. *See In re Volkswagen II*, 545 F.3d at 316; *Miller v. Longview Psychiatric Hosp., L.L.C.*, 2:08-CV-42, 2009 WL 748094 at *3 (E.D. Tex. March 19, 2009) (Ward, J.).

The parties agree that neither venue will have "absolute subpoena power" as there are many potential non-party witnesses that reside outside the Northern District of Illinois and the Eastern District of Texas. However, Fujitsu concedes that the Northern District of Illinois would have an advantage in securing the attendance over potential witnesses living in Illinois. Fujitsu also argues that this District will have an advantage in securing the attendance of non-party FNC witnesses. As already discussed, Fujitsu has failed to make a threshold showing that FNC's employees are at all relevant to this litigation. Thus, FNC's alleged "employee witnesses" are again discounted for the purposes of this factor. Because Illinois has a slight advantage with respect to its subpoena power over potential material and relevant witnesses in this action, this factor slightly favors transfer.

*Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. *In re Volkswagen of Am., Inc.*, ___ F.3d ___, 2009 WL 1425475 at *3 (Fed. Cir. May 22, 2009) ("*In re Volkswagen III*"). Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Id.* at *2.

Defendants argue that judicial economy favors transfer of this case to Illinois where the Illinois action is currently pending. Fujitsu does not contest that this action and the Illinois action involve patents relating to the same technology, will require similar discovery from overlapping witnesses, and involve substantially similar issues. Rather, Fujitsu argues that this action is farther in the litigation process than the Illinois action. Although that fact may have been true at the time of Fujitsu's response, it does not remain true now. While dates have been set for trial and a claim construction hearing in this action, the Illinois court has already issued a detailed claim construction order in the Illinois action. *See Tellabs Operations, Inc. v. Fujitsu Ltd.*, No. 1:08-cv-3379, Docket No. 145 (May 13, 2009).

Further, Fujitsu has not filed a motion to transfer the Illinois action to this Court. While Fujitsu may be content trying two similar patent actions in courts across the country, judicial economy will not bear that result. "Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Id.* at *3. After conferring with Chief Judge Holderman,[2] the Court is certain that considerations of judicial economy would be best served by transferring this action to the Northern District of Illinois. Accordingly, this factor weighs strongly in favor of transfer.

***The Administrative Difficulties Flowing from Court Congestion***

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8. The median time to trial in the Northern District of Illinois is 27.5 months while the median time to trial in the Eastern District of Texas is 18.5 months. Thus, this factor weighs against transfer.

---

[2] The Illinois action is currently pending before Chief Judge Holderman.

*The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See In re Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d at 1321.

Because the accused products are designed and developed in Illinois and Defendants' principal places of business are located within the Northern District of Illinois, that district certainly has a particularized local interest in the dispute. Fujitsu alleges that FNC's involvement with "covered products" under the patents gives the Eastern District of Texas a similar local interest. However, considering FNC holds a non-exclusive license to the patents-in-suit, its interest is far less than the Defendants' who face potential damages, interruption of business, and licensing expenses as a result of this litigation. *See Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1154 (Fed. Cir. 2003) ("A non-exclusive licensee does not have a property interest in the patent."); *see also Spindelfabrik Suessen-Schurr v. Schubert & Salzer*, 829 F.2d 1075, 1081 (Fed. Cir. 1987) ("[A] patent license agreement is in essence nothing more than a promise by the licensor not to sue the licensee"). Otherwise, Fujitsu identifies only the non-particularized interest that this district has in removing infringement from within its borders. As recited above, a generalized interest is disregarded in favor of Illinois's particular interest in this litigation. Accordingly, this factor favors

transfer.

*The Familiarity of the Forum with the Law that Will Govern the Case*

The parties do not assert that either the Northern District of Illinois or this district has any particular advantage with regard to familiarity with the law governing this litigation. As a result, this factor is neutral.

*Avoidance of Unnecessary Problems of Conflict of Laws*

Likewise, the parties have not identified any issues regarding conflicts of laws in this litigation. Thus, this factor is neutral.

## CONCLUSION

In sum, the private and public factors overwhelming favor transfer. The only factor that does not deals with relative court congestion. However, this factor alone cannot outweigh the majority of other factors favoring transfer. *See In re Genentech*, ___ F.3d ___, 2009 WL 1425474 at *8 (noting that when "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors"). Further, judicial economy is best served if this action and the Illinois action are before same Court in order to avoid competing orders, duplicative discovery, and any other host of issues inherent in litigating similar actions in two different venues. Accordingly, Defendants' motion to transfer is **GRANTED**, and this case is transferred to Chief Judge Holderman of the Northern District of Illinois.

So ORDERED and SIGNED this 7th day of July, 2009.

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**