IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELLABS OPERATIONS, INC.<br><br>PLAINTIFF,<br><br>v.<br><br>FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC.,<br><br>DEFENDANTS | CIVIL ACTION NO. 08-CV-3379<br><br>CIVIL ACTION NO. 1:09-CV-04530<br><br><br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE** |
| FUJITSU LIMITED<br>        Plaintiff,<br>vs.<br>TELLABS OPERATIONS, INC. ET AL.<br>        Defendants, | **JURY TRIAL DEMANDED**<br><br>**Consolidated for Discovery** |

**TELLABS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INDEFINITENESS OF ALL ASSERTED CLAIMS (1 AND 6-9) OF U.S. PATENT 5,386,418**

TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................ 1
     A.   Background of Fujitsu's Certificate of Correction. ............................................. 1
     B.   This Motion Disposes of the '418 Patent. ........................................................... 2
     C.   Summary Judgment is Appropriate. .................................................................... 3
II.  LEGAL ARGUMENT ...................................................................................................... 3
     A.   A Certificate of Correction is Invalid When the Proper Correction Was
          Not "Clearly Evident" From the Intrinsic Record. ............................................. 3
     B.   Without a Valid Certificate of Correction, a Court Can Correct an Error in
          a Patent Only if the Proper Correction is Not Subject to Reasonable
          Debate. ................................................................................................................ 5
     C.   When a Court Cannot Know What Correction is Necessarily Appropriate
          or How a Claim Should be Interpreted, it Must be Held Invalid for
          Indefiniteness. ..................................................................................................... 6
III. ARGUMENT .................................................................................................................. 7
     A.   Fujitsu's Certificate of Correction is Invalid Because it Broadened Claim 1
          and the Proper Correction Was Not "Clearly Evident" From the Intrinsic
          Record of the '418 Patent. .................................................................................. 7
     B.   This Court Cannot Correct the Error in Claim 1 of the '418 Patent Because
          the Proper Correction is Subject to Reasonable Debate. .................................... 8
     C.   Claim 1 as Issued is Invalid for Indefiniteness Because it is Insolubly
          Ambiguous. ........................................................................................................ 10
IV.  CONCLUSION ............................................................................................................. 11

TABLE OF AUTHORITIES

CASES

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*
   2009 U.S. Dist. LEXIS 109172 (E.D. Tex. Sept. 18, 2009) ............................................ 4, 7

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*
   2010 U.S. Dist. LEXIS 30834 (E.D. Tex. Feb. 24, 2010) .................................................. 4

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*
   129 F.3d 1247 (Fed. Cir. 1997)......................................................................................... 3

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)........................................................................................................... 3

*Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*
   482 F.3d 1347 (Fed. Cir. 2007)............................................................................... 3, 4, 7, 8

*Exxon Research & Eng'g Co. v. United States*
   265 F.3d 1371 (Fed. Cir. 2001)......................................................................................... 6

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*
   341 F.3d 1332 (Fed. Cir. 2003).............................................................................. 6, 7, 11

*LG Electronics, Inc. v. Quanta Computer Inc.*
   566 F. Supp. 2d 910 (W.D. Wis. 2008) ............................................................................. 6

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*
   166 F.3d 1190 (Fed. Cir. 1999).................................................................................. 3, 11

*Novo Indus., L.P. v. Micro Molds Corp.*
   350 F.3d 1348 (Fed. Cir. 2003)............................................................................ 5, 6, 8, 10

*Omega Eng'g Inc. v. Raytek Corp.*
   334 F.3d 1314 (Fed. Cir. 2003)......................................................................................... 6

*Personalized Media Communs., L.L.C. v. ITC*
   161 F.3d 696 (Fed. Cir. 1998)........................................................................................... 3

*STMicroelectronics, Inc. v. Motorola, Inc.*
   327 F. Supp. 2d 687 (E.D. Tex. July 19, 2004) ....................................................... 5, 6, 10

*Superior Fireplace Co. v. Majestic Products Co.*
   270 F.3d 1358 (Fed. Cir. 2001)........................................................................... 3, 4, 5, 7, 8

STATUTES

35 U.S.C. § 112............................................................................................................... 3, 11
35 U.S.C. § 255................................................................................................................. 2, 3

RULES

37 CFR § 1.323 .................................................................................................................... 2

I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56, Defendants Tellabs, Inc. and Tellabs Operations, Inc. (collectively, "Tellabs") move for summary judgment that Claims 1 and 6-9 of U.S. Patent 5,386,418 ("the '418 Patent"), are invalid as indefinite.

Faced with the fact that Claim 1 of the '418 Patent as issued in 1995 was indefinite, Fujitsu attempted to correct the problem with a certificate of correction requested almost 13 years later in 2007. Tellabs told Fujitsu about the indefiniteness problem in Claim 1 in 2007, a few months after Fujitsu asserted that Tellabs infringed the '418 Patent. Fujitsu's request for a certificate of correction was filed with the misstatement that the indefiniteness arose from a simple "typographical error" in what it submitted in the original application. On the contrary, the prosecution history of the '418 Patent shows that this was no "typographical error," but instead the indefiniteness arises from the precise language Fujitsu inserted in the last amendment of Claim 1 to overcome a rejection.

The Patent Office improperly issued Fujitsu's certificate of correction, because the change broadened Claim 1 and the proper correction was not "clearly evident," making the certificate of correction invalid. This Court cannot itself make a correction to Claim 1 because there is a reasonable debate about the proper correction. This Court should then hold the uncorrected Claim 1 (and the asserted Claims 6-9 that depend from Claim 1) invalid for indefiniteness under Section 112, ¶ 2, because it is insolubly ambiguous and the Court cannot know what correction is necessarily appropriate or how Claim 1 should be interpreted.

A.  **Background of Fujitsu's Certificate of Correction.**

The '418 Patent issued January 31, 1995.[1] Almost thirteen years later, on November 19, 2007, Fujitsu mailed a request for a certificate of correction to delete the word "and" and insert the word "a" in Claim 1, at column 18, line 61. (Kelly Decl., Ex. 2, at FJ002658-64.)

---

[1] A copy of the '418 Patent is attached as Ex. 1 to the Decl. of Benjamin Kelly in support of this motion. Citations to the '418 Patent and other exhibits are provided as follows: Kelly Decl., Ex. __, [pinpoint].

Fujitsu made its request for a certificate of correction pursuant to 35 U.S.C. § 255 and 37 CFR § 1.323. These sections allow certain corrections of an applicant's mistake "of a clerical or typographical nature, or of minor character." In its remarks to the examiner in the request, Fujitsu argued that "to be consistent with the original claim 1 and the specification, 'and' should be --a--." (*Id.* at FJ002660.) Fujitsu attached original Claim 1 as filed, even though original Claim 1 did not include the phrase "a flag big data." (*Id.* at FJ002661.) Fujitsu's request did not mention its "Amendment B," where Fujitsu itself inserted the word "and" and deleted the word "signal" from before the words "flag bit data." (*Id.* at FJ002561-62.) Fujitsu argued in its remarks that "this error is of a minor typographical nature, and does not change the scope of the claim." (*Id.* at FJ002660.) This was no typographical error. Furthermore, promptly upon issuance of a patent, a patentee typically reviews the issued patent to correct any minor or typographical errors. In this case, Fujitsu requested a first certificate of correction in August of 1995 to correct a typographical error in the specification of the '418 Patent. (*Id.* at FJ002654-55.) Fujitsu's review of the '418 Patent in 1995 for typographical errors did not identify any typographical error in Claim 1.

On May 17, 2007, Fujitsu accused Tellabs of infringing Claim 1 of the '418 Patent during discussions that preceded the filing of its complaint. (Rudofski Decl., ¶¶ 2-3.) By no later than October of that year, Tellabs told Fujitsu that it found Claim 1 to be indefinite and insolubly ambiguous because of the word "and" that preceded the term "flag bit data" in Claim 1. (Rudofski Decl., ¶¶ 2-3; Rudofski Decl., Ex. 1.) Recognizing this ambiguity problem with Claim 1, Fujitsu was forced to file its second certificate of correction on November 19, 2007. (Kelly Decl., Ex. 2, at FJ002658-64.) This certificate issued on January 15, 2008, and Fujitsu filed a complaint accusing Tellabs of infringing the '418 Patent exactly two weeks later.

### B. This Motion Disposes of the '418 Patent.

Claim 1 is the only independent claim of the '418 Patent that Fujitsu asserted against Tellabs. Claims 6-9 depend from Claim 1. Dependent claims necessarily include the elements recited in the claim from which they depend. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d

1247, 1250 (Fed. Cir. 1997); 35 U.S.C. § 112 ¶ 4. Therefore, all of the asserted dependent claims (claims 6-9) are indefinite and invalid as a matter of law if Claim 1 is held invalid as indefinite. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999) (claims invalid when they depend on an independent claim held invalid under 35 U.S.C. § 112)

### C. Summary Judgment is Appropriate.

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Indefiniteness of a patent claim is a question of law. *Personalized Media Communs., L.L.C. v. ITC*, 161 F.3d 696, 702-03 (Fed. Cir. 1998). Additionally, the determination of whether a certificate of correction is invalid is a question that may be resolved on summary judgment. *Superior Fireplace Co. v. Majestic Products Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001) (affirming the district court's grant of summary judgment finding the certificate of correction invalid). The Federal Circuit has not required anything beyond an analysis of the "specification, drawings, and prosecution history" to support summary judgment of certificate of correction invalidity. *Id.* at 1376. Thus, summary judgment is appropriate in this action with respect to the invalidity of the certificate of correction and the indefiniteness of Claims 1 and 6-9 of the '418 Patent.

## II. LEGAL ARGUMENT

### A. A Certificate of Correction is Invalid When the Proper Correction Was Not "Clearly Evident" From the Intrinsic Record.

A certificate of correction under 35 U.S.C. § 255 is invalid if: (1) the corrected claims are broader than the original claims; and (2) the presence of the clerical or typographical error, or how to correct that error, is not "clearly evident" to one of skill in the art. *Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353-54 (Fed. Cir. 2007); *Superior Fireplace*, 270 F.3d at 1373.

To answer the first question of whether a claim has been broadened through correction requires interpreting the old and new versions of that claim, and then determining whether the new version covers territory the old one did not. *Cent. Admixture Pharm.*, 482 F.3d at 1353. This inquiry is treated as a question of law. *Id.* When a certificate of correction attempts to correct the ambiguity of an insolubly ambiguous (and therefore indefinite) claim, the change broadens the scope of the claim. *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 109172, at *15-18 (E.D. Tex. Sept. 18, 2009) (Kelly Decl., Ex. 3), *adopted*, 2010 U.S. Dist. LEXIS 30834, at *5 (E.D. Tex. Feb. 24, 2010) (Kelly Decl., Ex. 4) ("The CoC therefore broadened the scope of Claim 26 from no scope to some scope."). The argument that such a correction narrows the scope of a claim because it has gone from the indeterminable to a defined scope has been rejected and is contrary to Federal Circuit case law. *Advanced Tech.*, 2009 U.S. Dist. LEXIS 109172, at *17-18 ("Plaintiff argued the scope of Claim 26 was actually narrowed by the certificate of correction because it 'narrowed the claim from the indeterminable to a defined scope that puts infringers on notice of the claimed invention.' . . . Such a proposal is contrary to *Superior Fireplace* and is rejected in this case.").

The Federal Circuit has provided guidelines for addressing the second question – whether the error or how to correct it is "clearly evident" to one of skill in the art. In *Central Admixture* and *Superior Fireplace*, the Court gave three categories into which an error might fall. First, mistakes that are "immediately apparent and leave no doubt as to the word which was intended; 'frane' instead of 'frame,' for example." *Central Admixture*, 482 F.3d at 1354 (citing *Superior Fireplace*, 270 F.3d at 1373). The *Central Admixture* Court stated that since an error of this type makes its correction known to one of skill in the art, those errors do not raise serious public notice problems and can be corrected via a § 255 certificate. *Id.*

> In contrast, a second category includes those typographical mistakes not apparent to the reader at all; for example, a mistake resulting in another word that is spelled correctly and that reads logically in the context of the sentence. A third category of mistakes includes those where it is apparent that a mistake has been made, but it is unclear what the mistake is.

*Id.* (citing *Superior Fireplace*, 270 F.3d at 1370). The *Central Admixture* Court concluded that it "is not evident to the reader of the public record how to appropriately correct mistakes of the second and third categories." *Id.* (citing *Superior Fireplace*, 270 F.3d at 1370). Accordingly, the second and third categories cannot be repaired with a certificate of correction if the effect would be to broaden the claim. *Id.*

In such a case, the certificate of correction is invalid and the patent reads as it did prior to the issuance of the certificate. *Id.* at 1355; *Superior Fireplace*, 270 F.3d at 1367 ("invalidation of the certificate of correction result[s] in [the] uncorrected claim . . . being restored.").

### B. Without a Valid Certificate of Correction, a Court Can Correct an Error in a Patent Only if the Proper Correction is Not Subject to Reasonable Debate.

District courts often lack authority to correct an error in the patent if there is no certificate of correction (or if the certificate is invalid). *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 327 F. Supp. 2d 687, 701 (E.D. Tex. July 19, 2004) ("Because the Court gives no effect to the certificate of correction, the Court's authority to correct the patent is unquestionably governed by *Novo*."). In *Novo Industries*, the Federal Circuit held that a district court could correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims. *Novo Industries*, 350 F.3d at 1357.

A proposed correction is subject to reasonable debate if more than one term can correct the problem. For example, in *Novo Industries*, the disputed claim read in relevant part, "a rotatable with. . . ." *Id.* at 1352-53. The district court stated the claim language included an obvious typographical error: "'a' should be read as – and –." *Id.* at 1352-53. On appeal, the Federal Circuit held that the correction was subject to reasonable debate because more than one correction would fix the error, thus, the district court improperly corrected the claim. *Id.* at 1357. Even though several possible corrections were consistent with the specification, no one correction was clear enough "to overcome the ambiguity of the claim." *Id.* As the

*STMicroelectronics* Court observed, *Novo Industries* "indicate[s] that the 'no reasonable debate' standard is difficult to overcome." *STMicroelectronics*, 327 F. Supp. 2d at 702; *see also LG Electronics, Inc. v. Quanta Computer Inc.*, 566 F. Supp. 2d 910, 913 (W.D. Wis. 2008) (noting the "nearly impossible standard for judicial correction of a patent" and *Novo Industries*' "refus[al] to correct 'a' to 'and' because other possibilities for correction existed"). The Federal Circuit does not "parse hairs over which proposed correction best matched the specification. . . . [W]here more than one proposed correction is consistent with the specification, a correction is 'not subject to reasonable debate' only where the specification makes one correction clearly correct." *STMicroelectronics*, 327 F. Supp. 2d at 702. Therefore, district courts should not adopt one correction over another "simply because one more closely matches the specification." *Id.* at 702-03.

### C. When a Court Cannot Know What Correction is Necessarily Appropriate or How a Claim Should be Interpreted, it Must be Held Invalid for Indefiniteness.

When a court cannot know what correction is necessarily appropriate or how a claim should be interpreted, it must hold that claim invalid for indefiniteness without the certificate of correction. *Novo Indus.*, 350 F.3d at 1358. Absent correction, a claim is invalid for indefiniteness if it is "insolubly ambiguous" or not "amenable to construction." *Id.* at 1358 (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). In *Novo Industries*, there were three possible corrections to an error in the claim. The correction improperly provided by the district court was to change the word "a" to "and." *Id.* at 1357. Because the court did not know which of the three corrections was necessarily appropriate or how the claim should have been interpreted, the Federal Circuit held the claim invalid for indefiniteness. *Id.* at 1358-59.

The indefiniteness inquiry asks if one skilled in the art would understand the bounds of the claim when read in light of the specification. *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003); *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320-21 (Fed. Cir. 2003). The purpose of the definiteness requirement is to ensure that "the claims, as

interpreted in view of the written description, adequately perform their function of notifying the public of the scope of the patentee's right to exclude." *Honeywell*, 341 F.3d at 1339.

### III. ARGUMENT

#### A. Fujitsu's Certificate of Correction is Invalid Because it Broadened Claim 1 and the Proper Correction Was Not "Clearly Evident" From the Intrinsic Record of the '418 Patent.

The Court should invalidate Fujitsu's certificate of correction because the corrected claim is broader than the original claim and the presence of the clerical or typographical error, or how to correct that error, was not clearly evident to one of skill in the art. *See Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions*, P.C., 482 F.3d 1347, 1353-54 (Fed. Cir. 2007); *Superior Fireplace Co. v. Majestic Products Co.*, 270 F.3d 1358, 1373 (Fed. Cir. 2001).

First, changing "and" to "a" broadens Claim 1. To the extent original Claim 1 is insolubly ambiguous and indefinite, a correction that fixes an indefinite claim broadens the scope of the claim (because an invalid claim covers nothing). *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 109172, at *15-18 (E.D. Tex. Sept. 18, 2009) (holding that when a certificate of correction attempts to correct an insolubly ambiguous (and therefore indefinite) claim, the scope of the claim is broadened). To the extent issued Claim 1 is amenable to construction at all, it likely requires "setting" both "synchronizing information" and "flag bit data," while corrected Claim 1 likely requires "setting" only "flag bit data" (as shown below). (Singer '418 Decl., ¶ 14.) Because old Claim 1 requires setting A + B and new Claim 1 requires setting only B, new Claim 1 does not include the limitation of setting A. Thus, it necessarily covers territory old Claim 1 did not cover. Either way, the PTO's correction broadened Claim 1.

| **Claim 1 as Issued in 1995** (Possible Interpretation if Definite) | **Fujitsu's 2007 Attempt to Correct Claim 1** (Possible Interpretation) |
|---|---|
| (a) **setting,** in a signal transmitted via said lines and including **synchronizing information** related to one of said plurality of synchronized signal sources, **and flag bit data** indicative of whether or not a timing of said one of the plurality of synchronizing signal sources related to said synchronizing information transmitted via said lines can be used as a synchronizing signal source on each station which receives said information transmitted via said lines; | (a) **setting**, in a signal transmitted via said lines and including synchronizing information related to one of said plurality of synchronized signal sources, **a flag bit data** indicative of whether or not a timing of said one of the plurality of synchronizing signal sources. . . . |

Moreover, the presence of what Fujitsu says is an error in Claim 1, or how to correct that error, was not clearly evident to one of skill in the art from the intrinsic record of the '418 Patent. The error in original Claim 1 falls into either the second or the third categories of mistakes described by the Federal Circuit in *Central Admixture*. It was definitely not the first category, where an error is immediately apparent and leaves no doubt as to the intended word, like "frane" instead of "frame." *Central Admixture*, 270 F.3d at 1354 (citing *Superior Fireplace*, 270 F.3d at 1370). Instead, either the mistake is not apparent to the reader at all, because it involves a word spelled correctly, or it is a mistake where it is apparent that a mistake has been made, but it is unclear what the mistake is. (Singer '418 Decl., ¶¶ 8-11.) Since it is either the second or the third category of typographical mistake, the PTO improperly issued the certificate of correction and it must be invalidated. *Central Admixture*, 270 F.3d at 1354 (citing *Superior Fireplace*, 270 F.3d at 1370). Therefore, Claim 1 must read as it did prior to the issuance of the certificate.

**B.      This Court Cannot Correct the Error in Claim 1 of the '418 Patent Because the Proper Correction is Subject to Reasonable Debate.**

Without a valid certificate of correction, this Court lacks authority to correct Claim 1 of the '418 Patent. The correction is "subject to reasonable debate" based on consideration of the claim language, specification, and prosecution history. *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

In particular, there are at least four alternative corrections or interpretations, each supported by the intrinsic record, assuming original Claim 1 is amenable to construction at all:

| Annotated "Corrected" Claim 1 | First Alternative / Interpretation of What is "Set" |
|---|---|
| (a) <u>setting</u>, in a signal transmitted via said lines and including synchronizing information related to one of said plurality of synchronized signal sources, <u>a flag bit data</u> indicative of whether or not a timing of said one of the plurality of synchronizing signal sources. . . . | A first possible correction/interpretation is Fujitsu's attempted correction, where "and" has been changed to "a" and "setting" modifies only "a flag bit data." |
| **Annotated Issued Claim 1** | **Second Alternative Correction / Interpretation of What is "Set"** |
| (a) <u>setting</u>, in a signal transmitted via said lines and including <u>synchronizing information</u> related to one of said plurality of synchronized signal sources, and flag bit data indicative of whether or not a timing of said one of the plurality of synchronizing signal sources. . . . | A second possible correction/interpretation is where "and" has not been changed to "a" and "setting" modifies only "synchronizing information." This example of an alternative interpretation is supported by column 4, lines 57-59 of the specification where the word "set" modifies "synchronizing bit data." The language highlighted below shows the word "set" modifying "synchronizing bit data," which supports this possible interpretation.<br><br>50  **BEST MODE OF CARRYING OUT THE INVENTION**<br><br>The synchronizing signal source switching method of the present invention, as applied to a digital communication network having a plurality of stations A, B, C, 55 and D connected via lines and comprising a plurality of synchronizing signal sources, allows the following data to be <u>set</u> in an overhead bit of a signal transmitted to the stations, i.e.: <mark>a synchronizing bit data, by which a synchronizing signal is transmitted</mark>; and flag bit data S, *S 60 indicating whether or not the synchronizing signal is included in the transmitted signal and is available. Addi- |
| **Annotated Issued Claim 1** | **Third Alternative Correction / Interpretation of What is "Set"** |
| (a) <u>setting</u>, in a signal transmitted via said lines and including <u>synchronizing information</u> related to one of said plurality of synchronized signal sources, <u>and flag bit data</u> indicative of whether or not a timing of said one of the plurality of | A third possible correction/interpretation is where "and" has not been changed to "a," and "setting" modifies both "synchronizing information" and "flag bit data." This example of an alternative interpretation is also supported by column 4, lines 57-59 of the specification as shown below, where the word "set" modifies "synchronizing information" and "flag bit data." |

| | |
|---|---|
| synchronizing signal sources. . . . | 50 **BEST MODE OF CARRYING OUT THE INVENTION**<br><br>The synchronizing signal source switching method of the present invention, as applied to a digital communication network having a plurality of stations A, B, C, 55 and D connected via lines and comprising a plurality of synchronizing signal sources, allows the following data to be <mark>set</mark> in an overhead bit of a signal transmitted to the stations, i.e.: <mark>a synchronizing bit data,</mark> by which a synchronizing signal is transmitted; <mark>and flag bit data</mark> S, *S 60 indicating whether or not the synchronizing signal is included in the transmitted signal and is available. Addi- |

(Singer '418 Decl., ¶ 9(a)-(c).) A fourth alternative correction/interpretation is to delete the word "and" altogether. (*Id.* at ¶ 9(d).) With more than one reasonable correction or interpretation of Claim 1, the proper correction is subject to reasonable debate and cannot be corrected by this Court. *Id.* at 1357. Importantly, the Federal Circuit has held that a district court lacked authority to make a correction that "a" should be read as "and" – <u>the exact two terms at issue here</u>. *Novo Indus.*, 350 F.3d at 1352-53. The proper correction of Claim 1 does not satisfy the "no reasonable debate" standard, which courts have stated "is difficult to overcome." *STMicroelectronics, Inc. v. Motorola, Inc.*, 327 F. Supp. 2d 687, 702 (E.D. Tex. July 19, 2004). Therefore, the Court lacks authority to correct Claim 1.

    **C.    Claim 1 as Issued is Invalid for Indefiniteness Because it is Insolubly Ambiguous.**

Claim 1 of the '418 Patent as issued in 1995 is insolubly ambiguous and therefore invalid as indefinite. As in *Novo Industries*, the Court cannot know what correction or interpretation is necessarily appropriate or how Claim 1 should be interpreted. *Novo Indus.*, 350 F.3d at 1358. Also like *Novo Industries*, there are several possible corrections to or interpretations of the error in the Claim 1 of the '418 Patent. *Id.* at 1357.[2] Similarly, because this Court, like the Federal Circuit in *Novo Industries*, cannot know which of the four interpretations was necessarily appropriate, the Court should hold Claim 1 invalid for indefiniteness. *Id.* at 1358-59.

---

[2] In *Novo Industries*, the district court's correction rejected by the Federal Circuit was that "a" should be read as – and –. The correction at issue in this case is that "and" should be read as – a –. *Id.* at 1353.

Moreover, one skilled in the art would not understand the bounds of Claim 1 as issued in 1995 when read in light of the specification. (Singer '418 Decl., ¶¶ 7-13.) As courts often state, the purpose of the definiteness requirement is to ensure that the claims perform their function of notifying the public of the scope of the patentee's rights to exclude. *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1339 (Fed. Cir. 2003). Issued Claim 1 did not provide that function of public notice. Indeed, during discussions between the parties before Fujitsu filed suit in 2008, Tellabs told Fujitsu that it found issued Claim 1 to be unintelligible and insolubly ambiguous. (Rudofski Decl., ¶¶ 4-5; Rudofski Decl., Ex. 1.) Recognizing what Tellabs said was true, Fujitsu responded by immediately requesting a certificate of correction – then filed this lawsuit days after it issued. (Kelly Decl., Ex. 2, at FJ002658-64.)

Because Claim 1 as issued is insolubly ambiguous and does not put the public on notice of the bounds of the claim, this Court should hold Claim 1 invalid as indefinite. As a matter of law, the asserted dependent claims 6-9 would therefore also be invalid. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999) (claims invalid when they depend on an independent claim held invalid under 35 U.S.C. § 112).

## IV.    CONCLUSION

The Court should grant summary judgment to Tellabs and hold that all asserted claims (1 and 6-9) of the '418 Patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Dated:   June 15, 2010                                  Respectfully submitted,


                                                        */s/ James P. Bradley*
                                                        James P. Bradley
                                                        Attorney-in-Charge
                                                        Texas Bar No. 02826000
                                                        Email:  jbradley@sidley.com
                                                        Mark Dodd
                                                        Texas Bar No. 24040815
                                                        Email: mdodd@sidley.com
                                                        Kelley Conaty
                                                        Texas Bar No. 24040716
                                                        Email: kconaty@sidley.com
                                                        *All Admitted Pro Hac Vice*
                                                        **SIDLEY AUSTIN LLP**
                                                        717 N. Harwood, Suite 3400
                                                        Dallas, Texas 75201
                                                        Tel: (214) 981-3306
                                                        Fax: (214) 981-3400

                                                        David T. Pritikin
                                                        Email: dpritikin@sidley.com
                                                        Richard A. Cederoth
                                                        Email: rcederoth@sidley.com
                                                        **SIDLEY AUSTIN LLP**
                                                        One South Dearborn
                                                        Chicago, IL 60603
                                                        Tel: (312) 853-7000
                                                        Fax: (312) 853-7036

                                                        **ATTORNEYS FOR
                                                        TELLABS, INC. , TELLABS OPERATIONS INC. ,
                                                        AND TELLABS NORTH AMERICA, INC.**

# CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of June, 2010, I caused a copy of the foregoing document to be served by the Court's ECF Notification System to all parties of record and via email on:

> Robert W. Dickerson
> ORRICK, HERRINGTON & SUTCLIFFE, LLP
> 777 South Figueroa Street, Suite 3200
> Los Angeles, CA 90017-5855
> (213) 629-2020
> (213) 612-2499 (Fax)
>
> David E. Wang
> ORRICK, HERRINGTON & SUTCLIFFE, LLP
> 4 Park Plaza
> Suite 1600
> Irvine CA 92614
> (949) 567-6700
> (949) 567-6710 (Fax)
>
> Jeffrey A. Miller
> ORRICK, HERRINGTON & SUTCLIFFE, LLP
> 1000 Marsh Road
> Menlo Park CA 94025-1015
> (650) 614-7400
> (650) 614-7401 (Fax)
>
> David C. Van Dyke
> CASSIDAY SCHADE LLP
> 20 N. Wacker Drive
> Suite 1000
> Chicago, Illinois 60606-2903
> (312) 444-2464
> (312) 444-1669 (Fax)

*/s/ James Bradley*

**TELLABS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INDEFINITENESS OF ALL ASSERTED CLAIMS OF U.S. PATENT 5,386,418**
DA1 461269v.2