IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TELLABS OPERATIONS, INC. and | ) |
| TELLABS, INC., | ) |
| | ) |
|         Defendants. | ) |
| _____ | ) |
| TELLABS OPERATIONS, INC. | ) |
| | ) |
|         Plaintiff, | ) |
| | ) Nos. 08 C 3379 & 09 C 4530 |
| v. | ) |
| | ) Consolidated for Discovery |
| FUJITSU LIMITED and FUJITSU | ) |
| NETWORK COMMUNICATIONS, INC., | ) |
| | ) |
|         Defendants. | ) |
| _____ | ) |
| FUJITSU LIMITED, | ) |
| | ) |
|         Counter Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| TELLABS OPERATIONS, INC., | ) |
| TELLABS, INC., and TELLABS NORTH | ) |
| AMERICA, INC., | ) |
| | ) |
|         Counter Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On January 29, 2008, Fujitsu Limited filed a complaint against Tellabs, Inc. and Tellabs

Operations, Inc. in the United States District Court for the Eastern District of Texas ("Texas

Action") alleging infringement of U.S. Patent Nos. 5,526,163 ("'163 Patent"); 5,521,737 ("'737 Patent"); 5,386,418 ("'418 Patent"); and 6,487,686 ("'686 Patent").[1]  (Case No. 09-4530, Dkt. No. 1, Fujitsu's Compl. ¶¶ 1, 12-35.)  Tellabs Operations, Inc. then filed suit against Fujitsu Limited and Fujitsu Network Communications, Inc. (collectively "Fujitsu") in the United States District Court for the Northern District of Illinois ("Illinois Action") on June 11, 2008, alleging infringement of U.S. Patent No. 7,369,772 ("'772 Patent").  (Case No. 08-3379, Dkt. No. 1, Tellabs's Compl. ¶ 1.)  Both Fujitsu Limited and Fujitsu Network Communications, Inc. filed their amended answers, affirmative defenses, and counterclaims in the Illinois Action on April 1, 2009.  (Dkt. Nos. 119, 120.)  In its counterclaims, Fujitsu Limited alleged that Tellabs Operations, Inc., Tellabs, Inc., and Tellabs North America (collectively "Tellabs") infringed two additional patents assigned to Fujitsu Limited: U.S. Patent Nos. 7,227,681 ("'681 Patent") and 5,533,006 ("'006 Patent").  (Dkt. No. 119.)

On May 13, 2009, this court issued its preliminary claim constructions of certain disputed claim terms in the '772, '681, and '006 Patents.  The Texas Action subsequently was transferred to the Northern District of Illinois on July 29, 2009, and the two cases were consolidated for purposes of discovery.  (Case No. 08-3379, Dkt. No. 202.)  After the cases were consolidated, this court held a technology tutorial related to the general technology underlying the six patents-in-suit, including the '418 Patent.

The parties identified additional claim terms for the court to construe and filed briefs related to those proposed constructions.  Tellabs also filed two motions for summary judgment:

---

[1]  Fujitsu Limited's claim for infringement of the '686 Patent was dismissed on November 4, 2010.  (*See* Case No. 09-4530, Dkt. No. 249.)

Tellabs's "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Asserted Claims (1 and 6-9) of U.S. Patent No. 5,386,418" (Case No. 09-4530, Dkt. No. 165) and its "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Claims of U.S. Patent 5,533,006" (Case No. 08-3379, Dkt. No. 305). Fujitsu then filed its "Motion for Summary Judgment for Judicial Correction of 'And' to 'A' in Claim 1 of U.S. Patent 5,386,418" (Case No. 09-4530, Dkt. No. 202 ("Fujitsu's Mot.")). On November 30 and December 1, 2, 3, and 7, 2010, the court held a *Markman* hearing, during which the parties' counsel addressed the respective claim construction positions as well as the pending motions for summary judgment.

For the reasons explained below, Tellabs's "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Asserted Claims (1 and 6-9) of U.S. Patent No. 5,386,418" (Case No. 09-4530, Dkt. No. 165), is denied and Fujitsu's "Motion for Summary Judgment for Judicial Correction of 'And' to 'A' in Claim 1 of U.S. Patent 5,386,418" (Case No. 09-4530, Dkt. No. 202), is granted. In a separate opinion issued today, this court has granted Tellabs's "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Claims of U.S. Patent 5,533,006." The claim constructions for the '418, '163, '737, '681, and '772 Patents remain under advisement.

BACKGROUND

I.      '418 Patent

The '418 Patent is titled "Method for Synchronizing Synchronous Data Communication Network and Communication Device Used in the Synchronous Data Communication Network." (*See* '418 Patent.) It issued on January 31, 1995, and is assigned to Fujitsu Limited. (*See id.*) Synchronous data communication networks, according to the '418 Patent, "include the one using

an optical fiber cable for performing transmissions of high-speed digital signals." (*Id.* at col.1 ll. 19-22.) In these types of synchronous communication networks, "an oscillator for generating a main clock is provided in a system." (*Id.* at col.1 ll.22-24.) The prior art conventional synchronizing communication networks "allow[ed] only one synchronizing signal source" and were "merely capable of informing to the outside that a failure [had] occurred and the timing fail[ed] to be maintained." (*Id.* at col.2 ll.34-40.)

> According to the '418 Patent, an object of the invention
>
> is to provide a synchronizing method of a synchronous data communication network in which a plurality of synchronizing signal sources are provided in a data communication network and data communication is maintained upon an occurrence of a failure by efficiently switching among the synchronizing signal sources in response to the failure that occurred, as well as to provide a communication apparatus used in such a synchronous data communication network.

(*Id.* at col.2 ll.45-54.) To maintain synchronization in the event of a failure, the '418 Patent describes a method

> of switching from one synchronizing signal source to another in a synchronous data communication network comprising: a plurality of stations connected to each other via lines; and a plurality of synchronizing signal sources provided inside or outside the stations, the method comprising the steps of: *(a) setting, in a signal transmitted via the line and including the synchronizing signal, flag bit data (S, S\*) indicating whether or not the synchronizing signal transmitted via the lines is available;* (b) allowing each station to refer, on the basis of the flag bit data, to a table provided in each station and specifying the order of priority for selection of a synchronizing signal source, upon occurrence of a failure in any of the plurality of synchronizing signal sources, and selecting a synchronizing signal source; and (c) allowing each station to switch from the currently selected synchronizing signal source to the synchronizing signal source selected in the step (b).

(*Id.* at col.2 l.55-col.3 l.5 (emphasis added).) The specification further explains that the disclosed invention "allows the parent station A to send, during a normal operation, *a flag bit data S*, indicating that the synchronizing signal thereof is available, to all of its neighboring

stations, and to send, when there is a failure in the synchronizing signal source, *a flag bit data \*S* indicating that the same signal is not available." (*Id.* at col.5 ll.21-27 (emphasis added).)

II.     Prosecution History for Claim 1 of the '418 Patent

Claim 1, which is pertinent to the issues currently before the court, as issued originally recited:

> A method of switching from one synchronizing signal source to another in a synchronous data communication network including a plurality of stations with at least one child station and at least one parent station connected to each other via lines, and a plurality of synchronizing signal sources provided for said stations, the method comprising, in combination, steps of:
>
> > (a) *setting, in a signal transmitted via said lines and including synchronizing information related to one of said plurality of synchronized signal sources, and flag bit data* indicative of whether or not a timing of said one of the plurality of synchronizing signal sources related to said synchronizing information transmitted via said lines can be used as a synchronizing signal source on each station which receives said information transmitted via said lines;
> >
> > (b) referring each station, from among said plurality of stations on the basis of said flag bit data, to a table provided in each said station for specifying an order of priority for selection of a synchronizing signal source, upon occurrence of a predetermined event in any of said plurality of synchronizing signal sources, and for selecting a synchronizing signal source; and
> >
> > (c) switching each station from the currently selected synchronizing signal source to the synchronizing signal source selected in said step (b).

(*Id.* at col.18 l.51-col.19 l.9 (emphasis added).)[2]

In November 2007, Fujitsu submitted a request for a certificate of correction to the U.S. Patent and Trademark Office ("PTO") pursuant to 35 U.S.C. § 255. Specifically, Fujitsu sought to replace the phrase "and flag bit data" in claim 1 at column 18, line 61 of the '418 Patent with

---

    [2]  Asserted claims 6 through 9 depend from independent claim 1.

the phrase "a flag bit data." (Tellabs's Mot., Ex. 2 at FJ002658.) In its request, Fujitsu argued to the examiner that claim 1 of the '418 Patent contained "an inadvertent and minor typographical error" and that the object of the "setting" step in claim 1 is "flag bit data." (*Id.* at FJ002660.) On January 15, 2008, the PTO issued a Certificate of Correction for the '418 Patent, which made the following correction proposed by Fujitsu: "In Claim 1, Col. 18, line 61, delete 'and' and insert -- a--." ('418 Patent, Certificate of Correction.)

III.    Person of Ordinary Skill in the Art

Based on the parties' proposals, the court finds that a person of ordinary skill in the art with respect to the '418 Patent had (1) at least four years of experience in synchronization techniques for synchronous optical networks, or (2) a bachelor's degree in systems engineering or electrical engineering with at least two years of experience either in synchronization techniques for synchronous optical networks or in researching and designing components for synchronous optical networks.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court "draw[s] all reasonable inferences in favor of the nonmovant." *Tokai Corp. v. Easton Enters.*, Case No. 10-1057, 2011 WL 308370, at *16 (Fed. Cir. Jan. 31, 2011).

## ANALYSIS

In its Motion, Tellabs argues that the '418 Patent's Certificate of Correction is invalid and that the error in claim 1 cannot be judicially corrected. As a result, asserted claims 1, 6, 7, 8, and 9 are invalid as indefinite. In addition to opposing Tellabs's Motion, Fujitsu has filed its own Motion for Summary Judgment requesting a judicial correction of claim 1. The court will address the validity of the Certificate of Correction and the judicial correction of claim 1 in turn.

I.     Validity of the Certificate of Correction

Under 35 U.S.C. § 255, the PTO is authorized to issue a certificate of correction for certain mistakes made by the applicant:

> Whenever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may, upon payment of the required fee, issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination. Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

35 U.S.C. § 255.

Section 255 provides for the correction of two types of mistakes by a certificate of correction: (1) mistakes of a "clerical or typographical nature" and (2) mistakes of "minor character." *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1369-70, 1375 (Fed. Cir. 2001). Here, Fujitsu argues that the mistake at issue in claim 1 of the '418 Patent is of a "clerical or typographical nature." (*See* Case No. 09-4530, Dkt. No. 196 ("Fujitsu's Opp.") at 5.)

In *Superior Fireplace*, the Federal Circuit explained that such clerical or typographical

errors fall into one of three categories. The first category includes "mistakes that are immediately apparent and leave no doubt as to what the mistake is." *Id.* at 1370. The second category encompasses "those typographical mistakes not apparent to the reader at all." *Id.* Finally, the third category covers mistakes "where it is apparent that a mistake has been made, but it is unclear what the mistake is." *Id.*

Under § 255, a certificate of correction which broadens the scope of the claim "is only valid if it corrects a 'clerical or typographical' error that would have been clearly evident to one of skill in the art reading the intrinsic evidence." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007). In other words, second and third category mistakes "cannot be repaired via a certificate of correction if the effect would be to broaden the claim." *Id.* at 1354. Thus, invalidating a certificate of correction requires proof that "(1) the corrected claims are broader than the original claims; and (2) the presence of the clerical or typographical error, or how to correct the error, is not clearly evident to one of skill in the art." *Id.* at 1353. The Federal Circuit treats the first element as a question of law while the second element is a question of fact. *Id.* at 1353-54. Additionally, because challenges to the validity of a certificate of correction amount to a challenge to the validity of the patent, the moving party, here Tellabs, must prove that the certificate is invalid by clear and convincing evidence. *Superior Fireplace*, 270 F.3d at 1367.

According to Tellabs, the '418 Patent's Certificate of Correction is invalid because it corrects either a category two or category three mistake and the correction broadens the scope of the claims. In response, Fujitsu contends that the mistake is a category one typographical error and that Tellabs has failed to satisfy its burden of proving that the Certificate is invalid by clear

and convincing evidence. This court agrees with Fujitsu that the mistake is a category one error which is properly subject to a § 255 certificate of correction regardless of whether the correction broadens the scope of the claim.[3]

First, based on the intrinsic evidence, the court finds that an error is "readily apparent" in uncorrected claim 1 because the claimed "setting" step clearly lacks an object:

[T]he method comprising, in combination, steps of:

---

[3] Both parties presented extrinsic evidence, including expert declarations, to support their respective positions. For example, Tellabs's expert, Dr. Andrew Singer, identifies several proposed "interpretations/corrections" for the error in claim 1 which he contends are supported by the intrinsic evidence. (*See* Case No. 09-4530, Dkt. No. 165-5, Singer Decl. ¶¶ 7-12.) The court, however, finds that it need not look to extrinsic evidence to resolve the parties' respective motions for summary judgment. The Federal Circuit has recognized that "if the meaning of a disputed claim term is clear from the intrinsic evidence–the written record–that meaning, and no other, must prevail; it cannot be altered or otherwise superceded by witness testimony or other external sources simply because one of the parties wishes it were otherwise." *Key Pharms. v. Hercon Labs. Corp*, 161 F.3d 709, 716 (Fed. Cir. 1998), *cited with approval by Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005); *see also Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as expert testimony, in order to construe claim 1."). Although the motions before the court do not technically seek a construction of claim terms, they necessarily require an interpretation of the claim language based on the intrinsic evidence. *See Cent. Admixture*, 482 F.3d at 1354 (recognizing that a § 255 certification of correction "is only valid if it corrects a 'clerical or typographical' error that would have been clearly evident to one of skill in the art reading the intrinsic evidence."). Here, the court finds that the intrinsic evidence is unambiguous and supports the correction to claim 1 proposed by Fujitsu and contained in the Certificate of Correction. Resorting to extrinsic evidence, therefore, is unnecessary. Moreover, as discussed in this opinion, the court finds that the various, alternative interpretations identified by Tellabs and endorsed by its expert are inconsistent with the claims, the teachings of the specification, and the prosecution history. Thus, even if this court were to find that consideration of the extrinsic evidence was warranted, Dr. Singer's declaration would be accorded no weight. *See Phillips*, 415 F.3d at 1318 ("[A] court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by . . . the written record of the patent.'" (citing *Key Pharms.*, 161 F.3d at 716)); *Vitronics*, 90 F.3d at 1584 (explaining that "expert testimony, which was inconsistent with the specification and file history, should have been accorded no weight.").

> (a) *setting, in a signal transmitted via said lines and including synchronizing information related to one of said plurality of synchronized signal sources, and flag bit data* indicative of whether or not a timing of said one of the plurality of synchronizing signal sources related to said synchronizing information transmitted via said lines can be used as a synchronizing signal source on each station which receives said information transmitted via said lines.

('418 Patent, col.18 ll.57-66 (emphasis added).)

Accordingly, the next question is whether the appropriate correction for the error is "clearly evident" from the intrinsic evidence. In this case, having reviewed the intrinsic evidence and considered the parties' arguments, the court finds that Tellabs has not presented clear and convincing evidence from which this court could find that the appropriate correction would not be clearly evident to one of ordinary skill in the art as a matter of law.

The '418 Patent's specification instructs that the method of "switching from one synchronizing signal source to another" includes the step of "(a) *setting*, in a signal transmitted via the line and including the synchronizing signal, *flag bit data* (S, S*) indicating whether or not the synchronizing signal transmitted via the lines is available." (*Id.* at col.2 ll.61-65 (emphasis added).) This passage's syntactic structure closely mirrors the language at issue in claim 1, thereby supporting Fujitsu's position that "flag bit data" in the phrase "and flag bit data" is the intended object of the "setting" step.

The '418 Patent's prosecution history similarly comports with this interpretation. Claim 1 as originally filed read in pertinent part, "(a) *setting*, in the signal transmitted via said line and including the synchronizing signal, flag bit data (S, S*) indicative of whether or not a synchronizing signal transmitted via said lines is available." (Tellabs's Mot., Ex. 2 at FJ002480 (emphasis added).) The phrase "including the synchronizing signal" modifies "the signal

transmitted via said line," and "flag bit data (S, S*)" is the only object of the claimed "setting" step.

Uncorrected claim 1 in the issued '418 Patent closely parallels this syntactic structure, indicating that the conjunction "and" was erroneously added to the claim language during prosecution:

> (a) *setting*, in a signal transmitted via said lines and including synchronizing information related to one of said plurality of synchronized signal sources, *and flag bit data* indicative of whether or not a timing of said one of the plurality of synchronizing signal sources related to said synchronizing information transmitted via said lines can be used as a synchronizing signal source on each station which receives said information transmitted via said lines.

('418 Patent, col.18 ll.58-66 (emphasis added).)

Tellabs, however, argues that in addition to the correction contained in the Certificate of Correction, multiple alternative corrections or interpretations are available, rendering the appropriate correction of claim 1 not "clearly evident."[4]  Specifically, Tellabs argues that the mistake could be corrected the following ways: (1) replacing "and flag bit data" with "a flag bit data" as proposed by Fujitsu; (2) interpreting the claim such that "synchronizing information" is the only object of "setting"; (3) interpreting the claim such that both "synchronizing information" and "flag bit data" are the objects of "setting"; (4) deleting the "and" in "and flag bit data"; and (5) adding a comma after "via said lines" and deleting "and including" such that

---

[4] In its Motion, Tellabs offers these alternative corrections in connection with its argument for why this court cannot judicially correct claim 1 of the '418 Patent.  (Tellabs's Mot. 8-10.)  In its Reply, however, Tellabs additionally relies on these alternative corrections to support its argument that the Certificate of Correction is invalid because the appropriate correction was not "clearly evident."  (Case No. 09-4530, Dkt. No. 214 ("Tellabs's Reply") at 2-13.)  The court has considered these proposed alternative interpretations in determining whether Tellabs has proven by clear and convincing evidence that the Certificate of Correction is invalid.

the disputed claim languages reads: "setting, in a signal transmitted via said lines, synchronizing information . . . , and flag bit data." As explained below, this court finds that these potential interpretations–with the exception of the interpretation proposed by Fujitsu and contained in the Certificate of Correction–are not consistent with the intrinsic evidence.

       A.     Tellabs's Second, Third, and Fifth Alternative Interpretations

Tellabs relies on the following excerpt from the '418 Patent's specification as the basis for its second, third, and fifth proposed interpretations:

> The synchronizing signal source switching method of the present invention . . . allows the following data *to be set* in an overhead bit of a signal transmitted to the stations, i.e.: *a synchronizing bit data*, by which a synchronizing signal is transmitted; and *flag bit data S, S\** indicating whether or not the synchronizing signal is included in the transmission signal and is available.

('418 Patent, col.4 ll.52-61 (emphasis added).) This excerpt, when viewed in light of the relevant intrinsic evidence, does not reasonably supports three separate and distinct interpretations of the disputed language in claim 1 to a person of ordinary skill in the art. First, under Tellabs's second interpretation, "synchronizing information" is the only object of the claimed "setting" step. This interpretation requires a person of ordinary skill in the art to ignore, without explanation, the conjunctive clause in both the above-cited excerpt from the specification and claim 1; namely, the phrase "*and* flag bit data." The intrinsic evidence, therefore, does not support Tellabs's second alternative interpretation.

Regarding Tellabs's third and fifth interpretations, the court disagrees with Tellabs that these interpretations actually represent two distinct corrections for the error in claim 1. Instead, under both the third and fifth interpretations, "synchronizing information" *and* "flag bit data" are the objects of the claimed "setting" step. The third proposed interpretation generally describes

this interpretation while the fifth interpretation outlines the corrections to the claim language necessary to support this interpretation, i.e., adding a comma after "via said lines" and deleting the phrase "and including."

Like Tellabs's second proposed interpretation, the third and fifth interpretations are not supported by the intrinsic evidence. These interpretations assume that a person of ordinary skill could understand the phrase "to be set" in "to be set in an overhead bit of a signal transmitted to the stations, i.e.: a synchronizing bit data, by which a synchronizing signal is transmitted; and flag bit data S, S*" ('418 Patent, col.4 ll.57-59), as being analogous to "setting" in claim 1. Such an assumption, however, is inconsistent with the claims, the teachings of the specification, and the prosecution history. Instead, based on the intrinsic evidence, "setting" in claim 1 refers to the designation of the flag bit data as either S or S*, depending on the availability of the synchronizing signal.

The '418 Patent discloses "[a] method of switching from one synchronizing signal source to another" such that "when a failure occurs a synchronizing signal source is replaced by another synchronizing signal source in correspondence to the failure so that the data communication may be continued." (*Id.* at Abstract.) The flag bit data indicates "whether or not the synchronizing signal transmitted via the lines is available" based on its designation as either S or S*. (*Id.* at col.2 ll.63-65.) For example, the specification instructs that the disclosed invention "allows the parent station A to send, during a normal operation, *a flag bit data S*, indicating that the synchronizing signal thereof is available, to all of its neighboring stations, and to send, when there is a failure in the synchronizing signal source, *a flag bit data *S* indicating that the same signal is not available." (*Id.* at col.5 ll.21-27 (emphasis added).)

The "referring each station" step in claim 1 also comports with this interpretation of "setting." *See Phillips*, 415 F.3d at 1314 ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. . . . To begin with, the context in which a term is used is in the asserted claim can be highly instructive.") (internal citations omitted).  Step (b) in claim 1 recites:

> [R]eferring each station, from among said plurality of stations *on the basis of said flag bit data,* to a table provided in each said station for specifying an order of priority for selection of a synchronizing signal source, upon occurrence of a predetermined event in any of said plurality of synchronizing signal sources, and for selecting a synchronizing signal source.

('418 Patent, col.18 l.67-col.19 l.6 (emphasis added).)  The phrase "on the basis of said flag bit data" refers to the "flag bit data" identified in step (a).  *See, e.g., Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1305 (Fed. Cir. 2008) (recognizing that claim terms using "said" refer to the initial antecedent phrase (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 513 F.3d 1338, 1343 (Fed. Cir. 2008))).  The flag bit data in step (b), however, can only assist in selecting a synchronizing signal source if the flag bit data has been set to indicate the availability of the synchronizing signal source.  The court accordingly agrees with Fujitsu that "setting," as it appears in claim 1, refers to the actual designation of the flag bit data as either S or S*.

On the other hand, the phrase "to be set" in the excerpt from the specification that Tellabs cites is synonymous with the word "provide."  That excerpt explains that the invention "allows the following data *to be set in an overhead bit* of signal . . . , i.e.: a synchronizing bit data . . . ; and flag bit data S, S*."  ('418 Patent, col.4 ll.56-59 (emphasis added).)  The specification later explains that the "synchronizing bit data" and "a flag bit data" "*are provided* in a predetermined

position *of the overhead* of the signal transmitted through the stations in the digital communications network of the present invention." (*Id.* at col.6 ll.11-17 (emphasis added).) Thus, based on the specification, "to be set" refers to the general provision of the flag bit data and the synchronizing bit data in the path overhead as opposed to the setting of the flag bit data as either S or S*.

The prosecution history further confirms that "setting," appearing in claim 1, refers to the flag bit data, not both the synchronizing signal *and* the flag bit data. Again, in claim 1, as originally filed with the PTO, "flag bit data" is the only object of the "setting" step: "(a) setting, in the signal transmitted via said line and including the synchronizing signal, flag bit data (S, S*) indicative of whether or not a synchronizing signal transmitted via said lines is available." (Tellabs's Mot., Ex. 2 at FJ002480 (emphasis added).)

Based on the intrinsic evidence, the court finds that Tellabs has failed to prove that a person of ordinary skill in the art could additionally interpret uncorrected claim 1 as requiring a "setting" of only the synchronizing information (Tellabs's second interpretation) or of both the synchronizing information and the flag bit data (Tellabs's third and fifth interpretations).

B.     Tellabs's Fourth Alternative Interpretation

Finally, the court is similarly unpersuaded that the intrinsic evidence supports Tellabs's fourth interpretation of claim 1. According to Tellabs, the phrases "flag bit data" and "*a* flag bit data" are distinguishable; specifically, the former is plural but the latter is singular. As a result, deleting the conjunction "and" from "and flag bit data" is a distinct correction from replacing "and flag bit data" with "a flag bit data," and a person of ordinary skill accordingly would not know how to correct the claim. The court disagrees with Tellabs that the one of skill in the art

could interpret "flag bit data" in claim 1 as referring to multiple units of flag bit data.

First, the intrinsic evidence interchangeably uses both "flag bit data" and "a flag bit data" when addressing a single unit of flag bit data. For example, the specification explains that the present invention comprises "first means for receiving *flag bit data* (S, S*) indicating whether or not a synchronizing signal transmitted via a line is available" and "fourth means for sending . . . *a flag bit data*, indicating whether or not the synchronizing signal from the communication apparatus originating the flag bit is available." ('418 Patent, col.3 ll.9-12, 21-25.)

The caption on Figure 24 similarly uses "flag big data" to refer to a single unit being changed from *S to S: "switch selection from line (W) to line (E), reverse *flag bit data* supplied to line (W) *from *S to S* and send reversed version." ('418 Patent, Fig. 24 (emphasis added); *see also id.* at Figs. 25, 32-42 (containing similar captions).) Finally, in its request for the Certificate of Correction, Fujitsu used both "flag bit data" and "a flag bit data" interchangeably: "The object of the 'setting' step is 'flag bit data' . . . . However, as currently written, paragraph (a) of claim 1 erroneously recites 'setting . . . and flag bit data' instead of 'setting . . . a flag bit data.'" (Tellabs's Mot., Ex. 2 at FJ002660).)

Moreover, the '418 Patent repeatedly emphasizes that the flag bit data "indicat[es] whether or not the synchronizing signal transmitted via the lines is available." ('418 Patent, col.2 ll.63-65; *see also id.* at col.3 ll.10-13.) To indicate the availability of the signal source, the transmitted flag bit data is set to either S or S*, never both S and S* simultaneously. If, as Tellabs contends, "flag bit data" in claim 1 could refer to multiple flag bit data, the flag bit data would not be "indicative of whether or not a timing of said one of the plurality of synchronizing signal sources . . . can be used as a synchronizing signal source," (*id.* at col.18 ll.61-65), as

16

required by the plain language of the claim.

The court accordingly finds that Tellabs's argument that "flag bit data" and "a flag bit data" could have distinct meanings in claim 1 of the '418 Patent is not supported by the intrinsic evidence.  As a result, the fourth proposed interpretation does not demonstrate that the appropriate correction for the error in claim 1 is not clearly evident to a person of ordinary skill.

The court has considered Tellabs's remaining arguments for invalidating the Certificate of Correction and finds that they also lack merit.  Based on the intrinsic evidence, the court finds that the error in claim 1 is immediately apparent and the correction in the Certificate of Correction is the only correction supported by the intrinsic evidence.  Tellabs accordingly has not met its burden of proving by clear and convincing evidence that the Certificate of Correction is invalid.  Instead, the intrinsic evidence demonstrates that claim 1 contains a category one error properly subject to a § 255 certificate of correction.

II.     Judicial Correction of "And" to "A" in Claim 1

Although a valid certificate of correction is only effective prospectively, *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1295 (Fed. Cir. 2000) ("[F]or causes arising before its issuance, the certificate of correction is not effective."), the district court can retroactively correct certain errors in a patent's claims if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims."  *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354, 1357 (Fed. Cir. 2003).  These "determinations must be made from the point of view of one skilled in the art."  *Ultimax Cement Mfg. v. CTS Cement*

*Mfg.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009).

In its Motion, Tellabs argues that the error in claim 1 of the '418 Patent is not subject to judicial correction. As a result, according to Tellabs, asserted claims 1, 6, 7, 8, and 9 are invalid as indefinite. Fujitsu opposes Tellabs's Motion and filed a related motion for summary judgment, asking this court to correct claim 1 to make the same correction as the Certificate of Correction; namely, replacing "and" in the phrase "and flag bit data," with "a" such that the claim language reads "setting . . . a flag bit data." (Case No. 09-4530, Dkt. No. 202.) The court agrees with Fujitsu that claim 1 of the '418 Patent is appropriately subject to judicial correction under the *Novo* standard.

Raising the same alternative corrections addressed above in connection with its arguments for invalidating the Certificate of Correction, Tellabs argues that this court cannot judicially correct claim 1 because the appropriate correction is subject to reasonable debate. For the same reasons explained above, this court finds that the claims and specification support only one of the five interpretations identified by Tellabs: correcting claim 1 to replace "and flag bit data" with "a flag bit data." The appropriate correction, therefore, "is not subject to reasonable debate." *Novo*, 350 F.3d at 1357. Moreover, as discussed above, the prosecution history comports with this interpretation and "does not suggest a different interpretation of the claims." *Id.*

Tellabs, however, additionally argues that notwithstanding the satisfaction of the *Novo* standard, a district court cannot correct a mistake in a patent that has already been the subject of a certificate of correction. Tellabs's argument appears to be based on a misconception that the *Novo* standard and the § 255 certificate of correction standard are mutually exclusive. In

other words, according to Tellabs, because the PTO can correct a broader range of errors than the district court, the district court cannot make the same correction in a patent that was previously made by the PTO. (*See* Case No. 09-4530, Dkt. No. 290 ("Tellabs's Case Law Brief") at 4.) Tellabs notably has not identified any case law adopting such a proscription against judicial correction.

To the contrary, this court finds that precluding judicial correction based solely on the presence of a certificate of correction would run afoul of the Federal Circuit's recognition in *Novo* that district courts maintained their ability to correct certain errors in a patent despite the enactment of § 255: "After the enactment of sections 254 and 255, we have assumed that courts can continue to correct obvious minor typographical and clerical errors in patents." 350 F.3d at 1357.[5]

The Federal Circuit's decisions in *Hoffer v. Microsoft Corp.*, 405 F.3d 1326 (Fed. Cir. 2005), and *Ultimax Cement Mfg. v. CTS Cement Mfg.*, 587 F.3d 1339 (Fed. Cir. 2009), further support the court's authority to correct an error that was already corrected by a § 255 certificate of correction. In *Hoffer*, the patentee obtained a certificate of correction from the PTO pursuant to 35 U.S.C. § 254 based on a error made by the PTO. The district court, however, refused to correct the mistake, finding "it was powerless to correct the error." *Id.* at 1331. Citing *Novo*, the Federal Circuit reversed, explaining that "[w]hen a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court, as for other legal documents." *Id.* That the

___

[5] In contrast to 35 U.S.C. § 255, 35 U.S.C. § 254 provides for correction of mistakes made by the PTO: "Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents." 35. U.S.C. § 254.

error was previously corrected via a certificate of correction played no role in the court's analysis.

Similarly in *Ultimax*, the patentee requested a judicial correction to correct an error in a chemical formula in the claims. Even though the PTO had already issued a certificate of correction correcting a different error in the same chemical formula, the Federal Circuit found that the district court had erred in refusing to correct the second error. 587 F.3d at 1352-53. As in *Hoffer*, the court in *Ultimax* did not address the certificate of correction in determining whether judicial correction was appropriate under the *Novo* standard. *See id.*

Neither *Hoffer* nor *Ultimax* suggests that the district court's authority to correct a patent is constrained by the presence of a certificate of correction, and the court declines to impose such a proscription against judicial correction in this case. Consequently, the court agrees with Fujitsu that the *Novo* standard is the controlling standard for judicial correction, and the '418 Patent's Certificate of Correction does not prevent this court from correcting the same error in claim 1.[6]

---

[6] Tellabs also suggests that the belated timing of Fujitsu's request for a judicial correction of claim 1 is another grounds for denying Fujitsu's Motion. *Novo*, however, does not impose any timing provisions for filing such a motion, and Tellabs has not cited any Federal Circuit authority to the contrary. Indeed, because the *Novo* standard maintains the patent's notice function to the public by allowing for judicial correction of only those errors that are apparent to one of ordinary skill based on the intrinsic evidence, the timing of the judicial correction ultimately is irrelevant. Nor has Tellabs been prejudiced by the timing of Fujitsu's Motion. The court has considered Fujitsu's Motion simultaneously with the parties' respective claim construction positions, and Tellabs had a full opportunity to address both the judicial correction of claim 1 and the claim constructions for the disputed claim terms in the '418 Patent during the *Markman* hearing. Moreover, the court's correction of claim 1 is identical to the correction contained in the Certificate of Correction, which issued on January 15, 2008. Thus, from the beginning of this litigation, Tellabs has had notice that claim 1 contained an error that could be subject to judicial correction.

Tellabs also relies on the Federal Circuit's holding in *Novo* that the district court erred in correcting the patent at issue by changing "a" to "and" in one of the claims–the reverse of the correction proposed by Fujitsu in this case. *Novo*, however, is factually distinguishable and cannot be interpreted as propounding a brightline rule against similar judicial corrections. In *Novo*, unlike the present case, the patentee proposed two different corrections to the district court, and district court eventually applied yet a third correction. *See Novo*, 350 F.3d at 1357. The Federal Circuit emphasized these multiple potential corrections in concluding that the appropriate correction for the mistake in the claim language was subject to reasonable debate and thus not amenable to judicial correction. *Id.* at 1357-58. Here, in contrast, Fujitsu has proposed only one possible correction, and the court agrees with Fujitsu that the alternative interpretations offered by Tellabs are not reasonable in light of the intrinsic evidence. Consequently, the Federal Circuit's holding in *Novo* does not preclude judicial correction of the '418 Patent in this case.

Patents provide an important notice function to the public and, as a result, post-issuance judicial corrections which have a retroactive effect must be carefully scrutinized. In this case, viewing the intrinsic evidence from the perspective of one of ordinary skill in the art, as the court must in determining whether a judicial correction is supported under *Novo*, this court finds that the only reasonable correction of claim 1 replaces "and flag bit data" with "a flag bit data." A person of ordinary skill in the art, having reviewed the specification, drawings, and prosecution history, would have immediately recognized this error and understood what was claimed. The court accordingly corrects claim 1 of the '418 Patent to replace "and flag bit data" with "a flag bit data."

<u>CONCLUSION</u>

For the reasons explained above, Tellabs's "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Asserted Claims (1 and 6-9) of U.S. Patent No. 5,386,418" (Case No. 09-4530, Dkt. No. 165), is denied, and Fujitsu's "Motion for Summary Judgment for Judicial Correction of 'And' to 'A' in Claim 1 of U.S. Patent 5,386,418" (Case No. 09-4530, Dkt. No. 202), is granted. Claim 1 of the '418 Patent is corrected to replace "and flag bit data" with "a flag bit data."

Tellabs's "Motion for Summary Judgment of Invalidity Based on Indefiniteness of All Claims of U.S. Patent 5,533,006" (Case No. 08-3379, Dkt. No. 305), has been granted in a separate opinion issued today by this court. The claim constructions for the '418, '163, '737, '681, and '772 Patents remain under advisement. The parties are encouraged to discuss settlement.

ENTER:

_James F. Holderman_____

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 31, 2011