IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELLABS OPERATIONS, INC. | CIVIL ACTION NO. 08-CV-3379 |
| PLAINTIFF, | CIVIL ACTION NO. 1:09-CV-04530 |
| V. | |
| FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., | **JUDGE HOLDERMAN** **MAGISTRATE JUDGE COLE** |
| DEFENDANTS | |

| | |
|---|---|
| FUJITSU LIMITED | |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| TELLABS OPERATIONS, INC. ET AL. | **Consolidated for Discovery** |
| Defendants, | |

**TELLABS, INC.'S, TELLABS OPERATIONS, INC.'S, AND TELLABS NORTH AMERICA, INC.'S REPLY IN SUPPORT OF ITS ORAL MOTION TO DISALLOW FUJITSU LIMITED'S AMENDMENT OF ITS INFRINGEMENT CONTENTIONS**

FILED UNDER SEAL

RESTRICTED DOCUMENT PURSUANT TO LOCAL RULE 26.2.

THIS DOCUMENT AND CERTAIN OF ITS ATTACHED EXHIBITS ARE FILED UNDER SEAL PURSUANT TO PARAGRAPHS 21 AND 22 OF THE STIPULATED SECOND AMENDED PROTECTIVE ORDER ENTERED IN THIS ACTION ON JANUARY 20, 2009 (DKT. NO. 95)

# TABLE OF CONTENTS

Page

I.    APPLICABLE LAW. ...................................................................................................... 1

    A.    FUJITSU INVITES ERROR IN ASKING THE COURT TO APPLY THE WRONG
        PRECEDENT. ............................................................................................................. 1

    B.    AMENDMENT OF INFRINGEMENT CONTENTIONS REQUIRES "GOOD CAUSE". ........... 1

    C.    "GOOD CAUSE" REQUIRES DILIGENCE AND NO PREJUDICE TO THE PARTY
        OPPOSING AMENDMENT. ......................................................................................... 3

        1.    Diligence Cannot be Shown Where There Has Been Delay...................... 3

        2.    A Plaintiff's Delay Following Statements That It Has Additional
             Infringement Allegations Demonstrates a Lack of Diligence.................... 4

        3.    An Amendment is Prejudicial if it Forces a Party to Reassess
             Previous Defenses and Incur Additional Expenses, Especially
             After *Markman*. ........................................................................................ 5

II.   ANALYSIS. ................................................................................................................ 6

    A.    FUJITSU CANNOT DEMONSTRATE DILIGENCE IN ITS ATTEMPT TO ADD NEW
        INFRINGEMENT ALLEGATIONS. ............................................................................... 7

        1.    Fujitsu Was Unable to Answer this Court's Questions as to "why it
             took so long to get to this point." Fujitsu's Delay and Lack of
             Diligence Remains Unexplained................................................................ 8

        2.    Everything in Fujitsu's Proposed Amended Infringement
             Contentions Has Been in Fujitsu's Possession for Over Two Years. ......... 9

        3.    Fujitsu's 2009 Position That it Had New Infringement Allegations
             Shows Fujitsu's Lack of Diligence from Mid-2009 to 2011. ..................... 9

    B.    THE COURT SHOULD NOT ALLOW AMENDMENTS THAT PERPUATE
        DEFICIENCIES IN FUJITSU'S INFRINGEMENT CONTENTIONS..................................... 10

        1.    Fujitsu Admits it Has Not Gathered Evidence of Direct
             Infringement by Tellabs Customers......................................................... 11

        2.    Fujitsu Admits it Still Must Collect Evidence for its Doctrine of
             Equivalents Allegations. .......................................................................... 11

        3.    Since Attempting to Amend its Infringement Contentions on June
             16, 2011, Fujitsu Has Disavowed in Court the Reverse Engineering
             of Tellabs Products That is the Most Significant Part of its
             Amended Contentions for the '163 and '737 Patents. .............................. 12

    C.    FOR THE '418 PATENT, FUJITSU'S BELATED ATTEMPT TO ACCUSE
        ADDITIONAL TELLABS PRODUCTS SHOWS A LACK OF DILIGENCE, AND
        EVEN ACCUSES PRODUCTS THAT ARE NON-EXISTENT, SO OLD AS TO BE

BEYOND THE STATUTE OF LIMITATIONS ON DAMAGES, AND THAT COULD NOT POSSIBLY INFRINGE. .................................................................................. 14

D.  FUJITSU'S AMENDED CONTENTIONS CAUSE SIGNIFICANT PREJUDICE TO TELLABS. ........................................................................................................ 16

1.  It is Disingenuous for Fujitsu to Assert that No Terms Would Need to be Construed in Claims 2-5 of the '418 Patent. ..................................... 16

2.  Tellabs Would Need to Re-Assess its Non-Infringement and Invalidity Defenses and Investigate New Prior Art for Claims 2-5 of the '418 Patent. ............................................................................... 17

3.  A Continuance Will Not Cure the Prejudice. ............................................ 18

## TABLE OF AUTHORITIES

Page

CASES

*02 Micro Intern. Ltd. v. Monolithic Power Sys.*
467 F.3d 1355 (Fed. Cir. 2006)............................................................................. 1, 2, 3, 5, 16

*Computer Acceleration Corp. v. Microsoft Corp.*
503 F. Supp. 2d 819 (E.D. Tex. 2007)................................................................................. 1

*Genentech, Inc. v. Amgen, Inc.*
289 F.3d 761 (Fed. Cir. 2002)................................................................................. 1, 3, 12

*Joy Techs., Inc. v. Flakt, Inc.*
6 F.3d 770 (Fed. Cir. 1993) ....................................................................................... 10

*Realtime Data, LLC v. Packeteer, Inc.*
2009 U.S. Dist. LEXIS 73217 (E.D. Tex. 2009) ................................................................. 2

*Softvault Sys., Inc. v. Microsoft Corp.*
2007 U.S. Dist. LEXIS 33060 (E.D. Tex. 2007) .......................................................... 5, 17

*Sybase, Inc. v. Vertica Systems, Inc.*
2009 U.S. Dist. LEXIS 110775 (E.D. Tex. 2009) ................................................. 3, 4, 6, 8

*Textil A.G. v. Picanol N.V.*
358 F.3d 1356 (Fed. Cir. 2004)................................................................................... 1

*Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*
2011 U.S. Dist. LEXIS 67532 (M.D. N.C. 2011)......................................................... 5, 10

STATUTES

35 U.S.C. § 286...................................................................................................... 15

Defendants Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. (collectively, "Tellabs") respectfully submit this Reply in Support of their Oral Motion to Disallow Fujitsu Limited's (hereinafter "Fujitsu") Amendment of its Infringement Contentions.

## I.  APPLICABLE LAW.

### A.  Fujitsu Invites Error in Asking the Court to Apply the Wrong Precedent.

Fujitsu invites error by asking this Court to apply the Seventh Circuit's precedent regarding the "liberal attitude towards the amendment of pleadings."[1]  The Federal Circuit has unequivocally held that local patent rules are "intimately involved in the substance of enforcement of the patent right, and must be governed by the law of this circuit."[2]

### B.  Amendment of Infringement Contentions Requires "Good Cause."

The Federal Circuit expressly distinguishes between amending pleadings as opposed to infringement contentions: "[u]nlike the liberal policy for amending pleadings, the philosophy behind amending claim charts [under local patent rules] is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction."[3]  In the Eastern District of Texas, where Fujitsu chose to file this case and served its infringement contentions,[4] courts have repeatedly explained that the Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases."[5] Echoing the Federal Circuit in *02 Micro,* Texas courts have made it clear that,

---

[1] Fujitsu's Resp. to Tellabs' Oral Mot. to Disallow Fujitsu's Am. Compl. & Infringement Contentions, at 9 (July 19, 2011) [Dkt. 344] [hereinafter "Fujitsu's Resp."].

[2] *02 Micro Intern. Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (*quoting Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004)).

[3] *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).

[4] Fujitsu's First Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions, along with Exs. A-1, B-1, and C-1 thereto, are attached as Exhibits 1, 1A, 1B, and 1C to the Decl. of Benjamin Kelly in support of this Reply, which is attached hereto as Exhibit A.  Hereinafter, documents attached as exhibits to the Kelly Decl. will be cited as follows: Kelly Decl., Ex. ___, [pinpoint citation].

[5] *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007).

[b]y requiring a plaintiff to formulate, test, and crystallize their infringement contentions early in litigation, "the case takes a clear path, focusing discovery on building precise final infringement . . . and narrowing issues for *Markman*, summary judgment, trial, and beyond." Thus, the Patent Rules demonstrate high expectations as the plaintiffs' preparedness before bringing suit.[6]

Therefore, when Fujitsu served its infringement contentions pursuant to Patent Rule 3-1 of the Eastern District of Texas on July 28, 2008, Fujitsu knew they were the "final contentions," unless it believed in good faith that the Court's *Markman* Order required amendment, or it obtained leave of the Court granted "only upon a showing of good cause."[7] The Illinois Patent Rules similarly "require the parties to provide the particulars behind allegations of infringement, non-infringement, and invalidity at an early date."[8] It is therefore clear that, no matter the jurisdiction, local patent rules exist to require parties to crystallize their theories early.

In view of the "high expectations" on patentees and the importance of disclosing contentions early, the Federal Circuit,[9] Illinois Patent Rules,[10] Texas Patent Rules,[11] and persuasive precedent from fellow Patent Rule jurisdictions,[12] all require a patentee to

---

[6] *Realtime Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS 73217, *17 (E.D. Tex. 2009) (internal citations omitted) (Kelly Decl., Ex. 2).

[7] U.S. Dist. Ct. E.D. Tex. P. R. 3-6 ("Each party's 'Infringement Contentions' and 'Invalidity Contentions' shall be deemed to be that party's final contentions" except where it believes in good faith that the Court's *Markman* Order requires the amendment for § 112(6) or doctrine of equivalents assertions or "by order of the Court, which shall be entered only upon a showing of good cause") (Kelly Decl. Ex. 3). Although Fujitsu called its charts "Preliminary Infringement Contentions," since October 27, 2006, such disclosures were no longer considered "preliminary." (General Order 06-15, p. 18 (Oct. 27, 2006)) (Kelly Decl., Ex. 22).

[8] LPR Preamble.

[9] *02 Micro*, 467 F.3d at 1360 ("Apart from amendments designed to take account of the district court's claim construction, amendments are permitted only for 'good cause' even though the period allowed for discovery typically will not have expired.")

[10] *See* LPR Preamble (stating that after a reasonable period for fact discovery, a party may amend only "upon a showing of good cause and absence of unfair prejudice, made in timely fashion following discovery of the basis for the amendment") (quoting LPR 3.4).

[11] *See* U.S. Dist. Ct. E.D. Tex. P. R. 3-6(b) (stating that amendment of infringement contentions "may be made only by order of the Court, which shall be entered only upon a showing of good cause").

[12] *See 02 Micro*, 467 F.3d at 1362-63 ("We agree with the Northern District of California that 'good cause' requires a showing of diligence."); U.S. Dist. Ct. N.D. Cal. Patent L.R. 3-6 (allowing amendment

demonstrate "good cause" to amend its infringement contentions. Specifically, in Illinois, after "a reasonable period for fact discovery," (a standard easily met in this case after three years), the Patent Rules allow a party to amend only "upon a showing of good cause and absence of unfair prejudice, made in timely fashion following discovery of the basis for the amendment."[13] Therefore, to establish "good cause," Fujitsu must demonstrate diligence and a lack of prejudice to Tellabs.[14] Fujitsu cannot possibly meet this standard. Rather, Fujitsu's motion for leave would allow for the very "shifting sands" approach that the Federal Circuit seeks to prevent.[15]

### C. "Good Cause" Requires Diligence and No Prejudice to the Party Opposing Amendment.

Fujitsu must show that it could not, through the exercise of reasonable diligence, have presented its infringement allegations sooner than it did. Fujitsu must also establish that its proposed amended infringement contentions will not prejudice Tellabs. On this, the Federal Circuit[16] and the Patent Rules of this District[17] and the Eastern District of Texas[18] are unanimous.

### 1. Diligence Cannot be Shown Where There Has Been Delay.

Diligence in amending infringement contentions cannot be shown where there is delay. In *02 Micro*, the Federal Circuit affirmed the district court's denial of the plaintiff's motion for leave to amend its infringement contentions to propose a new theory of infringement.[19] The patentee argued that it could not develop its new theory until it deposed the defendant's

---

of infringement contentions "only by order of the Court upon a timely showing of good cause") (Kelly Decl., Ex. 4).

[13] LPR Preamble (quoting LPR 3.4).

[14] *02 Micro*, 467 F.3d at 1367-68.

[15] See *Genentech*, 289 F.3d at 774.

[16] *02 Micro*, 467 F.3d at 1366, 1368 ("We agree with the Northern District of California that 'good cause' requires a showing of diligence. . . . Having concluded that the district court could properly conclude that [the plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [the defendant].").

[17] LPR Preamble and LPR 3.4.

[18] See *Sybase, Inc. v. Vertica Systems, Inc.*, 2009 U.S. Dist. LEXIS 110775, at *3, *5 (E.D. Tex. 2009) (Kelly Decl., Ex. 5).

[19] *02 Micro*, 467 F.3d at 1366-68.

engineer.[20] The patentee waited just three months after the deposition before moving to amend.[21] The district court denied the patentee's motion for leave to its infringement contentions, and the Federal Circuit affirmed, since it "unreasonably delayed," demonstrating a lack of diligence.[22]

Similarly, diligence cannot be shown when the patentee delays in analyzing source code and other technical documents produced during discovery.[23] For example, in *Sybase, Inc. v. Vertica Systems, Inc.,* a patentee received the defendant's source code in August 2008.[24] In February 2009, about six months later, the patentee filed its motion for leave to serve amended infringement contentions.[25] The court denied the motion and held that the patentee did not show that its delay in amending its infringement contentions "was reasonable based on the amount of time it had to inspect [the defendant's] source code."[26] Notably, the complaint in *Sybase* was filed one day after Fujitsu filed its complaint in this case in the very same court.[27] The plaintiff in *Sybase* filed its motion for leave to amend its infringement contentions months before Fujitsu filed even its first motion for leave to amend its infringement contentions (the June 2009 motion in the Eastern District that was denied without prejudice in July of 2009).[28] As explained, the plaintiff's motion in *Sybase* was denied.

**2. A Plaintiff's Delay Following Statements That It Has Additional Infringement Allegations Demonstrates a Lack of Diligence.**

A plaintiff who formally seeks to add new infringement allegations months after making statements that it believes it has a basis for adding such infringement allegations demonstrates a

---

[20] *Id.* at 1360.
[21] *Id.* at 1360-61.
[22] *Id.* at 1361-62.
[23] *See Sybase,* 2009 U.S. Dist. LEXIS 110775, at *4-5.
[24] *Id.* at *4.
[25] *Id.* at *2.
[26] *Id.* at *5.
[27] *Id.* at *2.
[28] *Id.*; Order Den. All Pending Mots. Without Prej., 6:08-cv-00022 (July 21, 2009) (Kelly Decl., Ex. 9).

lack of diligence. For example, in applying the Federal Circuit's *02 Micro* holding, one court, in a district without patent rules, noted that the plaintiff's own statements from months prior to moving for leave demonstrated a clear lack of diligence.[29] In January 2007, the plaintiff inspected the accused products and received the defendant's documents.[30] In May 2007, the plaintiff stated to the court that it had a basis to present new infringement allegations.[31] In September of the same year, the plaintiff filed for leave to add the new infringement allegations based on the information collected eight months earlier.[32] The court held that the plaintiff "'failed to establish that it required' eight months after the product inspections and document production in January 2007 to seek leave to add the new infringement allegations at issue."[33] The court further held that the statements from the plaintiff four months earlier indicated that September 2007 was not the first date it could have added the new infringement allegations, and, permitting the addition of the new allegations under such circumstances "would make a mockery of the good cause standard."[34]

3.    **An Amendment is Prejudicial if it Forces a Party to Reassess Previous Defenses and Incur Additional Expenses, Especially After *Markman*.**

An amendment to infringement contentions causes prejudice when it forces the defendant to re-assess and re-analyze the defenses on which it has previously relied.[35] For example, in *Softvault Sys., Inc. v. Microsoft Corp.*, the plaintiff sought to amend its infringement contentions to assert an earlier priority date for the patent-in-suit six months after serving its original

---

[29] *Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*, 2011 U.S. Dist. LEXIS 67532, *60-63 (M.D. N.C. 2011) (Kelly Decl., Ex. 6).
[30] *Id.* at *61.
[31] *Id.* at *61-63.
[32] *Id.* at *63.
[33] *Id.* at *61 (quoting *02 Micro*, 467 F.3d at 1367).
[34] *Id.* at *63.
[35] *Softvault Sys., Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 33060, at *5-6 (E.D. Tex. 2007) (Kelly Decl., Ex. 7).

infringement contentions.[36] The Court found that allowing such an amendment would prejudice the defendant because it would force the defendant to re-assess all of its invalidity analyses based on the earlier priority date, which might exclude prior art references on which the defendant had relied for six months.[37] Thus, the Court denied the plaintiff's motion to amend its contentions.[38]

Prejudice is especially clear – and significant – when the attempt to amend occurs late in the case.[39] This is especially true if the *Markman* briefing and hearing is complete.[40] In *Sybase,* the court denied an attempt to amend infringement contentions after the parties completed their *Markman* briefing and hearing, explaining that to allow the plaintiff to amend its infringement contentions "at this late stage of litigation would require additional claim construction briefing and a supplemental *Markman* hearing," and "would significantly prejudice" the defendant.[41]

## II.  ANALYSIS.

Fujitsu seeks to amend its infringement contentions three-and-a-half years after filing this suit and three years after serving its original infringement contentions on July 28, 2008. In fact, Fujitsu seeks to not only supplement but also to significantly expand its infringement contentions. As such, Fujitsu's proposed amended infringement contentions will substantially increase the number and complexity of issues in this case. Through its proposed amended contentions, Fujitsu seeks to:

> (a) assert four new claims (claims 2-5 of the '418 Patent), which Tellabs has not investigated with respect to invalidity or charted in its invalidity contentions, despite the parties completing the *Markman* hearing and briefing last year without consideration of those claims;

---

[36] *Id.* at *2, *5-6.
[37] *Id.* at *5-6.
[38] *Id.*
[39] *See Sybase, Inc. v. Vertica Systems, Inc.,* 2009 U.S. Dist. LEXIS 110775, at *5-6 (E.D. Tex. 2009).
[40] *Id.*
[41] *Id.* at *6.

(b) provide, three years after its final infringement contentions for the '418, '163, and '737 Patents were served, Fujitsu's conclusory allegations of the activities by Tellabs alleged to be induced and contributory infringement;

(c) provide, three years after its final infringement contentions for the '418, '163, and '737 Patents were served, Fujitsu's doctrine of equivalents analysis/allegations under the "function-way-result" and "insubstantial difference" test; and

(d) for the '418 Patent, accuse nine additional products that it should have known to investigate before filing suit, which include the Tellabs 7100 Nano that Fujitsu accused of infringing other patents in counterclaims filed in this action on September 5, 2008,[42] two old versions of products that have not been sold in more than six years, another product that was never manufactured or sold, and yet another product that could not possibly infringe the claims of the '418 Patent.

**A.    Fujitsu Cannot Demonstrate Diligence in its Attempt to Add New Infringement Allegations.**

Fujitsu must be able to show that the deadline for disclosure could not be met despite its exercise of diligence.[43] Here, however, Fujitsu has utterly failed to show any diligence. Instead, Fujitsu twice makes the perplexing claim that its motion for leave along with all of the other motions pending in Texas, which were denied without prejudice, "were to be decided by Judge Holderman."[44] However, upon transfer, it was Fujitsu's responsibility to move to have the issue decided by this Court. Fujitsu never did so until now.

In its brief, Fujitsu compares its pending proposed infringement contentions with its so-called "2009 Infringement Contentions," falsely suggesting that Fujitsu is making few changes to its previous contentions and, even more misleading, implying that it was actually granted leave to serve amended infringement contentions in 2009.[45] They were not.

To be clear, there were no "2009 Infringement Contentions." Fujitsu's brief compares its proposed amendments to claim charts attached to a June 2009 motion that was denied as moot

---

[42] Fujitsu's Answer & Affirm. Defenses to Pl.'s Compl. & Fujitsu's Countercls. Against Pl. Tellabs, at 11-13 (Sept. 5, 2008) (Kelly Decl., Ex. 8).
[43] *See supra* §§ 1(C)(1)-(2).
[44] Fujitsu's Resp. at 3, 12.
[45] *See, e.g., id.* at 2-4.

upon transfer.[46] In fact, it is highly unlikely that the Court in Texas would have granted such a motion two years ago. In the Eastern District of Texas, infringement contentions are "deemed to be that party's final contentions," and amendment "may be made only by order of the Court, which shall be entered only upon a showing of good cause."[47] Fujitsu could not demonstrate good cause in 2009, and it certainly cannot do so now. However, the fact that Fujitsu argued it had a basis for those new allegations in its 2009 motion and in later letters and interrogatory responses – yet waited years to move for leave to formally add them to the case – demonstrates conclusively that Fujitsu was dilatory rather than diligent.

> **1.    Fujitsu Was Unable to Answer this Court's Questions as to "why it took so long to get to this point." Fujitsu's Delay and Lack of Diligence Remains Unexplained.**

The Court specifically asked Fujitsu's counsel why they waited two years to file this motion upon the transfer, but Fujitsu's delay remains unexplained.[48] In its brief, Fujitsu essentially states that it was too busy in 2010 to file its motion for leave to amend: "[F]rom early to late 2010 the parties were consumed with preparation of *Markman* briefs, a technical tutorial, and the *Markman* hearing itself."[49] "We were busy" is not a showing of "good cause." Fujitsu's implication is that it wants the Court, in terms of judicial time and resources, and Tellabs, in terms of prejudice in this litigation, to pay the price for Fujitsu's delay. Allowing such an amendment would render the "good cause" requirement meaningless.

---

[46] Order Den. All Pending Mots. Without Prej., 6:08-cv-00022 (July 21, 2009).

[47] U.S. Dist. Ct. E.D. Tex. P. R. 3-6(b). *See also Sybase, Inc. v. Vertica Sys, Inc.*, 2009 U.S. Dist. LEXIS 110775, at *4-5 (E.D. Tex. 2009) (filed the day after the original complaint in these actions).

[48] June 21, 2011 Hearing Tr. 12-14 ("THE COURT: Yes, but you're revising these, and you're revising the infringement contentions now. Why did it take you so long to get to this point? ... No. I want you to tell me why it took you so long to get to the point of making the adjustments that you've made. ... Right. So almost two years ago. ... So we're up to two years ago.") (Kelly Decl., Ex. 10).

[49] Fujitsu's Resp. at 13.

### 2. Everything in Fujitsu's Proposed Amended Infringement Contentions Has Been in Fujitsu's Possession for Over Two Years.

Fujitsu has had everything in its proposed amended infringement contentions for more than two years. Every single document added as an exhibit in support of Fujitsu's proposed amended infringement contentions for the '418, '163, and '737 Patents was produced by Tellabs no later than April 2009.[50] The overwhelming majority of added exhibits were produced by Tellabs in 2008 – nearly three years ago.[51] Additionally, Fujitsu's proposed amended infringement contentions do not rely on recent deposition testimony. In fact, the proposed amended infringement contentions do not rely upon deposition testimony at all. Fujitsu has no justification for its two year delay.

### 3. Fujitsu's 2009 Position That it Had New Infringement Allegations Shows Fujitsu's Lack of Diligence from Mid-2009 to 2011.

In arguing its right to amend its infringement contentions to assert claims 2-5 of the '418 Patent and its other new contentions, Fujitsu makes much of its letters and interrogatory response to Tellabs.[52] But the patent rules do not permit a party to amend its infringement contentions through letters from counsel and interrogatory responses. Tellabs immediately replied to state that Fujitsu cannot "hereby assert" new infringement allegations in a letter.[53] Far from acquiescing, Tellabs expressly stated that it was too late for Fujitsu to amend its infringement contentions (even then) and Tellabs "will oppose any formal attempts by Fujitsu to do so."[54] After receiving that letter, Fujitsu continued to do nothing for yet another year. Tellabs knew only that, for whatever its reasons, Fujitsu chose not to move for leave to amend its contentions.

---

[50] See Exhibit B (showing the production date of every exhibit added by Fujitsu's amended contentions).
[51] Tellabs produced more than 60% (93/146) of the exhibits added by Fujitsu's proposed amended infringement contentions (Exhibits A-14 to A-153 for the '418 Patent and Exhibits B-7 to B-12 for the '737 and '163 Patents) in 2008. Id. All others were produced in early 2009. Id.
[52] Fujitsu's Resp. at 5.
[53] Letter from Kristoffer Leftwich, Tellabs outside counsel, to Mark Stirrat, Fujitsu outside counsel (May 11, 2010) (Kelly Decl., Ex. 11).
[54] Id.

The only relevance of Fujitsu's prior statements is that Fujitsu stated its belief that it had a basis to assert new theories of infringement, yet delayed for years in actually moving for leave. Fujitsu had an obligation to move for leave at the earliest possible time, and their earlier statements demonstrate that they failed to do so.[55]

**B.     The Court Should Not Allow Amendments that Perpuate Deficiencies in Fujitsu's Infringement Contentions.**

Fujitsu's motion seeks to significantly expand its induced/contributory infringement allegations and its doctrine of equivalents allegations. Fujitsu's original complaint only stated conclusorily that Tellabs infringed "either literally and/or under the doctrine of equivalents" and was completely silent on indirect infringement.[56] The original contentions were also silent on the issue of indirect infringement,[57] even though Fujitsu asserted method claims from each patent-in-suit against Tellabs.[58]

Under the Eastern District's Patent Rule 3-1(b), Fujitsu was required to identify the infringing "acts," and it is black-letter law that method claims are directly infringed only by the person or entity that performs the patented method.[59] Now, Fujitsu seeks to add disclosures and analysis in support of those allegations. Yet, the amended contentions would merely perpetuate the existing deficiencies and would require yet another later amendment. An amendment that remains deficient until amended again demonstrates a lack of diligence in Fujitsu's continuing delay in preparing its infringement case and would severely prejudice Tellabs.

---

[55] *See Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*, 2011 U.S. Dist. LEXIS 67532, at *60-63 (M.D. N.C. 2011).

[56] Fujitsu's Compl. Against Tellabs, at 8, 6:08-cv-00022 (Jan. 29, 2008) (Kelly Decl., Ex. 12).

[57] *See* Kelly Decl., Exs. 1, 1A, 1B, and 1C.

[58] Fujitsu asserted method claims 1 and 6-9 from the '418 Patent, method claims 11 and 12 from the '737 Patent, and method claim 24 from the '163 Patent. *See* Kelly Decl., Ex. 1 § I.

[59] *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("[A] method or process claim is directly infringed only when the process is performed"; "A method claim is directly infringed only by one practicing the patented method.").

### 1. Fujitsu Admits it Has Not Gathered Evidence of Direct Infringement by Tellabs Customers.

Fujitsu concedes that it has not collected any proof of direct infringement, which they acknowledge is an "essential element of indirect infringement."[60] Fujitsu is clear that three-and-a-half years into the case, it intends to pursue this proof <u>some time in the future</u>:

> Here, the alleged direct infringers are Tellabs' customers.... The customers <u>will</u> provide information on what instructions and product support supplied by Tellabs, how the products were configured, and other operational details that will be integral to Fujitsu's indirect (contributory and induced) infringement analysis.[61]

Fujitsu's delay in seeking to amend its contentions with respect to indirect infringement demonstrates a clear lack of diligence. Despite Fujitsu's claim that "discovery of facts relevant to indirect infringement and doctrine of equivalents infringement is currently underway,"[62] Fujitsu has not deposed a single Tellabs customer to show proof of direct infringement of the asserted method claims.

### 2. Fujitsu Admits it Still Must Collect Evidence for its Doctrine of Equivalents Allegations.

Like indirect infringement, Fujitsu's original infringement contentions were silent on the issue of doctrine of equivalents except for one conclusory sentence that "the asserted claims are infringed under the doctrine of equivalents."[63] Fujitsu did not include that theory in the claim charts of its original contentions as strictly required by P.R. 3-1(d) of the Eastern District of Texas and LPR 2.2(d) of the Northern District of Illinois.[64] Here again, Fujitsu concedes it has neglected to even pursue evidence supporting its claims for three-and-a-half years: "Testimony from the vendors <u>will</u> supply the evidence necessary for Fujitsu to establish doctrine of

---

[60] Fujitsu's Resp. at 10.
[61] *Id.* at 10-11 (emphasis added).
[62] Fujitsu's Resp. at 11.
[63] *See* Kelly Decl., Ex. 1 §IV. *See also* Kelly Decl., Exs. 1A, 1B, and 1C.
[64] *See* Kelly Decl., Exs. 1A, 1B, and 1C.

equivalents infringement....″[65]   Again, such a delay in even seeking potential evidence is inexcusable and certainly not diligent.

Furthermore, controlling Federal Circuit precedent does not support Fujitsu's request for leave to amend infringement contentions for the purpose of adding doctrine of equivalents arguments where the claim charts were previously silent on the issue.[66]  Like the plaintiff in *Genentech*, Fujitsu should not be allowed to now add doctrine of equivalents theories when it disregarded the requirement to do so in its infringement contention claim charts.[67]

3.   **Since Attempting to Amend its Infringement Contentions on June 16, 2011, Fujitsu Has Disavowed in Court the Reverse Engineering of Tellabs Products That is the Most Significant Part of its Amended Contentions for the '163 and '737 Patents.**

Fujitsu's motion for leave to amend its infringement contentions should be denied as moot as it relates to two of the three patents involved – the '737 and '163 Patents.  Just weeks ago, Fujitsu represented to Judge Cole and Tellabs that it will disavow its 2006 and 2008 reverse engineering of Tellabs products in order to avoid Tellabs' discovery requests related to Fujitsu's testing of Tellabs equipment.  Fujitsu stated the following regarding its election to disavow its 2006 and 2008 reverse engineering of Tellabs products:

> Tellabs' counsel has suggested that Fujitsu's 2006 and 2008 inspections may have revealed evidence of non-infringement that Fujitsu is now trying to hide. Nonsense. Fujitsu has simply elected to abandon any reliance on old investigations into Tellabs products conducted by specially commissioned in-house employees of Fujitsu who had no access to the vast quantities of new information obtained through discovery and the Court's *Markman* ruling. Fujitsu's case for infringement will instead be presented through Fujitsu's retained technical experts who will conduct their own inspections of Tellabs' products and documentation and reach their own independent

---

[65] Fujitsu's Resp. at 11 (emphasis added)
[66] *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 773-74 (Fed. Cir. 2002) (precluding the plaintiff from amending its infringement contentions to add doctrine of equivalents theories and from advancing doctrine of equivalents theories when the plaintiff did not include that theory in its claim chart).
[67] *Id.*

conclusions on infringement, <u>eschewing the outdated information obtained from the 2006 and 2008 inspections.</u>[68]

Yet, incredibly, Fujitsu's reverse engineering represents a huge portion of what is contained in the proposed amended infringement contentions for the '737 and '163 Patents.[69] Fujitsu, therefore, is arguing to Judge Cole that this reverse engineering is "outdated information" that it is "eschewing," while asking this Court to grant leave to allow amended infringement contentions based in large part on the very reverse engineering Fujitsu just disavowed.

Further, Fujitsu's proposed amended infringement contentions state: "These charts represent the best evidence of infringement of which Fujitsu is currently aware."[70] Presumably, if Fujitsu had evidence of infringement with respect to the '163 or '737 Patents, Fujitsu would have cited that evidence in its proposed amended infringement contentions. Instead, the proposed amended infringement contentions for the '737 and '163 Patents effectively include huge, gaping holes with the word "eschewed" blocking the underlying text and images from consideration.[71] Such an amendment would be extremely prejudicial to Tellabs, as Fujitsu clearly cannot rely on such contentions at trial.

In fact, Fujitsu admits that, rather than relying upon its prior reverse engineering, "Fujitsu's case for infringement will instead be presented through Fujitsu's retained technical experts who <u>will conduct</u> their own inspections of Tellabs' products and documentation...."[72] Fujitsu will therefore need to once again seek leave to amend its infringement contentions,

---

[68] Fujitsu's Mot. for Protective Order Relieving it From Responding to Disc. Related to Inspection of Tellabs Equipment, at 6 (June 28, 2011) [Dkt. 330] [hereinafter "Fujitsu's Mot. for Protective Order"] (emphasis added).
[69] Exhibit C (showing Fujitsu's proposed amended contentions for the '737 and '163 Patents with the disavowed reverse engineering portions of those contentions blocked from consideration).
[70] *Id.* at p. 3 of each chart.
[71] *See* Exhibit C.
[72] Fujitsu's Mot. for Protective Order, at 6 (emphasis added).

forcing Tellabs to continue to defend itself against unarticulated accusations of infringement until an unknown time in the future.

**C.  For the '418 Patent, Fujitsu's Belated Attempt to Accuse Additional Tellabs Products Shows a Lack of Diligence, and Even Accuses Products that are Non-Existent, So Old as to be Beyond the Statute of Limitations on Damages, and That Could Not Possibly Infringe.**

Fujitsu has no excuse for attempting to add nine products to this case, as Fujitsu has known about each and every product it now seeks to accuse long before filing suit. Fujitsu has a long history of gathering competitive intelligence about each of Tellabs' products, and none of these products are new. For example, Fujitsu has been monitoring the development and sale of the Tellabs 6400, one of the products it now seeks to accuse, since at least 2002. A presentation



The only product Fujitsu seeks to add that Fujitsu has not followed for many years before filing this lawsuit is the Tellabs 7100 Nano. Nevertheless, Fujitsu has known of, and monitored the development of, this product since it was announced in June of 2007.[76]

Indeed, Fujitsu knew enough about the Tellabs 7100 Nano to accuse it of infringing U.S. Pat. Nos. 5,533,006 and 7,227,681 in its counterclaims in the Illinois action nearly three years ago, and just over one month after serving its original infringement contentions in Texas on July 28,

---

[73] Kelly Decl., Ex. 13, at FJ4397965.
[74] Kelly Decl., Ex. 14, at FJ0032872.
[75] Kelly Decl., Ex. 15, at FJ0032797-98.
[76] Kelly Decl., Ex. 16.
[77] Kelly Decl., Ex. 17, at FJ0029122.

2008.[78] Fujitsu could have chosen to analyze the Tellabs 7100 Nano for potential infringement of the '418 Patent at that time and been diligent in amending its contentions with respect to all of its asserted patents. It chose not to.

Further demonstrating Fujitsu's lack of diligence, some of the products Fujitsu now seeks to accuse have not been manufactured or sold in more than six years, such as the Tellabs 6100. Tellabs renamed the 6100 to 7100 at the beginning of 2002.[79] Thus, Fujitsu seeks to add product variations that were manufactured and sold during a period of time for which Fujitsu cannot recover damages.[80] Additionally, because Fujitsu did not identify the allegedly infringing steps in its proposed amended claim charts separately for each additional product, Fujitsu has apparently overlooked that some of the products they seek to add could not possibly infringe.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ and Fujitsu's proposed amended infringement contentions point to no such evidence because the 7110 is not charted at all.[81] Additionally, Fujitsu seeks to add the "7100 Edge 2.5G," which was never even manufactured, sold, or released by Tellabs. Tellabs has repeatedly informed Fujitsu that no such product was manufactured, sold, or released,[82] and

---

[78] *See* Kelly Decl., Ex. 8, at 11-13.
[79] *See* Kelly Decl., Ex. 18, at FJ0032604 (dated April 24, 2002).
[80] 35 U.S.C. § 286 (prohibiting the recovery of damages for infringement occurring more than six years prior to filing suit).
[81] Kelly Decl., Ex. 1A.
[82] Tellabs' Objections & Suppl. Resps. to Fujitsu's First Set of RFPs (Consolidated Nos. 1-214) (Dec. 15, 2009) ("Tellabs has never sold a Tellabs 7100 Edge 2.5G product."); Tellabs' Objections & Suppl. Resps. to Fujitsu's Third Set of RFPs (Consolidated Nos. 71-116) (Dec. 15, 2009) ("Tellabs has never sold a Tellabs 7100 Edge 2.5G product."); Tellabs' Objections & Resps. to Fujitsu's Second Set of RFAs (Nos. 22-218) (June 13, 2011) ("In particular, this definition includes at least the Tellabs 7100 Edge 2.5G System that was not released and/or sold."); Tellabs' Objections & Resps. to Fujitsu's Third Set of RFAs (Nos. 219-308) (June 16, 2011) ("In particular, this definition includes at least the Tellabs 7100 Edge 2.5G System that was not released and/or sold.") (Kelly Decl., Ex. 23).

Fujitsu has never shown that it was. There is nothing diligent about Fujitsu's attempt to add these products.

**D.      Fujitsu's Amended Contentions Cause Significant Prejudice to Tellabs.**

Fujitsu must show that Tellabs would not be prejudiced by its proposed amendment.[83] However, the extreme prejudice to Tellabs at this late stage of the litigation is clear. As just one particularly egregious example, Fujitsu's undue delay either robs Tellabs of the opportunity to have terms in claims 2-5 of the '418 Patent construed or will force a continuance to allow for another round of *Markman* briefing and hearings. Fujitsu's response is that "Tellabs should have raised the terms earlier,"[84] but Fujitsu's own brief acknowledges that their counsel sent a letter on May 4, 2009, calling claims 2-5 and 10-17 of the '418 Patent "unasserted."[85] Their status as unasserted never changed. It is plainly prejudicial for Fujitsu to suggest that Tellabs should have raised claim terms in <u>unasserted</u> claims for construction. It is simply ridiculous for Fujitsu to imply that Tellabs, as well as this Court, should have allocated significant time and resources during the *Markman* process on claims that Fujitsu never bothered to add to this case.

**1.      It is Disingenuous for Fujitsu to Assert that No Terms Would Need to be Construed in Claims 2-5 of the '418 Patent.**

Claims 2-5 of the '418 Patent are extremely detailed and add numerous paragraphs of limitations to the asserted claims. As shown in Exhibit 19, claims 2-5 occupy nearly a full column of text. Claim 2 alone adds three lengthy paragraphs of limitations, and claims 3-5 add seven additional paragraphs to asserted claim 1. It is disingenuous, at best, for Fujitsu to assert

---

[83] *See 02 Micro*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that [the plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [the defendant].").
[84] Fujitsu's Resp. at 7.
[85] *Id.* at 6.

that no claim terms in claims 2-5 of the '418 Patent would need construction. In fact, it is highly

likely that at least the following terms would need construction:

- "a plurality of internal synchronizing signal sources"
- "a normal operation"
- "a table for a parent station"
- "a table for child stations"
- "a neighboring station"
- "from, from among the neighboring stations"
- "having each station neglect,…, the neighboring station"
- "first flag bit data S to all neighboring stations to inform neighboring stations that the synchronizing signal from said parent station can be used"
- "second flag bit data *S to inform neighboring stations that the synchronizing signal from said parent station cannot be used"
- "first flag bit data"
- "second flag bit data."

None of these terms are found in the originally asserted claims 1 and 6-9.

> **2. Tellabs Would Need to Re-Assess its Non-Infringement and Invalidity Defenses and Investigate New Prior Art for Claims 2-5 of the '418 Patent.**

The prejudice to Tellabs is not just *Markman*-related. Allowing Fujitsu to amend its

infringement contentions will significantly disrupt the analysis of issues and defenses that

Tellabs has developed over the three years since Fujitsu served its original contentions.[86] With

respect to invalidity alone, Tellabs would need to study claims 2-5, analyze its invalidity

defenses for those claims, re-assess its prior art, and investigate new prior art.

Tellabs would necessarily have to incur additional expense in re-assessing its analyses.

For example, Tellabs' invalidity contentions for the '418 Patent correctly only addressed claims

1 and 6-9 because those were the only claims asserted in Fujitsu's final infringement contentions

served on July 28, 2008.[87] Tellabs would need to investigate and develop defenses for claims 2-

5 for the first time. As another example, Tellabs paid for the international travel of the '418

---

[86] *See Softvault Sys., Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 33060, at *5-6 (E.D. Tex. 2007).
[87] *See* Exhibit F to Tellabs' Invalidity Contentions (Sept. 29, 2008) (Kelly Decl., Ex. 20).

Patent's inventors for deposition in January 2010. Claims 2-5 were not asserted at that time and not addressed during those depositions.[88] Tellabs would need to redepose these inventors.

### 3. A Continuance Will Not Cure the Prejudice.

In this case, a continuance will not cure the prejudice because substantial development of the issues in this case has already occurred. Tellabs has developed strong invalidity contentions, noninfringement theories, and claim construction positions in view of Fujitsu's original contentions. The addition of new claims, new accused products, and new theories of infringement would inevitably force Tellabs to re-assess and re-evaluate all of the positions that it has developed over the last three years of this case. Such endeavors will require Tellabs to incur a considerable expense, and no amount of additional time will prevent that prejudice from occurring. Moreover, a continuance will not prevent the additional analysis from disrupting the current trial schedule and requiring another round of claim construction.

### CONCLUSION

For all of the foregoing reasons, Tellabs respectfully asks the Court to deny Fujitsu's Motion for Leave to Amend its Infringement Contentions.

---

[88] *See* Hiroshi Yoshida Dep. Tr. at 51-58 (Jan. 20, 2010) (asking about the limitations of claim 1 of the '418 Patent, skipping claims 2-5, and then asking about claim 6) (Kelly Decl., Ex. 21).

Dated: August 2, 2011

Respectfully submitted,

*/s/ James P. Bradley*

David T. Pritikin
Richard A. Cederoth
Richard O'Malley

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312.853.7000
Facsimile: 312.853.7036

James P. Bradley (*admitted pro hac vice*)
Texas Bar No. 02826000
Steven C. Malin (*admitted pro hac vice*)
Texas Bar No. 12859750
Mark A. Dodd (*admitted pro hac vice*)
Texas Bar No. 24040815
Kelley A. Conaty (*admitted pro hac vice*)
Texas Bar No. 24040716
Kristoffer B. Leftwich (*admitted pro hac vice*)
Texas Bar No. 24046285
Benjamin B. Kelly (*admitted pro hac vice*)
Texas Bar No. 24055765

SIDLEY AUSTIN LLP
717 North Harwood
Suite 3400
Dallas, Texas 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

ATTORNEYS FOR
TELLABS OPERATIONS, INC., TELLABS INC.,
AND TELLABS NORTH AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2011 I caused a copy of the foregoing document to be served on opposing counsel via e-mail.

_/s/ Benjamin B. Kelly_

## CERTIFICATE OF PERMISSION TO FILE UNDER SEAL

I hereby certify that this document is permitted to be filed under seal pursuant to Local Rule 26.2 and paragraphs 21 and 22 of the Stipulated Second Amended Protective Order (Dkt. No. 95) entered in this case on January 20, 2009.

_/s/ Benjamin B. Kelly_