**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| FUJITSU LIMITED, | |
| PLAINTIFF | CIVIL ACTION NO. 09 CV 04530 |
| | *Complaint filed January 29, 2008* |
| v. | JUDGE JAMES F. HOLDERMAN |
| | MAGISTRATE JUDGE JEFFREY COLE |
| TELLABS OPERATIONS, INC. AND TELLABS, INC., | |
| | JURY TRIAL DEMANDED |
| DEFENDANTS. | |
| TELLABS OPERATIONS, INC., | CIVIL ACTION NO. 08 CV 3379 |
| | *Complaint filed June 11, 2008* |
| PLAINTIFF, | |
| v. | JUDGE JAMES F. HOLDERMAN |
| FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., | MAGISTRATE JUDGE JEFFREY COLE |
| DEFENDANTS. | JURY TRIAL DEMANDED |
| FUJITSU LIMITED, | |
| COUNTER CLAIMANT, | |
| v. | |
| TELLABS OPERATIONS, INC., TELLABS, INC., AND TELLABS NORTH AMERICA, INC., | |
| COUNTER DEFENDANTS. | |
| FUJITSU NETWORK COMMUNICATIONS, INC. | |
| COUNTER CLAIMANT, | |
| v. | |
| TELLABS OPERATIONS, INC., | |
| COUNTER DEFENDANT. | |

**FUJITSU LIMITED'S AND FUJITSU NETWORK COMMUNICATIONS, INC.'S
MOTION TO SET A SCHEDULE TO SERVE FINAL CONTENTIONS AND IN THE
ALTERNATIVE TO FILE AMENDED FINAL INFRINGEMENT CONTENTIONS**

## Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND AND THE DISCOVERY PROCEEDINGS TO DATE ......................... 6

   A. The Texas Patents ..................................................................................... 6

   B. The Illinois Patents .................................................................................... 7

   C. The Texas and Illinois Patents Were Consolidated for Discovery Prior to LPR Implementation and the Consolidated Cases Proceeded As Though The LPR Did Not Apply To Discovery of the Parties' Contentions .................................................... 8

   D. Discovery Activities Relevant to '418 Patent Infringement Contentions ......................... 10

      1. Tellabs' Recent Document Production Has Revealed New Evidence of Infringement of the '418 Patent .................................................. 10

      2. Recent Deposition Testimony by Tellabs' 30(b)(6) Witness Has Revealed New Evidence of Infringement of the '418 Patent .................................. 11

      3. Tellabs' Interrogatory No. 1 Sought Fujitsu's Contentions of Direct and Indirect Infringement of '418 Patent Claims 1 - 9 Independent of LPR 2 and 3 .................... 14

   F. Discovery Activities Relevant to '737, '163 and '681 Infringement Contentions ........... 16

      1. Discovery of Third Party Vendors Revealed New Information About Infringement 16

      2. Tellabs has long been on Notice of Fujitsu's Infringement Accusations Against its Newer Modules ........................................................................ 18

         a. The Updated Modules do not Alter Fujitsu's Infringement Theories and Simply Analyze Newer Versions of Tellabs' Older Modules based on Tellabs' and Third-Party Discovery .................................................. 18

         b. Many Tellabs Modules were First Commercialized after Fujitsu's Infringement Contentions and were Promptly Identified to Tellabs in Discovery Responses ..... 20

         c. Tellabs' Interrogatory No. 18 Sought Fujitsu's Contentions of Direct and Indirect Infringement of '681 Patent Claims Under the Doctrine of Equivalents Independent of LPR 2 and 3 ............................................ 22

III. ARGUMENT ................................................................................................. 22

   A. The Court Should In The Interest Of Justice Set New Deadlines For Final Contentions. ................................................................................. 22

## **TABLE OF AUTHORITIES**

### **Cases**

*Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F. 3d 1355, 1365 (Fed. Cir. 2006) ..................... 25

### **Rules**

Fed.R.Civ.Proc. 1 ........................................................................................................................ 1
Fed.R.Civ.Proc. 16(b) ................................................................................................................. 1
Fed.R.Civ.Proc. 34 ............................................................................................................. 2, 5, 26

Fujitsu Limited and Fujitsu Network Communications, Inc. (collectively "Fujitsu"), by and through its counsel, David C. Van Dyke, respectfully moves this Court, pursuant to Fed.R.Civ.Proc. 1 and Fed.R.Civ.Proc. 16(b), N.D. Ill. Local Patent Rules ("LPR") 1.1, 3.1, and 3.4, and the Court's inherent power to control its docket in light of the unique circumstances presented by these consolidated cases, for an Order setting new deadlines for serving final contentions. In the alternative, Fujitsu moves for leave to supplement and amend Fujitsu's Final Infringement Contentions in light of evidence recently discovered and first appreciated and to conform to Fujitsu's updated interrogatory responses.

## I.    INTRODUCTION

Filed in January and June 2008, these consolidated patent cases had been pending for more than fifteen months when this District adopted the LPR on October 1, 2009. As of that effective date, some of the deadlines set in the LPR if rigidly and retroactively applied would have already passed. Other dates set by the LPR would have been unrealistic or inconsistent with common practice, given the timing of events in these cases. Therefore, as explained below, this case presents unique circumstances that may subject Fujitsu to unintended, but inequitably unfair consequences, if the deadlines provided in the LPR were to apply rigidly and retroactively to Fujitsu.

Prior to the Court's September 29, 2011 Order[1] granting Tellabs' Oral Motion to Disallow Fujitsu's June 2011 Infringement Contentions[2], the Court had not determined that the LPR, specifically the Initial and/or Final Contentions under LPR 2 and 3, would apply to these cases. *See* LPR 1.1 ("The Court **may apply all or part** of the LPR to any [utility patent] case already pending on the effective date of the LPR.") (Emphasis supplied.). Nor had the Court

---

[1] Case 09-cv-04530 Docket ("09 Dkt.") 377.
[2] 09 Dkt. 327; Hearing Tr. 4:21-23; 17:8-14, June 21, 2011.

considered whether Final Contentions, if applicable, should be due based on strict adherence to the LPR schedule or on dates set by the Court as appropriate for these cases. *Id.* ("The Court **may modify the obligations and deadlines** of LPR based on the circumstances of any particular case.") (Emphasis supplied.) Thus, discovery proceeded without any confirmation that the LPR would be applied, and its deadlines rigidly applied, and without any such expectation that it would. For example, as discussed below, fact discovery was not suspended between submission of the terms for claim construction and issuance of the Markman ruling. Although the parties provided initial infringement contentions under the original Texas and Illinois case management orders, Tellabs subsequently sought Fujitsu's infringement contentions by interrogatories under Fed.R.Civ.Proc. 34, which Fujitsu answered and diligently supplemented as discovery progressed (*See Declaration of Gino Cheng in support of Fujitsu's Motion to Set a Schedule to Serve Final Contentions and in the Alternative to File Amended Final Infringement Contentions* (hereinafter, "Cheng Decl.") attached hereto at Exhs. 11-17 and 21):

      (a)     on June 4, 2009, Fujitsu responded to Tellabs' Interrogatory No. 18 with a citation to Fujitsu's November 2008 Infringement Contentions regarding the '681 patent;

      (b)     on April 29, 2010, Fujitsu responded to Tellabs' Interrogatory Nos. 1, 6 and 7 with a citation to Fujitsu's July 2008 Infringement Contentions regarding the '418, '737, and '163 patents. This response included an updated listing of modules accused of infringing the '737 and '163 patents;

      (c)     on July 30, 2010, Fujitsu provided a supplemental response to Tellabs' Interrogatory Nos. 1, 6 and 7 which referenced and attached an amended form of its 2009 Infringement Contentions regarding the '418 patent and provided additional infringement contentions regarding the '418, '737, and '163 patents;

      (d)     on October 28, 2010, Fujitsu served its Second Supplemental Response to Tellabs' Interrogatory Nos. 6 and 7;

      (e)     on February 22, 2011, Fujitsu further supplemented its response to Interrogatory No. 1 with additional infringement contentions regarding the '418 patent;

      (f)     on May 5, 2011, Fujitsu further supplemented its response to Tellabs' Interrogatories Nos. 6 and 7 with customer information in relation to Tellabs' contributory and inducement of infringement; and

      (g)    on October 19, 2011, Fujitsu provided the infringement contentions at issue here as supplemental responses to Tellabs' interrogatory Nos. 1, 6, 7, and 18 regarding the '418, '681, '737 and '163 patents.

Moreover, the Court early on advised the parties that it would set "firm dates" for discovery deadlines "after ruling on the Markman information" (08 Dkts. 124 and 136, Hearing Tr. at 10-11, 18, March 31, 2009). The *Markman* ruling just issued (09 Dkt. 379, September 29, 2011), and Court has not yet set any deadline for serving Final Contentions.

Tellabs' Oral Motion challenged only Fujitsu's supplementation of its July 2008 Preliminary Infringement Contentions on the Texas patents (the "July 2008 Contentions"). Applying LPR 3, the Court found that the Final Contention deadline had passed years ago, even before the LPR became effective, and *ex post facto* Fujitsu's July 2008 Contentions had become Final. (09 Dkt. 377 at 4.)[3] The broader impact and the inequities of rigidly applying the LPR to the consolidated cases was not presented to the Court.

These cases, however, present unusual circumstances. The LPR, which presents a flexible, coherent, soup to nuts patent case management plan, became effective in the midst of this litigation. A strict adherence to the LPR would mean, however, that many of its deadlines passed retroactively, with the parties never able to comply. For example, Fujitsu has not had an opportunity to plan prospectively for taking the discovery needed to be in a position to serve Final Contentions as contemplated by the LPR. Further, no Non-Infringement, Validity, Unenforceability, or Enforceability Contentions have been served, despite being issues in the

---

[3] The July 2011 Infringement Contentions (09 Dkt. 344 at Exh. A) that were the subject of Tellabs' Oral Motion are largely the same as Fujitsu's July 2009 Infringement Contentions, adding a discussion of infringement under the doctrine of equivalents for the '737 and '163 patents , and identifying some different customers with respect to the indirect infringement claims. They were served on Tellabs (Texas Dkt. 89 – 90 and 91), but were not the subject of any motion for leave to enter in this case.

cases. Thus, based on the substantial discovery adduced to date, an extrapolation of the limited manner in which the Court has so far applied the LPR has the potential to lead to an unbalanced and inequitable unfairness on Fujitsu.

For these and other reasons discussed in detail below, and now that a *Markman* ruling has issued (09 Dkt. 379), Fujitsu respectfully requests that the Court apply LPR 3 flexibly and set new deadlines for serving Final Contentions on all issues consistent with the unique circumstances of this litigation.

In the alternative, because the Court's Order (09 Dkt. 377 at 4) "recognizes that both its *Markman* Order and the on-going discovery in this case may warrant amendment to either Fujitsu's Final Infringement Contentions or its Original Complaint," Fujitsu requests leave to serve supplemental and amended Final Infringement Contentions[4] because it (i) has recently discovered evidence of Tellabs' infringement of all the Fujitsu patents-in-suit, (ii) has first appreciated new grounds for infringement of the '418 patent, and (iii) has determined subsequent to serving Fujitsu's 2008 Infringement Contentions that Tellabs introduced new versions of the optical amplifier modules previously identified in Fujitsu's 2008 Infringement Contentions as infringing the '681, '737, and '163 patents , which new versions are – as recently confirmed through third party discovery – virtually identical to the prior versions from the standpoint of Fujitsu's infringement theories, and therefore infringe for the same reasons as the prior versions.

Preliminarily, Tellabs has been timely provided with full notice and discovery of Fujitsu's infringement contentions by Fujitsu's initial and updated responses to Tellabs' interrogatories under Fed.R.Civ.Proc. 34, as noted above and discussed in more detail below.

---

[4] For purposes of this motion, Fujitsu includes its November 2008 Infringement Contentions on the Illinois patents, which were not before the Court in connection with the Tellabs' Oral Motion (09 Dkt. 377), within the definition of "Final Infringement Contentions" that it seeks leave to supplement and amend.

4

Given Tellabs' knowledge of Fujitsu's infringement contentions, there is no delay or unfair prejudice. In addition, Fujitsu should be allowed to conform its Final Infringement Contentions to its updated interrogatory responses.

Second, as to the '418 patent, Tellabs did not complete its production of the critically important source code for its accused 5500 and 7100 products until September 2011. It took three years of Fujitsu's repeated demands and meet-and-confers until Tellabs produced enough source code, i.e., put all the pieces of the puzzle on the table, so that Fujitsu and its experts could understand the operation of the accused 5500 and 7100 products and confirm their infringement. Any delay in formulating '418 infringement contentions was caused by Tellabs' failure to make an early, full disclosure of its important software as required by the Texas Court's Patent Rule 3-4, and to respond to Fujitsu's reasonable requests for full disclosure. Tellabs has no excuse for its delay, and thus permitting Fujitsu to amend its '418 contentions would not subject Tellabs to unfair prejudice.

Third, regarding the '681, '737, and '163 patents, many versions of the optical amplifier modules accused of infringement were introduced by Tellabs well after Fujitsu's 2008 Infringement Contentions were prepared and served, and consequently could not possibly have been identified by name in Fujitsu's 2008 Contentions. Because these new versions infringe under the same infringement theory as the versions originally identified in Fujitsu's 2008 Contentions, there is no issue of prejudice.

For these and other reasons, there has been no delay and no unfair prejudice to Tellabs, and leave to supplement and amend Fujitsu's Final Infringement Contentions is warranted.

If the Court were to deny Fujitsu's present motion and leave Fujitsu's July 2008 Infringement Contentions as the "final" contentions, Fujitsu would suffer the inequity of having

5

regularly provided updated infringement contentions to Tellabs after July 2008, but be punished as if Fujitsu hid the ball and provided no notice or discovery to Tellabs – which it clearly did not. By contrast, if Fujitsu is allowed to serve Final Contentions or alternatively supplement and amend its infringement contentions to conform them to information already provided to Tellabs and to account for recent discovery, there is no unfair prejudice to Tellabs. Further, there is no date set yet for the close of fact discovery and the parties will be jointly seeking to postpone the trial date,[5] which if accepted by the Court would allay any potential unfair prejudice to Tellabs.

## II.     BACKGROUND AND THE DISCOVERY PROCEEDINGS TO DATE

### A.     The Texas Patents

Case 09 CV 04530 was originally filed in the Eastern District of Texas ("Texas") on January 29, 2008, as case no. 6:08-cv-00022-LED. Fujitsu's complaint alleged that defendants Tellabs Operations, Inc., Tellabs, Inc., and Tellabs North America, Inc. (collectively "Tellabs") infringed U.S. Patent Nos. 5,521,737, 5,526,163, and 5,386,418 (respectively the "'737, '163, and '418 patents") "either literally and/or under the doctrine of equivalents" (09 Dkt. 1 at 8). Pursuant to Texas's Docket Control Order (09 Dkt. 35 at 5), on July 28, 2008, Fujitsu served its preliminary infringement contentions for the Texas patents. (*See* Cheng Decl. at Exh. 1.)

On June 12, 2009, Fujitsu moved pursuant to Texas Patent Rule 3-6(b) for leave to amend its preliminary infringement contentions to add infringement contentions for '418 patent claims 2-5[6] and for indirect infringement, and to expand on its prior contentions of literal infringement and infringement by application of the doctrine of equivalents, and to account for

---

[5] In response to the Court's recent Orders, in connection with the October 20, 2011 status conference with the Court, the parties have discussed proposing various deadlines in the consolidated cases, including a postponement of the trial date.

[6] Notwithstanding that Tellabs had been timely informed by an interrogatory response served on July 30, 2010, that Fujitsu was asserting claims 2-5 of the '418 patent, at this time, to simplify matters, Fujitsu will no longer seek to assert those claims.

discovery then recently obtained ("2009 Contentions"). (09 Dkts. 89-91, 344, 344-1.) On July 7, 2009, while Fujitsu's motion to amend was pending, on motion by Tellabs, the Texas action was transferred to this Court (09 Dkt. 101). Subsequently the Texas court entered orders that all "[c]urrent deadlines in this action are hereby suspended" (09 Dkt. 116, July 20, 2009) and "[denying] all pending motions without prejudice" (09 Dkt. 118, July 21, 2009).

### B. The Illinois Patents

On June 11, 2008, case 08 CV 3379 was filed in this Court by Tellabs Operations, Inc. against Fujitsu asserting infringement of U.S. Patent No. 7,369,772 (the "'772 patent") (Case 08-cv-03379 Docket ("08 Dkt.") 1 at 3). On September 5, 2008, Fujitsu counterclaimed against Tellabs Operations, Inc. and Tellabs, Inc., asserting *inter alia* that they infringed Fujitsu Limited's U.S. Patent No. 7,227,681 (the "'681 patent") directly or indirectly, literally and/or under the doctrine of equivalents (08 Dkt. 61 at Counterclaim ¶ 24). On October 21, 2008, the Court ordered the parties to provide their respective "infringement contentions no later than 11/4/2008" for the Illinois patents (08 Dkt. 81). Pursuant to that Order, on November 4, 2008, Fujitsu served its initial infringement contentions for the '681 Patent (*See* Cheng Decl. at Exh. 2) ("November 2008 Contentions").

On January 20, 2009, the Court required the parties to submit "a joint schedule regarding discovery" (08 Dkt. 93). However, the parties could not reach agreement on a joint discovery schedule, and did not propose anything with respect to Contentions (08 Dkt. 111 at 2). In its March 20, 2009 Order, the Court indicated that it would "resolve any further scheduling disagreements at the status report to be set after the court issues its preliminary *Markman* determinations, which will be based on the submissions previously provided to the court by the parties." (08 Dkt. 112).

Fujitsu amended its pleadings April 1, 2009, adding a counterclaim that Tellabs's '772 patent is unenforceable, which was supported by extensive averments.  (08 Dkts. 119, 120). Fujitsu was not required to serve and has not served any "unenforceability contentions."

> **C.** **The Texas and Illinois Patents Were Consolidated for Discovery Prior to LPR Implementation and the Consolidated Cases Proceeded As Though The LPR Did Not Apply To Discovery of the Parties' Contentions**

On Tellabs' motion, the Texas case was transferred to this Court (09 Dkt. 145).  On September 15, 2009, the Court consolidated the Texas case (now Illinois case 09 CV 04530) with Illinois case 08 cv 3379 for purposes of discovery only.  (08 Dkt. 202).

Two weeks later, on October 1, 2009, the Court implemented the LPR to enhance the predictability and planning of patent litigation.  *See* LPR at Preamble; N.D. Ill. General Order 09-0022; and generally Judge Matthew F. Kennelly and Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. Marshall Rev. Intell. Prop. L. 202 at 225 (2009) ("Kennelly").  That plan keys the pre-trial schedule off the filing of a complaint, and allows the litigants and the Court to anticipate what work needs to be done to meet the deadlines for fact discovery, initial and final contentions of Infringement and Non-Infringement, Invalidity and Validity, and Unenforceability and Enforceability (individually and collectively "Contentions"), claim construction, expert discovery, and dispositive motions, to be trial ready.  Automatically applied to subsequently filed cases, the LPR only would apply to preexisting cases, such as this one, in the Court's discretion.  LPR 1.1 ("The **Court may apply all or part** of the LPR to any [utility patent] case already pending on the effective date of the LPR.") (Emphasis supplied.)

As of October 1, 2009, the consolidated cases had been pending for more than fifteen months with discovery ongoing.  The parties had provided initial and some amended infringement and invalidity contentions pursuant to court orders that predated, and were not part of, the comprehensive LPR plan.  Significantly here, the twenty-one week deadline for providing

8

Final Contentions is set by LPR 3.1 to be about three quarters of the way through the normal fact discovery period. *See* Kennelly at 225. However, as retroactively applied to these cases, that deadline would have passed *before* the date the LPR was implemented. In addition, whereas Initial Contentions would not be evidence, Final Contentions would be. *See* Kennelly at 216. Consequently, Fujitsu never had an opportunity to plan ahead for and take the discovery necessary to be able to serve its Final Contentions, as contemplated by the LPR, *without* need for leave to amend (LPR 3.4). Nor did Fujitsu have the opportunity to plan for the eleven week period after Final Contentions were served to complete discovery. As further evidence that the parties acted as if the LPR deadlines did not apply to the unusual circumstances of these cases, the parties did not follow LPR 1.3's requirement for a hiatus in fact discovery from 28 days after the parties' submitted their claim terms for construction (09 Dkt. 156, May 18, 2010) and the *Markman* ruling, (09 Dkt. 379, September 29, 2011). Instead, the parties actively conducted fact discovery during this time period. Moreover, the parties have not provided any initial or final Non-Infringement, Validity, Unenforceability, and Enforceability Contentions, which deadlines also would have passed long ago. *See* LPR 2.2, 2.3, 2.5, 3.1, and 3.2.

A review of the hearing transcripts, Orders, and Minute Order entries for the consolidated cases reveals that, from October 1, 2009 until Tellabs' Oral Motion in May 2011, neither party requested or moved the Court to apply or set any deadlines according to the LPR, and the Court did not *sua sponte* do so. During that period, neither case 08-CV-3379 nor case 09-CV4530 has had a deadline set for the close of fact discovery or for providing Final Contentions. Thus, the Court's first consideration of the applicability of LPR 2 and 3 was only in connection with Tellabs' Oral Motion to Disallow Fujitsu's June 2011 Infringement Contentions (09 Dkt. 377 at 1).

9

Discovery, ongoing for over 150 weeks, continues with much to be done, the parties proposed scheduling order anticipates that fact discovery will continue for another 10 -12 weeks.

**D.     Discovery Activities Relevant to '418 Patent Infringement Contentions**

1.     <u>Tellabs' Recent Document Production Has Revealed New Evidence of Infringement of the '418 Patent</u>

After months wading through the more than 27 million pages that Tellabs had produced, Fujitsu and its technical experts realized that Tellabs' system-level documents and hardware specifications do not readily distinguish planned product features in development from those commercially implemented in the accused 5500 and 7100 products.   Thus, in August 2009, Fujitsu served requests for production of Tellabs' source code, including specifically software support for the synchronization status message ("SSM")-related operation.   This was needed to confirm whether Tellabs had merely planned for or instead actually implemented the features of the '418 patent claims in the Accused Products.  *See Fujitsu Limited's First Set of Requests for Production of Documents to Defendant Tellabs, Inc. and Tellabs Operations, Inc.*, dated August 28, 2009 (Cheng. Decl. at Exh. 20) (i.e., Nos. 19, 24, 29, 34, 39, 44, 154, 159, 164, 169, 174, 179, 184, 189, 194, 199, 204 and 209).

Tellabs, however, through piecemeal production, deprived Fujitsu and its software expert of a timely and efficient analysis of several key pieces of the complex source code files and directories critical to understanding the operation of the commercial 5500 and 7100 products.   It was not until Tellabs' supplemental source code productions on September 2 and 16, 2011, for the 5500 and 7100 products respectively, that the last pieces needed to understand that those products infringed '418 patent claims 1 and 6-9 were given to Fujitsu.  *See* Cheng Decl. at ¶¶ 21-35 (summarizing the multiple problems with Tellabs' productions, including non searchable

copies of the source code, incomplete productions, and the correspondence back and forth from 2009 until 2011 that ultimately yielded the full production).

Fujitsu's amended '418 infringement theory, which is set forth in Fujitsu's October 19, 2011 supplemental interrogatory responses and its proposed Infringement Contentions (*See* Cheng Decl. at Exhs. 5and 17), is different than the infringement theory based on the GR-253-CORE standard set forth in the July 2008 Contentions, and the direct and indirect infringement theories set forth in Fujitsu's First Supplemental Response to Interrogatory No. 1 (adopting the 2009 Contentions with certain amendments), as discussed below. (*See* Cheng Decl. at Exhs. 1 and 12.)

Fujitsu's proposed Infringement Contentions for the '418 Patent now present a software-based theory that ties together multiple modules within the Accused Tellabs Products, and details how the SSM support is actually implemented. Analysis of the missing source code, finally supplied in September 2011, has revealed which modules in the product (and configurations thereof) are involved with switching between synchronizing signal sources and the setting of SSMs. Without the newly produced code, Fujitsu did not and could not have understood the full extent of the system-wide interoperation between different modules to effect critical features, such as the reference to a table in software.

As set forth above and in the Cheng Declaration, Fujitsu has been diligent in seeking to amend its proposed Infringement Contentions for the '418 patent based on the source code evidence first adduced and appreciated since June 2011.

> 2. Recent Deposition Testimony by Tellabs' 30(b)(6) Witness Has Revealed New Evidence of Infringement of the '418 Patent

As explained above, Tellabs' hardware documentation was not dispositive on whether the accused 5500 and 7100 products actually supported SSMs in practice. One of Tellabs' senior

principal engineers confirmed this very point at his deposition, recognizing that planned features may be pulled back and never implemented. (Zettinger Dep. (4/27/10) at p. 51:9-17.) Unable to rely on Tellabs' specifications, Fujitsu has tried seeking discovery regarding the products' actual operation through testimony in parallel with its many requests for the software code.

Nevertheless, as in the case with the delayed production of source code, until recently Fujitsu's attempts to collect meaningful evidence through depositions of Tellabs' employees have been frustrated. For example, in 2010 Fujitsu deposed Tellabs by its 30(b)(6) designee Jack Pearson, on the use of SSMs and the switching of clock sources during the testing and installation of the 5500 and 7100 products. (*See* Cheng Decl. at ¶ 37 re Fujitsu's October 20, 2009 30(b)(6) Notice re '418 Patent at Topics 27 and 28.) Mr. Pearson lacked basic familiarity with SSMs and, contrary to what the source code now confirms, testified as Tellabs' designee that he was not aware of the ways in which the 5500 uses SSM messaging or sends SSMs. *See, e.g.*, Pearson Dep. (4/14/10) at pp. 60:24-61:2 & 63:19-64:4. Further, contrary to what the supplemental source code production and subsequent depositions have revealed, Mr. Pearson stated that the 5500 does not interpret any SSMs received from external clock sources. *See id*. at p. 63:7-10; *but see, e.g.*, Nagle Dep. (8/25/11) at pp. 165:9-16; 178:4-9; *and* 202-22-24. Likewise, regarding the 7100 product, Mr. Pearson did not know whether the SONET Service/Switching Module could synchronize off an external clock source (Pearson Dep. (4/14/10) at p. 75:23-25), or whether the 7100 could switch its timing reference based on received SSMs. *Id*. at 130:23-25 & 131:8-19.

Fujitsu thereafter deposed one of Tellabs' senior principal engineers who also was unable to confirm whether the 7100 product equipped with a SONET Service/Switching Module could switch between timing sources based on SSM messages (*see* Zettinger Dep. (4/27/10) at p.

153:5-14), or whether the 7100's SMTM-U module could transmit SSMs (*see Id.* at pp. 121:21-122:2), deferring in both cases to the software that Fujitsu did not yet fully possess. *See also, e.g.*, *Id.* at pp. 45:9-10 & 53:16-24 (describing how indeterminate hardware functionality is without the corresponding software). Further, Mr. Zettinger could not confirm whether the SMTM-U module could even receive SSM messages, much less choose a clock source based on that SSM. *See Id.* at pp. 55:16-19; 56:13-15 *and* 119:18:23. Similarly, he could not confirm whether the commercialized SONET Service/Switching Module could receive or transmit SSM messages. *See Id.* at p. 59:6-11.

For the 5500 product, Mr. Zettinger was also unable to confirm the implementation of these features for configurations involving the SIM module (*see Id.* at pp. 21:21-22:14), PM11D port module (*see Id.* at pp. 27:22-28:20), PM11E port module (*see Id.* at pp. 34:22-35:13), OPM3 port module (*see Id.* at pp. 26:7-37:18), and OPM12 port module (*see Id.* at pp. 38:11-17). His conclusion was that someone attempting to discover more about how the synchronization aspects of the SIM would be "out of luck" (*see Id.* at 30:25-31:8).

Now, armed with more recent testimony and the newly produced portions of source code (which contradict Tellabs' previous testimony), Fujitsu is able to confirm that Tellabs in fact implemented these features on the 5500 and 7100 products equipped with these modules. Indeed, when pressed by Fujitsu for a knowledgeable witness, Tellabs presented another 30(b)(6) witness who confirmed that the 7100 product, configured with either the SONET Service/Switching Module, an SMTM-U module (or one of its variants), or the TGIM-P module could use SSMs as a basis for selection between clock sources. (*See* Massey Dep. (9/30/11) at pp. 57:5-18; 62:8-17; 63:2-64:17, 64:24-65:18, and 67:2-18.) Further, Mr. Massey confirmed that the 7100 product configured with any of those modules could set SSMs in the outbound

signal. *See id.* at pp. 70:16-74:12. Likewise, Mr. Nagle, another Tellabs 30(b)(6) witness, recently confirmed that SSM support functionalities were in fact implemented on the 5500 product (*see, e.g.*, Nagle Dep. (8/25/11) at pp. 165:9-16; 178:4-9; *and* 202:22-24) and that those equipped with the PM11, OPM3, and OPM12 modules would be able to send and receive SSMs. Nagle Dep. (8/25/11) at pp. 178:21-180:13. This newly acquired evidence is included in Fujitsu's proposed Infringement Contentions.

> 3. <u>Tellabs' Interrogatory No. 1 Sought Fujitsu's Contentions of Direct and Indirect Infringement of '418 Patent Claims 1 - 9 Independent of LPR 2 and 3</u>

As explained below, Fujitsu repeatedly updated its July 2008 Infringement Contentions to Tellabs in the form of supplemental responses to Tellabs' Interrogatory No. 1. Specifically, on March 26, 2010, Tellabs' served its Interrogatory No. 1 seeking, among other things, "all facts, documents and/or witnesses that Fujitsu relies upon in support of its contention that Tellabs directly infringes the [claims 1 and 6-9 of the '418 patent]" or "induced infringement" of those claims. Cheng Decl. at ¶ 11. Fujitsu timely responded on April 29, 2010, subject to objections, stating:

> The information that Tellabs is requesting in this Interrogatory was previously set forth in the contentions (Fujitsu's First Amended Rule 1 Disclosure, filed July 29, 2008, in *Fujitsu Limited v. Tellabs et al.,* Case No. 6:08-CV-22 LED (E.D. Tex.) and the complaint already served in the aforementioned actions, and also includes comments made during the licensing negotiations between Fujitsu and Tellabs, prior to the filing of the complaint in the aforementioned action, regarding the '418 Patent. Fujitsu reserves the right to supplement its response to the extent that any documents, data, or information are newly identified or obtained by Fujitsu during the course of subsequent investigation. Cheng Decl. at Exh. 11.

On July 30, 2010, Fujitsu diligently served a supplemental response that relied on and attached an amended version of its 2009 Contentions (Cheng Decl. at Exh. 12),[7] and stated:

---

[7] The amendment to the 2009 Contentions deleted the claim charts for claims 10-17 of the '418 patent because Fujitsu decided not to pursue infringement of those claims.

This interrogatory requests that Fujitsu supplement its infringement contentions with respect to the '418 patent. ***As such, Fujitsu is attaching hereto as Exhibit 1 an amended version of Exhibit A-I that was previously set forth in Fujitsu's Second Amended Rule 3-1 Disclosure, served on Tellabs June 1 2009 (hereinafter "Amended Exhibit A-I ").*** Because fact collection through discovery is on-going, and because the Court has not yet set a date for Final Infringement Contentions pursuant to LPR 3.1 in this consolidated action, Fujitsu reserves the right to supplement Amended Exhibit A-I as additional facts demonstrating Tellabs' infringement come to light.

*Id*. (Emphasis supplied). This updated response is significant because it brought Tellabs up to date on Fujitsu's then current infringement contentions, obviating any potential claim of delay or prejudice in the period between April 2010 and July 2010.

Fujitsu diligently supplemented again on February 22, 2011, providing updated contentions regarding Tellabs' inducement of infringement of the '418 patent, and reiterating Fujitsu's continued reliance on the amended version of the 2009 Contentions. Cheng Decl. at Exh. 14. Again, Fujitsu brought Tellabs up to date on the substance of Fujitsu's infringement contentions, obviating any potential claim of delay or prejudice from July 2010 to February 2011.

On October 19, 2011, in view of the considerable discovery obtained since June 2011 and the new evidence of direct and indirect infringement of the '418 patent by Tellabs' 5500 and 7100 Accused Products, Fujitsu again amended its response to interrogatory No. 1, setting forth its current contentions of direct and indirect infringement of claims 1, 6-9 of the '418 patent. (*See* Cheng Decl. at Exh. 17.) This update obviates any potential claim of delay or prejudice from February 2011 to October 2011.[8]

---

[8] The June 2011 Contentions that were the subject of Tellabs' Oral Motion and rejected by the Court did not contain any significant changes from the amended 2009 Contentions that were included in Fujitsu's interrogatory responses. Apart from the doctrine of equivalents analyses and a handful of additional sentences regarding contributory and inducement of infringement, the sections for the '163 and '737 patents contained no substantive changes. The '681 patent was never a part of the June 12, 2009 motion to amend and so its contentions were not included in the June 2011 Contentions.

Thus, if the Court were to deny Fujitsu's present motion and leave Fujitsu's July 2008 Infringement Contentions as Fujitsu's "final" contentions, Fujitsu would suffer the inequity of having regularly provided updated infringement contentions to Tellabs after July 2008, only to be punished as if Fujitsu had provided no notice or discovery of those contentions to Tellabs.

**F.**    **Discovery Activities Relevant to '737, '163 and '681 Infringement Contentions**

1.    <u>Discovery of Third Party Vendors Revealed New Information About Infringement</u>

Tellabs' 27 million-plus -page document production includes thousands of specification and design documents related to its various modules, many of which were never commercialized. For example, Tellabs produced multiple documents identifying so-called HGIAM, EMOAM, CCM-ER, OLA-ER, CCM88-IR, CCM88-LR, CCM88-ER modules, which discovery has now revealed Tellabs never commercialized.  *See, e.g.,* Tellabs' June 13, 2011 Responses to Interrogatory Nos. 6 and 7 at Exhibit B (Cheng Decl. at Exh. 18).  Fujitsu could not readily determine from reviewing Tellabs' specification and design documents alone whether any of the identified modules were real.

Fujitsu's effort to prioritize its needed discovery of commercialized products and depositions of the third party manufacturers who made modules to Tellabs' specifications was frustrated by the extended dispute between the parties over Tellabs' production of invoices and sales information related to the accused products.  *See, e.g.*, 09 Dkt. 351 Fujitsu's Motion to Compel Tellabs' Production of Dollar Value of Sales Figures of All Accused Products and Related Services and an Explanation of Invoice Tables (including a summary of the over two year dispute between the parties) at 1 and 2.  Without complete accused product sales information, Fujitsu was hamstrung in its ability to efficiently and meaningfully assess the necessity and prioritization of discovery from individual Tellabs' third-party vendors.

16

Despite these obstacles, Fujitsu spent considerable time and resources reviewing Tellabs' massive production and fractured invoice production to identify modules and persons of interest. After completing this assessment, Fujitsu subpoenaed documents from and noticed depositions of Tellabs' current third-party vendors Oclaro and Finisar in May, 2011 and JDS Uniphase and Oplink in June 2011, in order to authenticate schematics and technical documents related to Tellabs' commercial modules and to develop Fujitsu's evidence supporting its infringement contentions. Fujitsu's diligent efforts to secure relevant documents and testimony from the various Tellabs vendors are set forth in the Cheng Decl. at ¶¶77-100. In this regard, many of the third party vendors did not complete their critical document productions until after June 2011. Significantly, Tellabs took the position that it did not know how some of the modules it purchased from these third party vendors operated, and thus discovery of the third party vendors belatedly became a critical part of these cases.

Information obtained from these third party vendors of accused Tellabs optical amplifier modules is featured prominently in Fujitsu's proposed updated Infringement Contentions. Indeed, most of the supplementation in Fujitsu's October 2011 Infringement Contentions consist of frequent citations to information learned from recently-produced third party documents and depositions taken in August and September 2011. The Court's Order (09 Dkt. 377 at 4) states "The court, however, recognizes that both its Markman Order and the on-going discovery in this case may warrant amendment to either Fujitsu's Final Infringement Contentions or its Original Complaint." If the Court does not permit Fujitsu to supplement and amend its infringement contentions, it would be inequitable to Fujitsu to have obtained new discovery from third parties, have Tellabs cross-examine those same third parties, and yet be denied this opportunity to include the new information in its infringement contentions.

17

      2.      <u>Tellabs has long been on Notice of Fujitsu's Infringement Accusations Against its Newer Modules</u>

Tellabs' Interrogatory Nos. 6 and 7 sought Fujitsu's factual contentions supporting its claims of direct and inducing infringement of the asserted method claims of '737 and '163 Patents respectively. (*See* Cheng Decl. at ¶¶ 11-13 and 15 and 17; Exhs. 11-13, 15 and 17.) On April 29, 2010, Fujitsu responded by citing its July 2008 Contentions (*see* 09 Dkt. 38 and Cheng Decl. at Exh. 1) and identifying twenty-two Tellabs 7100 product configurations as accused products. Cheng Decl. at ¶ 11 and Exh. 11. On July 30, 2010, Fujitsu supplemented its prior response to identify twenty-two Tellabs 7100, 7100N, and 7100 Nano product configurations dropping some identified in Fujitsu's April 29, 2010 response and adding others, and twenty-three third party customers whose infringement was induced by Tellabs. Cheng Decl. at Exh. 12. Fujitsu's response specifically identified Tellabs' OLA-xx, CCM-xx, OADM88-xx, LxAM-E and LxAM-E88 modules, many of which Tellabs had only then recently begun to commercialize.

Hence, Tellabs has been on notice of the modules Fujitsu currently accuses of infringement for a year and a half. As a result, Tellabs has been able to conduct its own comprehensive discovery for all of these modules. Tellabs reviewed many of the document productions from its third party vendors relating to the modules, before the documents were actually produced to Fujitsu, and did not object to the productions. Tellabs also attended and cross-examined third party vendors regarding Tellabs' non-infringement theories. Tellabs consequently suffers no unfair prejudice from Fujitsu's proposed supplemental Infringement Contentions.

      a.      <u>The Updated Modules do not Alter Fujitsu's Infringement Theories and Simply Analyze Newer Versions of Tellabs' Older Modules based on Tellabs' and Third-Party Discovery</u>

Fujitsu's July 2008 Contentions for the '737 and '163 Patents and November 2008 Contentions for the '681 Patent were each based on inspections of actual Tellabs optical amplifier modules purchased on the secondary market. These modules are older versions of the optical amplifier modules currently marketed by Tellabs. Fujitsu's proposed updated infringement contentions simply analyze the newer versions of the modules from 2008, based on Tellabs' and third-party document productions and depositions. [9] For example, Fujitsu's July 2008 Contentions analyzed the asserted '737 Patent claims using an exemplary Tellabs' 7100 configuration including MIAM, OLIM, DOSC and APM modules, and also specifically identified the LIAM-E and SPM modules. Fujitsu's proposed supplemental Infringement Contentions for the '737 Patent analyze the updated Tellabs modules using an exemplary configuration of the LIAM-E, which combines the functionality of the MIAM and the OLIM, and the SPM, which combines the functionality of the DOSC and APM. Similarly, based on recent discovery, Fujitsu's proposed supplemental Infringement Contentions for the '163 Patent analyze Tellabs' newer LOAM-E module rather than Tellabs older MOAM module.

Analogously, the proposed Contentions for the '681 Patent analyze Tellabs' newer ELRAM-E module, which recent third party discovery confirms is structurally identical (for purposes of the '681 Patent's infringement theories) to the LRAM-E module.[10] The inclusion of

---

[9] *See, e.g., Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* at TLIL0793888; *Tellabs® Hardware Design Description, Tellabs 7100 Single-Slot Amplifier Modules 81.71122A/81.71123A/ 81.71123A/81.71124A, Rev. A, 12/04 (2004)* at TLTX0056016, and *Tellabs® Hardware Design Description, 7100 System Processor Module 81.71114B, Rev. AP5, 03/07 (2007)* at TLTX21742843; and *Tellabs® System Engineering, 76.7100FP33/6, Rev. C, 3/07 (2007)* at TLTX0039434 ("The SPM replaces the APM and DOSC modules in the SBOADM and 44-channel OLA configurations. It is required for systems using the LIAM-E.").

[10] The LRAM-E module, like the LIAM-E module, all share the same optical gain block platform as the LOAM-E module charted in the November 2008 Contentions. *See* Dep. Tr. of Dr. Peter Wigley, Oclaro's 30(b)(6) witness (8/10/11, hereinafter "Wigley Dep.") at p. 57:10-24 (confirming that all four modules utilize the same optical gain block platform or "series"). Recently produced optical schematics and third party manufacturer testimony further confirm that these four modules contain the same discrete components that are structurally and functionally the same with respect to the '681 Patent. *See, e.g.,*

these amplifier modules would not unfairly prejudice Tellabs. As the seller of the newer versions of previously accused modules, Tellabs is aware that new versions are virtually identical (for purposes of the '681 patent) to the older modules and that Fujitsu's infringement theories have not changed.

In sum, Fujitsu's supplementation of its contentions with updated citations to the record works no harm or prejudice on Tellabs. Tellabs' documents indicate that its newer optical amplifier modules simply perform the same functions as the older modules with respect to Fujitsu's '737, '163 and '681 infringement theories. When no close of fact discovery has been set, it would be unfair for an accused infringer to make minor updates to its accused products, which updates are irrelevant to the patent-at-issue, and exclude the newer versions from the litigation.

> **b.** **Many Tellabs Modules were First Commercialized after Fujitsu's Infringement Contentions and were Promptly Identified to Tellabs in Discovery Responses**

The vast majority of optical amplifier modules identified in Fujitsu's proposed supplemental Infringement Contentions but not specifically listed in Fujitsu's July 2008 Contentions and November 2008 Contentions (collectively "2008 Contentions") are newer versions of Tellabs' previous modules utilizing very similar optical gain block platforms.[11]

Fujitsu first subpoenaed Finisar and specifically identified the CCM-xx and OLA-xx modules on November 3, 2009. That Tellabs had no doubt Fujitsu was accusing these modules of infringement is evident from the fact that Tellabs produced discovery on each of these

---

Wigley Dep. (8/10/11) at pp. 164:21 - 165:12; 107:9-108:2; *and* 195:2-14 *with* Dep. Tr. of Dr. Lifu Gong, Oplink's 30(b)(6) witness (9/9/11) at pp. 131:10-132:25.

[11] For example, the optical gain blocks in the LxAM-E series of modules identified in Fujitsu's 2008 Contentions utilizes Oclaro's (and previously its predecessor Avanex's) PureGain 2600 and later 2800 platforms. Finisar uses Oclaro's PureGain 2600 and 2800 optical gain blocks in the CCM-IR, CCM-LR, OLA-IR and OLA-LR it produces for Tellabs, as confirmed at the September 15, 2011 deposition of Finisar. *See* DeAndrea Dep. (9/15/11) at pp. 227:24-229:8.

modules in response to Fujitsu's discovery demands. *See, e.g.*, Tellabs' Response to Fujitsu's Interrogatory Nos. 6 and 7 (Cheng Decl. at Exh. 18).

Fujitsu's review of ongoing discovery also identified Tellabs' first commercialization of new OADM88-IR, OAMD88-LR, and OADM88-ER modules in 2010. These modules could not have been included in Fujitsu's 2008 Contentions or its amended 2009 Contentions. Significantly, Fujitsu diligently identified the OADM88-IR and OADM88-LR modules in its April 29, 2010 Response to Tellabs' Interrogatory Nos. 6 and 7. (*See* Cheng Decl. at Exh. 11.) Thereafter, each of these modules was the subject of extensive testimony, including Tellabs' cross-examination, during the September 9, 2011 deposition of Oplink, and Fujitsu was ultimately able to confirm its bases for infringement. (*See* Cheng Decl. at ¶¶ 97 – 100.)

Fujitsu's review identified Tellabs' initial sale of LRAM-E88 and ELRAM-E88 modules in 2009 and the LIAM-E88 and LOAM-E88 modules in 2010. These modules are merely 88-channel variants of Tellabs' 44-channel LxAM-E series identified in Fujitsu's 2008 Contentions. Oclaro, the third party manufacturer of these four modules for Tellabs, was subpoenaed in October 2009, but did not produce schematics and technical documents until August, 2011. Nevertheless, Fujitsu first suspected and identified modules as infringing in its April 29, 2010 Response to Tellabs' Interrogatory Nos. 6 and 7. Cheng Decl. at Exh. 11. These modules also were the subject of extensive deposition testimony, including Tellabs' cross-examination, during the August 10, 2011 deposition of Oclaro. *See* Cheng Decl. at ¶ 94.

Yet again, it is plain that Fujitsu was diligent in notifying Tellabs of its infringement contentions and Tellabs is not unfairly prejudiced by Fujitsu's proposed supplemental Infringement Contentions, which add optical amplifier modules that did not exist at the time of Fujitsu's original contentions.

21

> c.     Tellabs' Interrogatory No. 18 Sought Fujitsu's Contentions of Direct and Indirect Infringement of '681 Patent Claims Under the Doctrine of Equivalents Independent of LPR 2 and 3

On April 30, 2009, Tellabs' served its Interrogatory No. 18 seeking Fujitsu's contentions of infringement of the '681 patent:    "under the doctrine of equivalents, explain how that limitation is met equivalently with respect to each Accused Instrumentality."  (*See* Cheng Decl. at ¶ 16.)  On June 4, 2009, Fujitsu responded, subject to certain objections, as follows:

> As set forth in Fujitsu's Preliminary Infringement Contentions dated November 4, 2008, claims 1-16 of the '681 patent are literally infringed at least by Tellabs® 7100 Optical Transport System ("Tellabs® 7100") and Tellabs® 7100 Nano Optical Transport System ("Tellabs® 7100 Nano").    Also as set forth in Fujitsu's Preliminary Infringement Contentions dated November 4, 2008, if literal infringement is, for some reason, not found to exist, claims 1-16 of the '681 patent are infringed under the doctrine of equivalents.  A preliminary explanation of how the claim limitations are met equivalently with respect to each Accused Instrumentality follows: [multi-page chart omitted].

(*See* Cheng Decl. at Exh. 16.)

On October 19, 2011, Fujitsu supplemented this response to add the OLA-xx, CCM-xx, OADM88-xx, LxAM-E88, ELRAM-E88, ELRAM-E, LRAM-E, and LIAM-E modules as additional configurations with which the accused 7100 and 7100 Nano products infringe the '681 Patent, in light of information recently obtained from third party discovery.  (*See* Cheng Decl. at Exh. 21.)

## III.    ARGUMENT

> A.     The Court Should In The Interest Of Justice Set New Deadlines For Final Contentions.

First, being caught in the unusual situation where the LPR came into effect in the midst of these complicated, consolidated cases, Fujitsu requests that, pursuant to LPR 1.1, the Court set new deadlines for the parties to serve Final Contentions on all issues under LPR 3.1 and 3.2. Specifically, Fujitsu requests that each party's Final Infringement, Invalidity, and Unenforceability Contentions under LPR 3.1 shall be due 30 days after Fujitsu completes its long

noticed Rule 30(b)(6) deposition of Tellabs[12], and Final Non-Infringement, Enforceability and Validity Contentions under LPR 3.2 shall be due [28] days later, with any further amendment of Final Contentions to be made pursuant to LPR 3.4. This relief will cure the inequities caused if the LPR were allowed to retroactively set due dates that have already passed by allowing the parties to provide Final Infringement and Invalidity Contentions that conform to the mass of discovery already adduced, including discovery reflected in the most current interrogatory responses. This also will best achieve the purposes of predictability and planning as set forth in the LPR Preamble, and avoid confusion and the potential manifest injustice that would otherwise arise from an unequal application of the LPR only to Fujitsu's July 2008 Contentions from Texas.[13]

As detailed above, this is not a typical patent infringement litigation. These two patent cases consolidated for discovery involve five patents. The consolidated cases are unusually complex in terms of both the different optical fiber communications technologies at issue, and the volume of discovery, with over 27 million pages produced by Tellabs through September 16, 2011, all of which is highly confidential and not publically available. This complexity is further evidenced by multiday technology tutorials and claim construction hearings, and the care demonstrated by the Court in reaching its preliminary constructions (08 Dkt. 145), and revising certain of those and making its detailed claim construction order (09 Dkt. 379).

---

[12] Fujitsu first began noticing Tellabs' Rule 30(b)(6) depositions regarding operations of the accused products in relation to Fujitsu's patents on August 28, 2009 and has been diligently communicating with Tellabs ever since to complete the scheduling of witnesses for the remaining designated topics. *See* Cheng Decl. at ¶¶ 36 - 76.

[13] Fujitsu makes this proposal because it believes that the way discovery in these cases has been structured, several more months are needed to complete fact discovery to enable Fujitsu to nail down its final infringement contentions prior to expert discovery and trial. If the Court grants this requested relief, then the proposed October 2011 Contentions should be deemed amended initial contentions, and not final, and the Court need not consider Fujitsu's alternate request for relief.

A manifest injustice would arise if Fujitsu's July 2008 Contentions are deemed final, because the 21 week deadline to serve final contentions after serving initial contentions set in LPR 3.4 was based on a presumed end of fact discovery that was ten weeks past the 21 week term (*see* Kennelly at 225). This presumption does not apply to the present cases, where the complex discovery is now many weeks beyond the presumed 21 week term and continuing. Moreover, as described above, just since June 2011, the parties have taken much considerably important discovery which has led to Fujitsu substantially revising its contentions with respect to infringement of the '418 patent, and merely supplementing with new versions of optical amplifier modules for the same accused products in its infringement contentions regarding the '681, 737 and '163 patents (Fujitsu's supplementation includes further responses to interrogatories based on the newly acquired evidence).

In light of the immense expense and volume of discovery the parties have adduced in this case, the considerable work that is ongoing and remains to be completed, and the lack of unfair prejudice to Tellabs as demonstrated herein, Fujitsu respectfully submits that, in the interests of the efficient administration of this action, justice and judicial economy, providing the parties with new deadlines to submit Final Contentions is the simplest, fairest and most equitable way to prepare for the remaining fact and expert discovery, dispositive motions, and trial. This result also will allow the parties to conduct the remaining discovery with an eye towards providing Final Contentions, as contemplated by the LPR, and the remaining deadlines that the Court may set.

B. <u>Alternatively, Fujitsu Should Be Permitted To Supplement and Amend Final Infringement Contentions Based On Good Cause And Without Unfair Prejudice</u>

Alternatively, in light of the new evidence Fujitsu has adduced since June 2011, based on a recent review and appreciation of additional documents produced by Tellabs as recently as

September 16, 2011 and numerous depositions taken of third parties over the last few months,

See *supra* at II. F., a supplementation of the extant Final Infringement Contentions is now

appropriate. As the Court stated:

> Under LPR 3.4, "a party may amend its Final Infringement Contentions … only by order
> of the Court upon a showing of good cause and absence of unfair prejudice to opposing
> parties, made promptly upon discovery of the basis for the amendment. N.D. Ill. L.P.R.
> 3.4. Federal Circuit law governs the interpretation of local patent rules affecting the
> amendment of infringement contentions. *02 Micro Int'l Ltd. v. Monolithic Power Sys.*,
> 467 F. 3d 1355, 1365 (Fed. Cir. 2006). According to the Federal Circuit "'good cause'"
> requires a showing of diligence. *Id.* at 1366.

Order (09 Dkt. 377 at 2). Fujitsu has been diligent in bringing this motion, which is being filed

less than two months after first learning of and appreciating the significance of Tellabs source

code for the 5500 and 7100 products, within a month of obtaining third-party vendor documents

and testimony concerning newer versions of the accused optical amplifier modules, and only

three weeks after the Court first indicated that the LPR apply to Fujitsu's July 2008 Contentions

and clarified the basis for amending Final Contentions under LPR 3.4.

Fujitsu also has been diligent in making this supplementation because it was not aware of

this new evidence at the time it offered either its 2008 Contentions, amended 2009 Contentions,

or its May 2011 Contentions requested (and then disallowed) by the Court. More significantly,

Tellabs chose in March 2010 to serve contention interrogatories, independent of any Court-

ordered Contentions, and Fujitsu has diligently responded and timely updated its responses

throughout the discovery period in these consolidated cases. Fujitsu respectfully submits that

Tellabs cannot equitably assert Fujitsu was not diligent, when Tellabs was fully and timely on

notice of Fujitsu's infringement contentions via the 2008 Contentions and subsequently the

interrogatory responses Tellabs itself requested from 2009 to present. To deny Fujitsu relief here

because a formal motion for leave to amend initial contentions was not previously filed would

exalt form over substance and would be inequitable to Fujitsu, who regularly kept Tellabs apprised of Fujitsu's evolving record of infringement.

Regarding unfair prejudice, there is none. First, Tellabs did not ask the Court to apply the LPR to these cases but instead sought and obtained, independent of any Contentions, discovery by contention interrogatories as to the patents-in-suit under Fed.R.Civ.Proc. 34. Fujitsu has diligently responded, and updated its responses in 2009, 2010 and 2011 as additional evidence became known. (*See* Cheng Decl. at Exhs. 11-17 and 21.) Second, no new discovery will be required of or need to be taken by Tellabs, because Fujitsu's updated infringement contentions are based on Tellabs' documents and the documents and deposition testimony of third party vendors who manufacture the accused optical modules to Tellabs's specifications. Moreover, Tellabs' Counsel received (and in some cases previewed) the same third-party document productions received by Fujitsu and was present at all relevant depositions and cross-examined the witnesses. And, of course, Tellabs best knows its own accused products. Significantly, Fujitsu did not appreciate the new infringement theory regarding the '418 patent, and could not confirm that Tellabs' new optical amplifier module versions supplied by third-party vendors infringed Fujitsu's optical amplifier patents, until Fujitsu took those third-party depositions that Tellabs attended.

Finally, as the Court suggested, a continuance can indeed serve to void any unfair prejudice. (*See* 09 Dkt. 322; Hearing Tr. at 3:22-25, May 12, 2011.) First and foremost, the test for leave to amend (and supplement) is to demonstrate an absence not of prejudice but of "unfair" prejudice. In light of the manner in which Tellabs slowly parsed out the production of its critically important source code and invoices for the 5500 and 7100 accused products, and introduced new versions of optical amplifier modules during this litigation, it cannot be said to

be "unfair" to allow Fujitsu to revise and supplement its Infringement Contentions after assimilating the belated production. In this circumstance, any unfairness to Tellabs can be cured by a suitable continuance. Second, Tellabs has not amended its own Contentions since 2009, and therefore has not likely been spending extensive resources over the last three years working on its Contentions. Third, discovery is just that – it generates new facts which allow the parties to focus their claims, whether adding, dropping or modifying contentions. It is inefficient to perpetuate Contentions that Fujitsu has determined need modification where, as here, Tellabs has had fair and timely notice and discovery of the modifications. Fourth, Tellabs has not yet served its Non-Infringement Contentions LPR 2.3, 3.2. Logic and efficiency suggest that Tellabs should not respond to Final Infringement Contentions made obsolete by Tellabs' and its vendors' latest productions of discovery and Fujitsu's most recent interrogatory responses, and should instead respond to Fujitsu's most updated Infringement Contentions. Fifth, in as much as the Court's Claim Construction Order issued on September 29, 2011, a strict application of the LPR schedule implies an earlier final date for filing of dispositive motions of March 8, 2011,[14] with the trial to follow after that. Thus, consonant with the flexibility built into the LPR scheduling, a reasonable continuance may be provided to allow Tellabs to take whatever further discovery it needs in light of Fujitsu's proposed Infringement Contentions to prepare its Non–Infringement contentions and defenses for trial.

For the foregoing reasons, Fujitsu has been diligent and Tellabs will suffer no unfair prejudice (LPR 3.4) if Fujitsu is allowed to supplement and amend its Final Infringement

---

[14] The March 8, 2011 date was calculated using a close of fact discovery occurring 42 days after the claim construction ruling (LPR 1.3), initial experts reports as due 21 days after the close of fact discovery (LPR 5.1(b)), rebuttal expert reports as due 35 days after the initial expert reports (LPR 5.1(c)), close of expert depositions as 35 days after the exchange to expert rebuttal reports (LPR 5.2), and the last day for filing dispositive motions as 28 days after the end of expert discovery. Each of these add up to 161 days, which was then added to the September 29, 2011 Claim Construction Order date, yielding a date of March 8, 2011.

Contentions from 2008. Based upon this request being brought diligently upon learning and appreciating the significance of additional evidence of Tellabs' infringement now on the record, for good cause shown, leave to supplement and amend should be granted.

## IV. CONCLUSION

Fujitsu therefore respectfully requests that this Court grant this Motion.

Respectfully submitted,

Dated: October 19, 2011        *s/ David C. Van Dyke*

David C. Van Dyke (#6204705)
Howard & Howard
200 South Michigan Ave., Suite 1100
Chicago IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com

David E. Wang
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
Email: dwang@orrick.com

James C. Brooks
Christopher A. Hivick
Alyssa Caridis
Michael Owens
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
Email: jbrooks@orrick.com
Email: chivick@orrick.com
Email: acaridis@orrick.com
Email: mowens@orrick.com

Mark P. Wine
Thomas S. McConville
Mark J. Shean
Glen Liu
Gino Cheng

28

Orrick, Herrington & Sutcliffe, LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
Facsimile: (949) 567-6710
Email:  mwine@orrick.com
Email:  tmcconville@orrick.com
Email:  mshean@orrick.com
Email:  gliu@orrick.com
Email:  gcheng@orrick.com

Robert M. Isackson
Orrick, Herrington & Sutcliffe, LLP
51 West 52nd St.
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rmisackson@orrick.com

*Attorneys for* **FUJITSU LIMITED** *and*
**FUJITSU NETWORK COMMUNICATIONS**