IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELLABS OPERATIONS, INC.<br><br>PLAINTIFF,<br><br>v.<br><br>FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC.,<br><br>DEFENDANTS | CIVIL ACTION NO. 08-CV-3379<br>CIVIL ACTION NO. 1:09-CV-04530<br><br><br>JUDGE HOLDERMAN<br>MAGISTRATE JUDGE COLE |
| FUJITSU LIMITED<br>Plaintiff,<br><br>vs.<br><br>TELLABS OPERATIONS, INC. ET AL.<br>Defendants, | <br><br>JURY TRIAL DEMANDED<br><br>Consolidated for Discovery |

TELLABS, INC.'S, TELLABS OPERATIONS, INC.'S, AND TELLABS NORTH AMERICA, INC.'S
RESPONSE TO FUJITSU LIMITED'S AND FUJITSU NETWORK COMMUNICATIONS, INC.'S
MOTION TO SET A SCHEDULE TO SERVE FINAL CONTENTIONS AND IN THE ALTERNATIVE TO
FILE AMENDED FINAL  INFRINGEMENT CONTENTIONS


**REDACTED**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION. ................................................................................ 1

II.    APPLICABLE LAW. ......................................................................... 3

    A.    UNDER THE EASTERN DISTRICT OF TEXAS' LOCAL PATENT RULES, INFRINGEMENT CONTENTIONS ARE "DEEMED FINAL," AS THIS COURT RECOGNIZED. ........................................................................... 3

    B.    LEAVE TO AMEND FINAL INFRINGEMENT CONTENTIONS IN THE NORTHERN DISTRICT OF ILLINOIS REQUIRES A SHOWING OF "GOOD CAUSE." ........................... 4

        1.    Good Cause Requires a Showing of Diligence. ......................................... 4

        2.    Diligence Cannot be Shown Where There Was Unreasonable Delay. ..................................................................................... 5

        3.    A Plaintiff's Delay Following Statements That It Has Additional Infringement Allegations Demonstrates a Lack of Diligence. .................... 6

        4.    Diligence Must Be Shown From the Point at Which the Moving Party Possessed the Information Necessary to Assert New Infringement Allegations, Not From the Final Date at Which it Obtained *Any* Discovery. ........................................................... 8

        5.    A Plaintiff Should Not Wait to "Confirm" New Theories of Infringement Before Seeking Leave to Amend its Infringement Contentions. .............................................................................. 8

    C.    GOOD CAUSE REQUIRES SHOWING A LACK OF PREJUDICE. ................... 10

        1.    An Amendment is Prejudicial if it Forces a Party to Re-assess Previous Defenses and Incur Additional Expenses, Particularly Late in the Case. ..................................................................... 10

        2.    "Notice" of Infringement Theories in Discovery Responses Does Not Ameliorate Prejudice to the Party Opposing Amendment. ................ 11

III.    ANALYSIS. .................................................................................. 11

    A.    FUJITSU CANNOT DEMONSTRATE DILIGENCE IN ITS ATTEMPT TO ADD INFRINGEMENT ALLEGATIONS. ........................................................ 13

        1.    Fujitsu Articulated its "Software-Based" Theory of Infringement for the '418 Patent in 2009 and Delayed For Years in Moving For Leave to Add that Theory. ..................................................... 13

        2.    Fujitsu Fails to Explain the Connection Between the Numerous Theories of Infringement it Seeks to Add and its Software-Based Theory. ............................................................................. 17

3.      Fujitsu's Own Delay and Lack of Diligence is to Blame for its
        Failure to Collect Meaningful Evidence Through Depositions of
        Tellabs Employees. ................................................................................. 20

4.      Fujitsu Also Fails to Show Diligence With Respect to Adding
        Numerous Theories for the '163, '737, and '681 Patents. ........................ 23

B.  FUJITSU'S AMENDMENT OF ITS FINAL CONTENTIONS WOULD CAUSE
    SIGNIFICANT PREJUDICE TO TELLABS. .................................................................... 25

C.  THERE IS NOTHING SO UNIQUE ABOUT THIS CASE TO WARRANT A RADICAL
    DEPARTURE FROM THE LOCAL PATENT RULES' GOAL OF EARLY
    DISCLOSURE AND TO PERMIT FINAL INFRINGEMENT CONTENTIONS AT THIS
    LATE STAGE OF THE LITIGATION. ........................................................................... 27

IV.  CONCLUSION. ............................................................................................................. 28

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*Caisse Nationale de Credit Agricole v. CBI Indus.*,
  90 F.3d 1264 (7th Cir. 1996) ........................................................................ 3

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*
  2009 U.S. Dist. LEXIS 1644 (E.D. Tex. 2009) .............................................. 11

*Genentech, Inc. v. Amgen, Inc.*
  289 F.3d 761 (Fed. Cir. 2002).......................................................................... 21

*Implicit Networks, Inc. v. Hewlett-Packard Co.*
  2011 U.S. Dist. LEXIS 100283 (N.D. Cal. 2011) .......................................... 20

*Joy Techs., Inc. v. Flakt, Inc.*
  6 F.3d 770 (Fed. Cir. 1993) ............................................................................ 21

*Network Appliance, Inc. v. Sun Microsystems, Inc.*
  2009 U.S. Dist. LEXIS 83090 (N.D. Cal. 2009) ........................................ 5, 25

*Nike, Inc. v. Adidas Am. Inc.*
  479 F. Supp. 2d 664 (E.D. Tex. 2007).............................................................. 10

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*
  467 F.3d 1355 (Fed. Cir. 2006)........................................... 4, 5, 7, 9, 13, 19, 28

*Optimumpath, LLC v. Belkin Int'l, Inc.*
  2011 U.S. Dist. LEXIS 41634 (N.D. Cal. 2011) ............................................ 20

*Realtime Data, LLC v. Packeteer, Inc.*
  2009 U.S. Dist. LEXIS 73217 (E.D. Tex. 2009) ............................................ 10

*Softvault Sys., Inc. v. Microsoft Corp.*
  2007 U.S. Dist. LEXIS 33060 (E.D. Tex. 2007) ............................................ 12

*Sybase, Inc. v. Vertica Sys., Inc.*
  2009 U.S. Dist. LEXIS 110775 (E.D. Tex. 2009) ............................................ 6

*Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*
  2011 U.S. Dist. LEXIS 67532 (M.D. N.C. 2011).................................... 7, 9, 19

Defendants Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. (collectively, "Tellabs") respectfully submit this Response to Fujitsu Limited and Fujitsu Network Communications, Inc.'s (hereinafter "Fujitsu's") Motion to Set a Schedule to Serve Final Infringement Contentions and in the Alternative to File Amended Final Infringement Contentions ("Fujitsu's Renewed Motion").

## I.    INTRODUCTION.

Just weeks ago, this Court ruled that Fujitsu served its final infringement contentions for the '418, '163, and '737 patents in July of 2008, while this case was pending in the Eastern District of Texas:

> Thus, at the time Fujitsu served its original infringement contentions with Tellabs, Fujitsu was operating under the assumption that those contentions were its final contentions, subject to the limited exceptions of Rule 3-6(a). The court accordingly treats Fujitsu's 2008 Infringement Contentions as Final Infringement Contentions.[1]

Just three weeks after this Court's ruling, Fujitsu filed what is in essence a motion for reconsideration. Despite the Court's unambiguous ruling, Fujitsu's Renewed Motion mistakenly states that the contentions it filed in 2008 were its "preliminary infringement contentions."[2]

Fujitsu also suggests there is some uncertainty as to whether the local patent rules in the Northern District of Illinois govern this case.[3] The Court's September 29, 2011 Order clearly states that these local rules "…are now the controlling local patent rules for this case as it

---

1. Order Granting Tellabs' Oral Mot. to Disallow the Filing of Fujitsu's First Am. Compl. and Fujitsu's Suppl. Infringement Contentions, Dkt. 377 [hereinafter Dkt. 377] at 2.

2  *See*, Fujitsu's Renewed Motion at 6 (". . . on July 28, 2008, Fujitsu served its preliminary infringement contentions for the Texas patents. . . . On June 12, 2009, Fujitsu moved pursuant to Texas Patent Rule 3-6(b) for leave to amend its preliminary infringement contentions to add infringement contentions for '418 patent claims 2-56 and for indirect infringement, and to expand on its prior contentions of literal infringement and infringement by application of the doctrine of equivalents, and to account for discovery then recently obtained….").

3. Fujitsu's claim that there is uncertainty over the applicability of the local patent rules in the Northern District of Illinois is contradicted by their own statements in this litigation: "Fujitsu did not dispute in its Opposition, and does not dispute herein, that the applicable rules for amendment of infringement contentions are the Local Patent Rules of the Northern District of Illinois…. Per Tellabs' motion for transfer, this case is in Illinois, and under the N.D. Illinois Local Patent Rules…."  (Dkt. 372 at 2.)

proceeds forward."[4] This Court also confirmed that the local patent rules of the Eastern District of Texas govern the original infringement contentions served by Fujitsu in 2008. And, under those Rules, Fujitsu's infringement contentions were unquestionably final the day they were served: "[e]ach party's 'Infringement Contentions' … shall be deemed to be that party's final contentions."[5]

Fujitsu's Renewed Motion argues that it is only now able to articulate its "software-based" theory of infringement for the '418 Patent, alleging that recent discovery and depositions provided the information necessary for the amendments. As shown herein, however, Tellabs' source code production began in 2008 and is not "new evidence," and Fujitsu's Renewed Motion admits that it sought this discovery merely "to confirm" whether the features that it knew from Tellabs' system-level documents and hardware were merely planned or actually commercially implemented.[6] Tellingly, Fujitsu's Renewed Motion does not (and cannot) cite to any case law in support of its request to amend its contentions at this late date. Fujitsu simply cannot justify *years* of delay by arguing it wanted to confirm new theories of infringement before seeking leave to amend its contentions.

In truth, Fujitsu articulated its "software-based" theory of infringement for the '418 Patent as far back as 2009 and did not need to rely upon recent discovery and depositions for its theory. Further, Fujitsu's own delay and lack of diligence is to blame for any failure to collect evidence it claimed it needed from depositions of Tellabs employees. Tellabs repeatedly offered witnesses that Fujitsu has been unwilling or unprepared to depose. In fact, <u>Fujitsu did not depose a single Tellabs witness from August 2010 until August 2011.</u> And, finally, Fujitsu provides no

---

[4] Dkt. 377 at 2.
[5] E.D. Tex. P.R. 3-6(a).
[6] Fujitsu' Renewed Motion at 10.

explanation as to how its "new" software-based theory relates to the significant new theories of infringement it seeks to add, including doctrine of equivalents and indirect infringement.

Fujitsu's Renewed Motion is a thinly veiled motion to reconsider its previous motion to amend its infringement contentions – a motion this Court just denied. This Court held that "Fujitsu's delay in seeking leave to make [its May 2011] amendments is unjustified"[7] and found that "Tellabs would be severely prejudiced by allowing Fujitsu to now pursue [its May 2011] infringement theories at this late date."[8] Unsatisfied with this ruling, Fujitsu repackaged its proposed amendments and rehashed its already denied motion. However, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments. . . ." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996)). Tellabs asks that this Court once again deny Fujitsu's delayed and unjustified Motion.

## II.    APPLICABLE LAW.

### A.    Under the Eastern District of Texas' Local Patent Rules, Infringement Contentions Are "Deemed Final," as this Court Recognized.

As recognized by this Court's recent Order, and as clear from the local patent rules themselves, infringement contentions in the Eastern District of Texas are deemed final when served: "[e]ach party's 'Infringement Contentions' and 'Invalidity Contentions' shall be deemed to be that party's final contentions…."[9] Except under limited circumstances not applicable here, amendments may be made "by order of the Court, which shall be entered only upon a showing of good cause."[10]

There is no "manifest injustice" to Fujitsu, as they claim, in enforcing the clear language of these patent rules. Nor is there an injustice to Fujitsu in denying a request to amend final

---

[7]  Dkt. 377 at 3.
[8]  *Id.*
[9]  E.D. Tex. P.R. 3-6(a).
[10]  E.D. Tex. P.R. 3-6(b).

infringement contentions in an absence of good cause. Fujitsu had fair warning of the finality of its infringement contentions when it chose the Eastern District of Texas. Although Fujitsu titled its charts "Preliminary Infringement Contentions" and even now refers to those charts as "Initial," such disclosures have not been considered "preliminary" in the Eastern District of Texas since October 27, 2006.[11] The July 2008 infringement contentions are Fujitsu's final infringement contentions.

**B.     Leave to Amend Final Infringement Contentions in the Northern District of Illinois Requires a Showing of "Good Cause."**

In the Northern District of Illinois, "[a] party may amend its Final Infringement Contentions . . . only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment."[12] The Illinois Patent Rules provide a single example of good cause: "a claim construction by the Court different from that proposed by the party seeking amendment."[13]

**1.     Good Cause Requires a Showing of Diligence.**

Federal Circuit precedent governs the interpretation of local patent rules affecting the amendment of infringement contentions. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). According to the Federal Circuit, "'good cause' requires a showing of diligence." *Id.* at 1366. The Federal Circuit also interprets "good cause" to require a lack of prejudice to the party opposing amendment. *Id.* at 1368 ("Having concluded that the district court could properly conclude that [the plaintiff] did not act diligently in moving to

---

[11]   General Order 06-15 at 18 (Oct. 27, 2006) (relevant pages attached and highlighted as Exhibit 1 to Declaration of Kelley A. Conaty in Support of Tellabs, Inc.'s, Tellabs Operations, Inc.'s, and Tellabs North America, Inc.'s Response to Fujitsu Limited's and Fujitsu Network Communications, Inc.'s Motion to Set a Schedule to Serve Final Contentions and in the Alternative to File Amended Final Infringement Contentions ("Conaty Decl."), which is attached hereto as Exhibit A.)
[12]   LPR 3.4.
[13]   *Id.*   This example of good cause does not apply to this case, where all of Fujitsu's proposed constructions were adopted by the Court for Fujitsu's patents-in-suit. Fujitsu has not argued that the Court's claim construction ruling is their "good cause" to amend its infringement contentions.

amend its infringement contentions, we see no need to consider the question of prejudice to [the defendant].").

## 2. Diligence Cannot be Shown Where There Was Unreasonable Delay.

Diligence in amending infringement contentions cannot be shown where there has been an unreasonable delay. Tellabs already fully briefed the issue of delay for this Court – both the relevant case law and, as the Court put it, the clear record in this case of "Fujitsu's extensive and ever-continuing delay in pursuing these theories…."[14] Tellabs, therefore, will attempt to avoid burdening this Court with repetitive briefing. To summarize, the Federal Circuit's decision in *O2 Micro* sets out the contours of the diligence inquiry. In that case, a patentee "unreasonably delayed" in moving to amend its contentions three months after deposing the defendant's engineer. *Id.* at 1360-62. Such a delay demonstrated a lack of diligence. *Id.*

A lack of diligence is also demonstrated by delay in pursuing a deposition. For instance, in *Network Appliance, Inc. v. Sun Microsystems, Inc.*, the plaintiff filed for leave to amend its final infringement contentions to include evidence obtained through a third party deposition. 2009 U.S. Dist. LEXIS 83090, at *8 (N.D. Cal. 2009) (Conaty Decl., Ex. 2). The plaintiff's final infringement contentions were served on October 30, 2008, and the relevant third party deposition took place on July 7, 2009. *Id.* The court held that the plaintiff unreasonably delayed during those nine months because it did not seek the deposition until February 2009 and did not actually depose the witness until July 2009. *Id.* at *9-10. The court denied the motion for leave with respect to that amendment, holding held that the plaintiff had not made a strong showing of diligence. *Id.* at *10.

Similarly, diligence cannot be shown when the patentee delays in analyzing source code and other technical documents produced during discovery. *See Sybase, Inc. v. Vertica Sys., Inc.,*

---

[14]  Dkt. 377 at 4.

2009 U.S. Dist. LEXIS 110775, at *4-5 (E.D. Tex. 2009) (Conaty Decl., Ex. 3). In *Sybase*, the patentee received the defendant's source code in August 2008. *Id*. at *4. In February 2009, approximately six months later, the patentee filed its motion for leave to serve amended infringement contentions. *Id*. at *2. The court denied the motion and held that the patentee did not show that its delay in amending its infringement contentions "was reasonable based on the amount of time it had to inspect [the defendant's] source code." *Id*. at *5.

In the present case, this Court already denied Fujitsu's attempt to amend its infringement contentions based, in part, on Fujitsu's delay. The Court held that Fujitsu's delay from mid-2009 to 2011 was "unjustified," "unexplained," and "by itself, likely would warrant denying Fujitsu's Renewed Motion for leave to amend."[15] As will be discussed below, the same delay by Fujitsu should once again warrant denying Fujitsu's current Motion for leave to amend.

### 3. A Plaintiff's Delay Following Statements That It Has Additional Infringement Allegations Demonstrates a Lack of Diligence.

A plaintiff that states it has a basis for adding new infringement allegations and yet waits months to move to amend demonstrates a clear lack of diligence. In *Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*, 2011 U.S. Dist. LEXIS 67532, at *60-63 (M.D. N.C. 2011) (Conaty Decl., Ex. 4), the plaintiff inspected the accused products and received the defendant's documents in January 2007. *Id.* at *61. In May, the plaintiff stated to the court that it had a basis to present new infringement allegations. *Id.* at *61-63. In September, the plaintiff filed for leave to add the new infringement allegations based on the information collected in January. *Id.* at *63. The court held that the plaintiff "'failed to establish that it required' eight months after the product inspections and document production in January 2007 to seek leave to add the new infringement allegations at issue." *Id.* at *61 (quoting *O2 Micro*, 467 F.3d at 1367). The court

---

[15] Dkt. 377 at 3.

further remarked that the statements from the plaintiff four months earlier indicated that September 2007 was not the first date it could have added the new infringement allegations, and, permitting the addition of the new allegations under such circumstances "would make a mockery of the good cause standard." *Id.* at *63.

Similarly, this Court already considered Fujitsu's arguments that Tellabs could not be prejudiced because Tellabs had notice of the potential amendments since 2009. The Court stated that those arguments were "not well-taken" because Fujitsu never took the requisite step of seeking leave to amend the infringement contentions.[16] As the Court stated, that Tellabs had notice that Fujitsu ultimately could seek to make such amendments and include new infringement theories "does not excuse Fujitsu's delay," particularly where as here, "Fujitsu's extensive and ever-continuing delay in pursuing these theories raised a substantial likelihood that Fujitsu's request for leave to amend would be denied."[17]

Furthermore, the Northern District of Illinois' local patent rules expressly reject Fujitsu's argument that leave to amend is appropriate simply because Fujitsu put Tellabs on notice of various infringement theories via interrogatory responses: "The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions."[18] There is simply no basis for arguing that a party seeking to amend its infringement contentions is excused from obtaining leave of court because it served supplemental discovery responses, despite Fujitsu's dismissive view that such a requirement "exalt[s] form over substance."[19]

---

[16] Dkt. 377 at 4.
[17] *Id.*
[18] LPR 3.4.
[19] Fujitsu's Renewed Motion at 25.

### 4. Diligence Must Be Shown From the Point at Which the Moving Party Possessed the Information Necessary to Assert New Infringement Allegations, Not From the Final Date at Which it Obtained *Any* Discovery.

A party seeking to amend infringement contentions must demonstrate that deposition testimony or documents are not merely cumulative of information already possessed, but actually represent <u>new</u> information <u>necessary</u> to its assertion of the infringement allegations at issue. In the aforementioned *Volumetrics* case, the court found that the plaintiff VMI did not demonstrate that depositions taken in June 2007 (to which VMI's motion for leave cursorily adverted) provided new information "necessary to its assertion of the infringement allegations at issue." *Volumetrics*, 2011 U.S. Dist. LEXIS 67532, at *59. The court held that considering only whether the plaintiff was diligent from the final point at which <u>any</u> discovery was received would undermine the purpose of patent rules "in that it would allow a litigant to delay identification of its infringement theories until the end of discovery." *Id.* (citing *O2 Micro*, 467 F.3d at 1364-66).

Similarly, in response to Fujitsu's May 2011 attempt to amend its infringement contentions, this Court held that "Fujitsu possessed the information contained in [those] amendments as early as June 2009 and had already drafted the amendments."[20] As discussed below, Fujitsu's delay is unexplained, unjustified, and should once again warrant denying Fujitsu's Renewed Motion for leave to amend.

### 5. A Plaintiff Should Not Wait to "Confirm" New Theories of Infringement Before Seeking Leave to Amend its Infringement Contentions.

Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof. That is inconsistent with the local patent rules'

---

[20] Dkt. 377 at 3.

requirement that the parties "provide the particulars behind allegations of infringement, non-infringement, and invalidity at an <u>early</u> date."[21]   While infringement contentions must be reasonably precise and detailed based on available information in order to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment of infringement.   Infringement contentions are intended to frame the scope of the case in order to provide for "full, timely discovery and [to] provide parties with adequate notice and information with which to litigate their case." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007).   They are not meant to provide a forum for litigation of the substantive issues.

In practice, that means that waiting to "confirm" theories of infringement cannot be used as an excuse to delay moving for leave to amend infringement contentions.   As one court held, "confirming" theories of infringement is a task left to discovery, "while the preparation and supplementation of infringement contentions is a matter of pleading and merely notifies a defendant of the asserted theories of infringement in order to provide adequate notice and streamline discovery." *Realtime Data, LLC v. Packeteer, Inc.*, 2009 U.S. Dist. LEXIS 73217, at *28 (E.D. Tex. 2009) (Conaty Decl., Ex. 5).   In *Realtime*, the plaintiff argued that defendants' technical documentation was necessary to identify the relevant portions of the source code and that it had to wait until it reviewed that code and took depositions to "confirm" the new infringement theories.   The court applied *O2 Micro* and held that the plaintiff did not show diligence or a reasonable explanation for the nine month delay in filing for leave to amend its contentions.   *Id.* at *32.   *See also, Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 U.S. Dist. LEXIS 1644, at *9-12 (E.D. Tex. 2009) (Conaty Decl., Ex. 6) (rejecting plaintiff's argument that

---

[21]   LPR Preamble (emphasis added).

it needed to confirm which products infringed before seeking leave to amend its infringement contentions).

### C. Good Cause Requires Showing a Lack of Prejudice.

#### 1. An Amendment is Prejudicial if it Forces a Party to Re-assess Previous Defenses and Incur Additional Expenses, Particularly Late in the Case.

An amendment to infringement contentions causes prejudice when it forces the defendant to re-assess and re-analyze the defenses on which it previously relied. *Softvault Sys., Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 33060, at *5-6 (E.D. Tex. 2007) (Conaty Decl., Ex. 7). In *Softvault*, the plaintiff sought to amend its infringement contentions six months after serving its original infringement contentions in order to assert an earlier priority date for the patent-in-suit. *Id*. at *2, *5-6. The Court found that allowing such an amendment would prejudice the defendant by forcing the defendant to re-assess all of its invalidity analyses based on the earlier priority date and potentially excluding prior art references on which the defendant had relied for six months. *Id*. at *5-6. Thus, the Court denied the plaintiff's motion to amend its contentions. *Id*.

Prejudice is especially clear – and significant – when the attempt to amend occurs late in the case. *See, e.g.,* Conaty Decl., Ex. 3 at *5-6. This is particularly true if the *Markman* briefing and hearing is complete. *Id.* In *Sybase,* the court denied an attempt to amend infringement contentions after the parties completed their *Markman* briefing and hearing, explaining that to allow the plaintiff to amend its infringement contentions "at this late stage of litigation . . . would significantly prejudice" the defendant. *Id.* at *6.

Tellabs long ago identified and articulated its *Markman* positions based upon Fujitsu's final infringement contentions in 2008. Accordingly, this Court already held that introducing additional Tellabs products and infringement theories into the litigation at this late stage, after

Tellabs committed to its claim construction positions, "would be highly prejudicial."[22]   The

Court further noted that Tellabs has proceeded with this litigation under the premise that certain

products and patent claims were not at issue and presumably developed its noninfringement and

claim construction positions based on this underlying premise.[23]   Reversing this ruling and

allowing such an amendment would clearly cause Tellabs severe prejudice.

> **2.      "Notice" of Infringement Theories in Discovery Responses Does Not Ameliorate Prejudice to the Party Opposing Amendment.**

Just as notice of potential, non-asserted infringement theories via discovery responses

cannot justify a lack of diligence, it likewise does not ameliorate prejudice suffered by the party

opposing amendment.   The Federal Circuit is clear that it is the purpose of infringement

contentions to provide disclosure of the plaintiff's theories of infringement early in the case

because, in practice, it is difficult to attain such information through traditional discovery.   *See*

*O2 Micro*, 467 F.3d at 1365-66 (noting that providing answers to mechanisms such as contention

interrogatories is often postponed until the close of discovery).

As noted above, this Court already rejected Fujitsu's argument that Tellabs had notice of

Fujitsu's potential amendments years ago and therefore could not possibly be prejudiced:

> That Tellabs had notice that Fujitsu ultimately could seek to make these amendments
> and include new infringement theories does not excuse Fujitsu's delay nor does it
> ameliorate the prejudice to Tellabs, particularly where as here, Fujitsu's extensive and
> ever-continuing delay in pursuing these theories raised a substantial likelihood that
> Fujitsu's request for leave to amend would be denied.[24]

**III.    ANALYSIS.**

With no new basis for its request, Fujitsu again seeks to amend its final infringement

contentions, almost four years after filing this suit and almost three-and-a-half years after serving

its final infringement contentions on July 28, 2008.   Despite this Court's directive "that should

---

[22]  Dkt. 377 at 4.
[23]  *Id.*
[24]  *Id.*

Fujitsu seek leave to amend its Final Infringement Contentions, Fujitsu must specifically identify for the court the substance of the amendment in addition to making the requisite 'showing of good cause and absence of unfair prejudice' to Tellabs, as required by Local Rule 3.4," Dkt. 377 at 4, Fujitsu's Renewed Motion fails to (1) specifically identify the substance of the proposed amendment and (2) make the requisite showing of good cause and absence of unfair prejudice. Similarly, Fujitsu's last minute "supplementation," filed on the eve of Tellabs' due date for its response to Fujitsu's Renewed Motion, likewise fails to meet this burden.

At this time, Tellabs believes that Fujitsu seeks to add at least the following theories to its July 2008 final infringement contentions:

    (a) theories of induced and contributory infringement of its '418, '163, and '737 Patents;
    (b) doctrine of equivalents allegations and analysis for the '418 Patent;
    (c) doctrine of equivalents analysis for the '163 and '737 Patents;
    (d) a "software-based" theory of infringement for the '418 Patent;
    (e) new allegations for the '163, '737, and '681 Patents against optical amplifier modules released years ago and about which Fujitsu has known for years; and
    (f) a new theory of infringement for the '681 Patent following disavowal of the majority of its infringement contentions in June of 2011 to avoid Tellabs' discovery requests.

Although downplayed in its Renewed Motion and following supplementation, Fujitsu's proposed amendments significantly expand its infringement contentions by substantially increasing the number and complexity of the issues in this case. Fujitsu's Renewed Motion concedes that its proposed infringement contentions will have the effect of "substantially revising its contentions with respect to infringement of the '418 patent...."[25] Fujitsu further concedes that it adds the important and complex issue of indirect infringement for at least the '418 Patent, noting that a previously filed (but denied) motion to amend sought to add that very issue: "On June 12, 2009, Fujitsu moved pursuant to Texas Patent Rule 3-6(b) for leave to amend its preliminary infringement contentions to add infringement contentions for '418 patent claims

---

[25]  Fujitsu's Renewed Motion at 24.

2-5 and for indirect infringement…."[26]    As with its previous attempts, Fujitsu has shown no

good cause for its belated amendment, and such amendment would cause Tellabs clear prejudice.

**A.    Fujitsu Cannot Demonstrate Diligence in its Attempt to Add Infringement Allegations.**

Fujitsu must be able to show that the deadline for disclosure could not be met despite its

exercise of diligence.[27]  Here, however, Fujitsu cannot show diligence.

**1.    Fujitsu Articulated its "Software-Based" Theory of Infringement for the '418 Patent in 2009 and Delayed For Years in Moving For Leave to Add that Theory.**

Incredibly, Fujitsu argues that it can only now appreciate and articulate a "software-

based" theory of infringement for the '418 Patent.  This is demonstrably false.  Tellabs already

documented – and the Court acknowledged – Fujitsu's delay from June 2009, when this

software-based theory was articulated, to June 2011, when Fujitsu most recently sought leave to

amend its infringement contentions.  The Court specifically asked Fujitsu's counsel why they

waited two years to file a motion for leave to amend its infringement contentions upon the

transfer of the case to Illinois.  Fujitsu's counsel could not explain the delay.[28]

Fujitsu's 2009 proposed (but not allowed) infringement contentions for the '418 Patent

were overwhelmingly based on Tellabs source code and software manuals describing the

operation of Tellabs' software.  The instances of Fujitsu citing to and discussing Tellabs'

software and software source code in the 2009 proposed infringement contentions are

innumerable.  Yet, Fujitsu's Renewed Motion argues that, until recently, Fujitsu "did not and

could not have understood the full extent of the system-wide interoperation between different

---

[26]  *Id.* at 6.

[27]  *See supra* §§ I(B)(1)-(5).

[28]  June 21, 2011 Hearing Tr. at 12-14 ("THE COURT: Yes, but you're revising these, and you're revising the infringement contentions now. Why did it take you so long to get to this point? … No. I want you to tell me why it took you so long to get to the point of making the adjustments that you've made. … Right.  So almost two years ago. … So we're up to two years ago.") (relevant pages attached to Conaty Decl., Ex. 8).

modules to effect critical features, such as the reference to a table in software."[29]   In reality, Fujitsu's 2009 proposed contentions discuss this exact theory at length and cite extensively to Tellabs source code.   The following is just one example of Fujitsu's discussion of Tellabs' software source code in Fujitsu's 2009 proposed infringement contentions:



Indeed, entire pages of exhibits to Fujitsu's June 2009 proposed (but not allowed) infringement contentions for the '418 Patent list previously produced source code files, including the following eighteen (18) exhibits identifying Tellabs software:



<hr />

[29]  Fujitsu Motion at 11.
[30]  Fujitsu's June of 2009 proposed (but not allowed) infringement contention claim charts for the '418 Patent at 43 (emphasis added) (Conaty Decl., Ex. 9); *see also id.* at 44-47 (showing additional clear citations to, images of, and discussion of Tellabs' source code).

(Exhibit 9 at 674.)  The 2009 proposed infringement contentions also repeatedly showed images of specific portions of Tellabs source code.[31]

Grasping for an explanation for its years of delay, Fujitsu further points to recent depositions and documents produced by Tellabs to support its amendment.  However, despite Fujitsu's allegation to the contrary, Tellabs has not withheld production of its source code until the last few weeks or months. Rather, counsel for Fujitsu had the documentation and source code necessary to articulate its infringement theory for years: ███████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.[32]  As Fujitsu's own brief acknowledges, on August 28, 2009, Fujitsu served numerous requests for production of Tellabs' source code that Fujitsu believed was relevant with respect to the '418 Patent.[33]

By continuously demanding documents and source code that are less and less relevant, Fujitsu attempts to disguise their lack of diligence behind a fabricated illusion that their delay was somehow caused by Tellabs.  In fact, even while stating to this Court in their Motion on October 20, 2011, that their recent discovery efforts "ultimately yielded the full production" of necessary source code,[34] Fujitsu then immediately demanded yet additional source code by correspondence dated October 24, 2011.[35]  To date, Fujitsu has served more than 1,500 formal

---

[31] *See, e.g.*, *id.* at 44-47.

[32] Letter from Tellabs counsel Kristoffer Leftwich to Fujitsu counsel Jeffrey Miller at 2 (Dec. 15, 2009) (Conaty Decl., Ex. 10); *see also* Conaty Decl., ¶ 38.

[33] Dkt. 377 at 10; *see also* Fujitsu's First Set of Requests for Production (served Aug. 28, 2009) (Conaty Decl., Ex. 11) (RFP No. 19, for example, asks for "All software source code relating to the structure, function, operation and/or use of each and every feature of the Tellabs 7100 Optical Transport System that relates to any and all types of a Synchronization Status Message.").

[34] Fujitsu's Renewed Motion at 11.

[35] *See* Letter from Fujitsu counsel Mark Shean to Tellabs counsel Kristoffer Leftwich (Oct. 24, 2011) (Conaty Decl., Ex. 12).

requests for documents on Tellabs.[36]  These requests were served in addition to the Eastern District of Texas' standing requirement to produce documents sufficient to show the operation of the accused products and the countless weekly or bi-weekly letters that include informal requests for documents.  It has become clear to Tellabs that such requests by Fujitsu are merely some combination of an attempt to increase the cost burden on Tellabs, an attempt to mask Fujitsu's lack of diligence, and a delay tactic to give Fujitsu more time to create new infringement theories that are as increasingly more creative as they are belated and prejudicial.

Gamesmanship and abusive discovery tactics should not give Fujitsu license to amend their infringement contentions each time Tellabs responds diligently to discovery requests as required by the Federal and Local Rules.  Rather, this Court must determine – as it has already - whether Fujitsu moved with reasonable diligence in seeking leave to amend from the point at which Fujitsu had the material information it required to assert new infringement allegations (June 2009 or earlier).  Tellingly, Fujitsu has not explained how the September 2011 source code is "necessary" to its assertion of the infringement allegations.[37]  A litigant cannot be allowed "to delay identification of its infringement theories until the end of discovery;"[38] nor is it reasonable to wait for years to file for leave to amend infringement contentions while waiting to "confirm" infringement theories.[39]

To date, Fujitsu's best explanation for its delay is that they were too busy to file for leave to amend their infringement contentions: "[F]rom early to late 2010 the parties were consumed with preparation of *Markman* briefs, a technical tutorial, and the *Markman* hearing itself." (Fujitsu's Resp. at 13.)  The Court remarked that it is "unfounded" to suggest that Fujitsu's

---

[36]  Conaty Decl., ¶ 39.
[37]  *See Volumetrics*, Conaty Decl., Ex. 4, at *59.
[38]  *See id.* (citing *O2 Micro*, 467 F.3d at 1364-66).
[39]  *See supra* § I(B)(5).

counsel was so busy with the other issues in this case that it required almost two years to prepare a motion for leave to file the amended infringement contentions. They drafted their proposed motion for leave to amend their contentions in 2009 and simply failed to file it with this Court. This Court already deemed this delay "unjustified" and "unexplained," and Fujitsu has absolutely no reasonable justification for repeating this previously denied request to the Court in a second Motion.

> **2.** **Fujitsu Fails to Explain the Connection Between the Numerous Theories of Infringement it Seeks to Add and its Software-Based Theory.**

Fujitsu focuses its Renewed Motion on what it claims is a new "software-based" theory of infringement and repeats its attempt to do what it was precluded from doing by this Court's recent order: add new theories of infringement that would significantly change the scope of this litigation, including, without limitation, indirect infringement and doctrine of equivalents theories for the '418 Patent.[40] These additional theories will significantly increase the number and complexity of issues in this case. Fujitsu, however, has not explained the connection between its "software-based" theory of infringement for the '418 Patent and these additional theories it seeks to add to its proposed infringement contentions. Fujitsu did not – and cannot – show good cause for adding each of these theories.

For example, while alleging it could not obtain discovery of Tellabs' source code, Fujitsu offers no excuse for its failure to previously articulate a doctrine of equivalents theory for the '418 Patent. Fujitsu's July 2008 final infringement contention claim charts were silent on the doctrine of equivalents for the '418 Patent, and there was only one conclusory sentence in the cover pleading of the infringement contentions meant to apply in general to all four Fujitsu

---

[40] See also, Section III at 12 above.

patents-in-suit that "the asserted claims are infringed under the doctrine of equivalents."[41]   The

theory was not included on an element-by-element basis for each asserted claim of a patent as

required by P.R. 3-1(d) of the Eastern District of Texas and LPR 2.2(d) of the Northern District

of Illinois.   A blanket, conclusory statement in infringement contentions like Fujitsu's regarding

the doctrine of equivalents is not enough disclosure of a contention to proceed with a doctrine of

equivalents theory.   *See Optimumpath, LLC v. Belkin Int'l, Inc.,* 2011 U.S. Dist. LEXIS 41634,

at *25-26 (N.D. Cal. 2011) (noting that courts "have rejected plaintiffs' attempts to assert claims

under the doctrine of equivalents with blanket statements") (Conaty Decl., Ex. 35); *see also*

*Implicit Networks, Inc. v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 100283, at *11-12 (N.D.

Cal. 2011) ("The Court agrees that Implicit cannot simply recite the doctrine of equivalents in its

cover pleading to its claim charts without providing specific analysis, on an element-by-element

basis, as to its theory of why there is infringement under the doctrine of equivalents.") (Conaty

Decl., Ex. 36).

Fujitsu has not explained why it should now be entitled to add a doctrine of equivalents

theory to this case.   Even if Fujitsu could provide such an explanation, controlling Federal

Circuit precedent does not support granting leave to amend infringement contentions for the

purpose of adding doctrine of equivalents arguments where the claim charts previously failed to

meet the local patent rules' requirements.   *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 773-74

(Fed. Cir. 2002).   Like the plaintiff in *Genentech*, Fujitsu cannot add doctrine of equivalents

theories when it previously disregarded the requirement to do so in its infringement contention

claim charts.   *Id.*

The same is true for Fujitsu attempt to amend its final infringement contentions to add

indirect infringement for the '418 Patent.   Fujitsu's infringement contention claim charts were

---

[41] *See* Fujitsu's 2008 Infringement Contentions at 7 (page not numbered) (Conaty Decl., Ex. 13).

completely silent on any theory of indirect infringement. Under the Eastern District's Patent Rule 3-1(b), Fujitsu was required to identify the infringing "acts," and it is black-letter law that method claims are directly infringed only by the person or entity that performs the patented method. *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("[A] method or process claim is directly infringed only when the process is performed"; "A method claim is directly infringed only by one practicing the patented method."). Fujitsu's brief concedes that the operative infringement contentions do not include indirect infringement for the '418 Patent and that it previously tried unsuccessfully to add indirect infringement:

> On June 12, 2009, Fujitsu moved pursuant to Texas Patent Rule 3-6(b) for leave to amend its preliminary infringement contentions <u>to add infringement contentions</u> for '418 patent claims 2-5 and <u>for indirect infringement</u>, and to expand on its prior contentions of literal infringement and infringement by application of the doctrine of equivalents….[42]

Now, years later, Fujitsu again seeks to allege that Tellabs infringes the '418 Patent indirectly. Fujitsu's lack of diligence in advancing this theory is irrefutable. Just months ago Fujitsu admitted that it had not collected any proof of direct infringement by a Tellabs customer, which they acknowledged is an "essential element of indirect infringement."[43] Fujitsu stated that three that three-and-a-half years into the case, that proof had not yet been collected:

> Here, the alleged direct infringers are Tellabs' customers…. The customers <u>will</u> provide information on what instructions and product support supplied by Tellabs, how the products were configured, and other operational details that will be integral to Fujitsu's indirect (contributory and induced) infringement analysis.[44]

At the time Fujitsu filed its Renewed Motion, it had not deposed a single Tellabs customer with respect to direct infringement of the '418 Patent. There is simply nothing diligent about Fujitsu's

---

[42] Fujitsu's Renewed Motion at 6 (emphasis added).
[43] Fujitsu's Resp. to Tellabs' Oral Mot. to Disallow Fujitsu's Am. Compl. & Infringement Contentions at 10 (July 19, 2011) (Dkt. 344).
[44] *Id.* at 10-11 (emphasis added).

attempt to add the doctrine of equivalents and indirect infringement to this case now, nearly four (4) years after it filed its complaint in Texas.

> **3.      Fujitsu's Own Delay and Lack of Diligence is to Blame for its Failure to Collect Meaningful Evidence Through Depositions of Tellabs Employees.**

To the extent Fujitsu has, in fact, failed to "collect meaningful evidence through depositions" related to the '418 Patent, Fujitsu's own delay and failure to diligently pursue depositions is to blame.  Fujitsu's Renewed Motion suggests that it could only now appreciate and articulate a software-based infringement theory – but Fujitsu passed on deposing Tellabs' software witnesses for years.  Fujitsu makes vague and general allegations that Tellabs "frustrated" such efforts, but the facts again show that Fujitsu delayed without explanation.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Further, Fujitsu's position that it needed this August and September 2011 deposition testimony to set forth its infringement theories, frankly, cannot be taken seriously.  ████████

███████████████████████████████████████████████████████████████

---

[45]  Fujitsu's Renewed Motion at 11-13.
[46]  *Id.* at 13.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Fujitsu appears to be simply pointing to the most recent

depositions it happened to take in the desperate attempt to create the illusion of diligence. But

finally taking a deposition does not make up for years of delay.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

47 ████████████████████████████████████

48 *Id.* at 14.

49 Letter from Tellabs counsel Kristoffer Leftwich to Fujitsu counsel Allan Jansen (Dec. 7, 2009)
(███████████████████████████████████████████████████████
(Conaty Decl., Ex. 14); *see also* letter from Tellabs counsel Kristoffer Leftwich to Fujitsu counsel Jeffrey
Miller at 5 (Dec. 23, 2009) (███████████████████████████████████
██████████████) (Conaty Decl., Ex. 15); *see also* letter from Tellabs counsel Kristoffer Leftwich to
Fujitsu counsel Jeffrey Miller at 3 (Dec. 11, 2009) (███████████████████████
████████████████████████████████████) (Conaty Decl., Ex. 16); *see also* Conaty Decl. Ex.
15 at 5 (█████████████████████████████████████████████████████
███████).

50 Fujitsu's First Rule 30(b)(6) Notice to Tellabs Re US Patent No. 5,386,418 (served Aug. 28, 2009) at
9 (Conaty Decl., Ex. 17).

51 Letter from Tellabs counsel Kristoffer Leftwich to Fujitsu counsel Allan Jansen at 2 (Nov. 30, 2009)
████████████████████████████████████████████████████████

██████).[53]  Fujitsu declined these dates (or failed to acknowledge them) and then did not resume its pursuit of these software witnesses until just recently.[54]

Far from being frustrated by Tellabs, Fujitsu has been completely dilatory in taking the deposition of Rule 30(b)(6) witnesses designated to provide testimony on the accused products. Fujitsu cannot make a strong showing of diligence when it delayed in seeking the deposition of witnesses. *See Network Appliance*, 2009 U.S. Dist. LEXIS 83090, at *8.  Fujitsu had access to source code and witnesses for years but has not been diligent.  Fujitsu did not take a single deposition of a Tellabs employee from August 26, 2010 ████████████████████████ ████████████████████████ until August 25, 2011 ██████████████████ ████████████.  Fujitsu's current counsel may simply be unaware of the source code, technical documents, and designated witnesses available to them years ago because of the overhaul to their litigation team.  Nevertheless, Tellabs should not pay the price for Fujitsu reshuffling its litigation team and failing to move forward diligently in this litigation.

---

██████████████████████.") (Conaty Decl., Ex. 18); *see also* Conaty Decl., Ex. 14 (██████
[52] Letter from Tellabs counsel Benjamin Kelly to Fujitsu counsel Mark Stirrat (Feb. 18, 2010) ("████████████████████████████████████████████ ████████████████.") (Conaty Decl., Ex. 19).
[53] *Id.* ("█████████████████████ ████████████████████.").
[54] Letter from Fujitsu counsel Jeffrey Miller to Tellabs counsel Kristoffer Leftwich (Dec. 8, 2009) ████████████████████████████████████████") (Conaty Decl., Ex. 20); *see also* email from Tellabs counsel Kristoffer Leftwich to Fujitsu counsel Mark Stirrat (Feb. 20, 2010) ("████████████████████████████████████████████ ████████████████") (Conaty Decl., Ex. 21).

4.    **Fujitsu Also Fails to Show Diligence With Respect to Adding Numerous Theories for the '163, '737, and '681 Patents.**

a.  **Fujitsu Has Known of the Third Party Vendors, but Delayed in Taking Discovery From Them For Years.**

Fujitsu argues that discovery from third-party vendors revealed new information, in part because Tellabs and the third-parties frustrated Fujitsu's efforts earlier in the case. However, the fact is that Fujitsu's own delay and lack of diligence pursuing discovery is the reason Fujitsu is just now collecting information from these third-parties. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████  This is not diligence.

In response to interrogatories from Tellabs, Fujitsu admitted that such vendors are not relevant to Fujitsu's infringement contentions: ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████  ██████████████████

---

55    *See, e.g.,* Fujitsu's 2008 Infringement Contentions claim chart for the '737 Patent at 1 ████████████████████████████████████████ ).

56    ████████████████████████████████████████████████████████

57    ████████████████████████████████████████████████ .

58    Fujitsu's Objs. and Responses to Tellabs' First Set of Interrogatories at 21 (emphasis added) (Conaty Decl., Ex. 25).

████████████████████████████████████████████ Based on Fujitsu's own representations, this third-party manufacturer blame-game is a red-herring not to be taken seriously.

### b. The Products Fujitsu Seeks to Add to the Case are Not New (and Some Were Released as Far Back as 2006).

Fujitsu also seeks to accuse additional optical amplifier modules of infringing the '163, '737, and '681 Patents. Although Fujitsu declined to even provide a clear list of the optical amplifier modules it desires to add, Tellabs believes the list includes at least the following:



Far from Tellabs only "recently" beginning to commercialize these modules as Fujitsu claims, the modules were actually released on the dates below:



---

59 *Id.* at 26 (emphasis added).
60

████████████████████████████████████████████████████████████

 Clearly, Fujitsu has not acted with diligence in delaying to add the above modules to this case.

**B.    Fujitsu's Amendment of its Final Contentions Would Cause Significant Prejudice to Tellabs.**

Fujitsu must show that Tellabs would not be prejudiced by its proposed amendments. *See O2 Micro*, 467 F.3d at 1368. Fujitsu has not satisfied its burden of proof. Here, allowing Fujitsu to amend its infringement contentions will cause substantial prejudice to Tellabs. Fujitsu's proposed amended final infringement contentions would significantly disrupt the analysis of issues and defenses that Tellabs developed over the more than three years since Fujitsu's final infringement contentions were served. They would also cause Tellabs to incur additional expense in assessing its analyses of those issues. The addition of indirect infringement and doctrine of equivalents for the '418 Patent, alone, would substantially complicate and add to the issues in this case. And, although Fujitsu suggests that the parties would "jointly" seek a trial date continuance, this case has already been pending for nearly four years, and Tellabs does not in fact desire a continuance. Nor would a continuance cure the prejudice to Tellabs because substantial development of the issues in this case has already occurred.

Importantly, the Court already found just over one month ago that "Tellabs would be severely prejudiced by allowing Fujitsu to now pursue [additional] infringement theories at this late date."[63]  The Court correctly observed that the parties have been actively engaged in discovery, including document production and depositions.  The identification of new products and theories that previously were not at issue in this case would mean Tellabs would have to once again perform extensive (and costly) searches and reviews of electronically stored information and witnesses would need to deposed again, all of which could have been handled more cost-effectively by Fujitsu's counsel if the new infringement theories had been added to this action when the case was transferred to this Court in 2009.

Moreover, over the past two years, Tellabs proceeded with this litigation under the premise that certain products and patent claims were not at issue and developed its noninfringement and claim construction positions based on this underlying premise. The *Markman* phase of this litigation is now concluding, with a trial date scheduled for July 16, 2012. Introducing additional Tellabs products and infringement theories into the litigation at this late stage, after Tellabs committed to its invalidity, noninfringement, and claim construction positions, would be "highly prejudicial," as acknowledged by the Court.[64]

Nothing has changed with respect to the prejudice suffered by Tellabs since Fujitsu's most recent motion for leave to amend its infringement contentions, and the prejudice suffered by Tellabs would be even greater.

---

[63] Dkt. 377 at 3.
[64] *Id.* at 4.

**C.      There is Nothing so Unique About This Case to Warrant a Radical Departure from the Local Patent Rules' Goal of Early Disclosure and to Permit Final Infringement Contentions at This Late Stage of the Litigation.**

Fujitsu's Renewed Motion rehashes the recently decided motion to amend Fujitsu's infringement contentions and makes a vague and general suggestion that special circumstances exist in this case that justify a remarkable departure from the language and stated purpose of the local patent rules.  In fact, Fujitsu asks the Court to turn the local patent rules on their head and give Fujitsu free reign to serve final infringement contentions at the 11th hour – or more specifically, either now or 30 days after their last deposition – rather than at an early stage of the case.

There is nothing so unique about this case to justify such an extreme departure from the local patent rules of both the Eastern District of Texas and Northern District of Illinois.  By requiring plaintiffs to formulate and crystallize their infringement contentions early in litigation, patent rules provide a clear path for the case and allow the parties to focus discovery on the articulated allegations and to narrow the issues for *Markman*, summary judgment, trial, and beyond.  Fujitsu's requested amendment allows for the exact opposite: a vague and ever-expanding range of issues that will not be finalized until the last possible moment before trial.

It is undeniable that when Fujitsu served its July 2008 infringement contentions, Fujitsu was, or should have been, operating under the assumption that those contentions were its final contentions, subject to the limited exceptions of Rule 3-6(a).[65]  Furthermore, this Court already determined that, even under the Northern District of Illinois' local patent rules, "Fujitsu's 2008 Infringement Contentions effectively became its Final Infringement Contentions."[66]  In Illinois, Final Infringement Contentions are due a mere 21 weeks after service of Initial Infringement

---

[65]  *See id.* at 2 (acknowledging same).
[66]  *Id.* at 2 n.4.

Contentions.[67]  What Fujitsu seeks through its Motion is not a slight suspension of this clearly articulated deadline.  Rather, Fujitsu seeks an additional three years.

There is absolutely no "manifest injustice" to Fujitsu, as they claim, if they are not permitted another opportunity to change its Final Infringement Contentions.  If the deadline to amend their contentions was in any way unclear upon the transfer of this case to Illinois or the adoption of the Illinois Patent Rules, Fujitsu could have and should have promptly requested clarification from this Court.  There have been no special circumstances in this case that justify such an incredible delay.  Fujitsu's Renewed Motion is merely an attempt at an end-run around the requirement to show good cause to amend.

## IV.    CONCLUSION.

For all of the foregoing reasons, Tellabs respectfully asks the Court to deny Fujitsu's Motion to Set a Schedule to Serve Final Contentions and in the Alternative to File Amended Final Infringement Contentions.

---

[67]  LPR 3.1.

Dated: December 1, 2011

Respectfully submitted,

/s/ James P. Bradley

David T. Pritikin
Richard A. Cederoth
Richard O'Malley

SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois  60603
Telephone:  312.853.7000
Facsimile:  312.853.7036

James P. Bradley (*admitted pro hac vice*)
Texas Bar No. 02826000
Steven C. Malin (*admitted pro hac vice*)
Texas Bar No. 12859750
Mark A. Dodd (*admitted pro hac vice*)
Texas Bar No. 24040815
Kelley A. Conaty (*admitted pro hac vice*)
Texas Bar No. 24040716
Kristoffer B. Leftwich (*admitted pro hac vice*)
Texas Bar No. 24046285
Benjamin B. Kelly (*admitted pro hac vice*)
Texas Bar No. 24055765

SIDLEY AUSTIN LLP
717 North Harwood
Suite 3400
Dallas, Texas 75201
Telephone:  214.981.3300
Facsimile:  214.981.3400

ATTORNEYS FOR
TELLABS OPERATIONS, INC., TELLABS INC.,
AND TELLABS NORTH AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2011 I caused a copy of the foregoing document to be served on opposing counsel via e-mail.

*/s/ Kelley Conaty*

## CERTIFICATE OF PERMISSION TO FILE UNDER SEAL

I hereby certify that this document is permitted to be filed under seal pursuant to Local Rule 26.2 and paragraphs 21 and 22 of the Stipulated Second Amended Protective Order (Dkt. No. 95) entered in this case on January 20, 2009.

*/s/ Kelley Conaty*