IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED<br><br>PLAINTIFF,<br><br>V.<br><br>TELLABS OPERATIONS, INC., AND TELLABS, INC.<br><br>DEFENDANTS. | CIVIL ACTION NO. 1:09- CV-04530<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |
| TELLABS OPERATIONS, INC.,<br><br>PLAINTIFF,<br><br>V.<br><br>FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC.,<br><br>DEFENDANTS. | CIVIL ACTION NO. 1:08- CV- 3379<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |
| FUJITSU LIMITED<br><br>COUNTERCLAIMANT,<br><br>V.<br><br>TELLABS OPERATIONS, INC., TELLABS, INC., AND TELLABS NORTH AMERICA, INC.,<br><br>COUNTER DEFENDANTS. | |

**FUJITSU LIMITED'S AND FUJITSU NETWORK COMMUNICATIONS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO
SET A SCHEDULE TO SERVE FINAL CONTENTIONS AND IN THE ALTERNATIVE
TO FILE AMENDED FINAL INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 4

      A.     Tellabs Interpretation Of The Local Patent Rules Would Render The Local Patent Rules Invalid, And Thus Should Be Rejected ............................................ 4

      B.     Fujitsu Is Entitled To Amend Its Infringement Contentions In Light Of The Court's Prior Order ............................................................................................ 8

           1.     Infringement contentions for the Optical Amplifier Patents ..................... 8

                a.     Identification of the substance of the supplementation ................. 8

                b.     Fujitsu promptly moved to amend and there is both good cause for the amendments and no unfair prejudice to Tellabs .................................................................................................. 9

           2.     Infringement contentions for the '418 Patent .......................................... 17

                a.     Identification of the substance of the amendments ..................... 17

                b.     Fujitsu promptly moved to amend and there is both good cause for the amendments and no unfair prejudice to Tellabs .................................................................................................. 18

      C.     Indirect Infringement And Infringement Under The Doctrine of Equivalents Have Been Part Of The Case For Years ......................................... 23

III.     CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*,
2008 U.S. District LEXIS 16556 (N.D. Cal. March 3, 2008) (hereafter "*Stanford*") .......13, 14

*Connectel, LLC v. Cisco Systems, Inc.*,
391 F.Supp.2d 526 (E.D. Texas 2005).................................................................................11

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
287 F.3d 1062 (2002).........................................................................................................10

*O2 Micro International, Ltd. v. Monolithic Power Systems*,
467 F.3d (Fed.Cir. 2006).............................................................................................. passim

*Softvault Sys., Inc. v. Microsoft Corp.*,
2007 U.S. Dist. LEXIS 33060 (E.D. Tex. May 4, 2007).....................................................12

*SRI Int'l v. Matsushita Electric Corp. of America*,
775 F.2d 1107 (Fed. Cir. 1985) (en banc)..........................................................................10

*Sybase, Inc. v. Vertica Sys., Inc.*,
2009 U.S. Dist. LEXIS 110775 (E.D. Tex. Nov. 30, 2009) ................................................20

*Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*,
2011 U.S. Dist. LEXIS 67532 (M.D.N.C. June 9, 2011) ....................................................22

OTHER AUTHORITIES

*Fed. R. Civ. P. 33(c)* ...........................................................................................................5

F.R.Civ.P. 54(b) ...................................................................................................................6

F.R.Civ.P. 60(b) ...................................................................................................................6

Local Rule 3-4 (E.D. Texas).................................................................................................2

LPR 1.1 (N.D. Illinois) ......................................................................................................5, 7

LPR 3.1 (N.D. Illinois) .....................................................................................................5, 24

LPR 3.4 (N.D. Illinois) ......................................................................................................5, 8

Fujitsu Limited and Fujitsu Network Communications, Inc. (collectively "Fujitsu"), by and through its counsel, David C. Van Dyke, respectfully submit this Reply in support of their *Motion to Set a Schedule to Serve Final Contentions and in the Alternative to File Amended Final Infringement Contentions* ("Motion") (Dkt. 397, 1:09-cv-04530, dated October 20, 2011).

## I.    INTRODUCTION

In its September 29, 2011 Order (Dkt. 377, 1:09-cv-04530), the Court expressly recognized that on-going discovery in this case may warrant amendment to Fujitsu's infringement contentions. Due to information obtained from recent discovery, Fujitsu now seeks such relief. Fujitsu's current Motion requests leave to amend its infringement contentions in two separate, distinct forms, consistent with the Court's Order (Dkt 377, 1:09-cv-04530) at 4.

To recap, the first type of amendment is a supplement that applies to the '163, '737 and '681 Patents (collectively "the Optical Amplifier Patents"). The Optical Amplifier Patents are all directed to and claim aspects of Fujitsu's inventive optical amplifier control scheme. As detailed in Fujitsu's opening and supplemental memoranda, and further herein, the supplement to the Optical Amplifier Patent infringement contentions requested by Fujitsu amounts to nothing more than an extension of the ***same, original theory of infringement*** Fujitsu first asserted against the Tellabs 7100 products in Fujitsu's infringement contentions of 2008, to an updated and more detailed listing of components, *i.e.*, updated amplifier modules, in the accused Tellabs 7100 products of today. In other words, Fujitsu has not changed or adjusted its infringement theory with respect to the Optical Amplifier Patents since 2008, nor has Fujitsu changed the Tellabs product family it is accusing of infringement. Instead, Fujitsu is merely adding specificity to the listing of updated amplifier modules in the accused Tellabs 7100 products, based on information

recently discovered during the course of this litigation.[1] All of these updated modules contain the ***same basic type of optical amplifier control components arranged in the same basic configuration to perform the same basic control functions according to the same control architecture*** as the Tellabs 7100 modules identified in Fujitsu's 2008 infringement contentions. Hence, the analysis of why the updated amplifier modules infringe the Optical Amplifier Patents is the ***same*** as the analysis of why the amplifier modules identified in 2008 infringe. Tellabs does not argue otherwise.

The second type of amendment applies only to the '418 Patent. For the '418 Patent, Fujitsu is entitled to amend its infringement contentions because the amended contentions present a new theory of infringement based on information that, despite being relevant and requested by Fujitsu for several years, was only recently produced by Tellabs. Tellabs' arguments that source code production began in 2008 completely ignores the factual record which demonstrates that ***until recently Tellabs withheld parts of the source code critical and necessary to formulate Fujitsu's current infringement theory for the '418 Patent***. Tellabs was not diligent in producing all relevant source code,[2] either when initially requested years ago or at the beginning of this case as required by the Eastern District of Texas Patent Local Rule 3-4, and

---

[1] Many of these updated modules were not even sold by Tellabs at the time the complaints for this case were filed.

[2] Tellabs' source code is text written by Tellabs' engineers using a specific programming language. Programming language, such as C or C++, is specially designed to facilitate the work of computer programmers. Tellabs' programmers, using source code, will specify in one or more source code files the actions to be performed by any processor(s) in the accused Tellabs products. The source code is subsequently translated (compiled) into machine code that processor(s) can execute. Source code files are typically highly interdependent, insofar as functions within one file may call for execution of other functions described in another file. This is why it is critical to have all of the files that make up a software program in order to piece everything together. Source code basically serves as the blueprint for the operation of Tellabs products, as it describes how Tellabs software systems, and in turn the Tellabs products, are designed to function.

2

Tellabs does not dispute that it delayed in producing *all* of the requested code until now. Tellabs therefore has no basis to claim prejudice for the introduction of a new infringement theory at this stage of the litigation. Nor should Tellabs be rewarded for its dilatory tactics.

Fujitsu requests that the Court grant it relief in one of two alternative manners. First, the Court could simply set dates for Final Infringement Contentions, which would then trigger new deadlines for the various final contention disclosures contemplated under the Local Patent Rules. Fujitsu believes that such recourse is warranted here because, although the Local Patent Rules were adopted by the Northern District of Illinois during the course of the litigation, by their terms the Local Patent Rules did not automatically apply to this case due to its pre-existing status. Moreover, until three months ago, the Court neither applied the Local Patent Rules nor indicated in what manner they would be applied to this case (Dkt. 377, 1:09-cv-04530). As a result, the parties have not complied with significant other aspects of the Local Patent Rules, including the service of contentions related to non-infringement, validity, unenforceability, or enforceability. Fundamental to this first form of requested relief is that the public policy reasons for implementing infringement contentions via local patent rules as enunciated by the Federal Circuit in *O2 Micro* have been satisfied by Fujitsu's responses, as amended and supplemented, to Tellabs' outstanding interrogatories.

Second, the Court could grant Fujitsu's motion for leave to supplement and amend its final infringement contentions. Fundamental to this second form of relief, and as demonstrated in its opening and supplemental memoranda and further herein, Fujitsu has good cause for the supplementation and amendments, the supplementation and amendments would not unduly prejudice Tellabs, and the supplementation and amendments are being made promptly.

3

Furthermore, Tellabs' Response (Dkt. 438, 1:09-cv-04530) to Fujitsu's motion should be rejected because it (i) relies on case law that either supports Fujitsu's position or is inapposite, and (ii) interprets the Local Patent Rules, on the facts of this case, in a manner that directly conflicts with the Federal Rules of Civil Procedure, in essence invalidating the Local Patent Rules.

## II.     ARGUMENT

### A.     Tellabs Interpretation Of The Local Patent Rules Would Render The Local Patent Rules Invalid, And Thus Should Be Rejected

Tellabs reliance on the Federal Circuit's decision in *O2 Micro* is misplaced for several reasons.[3] As a primary matter, the *O2 Micro* Court was construing the Patent Local Rules for the Northern District of California, and its holding is distinguishable as limited to the facts of that

---

[3]   Tellabs' own position in ***both*** of its co-pending summary judgment motions (Dkt. 385-2 & Dkt. 390-2) ***contradicts*** its assertion in its responsive brief (Dkt. 438, pp. 3-4) that the parties' original infringement and invalidity contentions were "final" under E.D. Tex. P.R. 3-6(a). In its motion for summary judgment of invalidity of the '418 Patent, Tellabs raises a new invalidity argument that was not previously charted or identified in Tellabs' invalidity contentions. Tellabs' Mot. & Memo. of Law, Dkt. 385-2, pp. 26-29; *but see* Defendants Tellabs, Inc.'s and Tellabs Operations, Inc.'s Invalidity Contentions, served Sept. 29, 2008, Exhibits B and F. Although Tellabs alleged that another reference, the *Literati* patent, "incorporates by reference the disclosure of U.S. Patent No. 4,736,393," before filing its summary judgment motion Tellabs never argued that the Krisher 018 Contribution was anticipatory and incorporated by reference the Krisher 017 Contribution (*see* Ex. F, p. 90). Further, Tellabs has never amended its invalidity contentions over the past three years to include this new argument.

Similarly, in its motion for summary judgment of invalidity of the '163 Patent, Tellabs introduces new references (the Toba paper, the Iqbal paper, the Giles paper, and the Inoue paper) and raises new obviousness arguments based on those references, none of which were previously charted or identified in its invalidity contentions. Tellabs' Mot. & Memo. of Law, Dkt. 390-2, pp. 4-5, 23-26, 29; *but see* Defendants Tellabs, Inc.'s and Tellabs Operations, Inc.'s Invalidity Contentions, served Sept. 29, 2008, Exhibits D and H. Tellabs has never amended its invalidity contentions over the past three years to include these new references and obviousness arguments.

***Tellabs cannot simultaneously oppose Fujitsu's pending motion to amend Fujitsu's infringement contentions (Dkt. 397) and assert new invalidity theories and references that were never included in its now "final" invalidity contentions.***

case. *O2 Micro International, Ltd. v. Monolithic Power Systems*, 467 F.3d, 1355, 1362 (Fed.Cir. 2006). Under the Patent Local Rules for the Northern District of California, preliminary infringement contentions are deemed final absent a showing of good cause. In contrast, the Local Patent Rules for the Northern District of Illinois ("LPR") permit amendment of preliminary infringement contentions after considerable discovery has been taken, as a matter of right and without requiring a showing of good cause (LPR 3.1).[4] In the present case, prior to the September 29, 2011 Order, the Court had neither set any deadline for the end of fact discovery nor held that the Local Patent Rules applied, in whole or in part, to this case. *See*, LPR 1.1. *O2 Micro* is thus not controlling.

Furthermore, *O2 Micro* does not support Tellabs' argument. The *O2 Micro* court recognized the potential conflict that exists between infringement contentions under patent local rules and sufficiency of responses to contention interrogatories under the Federal Rules of Civil Procedure. Despite that recognition, the *O2 Micro* court focused solely on facts before it, and its holding considered only amending infringement contentions under patent local rules, without considering or resolving any actual conflict between infringement contentions and contention interrogatory responses such as exists here. In this regard, the *O2 Micro* court acknowledged the clear policy reasons for the adoption of patent local rules requiring infringement contentions:

> In practice the latter objective--allowing the parties to discover their opponent's theories of liability--has been difficult to achieve through traditional discovery mechanisms such as contention interrogatories. Answers to such interrogatories are often postponed until the close of discovery, *see Fed. R. Civ. P. 33(c)*, or are amended as a matter of course during the discovery period... The local patent rules in the Northern District of California are designed to address this problem...
> 467 F.2d at 1365.

---

[4] This district does require good cause be demonstrated when amending the final infringement contentions a party may provide as of right (LPR 3.4).

But as detailed in this Motion, and Fujitsu's prior motion for leave to amend its complaint (Dkt. 318, dated May 6, 2011; *see also* Dkt. 340, dated June 12, 2011 & Dkt. 344, dated June 19, 2011), Tellabs served contention interrogatories on Fujitsu early in the case and Fujitsu has diligently responded and updated its infringement contentions in its responses to those interrogatories.. Tellabs has *__never__* challenged the fact that Fujitsu's discovery responses kept Tellabs fully informed on a timely basis of Fujitsu's infringement theories. Nor has Tellabs challenged the timeliness of Fujitsu's supplements and amendments as discovery in this case progressed. Fujitsu has thus fully complied with its discovery obligations under the Federal Rules of Civil Procedure and, through its interrogatory responses, with the policy reasons behind the local patent rule requirement for infringement contentions.[5]

What Tellabs is asking for, through a rigid application of the Local Patent Rules to this case, would render meaningless and effectively void Fujitsu's discovery responses under the Federal Rules of Civil Procedure. In other words, as recognized by the Federal Circuit in *O2 Micro*, Tellabs' interpretation of the Local Patent Rules would create a direct conflict with the Federal Rules of Civil Procedure that would render the Local Patent Rules invalid:

> To be valid, local rules *__must be consistent with__* both acts of Congress and *__the Federal Rules of Civil Procedure__*. A local rule need not be directly contradictory to a federal rule to be invalid; a local rule that is inconsistent with the purposes of a federal rule is

---

[5]  Fujitsu notes that in light of the Court's misapplication of the *O2 Micro* decision, Tellabs is correct that Fujitsu could have framed this motion as a Motion for Reconsideration of the Court's September 29, 2011 Order. F.R.Civ.P. 54(b), and 60(b). Regardless, the Local Patent Rules are sufficiently flexible so as to award Fujitsu its relief. In addition, Fujitsu notes that Tellabs has misstated the record regarding the relief requested herein. Contrary to Tellabs' allegation, the Court's September 29, 2011 Order did not deny any prior motion by Fujitsu to amend infringement contentions. Instead, the Court's September 29, 2011 Order addressed only Fujitsu's Motion for Leave to File First Amended Complaint and Tellabs' oral motion to disallow the filing of Fujitsu's Amended Complaint and Fujitsu's supplemental infringement contentions. 9/29/2011 Order, p. 1. Hence, this is not a "renewed" motion as Tellabs would label it, but is Fujitsu's first motion for relief to amend its infringement contentions.

> also invalid. It is foreseeable that a local patent rule could conflict
> with the spirit, if not the letter, of the broad discovery regime under
> the Federal Rules of Civil Procedure, especially given the
> particular importance of discovery in complex patent cases.
> *O2 Micro*, 467 F.3d at 1365 (citations omitted) (emphasis
> supplied).

Under *O2 Micro,* Tellabs' argument must fail. Fujitsu's efforts to provide meaningful responses to Tellabs contention interrogatories served early in the case, seeking Fujitsu's infringement contentions, cannot and should not be ignored by the Court. Tellabs' attempt to rigidly apply the Local Patent Rules post hoc should also be rejected as a form of gamesmanship. Otherwise, Tellabs will in effect be allowed to override its own discovery demands propounded under the Federal Rules of Civil Procedure (as to which Fujitsu has always complied with its duty to update), arbitrarily restrict Fujitsu's infringement contentions and essentially negate most of the infringement related discovery already taken in this litigation from the time Fujitsu served its infringement contentions in 2008. Such a rigid application of the Local Patent Rules without regard to the conduct of discovery would be manifestly unjust to Fujitsu, who diligently supplemented its interrogatory responses to provide Tellabs with clear notice of its current infringement contentions at a time when the Local Patent Rules had not been applied to this case. The Court should accordingly exercise the broad discretion afforded it to apply the Local Patent Rules flexibly to this case and grant Fujitsu's Motion, so as to avoid any conflict with the Federal Rules of Civil Procedure. *See* LPR 1.1 ("The Court may apply all or part of the LPR to any such case already pending on the effective date of the LPR. The Court may modify the obligations and deadlines of the LPR based on the circumstances of any particular case.").

**B.    Fujitsu Is Entitled To Amend Its Infringement Contentions In Light Of The Court's Prior Order**

The Court's Order stated that if Fujitsu moved for leave to amend its infringement contentions, that Fujitsu must: (1) specifically identify the substance of the amendments; (2) make the requisite showing of good cause and absence of unfair prejudice to Tellabs as required under LPR 3.4; and (3) describe how the amendment is made promptly upon discovery of the basis for the amendment.  Fujitsu has done so, and Tellabs has not established otherwise. Fujitsu's Motion should be granted.

**1.    Infringement contentions for the Optical Amplifier Patents**

**a.    Identification of the substance of the supplementation**

Fujitsu's original infringement contentions were based on inspections of Tellabs' products that, as the Court is well aware, Fujitsu has elected not to pursue any longer.  Fujitsu's supplemental infringement contentions do not change Fujitsu's theories of infringement for the Optical Amplifier Patents.  Instead, the supplemental infringement contentions rely on evidence obtained during discovery, rather than the product inspections, to support Fujitsu's infringement analysis for each Optical Amplifier Patent.  As identified in the red-colored text in the exhibits to Fujitsu's supplemental memorandum, much of the evidence cited in Fujitsu's supplemental infringement contentions was obtained only recently.  Fujitsu's supplemental contentions include information on additional Tellabs' 7100 system components that infringe Fujitsu's Optical Amplifier Patents.  In particular, Fujitsu's supplemental infringement contentions identify more recent, updated Tellabs' 7100 optical amplifier modules, including the OLA-xR, CCM-xR, LxAM-E88 and OADM88-xR amplifier module families, that employ the same amplifier control scheme and architecture as the Tellabs 7100 amplifier modules analyzed in Fujitsu's 2008 infringement contentions.  (These updated modules infringe for the same reasons articulated in

8

Fujitsu's 2008 infringement contentions). Finally, Fujitsu's supplemental infringement contentions include an additional end-section analyzing how each element of the asserted Optical Amplifier Patent claims is also met through the doctrine of equivalents if the jury does not find literal infringement.[6]

### b. Fujitsu promptly moved to amend and there is both good cause for the amendments and no unfair prejudice to Tellabs

As explained in Fujitsu's opening memorandum, Fujitsu has good cause for the proposed amendments based on the tremendous amount of recent discovery including numerous party and third-party depositions. As further illustrated in Fujitsu's supplemental memorandum in support of its motion, much of the proposed supplemental infringement contentions for the Optical Amplifier Patents rely on evidence that was acquired only recently. The third party vendors who design and manufacture Tellabs' accused optical amplifier modules produced documents for the updated 88-channel modules between July 2011 and September, 2011 and produced witnesses for depositions in August and September 2011. Tellabs' Response (Dkt. 438, 1:09-cv-04530) alleges that early on it produced some documents on the updated modules included in Fujitsu's proposed infringement contentions. But Tellabs fails to acknowledge the extraordinary number of documents it produced in this action, many of which are technical in nature requiring in-depth review. Assuming *arguendo* that an attorney could review 5,000 pages of technical documents an hour full-time without interruption, it would still take three attorneys working full-time almost one full year to review the 27 million pages of documents Tellabs produced in this action.[7]

---

[6] If the Court disallows the Optical Amplifier Patent doctrine of equivalents analysis (analysis that was included in Fujitsu's proposed June 2011 infringement contentions), it need not deny Fujitsu's entire supplemental infringement contentions for the Optical Amplifier Patents.

[7] Tellabs does not dispute that many of the modules such a review would have identified were in fact never commercialized.

In its September 29, 2011 Order, the Court determined that Tellabs would be prejudiced by amended infringement contentions at this point in the litigation because (1) "introducing additional Tellabs products and infringement theories into the litigation at this late stage, after Tellabs has committed to its claim construction positions, would be highly prejudicial"; and (2) the addition of new accused products would require additional discovery. Tellabs' Response (Dkt. 438, 1:09-cv-04530), pp. 24-25.

Respectfully, the first part of the Court's determination regarding potential prejudice is legally erroneous. The Court fails to recognize that infringement and/or invalidity analysis ***has no bearing*** on claim construction. *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (2002) ("It is well settled that claims must be construed without reference to the accused device.") *citing SRI Int'l v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc). A party's theories of infringement and invalidity comprise extrinsic evidence that has no effect on how a claim term is to be properly construed. As the Court correctly stated in its *Markman* ruling, the claims are construed in light of the specification, prosecution history, and other intrinsic evidence. Issues of validity and especially infringement have no place in the proper construction of a claim term. Tellabs' allegation that "Tellabs long ago identified and articulated its *Markman* positions based on Fujitsu's final infringement contentions in 2008" is consequently contrived and meritless. Tellabs has not and cannot identify any prejudice whatsoever that it will suffer based on the fact that the claim construction phase of this litigation has passed.

Tellabs' allegation of prejudice is flawed for two additional reasons. First, the Court's September 29, 2011 Order and the Tellabs oral motion it was ruling upon with respect to infringement contentions only pertained to the Texas patents (*i.e.*, the '737, '418 and '163

Patents). Neither the oral motion nor the Court's Order addressed infringement contentions for the '681 Patent. Prior to the Court's Order of September 29, 2011, there was no indication from the Court that the Local Patent Rules would be applied, retroactively or otherwise, to this case, or that Fujitsu's 2008 infringement contentions would be considered final. Again, Tellabs' allegation that it based its *Markman* positions on Fujitsu's 2008 "final" infringement contentions, without regard for Fujitsu responses to Tellabs' contention interrogatories, is without foundation.

Second, as demonstrated above, Fujitsu has accused the same product family – the Tellabs 7100 Optical Transport system – of infringing the Optical Amplifier Patents throughout this litigation.[8] The infringement theories for each of the Optical Amplifier Patents have not changed during the course of the litigation. Fujitsu's proposed supplementation merely adds specificity to the updated modules used in the various configurations of the Tellabs 7100 system. All of these updated modules, as previously noted, contain the ***same basic type of optical amplifier control components arranged in the same basic configuration to perform the same basic control functions according to the same control architecture*** as the Tellabs 7100 modules identified in Fujitsu's 2008 infringement contentions. *See, Second Declaration Of Gino Cheng In Support Of Fujitsu's Motion To Set A Schedule To Serve Final Contentions And In The Alternative To File Amended Final Infringement Contentions* (hereinafter *"2nd Cheng Decl."*),

---

[8] Fujitsu's identification of accused products pursuant to E.D. of Texas PLR. 3-1(b) named the Tellabs 7100 Optical Transport System. Tellabs did not object to any ambiguity in the accused product identification or move for a more definite statement of the accused product. Fujitsu's Infringement Contentions and interrogatory responses analyzed exemplary configurations of Tellabs 7100 system, which included Tellabs optical amplifier modules. Courts have actually ordered updated infringement contentions analyzing exemplary products, where, like here, the underlying theories of infringement do not change among different products or configurations. *See, e.g., Connectel, LLC v. Cisco Systems, Inc.*, 391 F.Supp.2d 526 (E.D. Texas 2005) (Ordering a plaintiff to provide updated infringement contentions analyzing exemplary products, where, unlike in Fujitsu's initial infringement contentions, plaintiff failed to identify "a single structure, process, algorithm, feature or function of any accused product.").

Exhibits 22, 23 and 24. Fujitsu provided detailed infringement contentions for exemplary configurations of Tellabs 7100 systems in 2008, and *the infringement analysis contained in those 2008 contentions is identical to the infringement analysis for the updated 7100 modules identified in Fujitsu's supplemental contentions*. *Id.*

Even if this Court were to find – it should not – that Fujitsu's proposed supplementation invokes new products, this would not result in the need for any additional discovery. The reason is quite simple. As Tellabs admits in its Response, Tellabs and its vendors have already produced documents, source code, witnesses and interrogatory answers for all of the amplifier modules identified in Fujitsu's supplemental contentions. *See, e.g.*, Tellabs' Response (Dkt. 438, 1:09-cv-04530), pp. 24-25.[9] Tellabs has not identified a single document or witness who would need to be produced again, or a deposition it would need to re-take, in response to Fujitsu's proposed supplemental contentions.

Fujitsu does not plan to propound additional discovery for the updated amplifier modules identified in its supplemental contentions, because the documents, interrogatory responses, deposition testimony, and other discovery obtained by, or scheduled to be obtained by Fujitsu to date are sufficient to carry Fujitsu's burden of proof for all configurations of the Tellabs 7100 system. Fully aware of Fujitsu's infringement theories, Tellabs has already had a full opportunity to defend itself in discovery regarding these updated modules.[10]

---

[9] Without Tellabs and its vendors having produced this discovery, Fujitsu likely would not know of all the infringing configurations of the 7100 system.

[10] Tellabs fails to identify even a single invalidity defense that it would be forced to re-assess or re-analyze. Because of this failure, and the speculative, unfounded nature of its allegations of prejudice, Tellabs cannot properly rely on the Court's holding *Softvault Sys., Inc. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 33060, at *5 (E.D. Tex. May 4, 2007) (proposed amendment to claimed priority date would force the defendant to "incur additional expense in reassessing its invalidity analyses *based on an earlier priority date*") (emphasis added).

In sum, there are no legitimate or meaningful grounds for any finding of prejudice – evidentiary or in the form of discovery burden – to Tellabs caused by introduction of the upgraded modules listed in Fujitsu's supplemental infringement contentions for the Optical Amplifier Patents.

In an attempt to conjure up prejudice, Tellabs' Response (Dkt. 438, 1:09-cv-04530) to the supplemental contentions for the Optical Amplifier Patents argues nothing more than the purported fact of delay, and *ipso facto* concludes there is prejudice. Prejudice, however, requires something more tangible. *See*, *Board of Trustees of the Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 2008 U.S. District LEXIS 16556, at *11 (N.D. Cal. March 3, 2008) (finding no prejudice despite delay) (hereafter "*Stanford*").

The plaintiff in *Stanford* alleged that defendant's products infringed various patents. *Id.* Plaintiff did not include a third product in its infringement contentions that it knew was sold overseas, but was not yet sold in the United States. Plaintiff sought leave to amend its infringement contentions to include allegations against this third product months after the FDA approved the third product for U.S. sales. When analyzing plaintiff's diligence, the *Stanford* court noted that even though plaintiff had delayed filing the motion for leave, it had previously sought information on the third product in its discovery requests. The *Stanford* court then found that while plaintiff "was arguably not diligent in pursuing the amendment with this court, it was ***diligent in notifying and seeking discovery*** from [defendant]." *Id.* at *8-9 (emphasis added). The *Stanford* court also noted that *O2 Micro* does not compel a contrary result, explaining that the Federal Circuit in *O2 Micro* merely held that the *O2 Micro* district court did not abuse its discretion on the facts of that case. *Id.* at *10. In allowing plaintiff to amend its infringement contentions to accuse the third product, the *Stanford* court also noted that this best served judicial

economy. Otherwise, plaintiff would likely just file a new lawsuit accusing the third product. *Id.* at *14.

Apparently having perceived an opening for tactical maneuvering after the Court sustained Tellabs' oral objection to Fujitsu's proposed June 2011 amended infringement contentions, Tellabs attempts to fabricate prejudice regarding alleged new products, which are, in fact, merely updated amplifier modules for the accused 7100 system that use the same component functions and control architecture as the 7100 modules analyzed in Fujitsu's 2008 infringement contentions. Tellabs has long known through discovery that these "new" modules were in play. As an analogy, Fujitsu did not first allege that a Chevrolet Nova infringes Fujitsu patents on a 4-cylinder engine and now Fujitsu seeks to change its allegations to allege that a Corvette with an 8-cylinder engine also infringes. Rather, throughout this litigation Fujitsu has alleged that Tellabs' Chevrolet Nova (the 7100 system) has infringed Fujitsu's engine patents, and over time Tellabs has simply provided updated carburetors (amplifier modules, like the CCM-xR series) for the 4-cylinder engine in the Nova (the 7100 system).

The truth is that Tellabs suffers no prejudice at all from Fujitsu's proposed supplemental infringement contentions for the Optical Amplifier Patents. Only Fujitsu will be prejudiced if incremental upgrades to the long-accused Tellabs 7100 system are excluded from this litigation. Fujitsu has sought and received, both from Tellabs and third-parties, discovery related to each and every one of the updated amplifier modules which are the subject of Fujitsu's proposed supplemental infringement contentions for the Optical Amplifier Patents. In responding to discovery, Tellabs had no doubt that information on these modules was being sought, yet it failed

to raise any objections to discovery on the modules.[11] Indeed, Tellabs' Response admits that it has produced documents on each of the alleged "new" modules.[12]

Tellabs cites to "Technical Manuals" produced in earlier stages of the litigation as evidence that Fujitsu has had notice of the updated modules for years. Tellabs' "Technical Manuals" are in truth closer to marketing documents than true technical materials like Tellabs' "Hardware Requirement Specification" and "Hardware Design Description" from which Fujitsu might meaningfully evaluate infringement.[13] Tellabs' Response also admits that some of its amplifier modules for the 7100 system were not commercialized until after Fujitsu filed its complaint and the documents it produced for those post-complaint modules were all produced after Fujitsu's Texas infringement contentions were filed.[14]

Tellabs' counsel attended each of Fujitsu's depositions of Tellabs' third-party optical amplifier suppliers. During these depositions extensive testimony was elicited on each of the LxAM-E, LxAM-E88, OLA-xR, CCM-xR, and OADM88-xR series of updated amplifier modules, including testimony in response to questioning by Tellabs' counsel.[15]

---

[11]  For example, Fujitsu's December 31, 2009 Notice of Deposition of Tellabs regarding the Optical Amplifier Patents identified the accused modules, *inter alia*, of including the LIAM-E, LOAM-E, LRAM-E, and ELRAM-E for all of the Optical Amplifier Patents and Fujitsu's November 3, 2009 Notice of Deposition of Finisar Corporation identified the OLA-xR and CCM-xR modules. *See Declaration Of Gino Cheng In Support Of Fujitsu's Motion*, Dkt. 397-1 (hereinafter "*Cheng Decl.*") at ¶ 95.

[12]  *See*, Tellabs' Response (Dkt. 438, 1:09-cv-04530), pp. 24-25 fn. 60-62.

[13]  Notably, Tellabs ultimately produced "Hardware Requirement Specifications" for each of the module families it now claims it did not realize were at issue in the case.

[14]  *See*, Tellabs' Response (Dkt. 438, 1:09-cv-04530), pp. 24-25 (identifying the CCM-xR and OLA-xR as commercialized the same month Fujitsu filed its complaint, the LxAM-E88 as commercialized one year later, and the OADM88-xR series as commercialized in January 2010).

[15]  *See*, Tellabs' cross-examination at the August 10, 2011 deposition of Dr. Peter Wigley (Oclaro/Avanex) (hereinafter "Wigley Dep. (Aug. 8 2011)") (regarding LxAM-E, LxAM-E88,

Of great significance, nothing about the updated modules changes Fujitsu's infringement theories. Tellabs' corporate witnesses, as well as the third-party supplier witnesses, agreed again and again that the various structures and features relevant to Optical Amplifier Patent infringement were the same on the updated modules as on the modules from 2008 that Tellabs concedes are at issue.[16] To the extent any of the updated modules differ from their previous versions analyzed in Fujitsu's 2008 infringement contentions, they merely add functionality not relevant to Optical Amplifier Patent infringement analysis.

Tellabs also attempts to make much of the fact that Fujitsu did not depose many of Tellabs' third-party suppliers until July and August 2011, despite Fujitsu's alleged knowledge of some, but apparently not all, of Tellabs suppliers as early as 2009. Tellabs' Response (Dkt. 438, 1:09-cv-04530), p. 23. Tellabs does not dispute that, as outlined in the *Cheng Decl.* at ¶¶ 77-100, counsel for Fujitsu had to engage in extended negotiations involving numerous e-mails, teleconferences and written correspondence with multiple third parties regarding the scope of Fujitsu's subpoenas and deficiencies in third-party document productions. For example, Oclaro (formerly Avanex) produced batches of documents throughout the period cited by Tellabs, but

---

OLA-xR, and CCM-xR amplifiers); September 9, 2011 deposition of Dr. Lifu Gong (Oplink) (hereinafter "Gong Dep. (Sept. 9, 2011)") (regarding LxAM-E, OLA-xR, CCM-xR, and OADM88-xR amplifiers); and September 15, 2011 deposition of John DeAndrea (Finisar) (hereinafter "DeAndrea Dep. (Sept. 15, 2011)") (regarding CCM-xR and OLA-xR amplifiers). Tellabs' cross-examinations are respectively attached as Exhibits 25, 26 and 27 to *2nd Cheng Decl.*

[16] *See, e.g.*, the November 22, 2011 transcript of Tellabs' 30(b)(6) deponent Oleg Leonov (hereinafter "Leonov Dep. (Nov. 22, 2011);" *2nd Cheng Decl.*, Exhibit 28) at pp. 110:8-111:23 (describing how the functionality of various components is the same in the LIAM-E, LRAM-E, ELRAM-E and LOAM-E modules); pp. 181:19-182:10 (automatic power control feature the same in LxAM-E and LxAM-E88 series); pp. 197:18-198:1 (describing OSC handling as operating the same in the LxAM-E, LxAM-E88, CCM-xR, OLA-xR, and OADM88-xR module families as all the same). *See also*, Wigley Dep. (Aug. 8, 2011), *2nd Cheng Decl.*, Exhibit 29 at pp. 163:1-167:3 (testifying as to the similarities between the LOAM-E and LIAM-E modules); pp. 183:1-188:19 (comparing structures and features of the LRAM-E with the LIAM-E); pp. 205:10-210:8 (comparing structures and features of the ELRAM-E with the LIAM-E).

the majority of these documents were only produced in August 2011, and only after lengthy discussion. *See Cheng Decl.* at ¶¶ 83, 91 and 93. In fact, Oclaro produced its latest documents only after Oclaro's Rule 30(b)(6) witness was deposed, and negotiations still continue between Fujitsu's counsel and Oclaro's counsel regarding necessary discovery from Oclaro based on deficiencies identified at the Oclaro deposition. *See, 2nd Cheng Decl.* at ¶¶ 14-16; *see also* Letters from Oclaro's counsel to Tellabs' counsel Mark Dodd dated Oct. 24, 2011 & Oct. 28, 2011 (*2nd Cheng Decl.*, Exhibits 30 and 31 respectively).

## 2. Infringement contentions for the '418 Patent

### a. Identification of the substance of the amendments

The supplemental briefing and charts filed by Fujitsu on November 16, 2011 in response to Tellabs' request for additional information demonstrate the ubiquitous nature of the amendments to the infringement contentions for the '418 Patent. In contrast to the infringement contentions for the Optical Amplifier Patents, the contentions for the '418 Patent have essentially been completely overhauled because the infringement theory is completely new in light of recent discovery that filled in the many missing blanks in Tellabs' earlier source code productions.

Contrary to Tellabs' unsupported assertion, this is not the same "software-based" theory Fujitsu previously set forth in, for example, Fujitsu's 2009 contentions. Tellabs hinges its argument that Fujitsu has already proposed the same software-based infringement theory on the mere appearance of source code images and citations to high-level software manuals in Fujitsu's 2009 contentions against the 5500 product. Tellabs' gross mischaracterization of Fujitsu's new infringement theory is readily apparent from the 2009 excerpts it cites.

**REDACTED**

17

Tellabs' Response (Dkt. 438), p. 14. In other words, Tellabs has no basis for saying that Fujitsu's 2011 infringement theories for the '418 Patent are the "exact" same as the 2009 theories. Tellabs can't say so, because it has not pointed to any source code files it produced that actually carry out the steps of the asserted claims.

Tellabs' mischaracterization of Fujitsu's new theory as the same "software-based" theory previously contended by Fujitsu either fails to appreciate or seeks to obfuscate Fujitsu's new infringement theory directed to how the software components in the accused products operate and which components read on the limitations of the asserted '418 claims. In contrast to the new infringement theory, Fujitsu's prior infringement theory was hardware-centric. To the extent Fujitsu cited to some software code and high level manuals in its hardware-centric 2009 contentions, those contentions were largely focused on software at the hardware interface level.

REDACTED

Notably, Tellabs does not raise the same objections against Fujitsu's software-based theories in the proposed 2011 contentions for the 7100 product, or contest their newness by comparison against the 2009 theories and evidence. By its silence, Tellabs acknowledges that Fujitsu's proposed 2011 contentions against the 7100 product based on recent source code production are not the same as the 2009 theories and should be allowed.

> **b.** **Fujitsu promptly moved to amend and there is both good cause for the amendments and no unfair prejudice to Tellabs**

Tellabs' arguments regarding "good cause" and "unfair prejudice" in its Response (Dkt. 438) are based on a faulty premise. Tellabs would like this Court to conclude that the start of the production of source code starts the clock on the requesting party's diligence, regardless of the incompleteness of the source code production. However – as is clear from the extensive rounds

of letters, meet and confers, and negotiations, resulting ultimately in a successful supplementation of Tellabs' source code production in 2011 – Tellabs initial source code production in 2008 (for the accused Tellabs 5500 product) and 2009 (for the accused Tellabs 7100 product) was grossly deficient. *See*, *2nd Cheng Decl.* ¶¶ 2 and 5. Tellabs initial source code production in 2008 cannot, therefore, start the contentions clock.

Equally clear is that the recently produced source code is vital and necessary to Fujitsu's new infringement theory. In this regard, Tellabs does not dispute that ***out of the 120 source code files that Fujitsu charts in its contentions for the 5500 product, 95 of the files were produced in 2011, and 25 files were produced on May 25, 2010***. *See* Fujitsu's Motion, Ex. 5 (Dkt. 401, 1:09-cv-04530), pp. 4-8. Nor does Tellabs dispute that ***out of the 51 source code files that Fujitsu charts in its contentions for the 7100 product, all were produced between 2010 and 2011***. *See* Fujitsu's Motion, Ex. 5 (Dkt. 401, 1:09-cv-04530), pp. 9-10.

Tellabs' allegation that Fujitsu "continuously demand[ed] documents and source code that are less and less relevant" in an attempt "to disguise their lack of diligence" is categorically false, unfounded and without support. Tellabs' Response (Dkt. 438), p. 15. Instead, it appears that Tellabs' mischaracterization of the supplemental source code productions as "less and less relevant" is based on Tellabs' or counsel for Tellabs' unfamiliarity with the source code's contents. Although a source code file from its filename may superficially appear to be irrelevant to Fujitsu's '418 contentions (because, *e.g.*, it is not labeled "timing" or "sync"), that does not mean the file is irrelevant.

REDACTED

19

In this regard, the source code files recently produced by Tellabs were essential to understanding timing issues in the 5500 and 7100 products, and required before Fujitsu could set forth the new '418 infringement theory. Tellabs does not dispute that the source code first produced in September 2011 was necessary to show how synchronization status messages ("SSMs")[17] are used in the 5500 system and transmitted by the 5500 system.

$$\boxed{\text{REDACTED}}$$

[18]

Tellabs' assertion that the source code it produced in 2008 does not constitute "new evidence" is misleading and misses the point. The assertion is misleading, because when individual, unsorted and poorly commented files are produced in isolation, with other necessary and interrelated files missing from the production, they do not inform the reader as to the

---

[17] SSMs have been defined as a nibble (bits 5 to 8) in the S1 byte of the SONET line overhead and as a bit-oriented message in the data link of ESF DS1 signals, the purpose of which is to allow SONET network elements to reconfigure their synchronization references autonomously. *See, e.g.,* GR-253-CORE (Issue 4, Dec. 2005), pp. 5-59 & 5-60 (Table 5-9) (excerpt attached as Exhibit 32 to *2nd Cheng Decl.*). In either format, SSMs fall within the ambit of the Court's construction of "flag bit data" in the '418 Patent, which is "a predetermined code which occupies a fixed position in each frame and is provided in a predetermined position of the overhead (i.e. not the payload)." Court's Memorandum Opinion and Order, Dkt. 427 – 1:08-cv-03379, dated Sept. 29, 2011, pp. 8-9.

[18] Tellabs' reliance on *Sybase, Inc. v. Vertica Sys., Inc.*, 2009 U.S. Dist. LEXIS 110775 (E.D. Tex. Nov. 30, 2009) is misplaced. As a primary matter, the proposed amendments in *Sybase* would have added a new patent to the litigation. Fujitsu does not seek to add any new claims, let alone patents through its proposed amendments. Second, the party requesting leave to amend its infringement contentions did not contest that the opposing party had fully completed its source code production six months prior to the request for leave to amend. As is made clear from Tellabs' supplemental production of source code including a supplement in September 2011, and Fujitsu's heavy reliance upon the source code produced in September 2011, Tellabs production of material source code was not completed, if at all, until approximately one month prior to Fujitsu's motion for leave to amend its infringement contentions.

significance and operation of the code within. Tellabs' source code files refer to and depend on one another, so it is essential to have all missing files in order to complete the puzzle of how the 5500 product functions. Tellabs is effectively contending that Fujitsu should have intrinsically understood every line of code and every function called within the code produced in 2008, even though the information on what step called those functions and when were not provided to Fujitsu until 2011.

As pointed out in Fujitsu's opening memorandum, Tellabs' initial 2008 and 2009 source code productions for the 5500 and 7100 products were drastically deficient, to the point of being misleading and useless. *See, e.g.*, Fujitsu's Motion, Dkt. 397, 1:09-cv-04530, at pp. 8, 13-14; *see also, 2nd Cheng Decl.* ¶¶ 2 and 5. For the 5500 product, individual files of source code from different modules and different subsystems within each module (and possibly from different feature packages) were not sorted or segregated into different directories as produced by Tellabs. *See, 2nd Cheng Decl.* ¶ 2. Full directories with supporting or definitional files were not initially provided. *See, 2nd Cheng Decl.* ¶¶ 2-4. Rather than produce entire directories that would give Fujitsu's expert a baseline framework to work with, Tellabs either haphazardly or strategically selected individual files from here and there and produced them as a poorly coordinated pastiche. *See, 2nd Cheng Decl.* ¶¶ 2-4. Even more egregious, in certain of its productions Tellabs improperly formatted its files so they were not text searchable or even printable, necessitating burdensome and time-consuming efforts on the part of Fujitsu's expert. *See, e.g.*, Fujitsu's Motion, Dkt. 397, 1:09-cv-04530, at pp. 13-14 *and Cheng Decl.* ¶ 24. Similarly for the 7100 product, as stated above, the relevant timing classes could not be understood without their foundation classes, which Tellabs did not produce in 2008 or 2009. *See, 2nd Cheng Decl.,* ¶¶ 5-

6; *see also, e.g., Cheng Decl.* ¶ 31 (Tellabs' improper formatting of non-text-searchable source code for the 7100 product).

Due to the insufficiency of Tellabs' early source code productions, to the extent Fujitsu's new '418 infringement theory relies upon source code produced prior to 2011, this earlier source code should be considered recently produced because the information contained in the earlier source code could not be effectively understood or evaluated without the subsequent 2011 productions, particularly the foundation class productions.[19] *See, 2nd Cheng Decl.,* ¶¶ 5-6.

Tellabs continues to attempt to use delay and incomplete productions to its advantage. Inexplicably, Tellabs' Response chastises Fujitsu's representation to the Court that Fujitsu's tireless (and ultimately successful) efforts to follow up on Tellabs' deficient productions "ultimately yielded the full production" of necessary source code. Tellabs' Response (Dkt. 438, 1:09-cv-04530), p. 15. Following this statement by Fujitsu, Fujitsu has again been forced to pursue Tellabs regarding still missing pieces of source code. These missing pieces, which are part of the 7100 and Nano product source code, were first sought by Fujitsu on October 24, 2011 – four days after filing its Motion to amend its contentions. The missing code was uncovered through recent testimony obtained from Tellabs' 30(b)(6) witness, Mr. William Massey, who identified several 7100 modules for which Tellabs had failed to produce source code, despite their being responsive to discovery requests Fujitsu served on Tellabs over 2 years ago. *See* Fujitsu's Requests for Production Nos. 19, 24, 29, 34, 39, 44, 79, 84 and 89 dated August 28,

---

[19]   As with the other case law relied upon by Tellabs, *Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*, 2011 U.S. Dist. LEXIS 67532 (M.D.N.C. June 9, 2011) is factually inapposite. In *Volumetrics*, the plaintiff's proposed amended infringement contentions would have added additional patent claims to the case only one week prior to the close of discovery. Again, Fujitsu does not seek to add any new claims or patents. Second, the court in *Volumetrics* relied upon the *O2 Micro* decision, which, for the reasons detailed herein is distinguishable.

2009) *and* Massey Dep. (Sept. 30, 2011) at pp. 67:2-15, 74:10-12, 77:11-15 and 174:11-22, *2nd Cheng Decl.*, Exhibit 33.

After ignoring the October 24, 2011 letter requesting the missing source code identified by Mr. Massey, Tellabs responded to a November 22, 2011 follow-up letter from Fujitsu's counsel, initially stating that no additional code would be produced, but relenting once a motion to compel was threatened during a subsequent November 30, 2011 meet and confer. Some of this most-recently requested code was purportedly produced on December 9, 2011. *See, 2nd Cheng Decl.* ¶¶ 7-12. After a thorough review, it nevertheless appears that even at this late date, Tellabs has not changed its stonewalling tactics, and has omitted almost half the code Fujitsu on at least three occasions (October 24, November 22 and November 30, 2011) has requested since the Massey deposition.[20] *See, 2nd Cheng Decl.* ¶ 12.

Enough is enough. This Court should not permit Tellabs' non-compliance with its discovery obligations to prejudice Fujitsu's right to assert new '418 infringement theories based on Tellabs' recently produced documents.

### C. Indirect Infringement And Infringement Under The Doctrine of Equivalents Have Been Part Of The Case For Years

With respect to the inclusion of indirect infringement claims and infringement under the doctrine of equivalents ("DOE"), any assertion by Tellabs of prejudice or lack of knowledge is merely revisionist history. For the past several years, Tellabs has demanded that Fujitsu respond to various discovery requests specifically targeted at Fujitsu's indirect infringement allegations and/or allegations regarding infringement under the DOE. *See, e.g.,* Fujitsu's Obj. & Resp. to Tellabs' 2nd Set of Interrogatories (No. 18), served June 4, 2009 (DOE for the '681 Patent),

---

[20] This as yet unproduced code includes but is not limited to numerous hardware drivers. *See 2nd Cheng Decl.* ¶ 12.

*Cheng Decl.* at ¶ 16 *and* Ex. 16 (Dkt. 409, 1:09-cv-04530); Fujitsu's Supp. Obj. & Resp. to Tellabs' 2nd Set of Interrogatories (No. 18), served Oct. 19, 2011 (DOE for the '681 Patent), *Cheng Decl.* at ¶ 17 *and* Ex. 21 (Dkt. 413, 1:09-cv-04530); Fujitsu's Supp. Obj. & Resp. to Portions of Tellabs, Inc.'s and Tellabs Operations, Inc.'s First Set of Interrogatories (1, 2 and 4-7), served July 30, 2010, p. 4 & Ex. A-1 (an amended version of Exhibit A-1 that was previously set forth in Fujitsu's Second Amended Rule 3-1 Disclosure, served on Tellabs June 12, 2009, further fleshing out Fujitsu's indirect infringement theories for the '418 Patent), *Cheng Decl.* at ¶ 12 *and* Ex. 12 (Dkt. 406, 1:09-cv-04530); *and* Fujitsu's Third Supp. Obj. & Resp. to Portions of Tellabs, Inc.'s and Tellabs Operations, Inc.'s First Set of Interrogatories (Interrogatory No. 1), served Feb. 22, 2011, pp. 5-7 (fleshing out still further Fujitsu's indirect infringement theories for the '418 Patent), *Cheng Decl.* at ¶ 14 *and* Ex. 14 (Dkt. 408, 1:09-cv-04530) .

Tellabs' Answer to Fujitsu's original Complaint further demonstrates that Tellabs has always considered indirect infringement and infringement under the DOE to be at issue in the case. A comparison of the "Prayers for Relief" in Tellabs' Amended Answer (Dkt. 45, 6:08-cv-00022, filed on 9/29/2008) and Tellabs' Answer to Fujitsu's First Amended Complaint (Dkt. 441, 1:09-cv-04530, filed on 12/09/2011) demonstrates that Tellabs tacitly acknowledged the presence of Fujitsu's indirect and DOE infringement contentions from the start of the litigation:

| Tellabs' Amended Answer (filed on 9/29/2008) | Tellabs' Answer to Fujitsu's First Amended Complaint (filed on 1/19/2011) |
|---|---|
| a declaration that Tellabs has not and does not infringe, <u>directly or indirectly</u>, any valid claim of the [xxx] patent, <u>either literally or under the doctrine of equivalents</u>, willfully or otherwise; (underlining added) | a declaration that Tellabs has not infringed and does not infringe any valid claim of the [xxx] Patent, willfully or otherwise; |

Only after the Court struck down Fujitsu's proposed amended complaint of June 2011 did Tellabs opportunistically begin to argue that indirect infringement and infringement under the

doctrine of equivalents were not part of the case. Tellabs' deletion of the underlined language –

"indirect and direct" and "literally or by equivalents" – from its amended Prayer for Relief is a

belated attempt to hide the fact that all along – for over 3 years – Tellabs has known that these

issues were in the case. Tellabs demanded and received discovery on these issues. For Tellabs

to claim prejudice at this late stage is disingenuous and deceitful.

## III. CONCLUSION

Fujitsu respectfully requests that the Court grant this Motion.

Respectfully submitted,


Dated: <u>December 22, 2011</u>          <u>s/ David C. Van Dyke</u>
David C. Van Dyke (#6204705)
Howard & Howard
200 South Michigan Ave. Suite 1100
Chicago IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com

David E. Wang
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
Email: dwang@orrick.com

James C. Brooks
Christopher A. Hivick
Alyssa Caridis
Michael Owens
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
Email: jbrooks@orrick.com
Email: chivick@orrick.com
Email: acaridis@orrick.com
Email: mowens@orrick.com

Mark P. Wine
Thomas S. McConville
Mark J. Shean
Glen Liu
Gino Cheng
Orrick, Herrington & Sutcliffe, LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
Facsimile: (949) 567-6710
Email:  mwine@orrick.com
Email:  tmcconville@orrick.com
Email:  mshean@orrick.com
Email:  gliu@orrick.com
Email:  gcheng@orrick.com

Robert M. Isackson
Orrick, Herrington & Sutcliffe, LLP
51 West 52nd St.
New York, NY 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: rmisackson@orrick.com

***Attorneys for* FUJITSU LIMITED *and*
FUJITSU NETWORK COMMUNICATIONS,
INC.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FUJITSU LIMITED<br><br>PLAINTIFF,<br><br>v.<br><br>TELLABS OPERATIONS, INC., AND TELLABS, INC.<br><br>DEFENDANTS. | CIVIL ACTION NO. 1:09- CV-04530<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |
| TELLABS OPERATIONS, INC.,<br><br>PLAINTIFF,<br><br>v.<br><br>FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC.,<br><br>DEFENDANTS. | CIVIL ACTION NO. 1:08- CV- 3379<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |
| FUJITSU LIMITED<br><br>COUNTERCLAIMANT,<br><br>v.<br><br>TELLABS OPERATIONS, INC., TELLABS, INC., AND TELLABS NORTH AMERICA, INC.,<br><br>COUNTER DEFENDANTS. | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2011, I provided service to the persons listed below by causing a true and correct copy of Fujitsu Limited's and Fujitsu Network Communication, Inc.'s Redacted Reply Brief in Support of its Motion to Set a Schedule to Serve Final Contentions and in the Alternative, to File Amended Final Infringement Contentions be served on the following counsel of record by electronic mail and/or as agreed to by the parties:

David T. Pritikin
Richard A. Cederoth
Richard F. O'Malley
Jamie L. Secord
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000 / (312) 853-7036 (Fax)
E-Mail: dpritikin@sidley.com
E-Mail: rcederoth@sidley.com
E-Mail: romalley@sidley.com
E-Mail: jsecord@sidley.com

James P. Bradley
Mark A. Dodd
Kelley A. Conaty
Benjamin B. Kelly
Kristoffer B. Leftwich
Steven C. Malin
Sidley Austin, LLP
717 North Harwood, Suite 3400
Dallas, TX 75201
(214) 981-3300 / (214) 981-3400 (Fax)
E-Mail: jbradley@sidley.com
E-Mail: mdodd@sidley.com
E-Mail: bbkelly@sidley.com
E-Mail: kleftwich@sidley.com
E-Mail: smalin@sidley.com

Dated:  December 22, 2011          *s/ David C. Van Dyke*
David C. Van Dyke (#6204705)
Howard & Howard
200 South Michigan Ave. Suite 1100
Chicago IL 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email: dvd@h2law.com