IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TELLABS OPERATIONS, INC. and | ) | |
| TELLABS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| TELLABS OPERATIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Nos. 08 C 3379 & 09 C 4530 |
| v. | ) | |
| | ) | Consolidated for Discovery |
| FUJITSU LIMITED and FUJITSU | ) | |
| NETWORK COMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| FUJITSU LIMITED, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TELLABS OPERATIONS, INC., | ) | |
| TELLABS, INC., and TELLABS NORTH | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Counter Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Before the court is "Fujitsu Limited and Fujitsu Network Communications, Inc.'s Motion

to Set a Schedule to Serve Final Infringement Contentions and in the Alternative to File

Amended Final Infringement Contentions." (Case No. 09-4530 (Dkt. No. 397) (Fujitsu's Mot.))

For the reasons stated herein, the motion is denied.

BACKGROUND

Because this motion is, in some respects, a motion to reconsider this court's Sept. 29,

2011, ruling denying Fujitsu Limited leave to file an amended complaint and amended

infringement contentions (Dkt. No. 377 ("Order Denying Motion for Leave to Amend")), a brief

overview of the procedural history of this matter is necessary.

On January 29, 2008, Fujitsu Limited filed a complaint against Tellabs, Inc. and Tellabs

Operations, Inc. in the United States District Court for the Eastern District of Texas ("Texas

Action") alleging infringement of U.S. Patent Nos. 5,526,163 ("'163 Patent"); 5,521,737 ("'737

Patent"); 5,386,418 ("'418 Patent"); and 6,487,686 ("'686 Patent").[1] (Case No. 09-4530, Dkt.

No. 1, Fujitsu's Compl. ¶¶ 1, 12–35.) Tellabs Operations, Inc. then filed suit against Fujitsu

Limited and Fujitsu Network Communications, Inc. (collectively "Fujitsu") in the United States

District Court for the Northern District of Illinois ("Illinois Action") on June 11, 2008, alleging

infringement of U.S. Patent No. 7,369,772 ("'772 Patent"). (Case No. 08-3379, Dkt. No. 1,

Tellabs's Compl. ¶ 1.) Both Fujitsu Limited and Fujitsu Network Communications, Inc. filed

their amended answers, affirmative defenses, and counterclaims in the Illinois Action on April 1,

2009. (Dkt. Nos. 119, 120.) In its counterclaims, Fujitsu Limited alleged that Tellabs

Operations, Inc., Tellabs, Inc., and Tellabs North America (collectively "Tellabs") infringed two

---

[1] Fujitsu Limited's claim for infringement of the '686 Patent was dismissed on November 4, 2010. (Case No. 09-4530, Dkt. No. 249.)

additional patents assigned to Fujitsu Limited: U.S. Patent Nos. 7,227,681 ("'681 Patent") and

5,533,006 ("'006 Patent").[2]  (Dkt. No. 119.)

Fujitsu served its infringement contentions[3] related to the '418, '737, and '163 patents on

Tellabs on July 28, 2008,  in the Eastern District of Texas, with a corrected version filed a day

later.  (Dkt. No. 397-1 (Gino Cheng. Decl., ¶ 4.)  On Nov. 4, 2008, Fujitsu served its

infringement contentions for the '681 patent in this court, as it is the subject of Fujitsu's

counterclaim in the Illinois action.  (*Id.* ¶5.)

The Texas Action subsequently was transferred to the Northern District of Illinois on

July 29, 2009, and the two cases were consolidated before this court for purposes of discovery.

(Case No. 08-3379, Dkt. No. 202.)  On Sept. 29, 2011, this court issued its Markman

determination providing constructions of the disputed claim terms in the '418, '772,'773, '163,

and '681 patents.  (Case No. 09-4530, Dkt. No. 379.)  That same day, the court issued an order

denying Fujitsu's leave to file a first amended complaint in Case. No. 09-4530, and granting

Tellabs' oral motion to disallow the filing of that complaint and Fujitsu's supplemental

infringement contentions.  (Order Denying Leave to Amend 2.)  In that ruling, the court

observed that Fujitsu failed to make clear to the court how its proposed amended complaint and

amended infringement contentions differed from the original contentions it had filed in 2008 or

proposed amended contentions it had filed in 2009, when the case was pending before the

Eastern District of Texas.  (*Id.*)

---

[2] The '006 patent was invalidated on summary judgment.  (Case No. 08-3379, Dkt. No. 369.)

[3] Fujitsu continues to refer to these contentions as preliminary, but, as the court noted in its Sept. 29, 2011 order, they were final under the Eastern District of Texas' Local Patent Rules from the time they were served, subject to the exceptions put forth in those rules.

The court noted that Texas action initially was governed by the Local Patent Rules for the Eastern District of Texas. Under those rules, each party's infringement contentions are deemed final with the exception of amendments based in good faith on the court's claim construction ruling. E.D. Tex. P.R. 3-6(a). (Order Denying Leave to Amend 2.) A party cannot amend those contentions except by order of the court on a showing of good cause. E.D. Tex. P.R. 3-6(b). As such, this court held, at the time Fujitsu served its infringement contentions, it was operating under the assumption that they were final subject to the limited exceptions provided for in the Texas rules. (Order Denying Leave to Amend 2.) The court accordingly held that Fujitsu's 2008 Infringement Contentions were final.[4] (*Id.*)

The court then applied the Northern District of Illinois Local Patent Rules, which are now controlling, to determine whether Fujitsu's proposed amendments should be allowed.

Under Local Patent Rule 3.4:

> A party may amend its Final Infringement Contentions or Final Non-infringement and Invalidity Contentions only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment. An example of a circumstance that may support a finding of good cause, absent undue prejudice to the non-moving party, includes a claim construction by the Court different from that proposed by the party seeking amendment.

Based on this standard and the governing law of the Federal Circuit, the court denied Fujitsu leave to amend. (Order Denying Leave to Amend 3–4.)

---

[4] The court noted that even under this court's Local Patent Rules, the 2008 infringement contentions effectively became final, because Final Infringement contentions are due twenty-one weeks after the service of Initial Infringement Contentions. Local Patent Rule 3.1. That deadline passed long before Fujitsu served its amended contentions in June 2011.

Key to this decision was the fact that Fujitsu had identified at least some of the proposed amendments while the Texas Action was pending before Judge Davis in the Eastern District of Texas. (*Id.* at 2–3.)  On June 12, 2009, Fujitsu had sought leave to file a First Amended Complaint and amend its infringement contentions.  (*Id.* at 3.)  Judge Davis denied that motion without prejudice when the case was transferred to this district, but Fujitsu waited too long after the case was transferred and did not renew that motion until May 6, 2011.  (*Id.*)

Based on that substantial, unexplained delay, and the resulting prejudice to Tellabs, this court denied the motion.  (*Id.*)  Fujitsu's original complaint remains the operative one in the case, and its 2008 contentions are Fujitsu's final infringement contentions.  (*Id.* at 4.)  The court, however, recognized that both its *Markman* order and the on-going discovery in this case might warrant an amendment to the final infringement contentions.  (*Id.* at 4.)  The court emphasized that if Fujitsu sought leave to make such an amendment, "Fujitsu must specifically identify for the court the substance of the amendment in addition to making the requisite 'showing of good cause and absence of unfair prejudice' to Tellabs, as required by Local Patent Rule 3.4. Additionally, the court held, Fujitsu must describe how its amendment is "'made *promptly* upon the discovery of the basis for the amendment.'" (*Id.* (quoting L.P.R. 3.4.)(emphasis added).)

In its present motion, Fujitsu seeks, at least in part, a reconsideration of that ruling. Fujitsu asks this court "to apply L.P.R. 3 flexibly and set new deadlines for serving Final Contentions on all issues consistent with the unique circumstances of this litigation."  (Fujitsu's Mot. 4.)  The court does not believe that modification of its Sept. 29, 2011, order is appropriate. It is simply too late in the case to allow the wholesale introduction of new theories of

infringement. Fujitsu should have known, under the Eastern District of Texas' local patent rules, that its infringement contentions related to the '418, '737, and '163 patents would be deemed final, subject to limited exceptions. The '681 patent that was part of the Illinois Action prior to consolidation of the two cases presents somewhat different circumstances. The court notes that although Fujitsu labeled its infringement contentions as preliminary, *see* Cheng Decl., ¶ 4, this court made no reference to the contentions being preliminary in its order requiring the filing of infringement contentions by Nov. 4, 2008. (Case No. 08-3379, Dkt. No. 81.) This district's Local Patent Rules, with their distinction between preliminary and final contentions, had not yet gone into effect, as they took effect on Oct. 1, 2009. *See generally* Judge Matthew F. Kennelly, Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules,* 9 J. Marshall Rev. Intell. Prop. L. 202, 205 (2010).

Fujitsu repeatedly contends in its briefing that until this court's Sept. 29, 2011, order it was not clear whether the Local Patent Rules applied to this case.[5] If Fujitsu, however, had any doubts as to the applicability of the Northern District of Illinois' Local Patent Rules, or if Fujitsu was unsure as to when its infringement contentions became final, it should have raised these issues well before now (indeed, well prior to its attempt to amend its complaint in May 2011). Consequently, the court denies Fujitsu's request to set a new date for final infringement contentions. Consistent with this court's Sept. 29, 2011 order, which applied L.P.R. 3.4 and the applicable Federal Circuit precedent to determine whether to allow Fujitsu's proposed amendments, all of Fujitsu's infringement contentions are considered final.

---

[5] Under L.P.R. 1.1, this court may apply all or part of the patent rules to any case pending before the effective date of the L.P.R., as these cases were.

Perhaps anticipating the court will rule as it has, Fujitsu, in the alternative, requests leave to file amended Final Infringement Contentions because: (1) it has recently discovered evidence of Tellabs' infringement of all of the Fujitsu patents in suit; (2) it has recently appreciated new grounds for the infringement of the '418 patent; and (3) it determined subsequent to serving its 2008 Infringement Contentions that Tellabs introduced new versions of the optical amplifier modules previously identified as infringing the '681, '737, and '163 patents. (Fujitsu's Mot. 4.) The court will further consider Fujitsu's alternative position.

<u>LEGAL STANDARD</u>

Because local patent rules governing the amendment of infringement contentions are unique to patent cases and closely related to the enforcement of substantive patent law, their interpretation and validity is governed by Federal Circuit law. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006). The primary rule at issue here, as noted above, is Local Patent Rule 3.4. This rule provides that a party may amend its final infringement contentions only by order of court "upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment." L.P.R. 3.4. It provides one example of what might constitute good cause: a ruling on claim construction that is different from that proposed by the party seeking amendment.[6]

The Federal Circuit has observed that such local rules are meant to prevent a "shifting sands" approach to claim construction by forcing the parties to "crystallize their theories of the

---

[6]Although it is the only example provided, this is not the only way a litigant could make a showing of good cause. However, it is worth noting that Fujitsu does not point to any holding in the claim construction ruling that necessitates its proposed amendments.

case early in litigation." *Id.* at 1364 (quoting *Atmel Corp. v. Info. Storage Devices, Inc.,* No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D.Cal.1998)). Nonetheless, the Federal Circuit has held that it has the power to refuse to enforce a local patent rule if that rule "unduly limits discovery in patent cases." *O2 Micro*, 467 F.3d at 1365. To be valid, a local patent rule must be consistent with the Federal Rules of Civil Procedure. *Id.* The purpose of infringement contentions is to provide notice of the plaintiff's theories of infringement early in the case because, in practice, it is difficult to obtain such information through traditional discovery means, such as interrogatories. *Id.*

Nonetheless, the Federal Circuit has held that it is foreseeable that a local patent rule requiring contentions could conflict with the broad discovery provided for in the Federal Rules, particularly in light of the importance of discovery in complex patent cases. *Id.* For example, a court's refusal to allow any amendment of infringement contentions to account for new information learned during discovery could be contrary to the spirit of the Federal Rules. *Id.* at 1366. At the same time, there is nothing in the Federal Rules that prohibits a local rule requiring the early disclosure of infringement contentions or requiring amendments to contentions to be filed with diligence. *Id.* Rather, "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." *Id.*

As a preliminary matter, Fujitsu argues that *O2 Micro* is distinguishable because the Federal Circuit in that case was construing the Local Patent Rules for the Northern District of California. (Dkt. No. 459 (Fujitsu's Reply 4.)) While this is true, the principles elucidated by the Federal Circuit in that case are broadly applicable, including its holding that "good cause" to

amend final infringement contentions requires a showing of diligence by the party seeking leave to amend. 467 F.3d at 1366. With these principles in mind, the Court will evaluate each of Fujitsu's proposed amendments as to each patent at issue.

ANALYSIS

The court observes that Fujitsu's initial motion (Case No. 09 C 4530, Dkt. No. 397) is vague as to its proposed amendments, despite this court's previous admonition that, if it sought leave to amend its contentions, Fujitsu should specifically identify the substance of the amendment. (Order Denying Leave to Amend 4.) Nonetheless, a supplement to the motion and the subsequent briefing has fleshed out the issues well enough for the court to rule.

1.      The '418 Patent

As explained in this court's *Markman* order, the '418 patent is titled "Method for Synchronizing Synchronous Data Communication Network and Communication Device Used in the Synchronous Data Communication Network." (Case No. 09-4530 (Dkt. No 379).) It issued on Jan. 31, 1995, and is assigned to Fujitsu Limited. It relates to synchronous data communication networks, including networks using fiber optics to transmit high-speed digital signals, such as those used in cable television transmissions. With respect to this patent, Fujitsu seeks to pursue theories of induced and contributory infringement, doctrine of equivalents allegations, and a new "software-based" theory of infringement. The products at issue are referred to in the briefing as "the Tellabs 5000 product" and the "Tellabs 7100 product."

**A. "Software-Based" Infringement**

Fujitsu contends that is 2008 contentions relied on a "hardware-based" theory of infringement, and that the new, "software-based" theory in its proposed amended contentions was only recently developed because Tellabs stone-walled on its production of requested source code. Fujitsu contends that its infringement contentions for the '418 patent have been "completely overhauled . . . in light of recent discovery that filled in the many missing blanks in Tellabs' earlier source code production." (Dkt. No. 459 (Fujitsu's Reply 17.)) Fujitsu contends that after going through 27 million pages of discovery produced by Tellabs, it discovered that Tellabs' system level documents and hardware specifications did not distinguish planned product features from those implemented in the accused 5500 and 7100 products. (Fujitsu's Mot. 10.) As such, in August 2009, Fujitsu requested production of Tellabs' source code, including software support for the synchronization status message ("SSM")-related operation. This was needed to confirm whether Tellabs had merely planned or implemented the features of the '418 patent in the accused product. Analysis of source code that was finally produced in September 2011 was necessary to determine which modules in the product are involved in switching between synchronizing signal sources and the setting of SSMs, Fujitsu contends. (*Id.* at 11.)

Unsurprisingly, the parties have wildly divergent views as to how discovery has unfolded on the matter of the software code. Tellabs contends that it made the initial production of the sychronization-related source code for the Tellabs 5500 products on Sept. 29, 2008, and for the Tellabs 5500 NGX and Tellabs 7100 products on Dec. 15, 2009. (Dkt. No. 439 (Tellabs' Resp. 15.)) Tellabs argues that Fujitsu has demanded more documents and source code that "are less and less relevant," in an attempt to disguise its own lack of diligence. (*Id.*) Tellabs also argues that Fujitsu made frequent references to the source code in its 2009 infringement contents, while

10

Fujitsu retorts that this is a "gross mischaracterization," because the 2009 contentions did not refer to the source files that actually carried out the operations. (Fujitsu's Reply 17.)

The court notes that Fujitsu never filed a motion to compel turnover of the source code, although it now contends that code is vital to its case. Even if the court were to accept Fujitsu's argument that the software-based theory is newly developed, it appears Fujitsu could have developed this theory much earlier than it did. Similar issues were presented in *RealTime Data, LLC v. Packeteer*, No. 6:08cv144, 2009 WL 2590101, at * 3 (E.D. Tex. Aug. 18, 2009), in which the patentee argued that it should be allowed to amend its infringement contentions because it had only recently been able to confirm new theories of infringement. As in this case, *RealTime Data* involved the production of millions of documents (in that case, five million), with the patentee arguing that its delay in seeking to amend its contentions stemmed from the "enormity and belatedness of Defendants' production." *Id.* The *RealTime Data* court took issue with the patentee's argument that its delay in amending its contentions arouse from a need to "confirm" new theories of infringement. *Id.* at *5. It noted that infringement contentions are meant to "frame the scope of the case" in order to provide for timely discovery, and do not "require a party to set forth a *prima facie* case of infringement and evidence in support thereof." *Id.* (internal citations omitted).

Fujitsu uses the same "confirming" language in its motion, contending that it was only recently able to understand the operation of the accused products and "confirm their infringement." (Fujitsu's Mot. 5.) Yet even if recently produced source code is vital to proving Fujitsu's case, as it contends, Fujitsu's Reply 19, that does not mean that production of the entire source code was needed in order for Fujitsu to include this theory in its infringement contentions.

11

At one point in its reply, Fujitsu does assert that until it received source code files recently produced by Tellabs, it could not have understood the theory of infringement it now advances. (Fujitsu's Reply 20.)  In its voluminous filings, however, Fujitsu has not included an affidavit from one its experts explaining what information it needed to articulate a theory of software based infringement and when that information became available.  *See O2 Micro*, 467 F.3d at 1367 (rejecting similar argument where patentee did not offer declaration from expert as to the time and information needed to develop an infringement theory); *Sybase, Inc. v. Vertica Systems, Inc.*, No. 6:08 CV 24,  2009 WL 4574690, at *2 (E.D. Tex. Nov. 30, 2009) (holding that party failed to show that delay in adding patent claims was reasonable based on the amount of time it had to inspect opponent's source code).

Fujitsu relies heavily on the fact that much of the source code cited in its proposed amended infringement contentions is recently produced.  But good cause requires more than a showing that new information has been revealed in discovery.  *O2 Micro*, 467 F.3d at 1365.  It requires the party to show that it acted with reasonable diligence in asserting the new infringement theory.  *Id.*, s*ee Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144, 09-5718,  2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) (noting, in a similar context, that the critical issue was not when a patentee discovered information related to proposed infringement contentions, but when it could have discovered that information had it acted with diligence).  Fujitsu has not met its burden to show good cause.  Notably, Tellabs designated Bill Lash and Anoop Matthew in late 2009 to testify regarding the operation of the Tellabs 5500 and 7100 series products as they relate to the '418 patent.  But Fujitsu did not set dates to depose these witnesses until late January, as

12

the fact discovery deadline approached.[7]  (Dkt. No. 502 (Benjamin Kelly Decl., Ex. 2-4.)  Further,

while Fujitsu complains of the confusing and incomplete nature of Tellabs' source code

production, it did not raise those issues with this court until now.   Fujitsu simply has not shown

diligence either in pursuing its software-based theory or updating its infringement contentions.

Fujitsu argues that its discovery responses kept Tellabs informed about its infringement

theories, including the software-based theory of infringement for the '418 patent.  Tellabs,

however, contends that Fujitsu's last supplementation of its interrogatory as to the claims of

infringement with regard to the '418 patent came on Oct. 19, 2011, just prior to the filing of this

motion. Regardless, as this court explained in its previous order denying Fujitsu leave to file an

amend complaint, Fujitsu's argument that discovery responses suffice to show good cause and the

absence of prejudice is not well-taken.  (Order Denying Motion for Leave to Amend 4.)  Local

Patent Rule 3.4 specifically provides that "the duty to supplement discovery responses does not

excuse the need to obtain leave of court to amend contentions."  Further, as explained by the court

in its previous ruling, "That Tellabs had notice that Fujitsu could ultimately seek to make these

amendments and include new infringement theories does not excuse Fujitsu's delay nor does it

ameliorate the prejudice to Tellabs, particularly where as here, Fujitsu's extensive and ever-

continuing delay in pursuing these theories raised a substantial likelihood that Fujitsu's request

for leave to amend would be denied."  (Order Denying Motion for Leave to Amend 4.)  Contrary

to Fujitsu's argument, there is nothing in such a holding that conflicts with *O2 Micro's*

admonishment that local patent rules may be invalid if they conflict with the discovery provisions

of the Federal Rules of Civil Procedure.  467 F.3d at 1366.  Fujitsu could have amended its

---

[7] Magistrate Judge Cole has since extended the deadline for non-written fact discovery to March 30, 2012.

infringement contentions to bring forth its "software-based theory" based on information obtained through discovery, provided that it could have shown good cause and the absence of unfair prejudice to Tellabs. Here, it has shown neither.

The court notes that according to the plain language of Local Patent Rule 3.4, which provides that a party may amend its final infringement contentions only upon a "showing of good cause *and* absence of unfair prejudice to opposing parties" Fujitsu's failure to establish good cause warrants denial without consideration of any prejudice to Tellabs. (emphasis added). *See also Trans Video Elecs., Ltd., v. Sony Elecs., Inc.*, --- F.R.D. --- , 2011 WL 5604063, at *5 (N.D. Cal. Nov. 16, 2011) (similarly construing Northern District of California's local rule governing amendment of infringement contentions.)

Nonetheless, Fujitsu has not carried its burden to show that Tellabs would not be unfairly prejudiced by the introduction of a new theory of infringement in regard to the '418 patent. In regard to prejudice to Tellabs, the court finds that interjecting a completely new theory of infringement at this stage of the case, when it has been pending for more than four years and is on the verge of trial,[8] would prejudice Tellabs. Further, it is not clear to the court how Fujitsu's software based theory differs from that which it has proffered before, which in and of itself creates a problem if Tellabs is forced to respond to this new theory near the close of fact discovery. Additionally, as this court previously held in its Sept. 29, 2011 order, introducing

---

[8] Trial in this case is currently scheduled for July 16, 2012. Fujitsu contends that the parties have discussed seeking a continuance, while Tellabs maintains that it does not want a continuance. Regardless of whether the trial proceeds as scheduled, however, it is simply too late in the case for Tellabs to be able to adequately respond to a completely revamped theory of infringement without substantial time and expense.

additional Tellabs products and infringement theories into the litigation at this late stage, after Tellabs has committed to its claim construction positions, would be highly prejudicial.

### B. Indirect Infringement and Doctrine of Equivalents

The same reasoning applies to Fujitsu's attempt to amend its infringement contentions in regard to the '418 patent to include theories of indirect infringement and infringement under the doctrine of equivalents. Fujitsu's July 2008 infringement contentions generally asserted these theories in its cover pleading addressing all the Fujitsu patents in suit. (Ex. 13 to Conaty Decl., 7.) But it is not clear to this court how the indirect infringement claims Fujitsu now brings forward relate to Fujitsu's initial contentions, to its 2009 proposed amended contentions, or to the "software-based" theory of infringement that Fujitsu now seeks to assert.[9] The Seventh Circuit has held that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nor are judges obligated to search through three sets of infringement contentions in an effort to determine how, why, and when Fujitsu's theories have changed over the years. Simply put, greater clarity is required for a showing of diligence in moving to amend its contentions. Similarly, Fujitsu does not explain how its proposed amendments to bring claims under the doctrine of equivalents have been made promptly upon discovery of the basis of the amendment. L.P.R. 3.4. Therefore, Fujitsu's motion to amend its contentions in regard to the '418 patent is denied in its entirety.

---

[9] Fujitsu's opening brief notes that its June 12, 2009, motion to amend its infringement contentions sought to add a claim of indirect infringement, but does not explain how that motion relates to the current one. (Fujitsu's Mot. 6.) Rather than addressing the substance of the proposed amendment, Fujitsu argues that its indirect infringement and doctrine of equivalents theories "have been part of the case for years." (Fujitsu's Reply 23.) However, as noted herein, the fact that Fujitsu provided discovery on these theories does not demonstrate compliance with the Local Patent Rules.

2.      The '737, '163, and '681 Patents

        With regard to the '737, '163, and '681 patents, Fujitsu is seeking to bring into the case

optical amplifier modules that were released after Fujitsu's infringement contentions were filed.

It appears that Fujitsu also seeks to pursue doctrine of equivalents and indirect infringement

theories as to the '163, '737, and '681 patents, but the court agrees with Tellabs that Fujitsu has

not adequately explained how these theories differ from those presented in Fujitsu's 2008

infringement contentions, assuming they do.  (Dkt. No. 503 (Tellabs' Surreply 12.).)

**A.      Updated Versions of Products**

        As for the new versions of products, Fujitsu explains that its 2008 infringement

contentions were based on examinations of Tellabs' optical amplifier modules purchased on the

secondary market.  Fujitsu's proposed updated contentions analyze new versions of the modules,

based on Tellabs and third-party documents and depositions.  For example, Fujitsu's July 2008

contentions analyzed the '737 patent claims using an exemplary configuration including the

MIAM, OLIM, DOSC, and APM modules.  Fujitsu's proposed updated contentions analyze those

claims using the LIAM-E and SPM modules.  Similarly, Fujitsu's proposed supplemental

contentions for the '163 patent analyze Tellabs' newer LOAM-E module rather the older MOAM

module.  Finally, Fujitsu's proposed supplemental contentions for the '681 patent analyze the

ELRAM-E module, rather than the LRAM-E module.  (Fujitsu's Mot. 19.)  Fujitsu argues there is

no prejudice to Tellabs because these new modules perform the same functions, and its

infringement theories have not changed.[10] (Fujitsu's Reply 12.)

────────────

        [10] Fujitsu's motion does not contain a complete list of the newer modules it seeks to add,
but the court presumes that such a list includes the CCM-IR, CCM-LR, OLA-IR, OLA-LR,
LRAM-E88, ELRAM-E88, LIAM-E88, LOAM-E88, OADM88-IR, OADM88-LR, and
OADM88-ER modules. (Cheng Decl.¶ 3, *see* Fujitsu's Mot. 20–21.).

After reviewing Tellabs' response, it is clear that most of these "newer" modules were actually released before 2010, with the exception of the OADM88-xR, which was released in January 2010. It is not clear to the court why Fujitsu did not move to amend its infringement contentions sooner. Although the parties did exchange discovery regarding these newer modules, that does not amount to compliance with the Local Patent Rules for the reasons discussed in regard to the '418 patent. However, unlike in regard to the '418 patent, Fujitsu does not seek to inject into the case an entirely new theory of infringement, which makes this a closer question. However, the court notes that the primary case upon which Fujitsu relies, *Bd. of Tr. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* No. C 05-4158, 2008 WL 624771, at *3 (N.D. Cal. March 3, 2008), is distinguishable. There, the patentee waited five months after learning of the existence of a new product to seek leave to amend its infringement contentions. *Id.* The court found that although the patentee was "arguably not diligent" in moving to amend, it was diligent in seeking discovery from the defendant, so the court allowed the patentee to amend its contentions to include the new product. *Id.* Here, by contrast, by its own admission, Fujitsu identified many of the "new" products as potentially infringing in 2009 and 2010. (Fujitsu's Mot. 20–21). Again, Fujitsu points to recent deposition testimony that it argues "confirm[ed]" the bases for infringement, (*Id.* at 21), but, as explained herein, theories of infringement do not need to be confirmed before infringement contentions may be amended. Additionally, the court agrees with Tellabs that it would be prejudiced by having to analyze and defend itself with respect to these additional products at this late stage of the case. Because Fujitsu has not explained how these proposed amendments were made promptly upon discovery of their bases or shown an absence of unfair prejudice to Tellabs, the motion to amend is denied as to the new products.

**B.      Indirect Infringement and Infringement Under the Doctrine of Equivalents**

As discussed above, it is difficult for the court to discern what changes Fujitsu is seeking to make to its doctrine of equivalents and indirect infringement theories. However, it is clear that Fujitsu's proposed supplemental infringement contentions include sections analyzing how each element of the '163, '737, and '681 patents are met under the doctrine of equivalents. This belies Fujitsu's assertion that its theory of infringement has not changed as to the optical amplifier patents. Additionally, Fujitsu acknowledges that as to the '163 and '737 patents, this same analysis was included in its June 2011 proposed infringement contentions. (Dtk. No. 428, Ex. 2.) In its reply, Fujitsu argues that indirect infringement and infringement under the doctrine of equivalents "have been part of the case for years," but that is the problem. (Fujitsu's Reply 23.) This court gave Fujitsu leave to seek to amend its contentions based on the Markman order and information uncovered recently due to on-going discovery. (Order Denying Motion for Leave to Amend 4.) It did not give Fujitsu leave to revive every theory it has previously tried to inject in the case in the form of its proposed 2009 infringement contentions or its proposed June 2011 contentions. Citing recent discovery does not make these theories new. Fujitsu's motion to amend its infringement contentions is denied as to these theories as well.


3.      Argument as to Tellabs' Invalidity Contentions

In a supplemental reply brief, Fujitsu argues that certain of Tellabs' pending summary judgment motions include references to grounds for invalidity not set forth in Tellabs' Invalidity Contentions. (Dkt. No. 487.) Tellabs then filed its surreply, which in part sought to refute this

argument. (Dkt. No. 503.) The court declines to delve into this issue at this point in time. Argument on this issue should be directed toward those pending summary judgment motions.

<u>CONCLUSION</u>

For the reasons stated, "Fujitsu Limited and Fujitsu Network Communications, Inc.'s Motion to Set a Schedule to Serve Final Infringement Contentions and in the Alternative to File Amended Final Infringement Contentions." (Case No. 09-4530 (Dkt. No. 397)), is denied in its entirety.

ENTER:

_James F. Holderman_
_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 21, 2012