IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED <br><br> PLAINTIFF, <br><br> V. <br><br> TELLABS OPERATIONS, INC., ET AL <br><br> DEFENDANTS. | CIVIL ACTION NO. 1:09- CV-04530 <br><br> **JUDGE HOLDERMAN** <br> **MAGISTRATE JUDGE COLE** <br><br> **JURY TRIAL DEMANDED** |
| TELLABS OPERATIONS, INC., <br><br> PLAINTIFF, <br><br> V. <br><br> FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., <br><br> DEFENDANTS. | CIVIL ACTION NO. 08-CV-3379 <br><br> **JUDGE HOLDERMAN** <br> **MAGISTRATE JUDGE COLE** <br><br> **JURY TRIAL DEMANDED** <br><br> **Consolidated for Discovery** |

**FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO TELLABS' MOTION
FOR SUMMARY JUDGMENT ON LOST PROFIT DAMAGES**

**[PUBLIC VERSION]**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................ 1

II.  THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PREVENT
     THE COURT FROM GRANTING TELLABS' SUMMARY JUDGMENT
     MOTION ............................................................................................ 3

     ██  ████████████████████████████████████████████████ 3

         ██  ████████████████████████████████████ 4

         ██  ██████████████████████████████████████ 5

         ██  ████████████████████████████████████ 6

         ██  ██████████████████████████████████ 6

     ██  ████████████████████████████████████████████████ 7

         ██  ████████████████████████████████████████████ 7

         ██  ██████████████████████████████ 8

         ██  ██████████████████████████████████ 9

     C.  Fujitsu and Tellabs are Competitors ................................. 10

III. "BUT FOR" TELLABS' INFRINGEMENT, FUJITSU LOST PROFITS FROM
     LOST SALES OF THE FW7500 ............................................... 11

     A.  Tellabs Cannot Satisfy the Requirements of Rule 56 ......................... 11

     B.  Fujitsu Competes Against Tellabs In The United States ..................... 12

         1.  Pursuant to Rite-Hite, Fujitsu Is Entitled To Compensation For
             Tellabs' Infringement ........................................................ 12

         2.  Fujitsu's Claim For Damages For Its Own Lost Profits Is
             Consistent With Poly-America ............................................. 15

         3.  The Facts of BIC Leisure Are Inapposite And Distinguishable ............. 16

     C.  Fujitsu Can Also Recover The Lost Profits Incurred By FNC .......................... 18

         1.  Mars Is Inapposite To The Facts Of The Present Case ........................... 19

         2.  The Superficial Relationship Between The Entities In Poly-
             America Is Not Instructive ................................................ 21

## TABLE OF CONTENTS
(continued)

**Page**

3.  On Similar Facts, The Federal Circuit Has Found The Parent To Be Entitled To The Lost Profits Of Its Subsidiary .................................. 22

4.  The Federal Circuit Has Recognized The Parent Corporation's Right to Damages Suffered By Its Subsidiary ......................................... 23

IV.  CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................11, 17, 21

*BIC Leisure Prods. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993) ...................................................................................................16

*Callaway Golf Co. v. Acushnet Co.*,
    691 F. Supp. 2d 566 (D. Del. 2010) (Robinson, J.) ................................................................21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................11

*Enpat, Inc. v. Budnic*,
    No. 6:11-cv-86, 2011 WL 1196420 (M.D. Fla. March 29, 2011) ...........................................13

*First National Bank of Ariz. v. Cities Svc. Co.*,
    391 U.S. 253 (1968) ................................................................................................................11

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
    109 Fed. Appx. 387, 2004 WL 1946482 (Fed. Cir. 2004) (Exhibit 16) .....................22, 23, 25

*General Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983) ................................................................................................................17

*Keri v. Board of Trustees of Purdue Univ.*,
    458 F.3d 620 (7th Cir. 2006) ..................................................................................................11

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ........................................................................................ passim

*Mars, Inc. v. Coin Acceptors, Inc.*,
    No. 90-49, 2006 U.S. Dist. LEXIS 77521 .......................................................................20, 21

*Novozymes A/S v. Genencor Int'l, Inc.*,
    474 F. Supp. 2d 592 (D. Del. Feb. 16, 2007) .........................................................................13

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ................................................................................................11

*Poly-America, L.P. v. GSE Lining Technology, Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004) ........................................................................................ passim

*Rite-Hite Corp. v. Kelley Co., Inc.*,
56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) ............................................................................3, 12

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
425 F.3d 1366 (Fed. Cir. 2005)..........................................................................................24, 25

**STATUTES**

35 U.S.C. § 284...............................................................................................................................2, 3

**OTHER AUTHORITIES**

F.R.C.P. 56......................................................................................................................................11

## I.    <u>INTRODUCTION</u>

Fujitsu Limited ("Fujitsu") seeks to recover lost profits for the lost sales of its

FLASHWAVE 7500 ("FW7500") optical networking products arising out of two contracts that

Tellabs obtained by selling infringing and directly competing products: ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Tellabs does not – and cannot – dispute that ███████████ would have purchased Fujitsu's

FW7500 platform "but for" Tellabs' sales of an infringing Tellabs product.  Any argument to the

contrary by Tellabs in its reply would not only be untimely, but would be contradicted by the

evidence of record in this case.

Tellabs only disputes whether Fujitsu is entitled to damages in the form of lost profits.

Fujitsu's damages expert presented two components to Fujitsu's total lost profits calculation

based on the ██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████  Tellabs' Motion for Summary Judgment

on Lost Profit Damages ("*Motion*") seeks to exclude both of these components.

The present motion therefore raises two questions:

(1)  Has Fujitsu suffered lost profits due to Tellabs' infringing sales?

(2)  Is Fujitsu also entitled to the lost profits suffered by FNC?

As demonstrated by the extensive factual record presented in this Opposition, and the

relevant caselaw, the answer to both of these questions is "<u>*yes*</u>."

As to the first question, Tellabs' *Motion* relies upon two material factual premises, both

of which are belied by the facts.  Tellabs initially alleges that "Fujitsu Limited and Tellabs are

1

not competitors." *Motion*, p. 2. **False**, Tellabs' own employees, customers, and independent market research firms acknowledge that Fujitsu competes against Tellabs in the United States. Next, Tellabs alleges that "no profit or revenue flows to Fujitsu Limited." *Motion*, p. 3. ███████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████ As set forth in detail below, "but for" Tellabs' infringement, Fujitsu would have been awarded the aforementioned █████████████

contracts, and incremental profits earned from these contracts would have inexorably flowed from FNC to Fujitsu ████████████████████████████████

    The fact that Fujitsu sells its products in the United States through its subsidiary is irrelevant. Just as a patentee may sell a product through an independent sales organization and recover lost profits, so may Fujitsu rely on the sales made through its distributor, which happens to be a subsidiary. Fujitsu directly recognizes a profit based on sales of the FW7500, and pursuant to its rights under 35 U.S.C. § 284, Fujitsu is entitled to damages.

    For the second question, Tellabs fails to provide any support for its claim that, as a matter of law, Fujitsu cannot recover the lost profits that flow from its subsidiary FNC. Contrary to Tellabs' mischaracterization of the law, there is no *per se* rule that a patentee cannot recover the lost profits of its subsidiary in this situation. In fact, the Federal Circuit has explicitly declined to take such a position. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008). Rather, the test for determining the propriety of awarding lost profits to Fujitsu based on FNC's lost sales is based on examination of the underlying facts regarding the relationship between the entities. Again, Tellabs' argument depends on its unsupported assertion that no profits flow to Fujitsu. This is absolutely not the case, and this genuine issue of material fact when viewed, as

required, in the light most favorable to Fujitsu, precludes the grant of summary judgment. As detailed herein, ███████████████████████████████████████████████████

███████ Moreover, in addition to the regular flow of profits from FNC to Fujitsu, it is evident that Fujitsu exercises a level of control over FNC far and above the relationship between the patentee and related companies in the cases on which Tellabs relies, *Mars* and *Poly-America*.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████. Title 35 U.S.C. § 284 allows a patent owner full compensation suffered as a result of infringement. In this case, the patent owner (Fujitsu) has suffered damages (lost profits) because its subsidiary (FNC) has likewise been unable to make sales because Tellabs infringes Fujitsu's patents. Based on the nature of the relationship between Fujitsu and FNC, Fujitsu is entitled to recover lost profits attributable to FNC.

Tellabs' motion asks this Court to ignore the facts set forth herein and stretch the fact-based holdings of *Mars* and *Poly-America* into *per se* rules. The result would defy the intent of the Federal Circuit and disturb the well-established law of *Rite-Hite*. As such, Tellabs' motion should be denied.

## II. THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PREVENT THE COURT FROM GRANTING TELLABS' SUMMARY JUDGMENT MOTION

███ █████████████████████████████

Fujitsu is in the business of manufacturing and selling several products, including, but not limited to, the photonics products that are the subject of this lawsuit. *Fujitsu Limited And Fujitsu Network Communications, Inc.'s Response To Tellabs' Statement Of Material Facts In Support Of Tellabs' Motion For Summary Judgment On Lost Profit Damages and Proposed Counter-*

3

*Findings of Material Fact* ("CMF") ¶ 33. ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████.







████     ████████████████████

Fujitsu is the parent company for FNC, which is a wholly owned subsidiary located in Richardson, Texas.  CMF ¶ 8.





████████████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████    ██████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████  ██

**C.**     **Fujitsu and Tellabs are Competitors**

Fujitsu and Tellabs compete for the same customers.  CMF ¶ 74.  In 2005, Fujitsu and

FNC submitted a response to a RFP for photonics equipment from ██████████  CMF ¶ 75.

████████████████████████████████████████████████████

███████████████████████████████████ for Tellabs' 7100 product that

Fujitsu has accused of infringing U.S. Patent No. 5,521,737 (the "'737 patent") and other

patents-in-suit.  CMF ¶ 77.

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ infringing 7100 product.

CMF ¶ 80.

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

III. **"BUT FOR" TELLABS' INFRINGEMENT, FUJITSU LOST PROFITS FROM LOST SALES OF THE FW7500.**

Tellabs fails to meet the standard required by F.R.C.P. 56 and its Motion should be denied. Tellabs' Motion distorts and conflates the law regarding lost profits damages. Correctly analyzing the law and facts, it is clear that Fujitsu is entitled to recover its lost profits on the FW7500,[2] discussed in Section III.B below, as well as FNC's lost profits for the FW7500, discussed in Section III.C below.

A. **Tellabs Cannot Satisfy the Requirements of Rule 56**

At the summary judgment stage, "the moving party must make a prima facie showing that it is entitled to summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). Federal Rule of Civil Procedure 56 requires that the movant show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the Court must consider the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). "All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Ariz. v. Cities Svc. Co.*, 391 U.S. 253, 288-89 (1968).

As discussed below, Tellabs falls far short of the standard for grant of summary judgment, and the Court should deny its Motion for Summary Judgment.

---

[2] Tellabs' Motion only addresses the first prong of the four-factor test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). Therefore, the only question before the Court is whether or not Fujitsu meets this prong, *i.e.*, the demand for the patented product.

### B.    Fujitsu Competes Against Tellabs In The United States

A patentee is entitled to recover lost profits if it shows a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*). This statement of the law governs this case. Neither *Mars* nor *Poly-America*,[3] the cases on which Tellabs relies, changes this tenet of patent law and neither case controls resolution of Tellabs' Motion.

#### 1.    Pursuant to *Rite-Hite*, Fujitsu Is Entitled To Compensation For Tellabs' Infringement

Fujitsu seeks in lost profits what *Rite-Hite* allows: the profits it would have received "but for" Tellabs' infringement. In an effort to avoid its liability, Tellabs argues that Fujitsu has no right to recover its own lost profit damages for Tellabs' infringement of the '737 patent solely because Fujitsu sells its products through a distributor, rather than to customers directly. *Motion*, p. 1. This argument necessarily assumes that Fujitsu's subsidiary/distributor cannot form the basis for Fujitsu's lost profit calculation. This of course is not the law.

One need look no further than *Rite-Hite* to see the flaw in Tellabs' argument. In that case, Rite-Hite sold 30% of products through wholly-owned and operated sales organizations and 70% through independent sales organizations. *Rite-Hite*, 56 F.3d at 1542. Rite-Hite sought lost profits at both the wholesale level and for the lost profits of its sales organizations. *Id.* The Federal Circuit did not question that Rite-Hite could recover lost profits based on this distribution mechanism and allowed Rite-Hite to recover the lost profits sought.[4]   Similarly, district courts have held that a patentee-parent company suffers injury when an infringer sells

---

[3] *Poly-America, L.P. v. GSE Lining Technology, Inc.*, 383 F.3d 1303 (Fed. Cir. 2004).
[4] The Federal Circuit vacated that part of the lost profits award that related to unpatented products sold with the patented components. *Id.* at 1549-51. However, the Federal Circuit based its decision on the entire market value rule, not Rite-Hite's use of distributors as its sales mechanism. *Id.*

product that directly competes with the patentee-parent's subsidiary. *See Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612 (D. Del. Feb. 16, 2007); *Enpat, Inc. v. Budnic*, No. 6:11-cv-86, 2011 WL 1196420, at *4 (M.D. Fla. March 29, 2011).

Not only is Tellabs' argument legally flawed, it is also factually incorrect. Contrary to Tellabs' argument that Fujitsu does not compete in the United States, the record is replete with undisputed facts demonstrating that Fujitsu sells its photonics equipment (along with several other products) in the United States. The undisputed facts are:



There is overwhelming evidence supporting the view of market observers, customers and Tellabs that Fujitsu's control and influence over FNC is ubiquitous.

Fujitsu is not just a disinterested owner vis-à-vis FNC.

Fujitsu's method of distributing its products through FNC is, like Rite-Hite, established and used by Fujitsu in North America. The fact that Fujitsu is based in Japan is of no

---

[5] Exhibits are attached to the *Declaration of Mark J. Shean in Support of Fujitsu's Opposition to Tellabs' Motion for Summary Judgment on Lost Profits Damages.*

consequence to the relevant causation question, namely whether or not Fujitsu would have sold more of its products "but for" Tellabs' infringement. ███████████████████████ ███████████████████████████████████, Fujitsu more than meets the "but for" standard.

### 2. Fujitsu's Claim For Damages For Its Own Lost Profits Is Consistent With *Poly-America*

Fujitsu's claim for its own lost profits is actually consistent with *Poly-America* despite Tellabs' contention to the contrary. In *Poly-America*, the Federal Circuit recognized that it was possible that the patentee may have suffered its own lost profits separate from the sister corporation that had distributed the product. The Federal Circuit remanded the case to the district court to determine this issue. *Poly-America*, 383 F.3d at 1311 ("[I]t is not clear here whether Poly-America has itself suffered lost profits from the infringement, a matter that may be dealt with on remand . . . .). Christopher Bokhart, █████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████ █████████████████████████████████████████████ ██████████████ As discussed below, Fujitsu is entitled to recover the lost profits of FNC as the profits from FNC regularly flow to Fujitsu. But even under Tellabs' overly restrictive reading of *Poly-America*, Fujitsu is at least entitled to recover the █████████ representing Fujitsu's own lost profits. Having passed the threshold legal test demonstrating that it is entitled to recover its own lost profits, and having presented sufficient facts to support its claim for its



lost profits under the law, Fujitsu should be permitted to present its evidence to the jury to resolve the issue of the amount of damages owed to Fujitsu.

### 3. The Facts of *BIC Leisure* Are Inapposite And Distinguishable

The Federal Circuit's opinion in *BIC Leisure Prods. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993), does not preclude Fujitsu's claim to lost profit damages. *BIC Leisure* does not require that the patentee sell its products directly in the market, rather than through a distributor. *BIC Leisure* merely stands for the proposition that a patentee must be selling some competitive product in the market, which Fujitsu does.

Tellabs improperly assumes that the statement in *BIC Leisure* that "the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment" (*id.* at 1218) requires that the patentee be located in the same <u>geographic</u> location as the infringer and that the patentee sell its competing product <u>directly</u> to customers in the United States. Tellabs misinterprets *BIC Leisure* and neither the geographic nor sales limitation Tellabs reads into the case applies to limit Fujitsu's claim for lost profits. In this case, the FW7500 is competitive with Tellabs' 7100 product in the United States and the two products were the products offered in response to the ███████████████████████████. This is undisputed. (Exhibit 13).

The *BIC Leisure* decision focused on several factors when it found that the patentee failed to meet the "but for" standard. The critical fact was the existence of at least fourteen other competitors, including several who offered products similar in design and price to the infringer's products. *Id.* at 1218. Because the patentee in *BIC Leisure* could not demonstrate that it, rather than one of the fourteen other competitors within the sailboarding market, would have made the infringer's sales, it could not meet the "but for" standard. *Id.* at 1218-19.

In this case, after the first round of submissions, ████████████████████████████████ ████████████████████████████████████. CMF ¶ 76. Fujitsu and Tellabs offer products that the market views as competitive, both in terms of design and price. CMF ¶ 74. In reconstructing the hypothetical "but for" world, it is clear that Fujitsu would have made the ████████████████ sales "but for" Tellabs' infringement. At a minimum, summary judgment is not appropriate here where there is sufficient "evidence on which the jury could reasonably find" that Fujitsu lost profits due to Tellabs' infringement. *Anderson*, 477 U.S. at 252.

There is no dispute that Tellabs' infringement would affect Fujitsu's profits on the FW7500. Tellabs knows now, just as it knew in 2005 and 2006, that Fujitsu is the parent company of FNC and that FNC distributes the FW7500. CMF ¶¶ 32-34. ████████████████ ████████████████████████████████████████████████ Tellabs should not be permitted to avoid fully compensating Fujitsu because Fujitsu chooses to use a subsidiary to distribute its products in the United States. To hold otherwise would penalize foreign corporations using U.S. distributors or sales organizations to sell their products. "When Congress wished to limit an element of recovery in a patent infringement action, it said so explicitly." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983). Nothing in the patent or case law supports the result requested by Tellabs. As such, Fujitsu appropriately seeks as a portion of its damages the lost profits it suffered by lost sales due to Tellabs' infringement. Tellabs' motion should be denied.

### C.     Fujitsu Can Also Recover The Lost Profits Incurred By FNC

The second part of Tellabs' Motion seeks to bar Fujitsu from recovering the ████████

in lost profits suffered by FNC.  Tellabs' argument on this issue also fails because Tellabs again

improperly assumes that two cases on which it primarily relies, *Mars* and *Poly-America*, stand

for something that they do not.

The Federal Circuit has *never* held that a parent corporation always is barred from

recovering the lost profits of a subsidiary that is used to distribute products.  In fact, both cases

on which Tellabs relies were decided on their facts and did not decide the issue of whether a

parent company can ever recover on a lost profits theory, and expressly left that issue

unresolved.  *See Mars*, 527 F.3d at 1367 ("Because we conclude that MEI's profits did not – as

Mars argued – flow inexorably to Mars, we, like the *Poly-America* court, need not decide

whether a parent company can recover on a lost profits theory when profits of a subsidiary

actually *do* flow inexorably up to the parent."); *Poly-America*, 383 F.3d at 1311 ("[I]t is not clear

here whether Poly-America [patentee] has itself suffered lost profits from the infringement, a

matter that may be dealt with on remand . . . .).  Thus, neither case stands for the proposition that

Fujitsu cannot recover the lost profits of FNC.

Furthermore, the relationships between the companies in *Mars* (a licensor-licensee

relationship) and *Poly-America* (sister corporations wherein the patentee exercised little or no

control over the sister corporation) are distinct from the relationship between Fujitsu and FNC.

The facts of this case demonstrate that Fujitsu and FNC share a much deeper and financially

linked relationship than the entities in *Mars* or *Poly-America*.  In contrast to *Mars* or *Poly-

America*, ████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

### 1. *Mars* **Is Inapposite To The Facts Of The Present Case**

In this Opposition, Fujitsu proves what the patentee in Mars could not – a regular flow of profits from the subsidiary to the parent.  While in *Mars* there was no evidence that Mars "ever received or recognized any form of profit or revenue from MEI apart from these royalty payments," *Mars*, 527 F.3d at 1367, ████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████



Based on the factual record of that case, the Federal Circuit in *Mars* affirmed the denial of lost profit damages. Importantly, the Federal Circuit did *not* reject Mars' argument that it was entitled to recover lost profits as a matter of law. Instead, the Federal Circuit confirmed the district court's ruling that Mars had not demonstrated an inexorable flow of profits from the subsidiary to the parent. As stated by the district court:

> Coinco [defendant] argues that if there were a regular flow of profits over the seventeen-year period that Mars is seeking damages, Mars should be able to produce some evidence of it. Instead, there is no evidence to suggest that money was transferred from MEI to Mars.

*Mars, Inc. v. Coin Acceptors, Inc.*, No. 90-49, 2006 U.S. Dist. LEXIS 77521, at **15-16 (D.N.J. May 19, 2006). On the facts of that case, the Federal Circuit affirmed that Mars was not entitled to lost profits. The Federal Circuit emphasized the fact-specific outcome of the case when it

held, "[w]e hold simply that the facts of this case cannot support recovery under a lost profits theory." *Id.*

Thus, unlike the parent company in *Mars*, ██████████████████████████

████████████████████████████████████████████

████████████████████████ *See, e.g. Callaway Golf Co. v. Acushnet Co.*, 691 F. Supp. 2d 566, 575 (D. Del. 2010) (Robinson, J.) ("[I]n connection with Acushnet's criticism that Mr. Napper has calculated lost profits on sales by companies that do not own the Sullivan patents, I conclude that **where the profits of a wholly-owned subsidiary flow up to the parent, inclusion of such profits is appropriate**. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008)") (emphasis added). At a minimum, summary judgment is inappropriate given that Fujitsu has sufficient evidence on which the jury could find that it is entitled to a verdict and award of FNC's lost profits. *Anderson*, 477 U.S. at 252.

### 2. The Superficial Relationship Between The Entities In *Poly-America* Is Not Instructive

*Poly-America* also does not stand for the proposition that Fujitsu cannot recover FNC's lost profits. Rather, it stands for the proposition that, based on the particular facts of that case and the limited relationship between the patentee and the sister entity, the patentee could not recover the lost profits of the sister. Those facts are distinguishable from the Fujitsu/FNC relationship. In *Poly-America*, the patent owner attempted to recover the lost profits of a sister corporation that actually sold the products, based solely on the nature of the corporate structure of Poly-America. *Poly-America*, 383 F.3d at 1310. The Federal Circuit took issue with the fact that patentee sought to recover the profits lost by a *different* company. *Id.* at 1311. Notably, the Federal Circuit remanded the case on the damages issue for the district court to determine

21

whether or not the patentee (Poly-America) itself had suffered lost profits from the infringement. *Id.* at 1312.

Unlike the plaintiff in *Poly-America*, Fujitsu is not relying solely on its corporate family-tree relationship with FNC.



Thus, unlike the patentee in *Poly-America*, Fujitsu is not trying to create lost profits that do not exist.

### 3. On Similar Facts, The Federal Circuit Has Found The Parent To Be Entitled To The Lost Profits Of Its Subsidiary

A month before *Poly-America* was decided, the Federal Circuit decided *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 Fed. Appx. 387, 2004 WL 1946482 (Fed. Cir. 2004) (Exhibit 16). While an unpublished opinion, *Fisher-Price* is instructive as the relationship between the companies in that case (Fisher-Price and Mattel) is much more akin to the relationship between Fujitsu and FNC. In *Fisher-Price*, Mattel assigned the patents at issue to its subsidiary Fisher-Price. *Id.* at 396-97, 2004 WL 1946482 at *9. Fisher-Price sought to recover lost profits not only for the time that it owned the patents, but also for the time that Mattel owned the patents. The infringer argued that Fisher-Price could not recover lost profits for the period when Mattel

owned the patents because the infringer did not compete directly with Mattel. *Id.* at 397, 2004 WL 1946482 at *9.

The Federal Circuit rejected this argument because the infringer's witnesses recognized that Fisher-Price is a wholly owned subsidiary of Mattel and that anything Fisher-Price sold, technically Mattel sold. *Id.* Because the infringer's witnesses considered the infringer to be in direct competition with the Mattel/Fisher-Price family, the Federal Circuit declined to disturb the district court's denial of the defendant's JMOL motion on damages. *Id.*



### 4. The Federal Circuit Has Recognized The Parent Corporation's Right to Damages Suffered By Its Subsidiary

A year after *Poly-America*, the Federal Circuit issued another instructive case. The Federal Circuit held that a district court properly admitted evidence regarding the impact of an

infringer's sales on the parent of the holding company that held the title to the patent at issue.

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1377-78 (Fed. Cir. 2005). In that case, Union Carbide Chemicals & Plastics Technology Corporation (the patent holder and holding company) did not make, use or sell the chemical made by the patented process, yet it sought to recover a reasonable royalty for the defendant's infringement. Union Carbide Chemicals & Plastics Technology Corporation relied in part on evidence related to the impact of the defendant's infringing sales on Union Carbide Corporation, the parent corporation of the holding company. *Id*. at 1377. The defendant argued, as Tellabs argues here, that the parent corporation suffered no legal injury from infringement and that it was improper for the holding company to rely on the injury to the parent. *Id*.

The Federal Circuit rejected the defendant's argument, noting that the parent wholly owned the holding company and therefore the relationship went "far beyond a licensor/licensee arrangement."[7] *Id*. at 1378. The Federal Circuit held:

> Because of the genuine relationship between these companies, the district court decision properly permitted consideration of these sales. Simply put, the holding company would not enter any negotiation without considering the competitive position of its corporate parent, Union Carbide Corporation. Shell is a direct competitor of Union Carbide Corporation in EO production and MEG sales. Therefore any hypothetical negotiation with the holding company must necessarily include the reality that the economic impact on the Union Carbide Corporation would weigh heavily in all decisions. The district court correctly recognized that the hypothetical negotiation model would thus properly include these circumstances. Consequently, the district court did not abuse its discretion in admitting this evidence for purposes of calculating a reasonable royalty.

*Id.*

---

[7] Judge Rader authored the opinion. Judge Rader also sat on the panel that issued the *Poly-America* opinion.

While the facts of *Union Carbide* are slightly different from this case, it demonstrates that the Federal Circuit recognizes the economic impact on a parent corporation to be relevant to a damages inquiry.

In this case, the record demonstrates that Fujitsu controls the activities of FNC to a much higher degree than the relationship between the entities in *Poly-America* or *Mars* or even *Fisher-Price*. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

## IV.     CONCLUSION

Tellabs' *Motion* relies on two faulty premises of material fact which are disputed – and actually disproven – by the substantial evidence presented in this Opposition.  At the very least, genuine issues of material fact exist that should be presented to the jury for resolution.  Fujitsu therefore respectfully requests that the Court deny Tellabs' Motion for Summary Judgment on Lost Profit Damages.


Dated:  June 28, 2012                          Respectfully submitted,


                                         _____/s/ *David C. Van Dyke*_____

                                         David C. Van Dyke (#6204705)
                                         Howard & Howard
                                         200 South Michigan Ave.
                                         Suite 1100
                                         Chicago IL 60604
                                         Telephone: 312) 456-3641
                                         Facsimile: (312) 939-5617
                                         Email:   dvd@h2law.com

25

James C. Brooks
Alyssa Caridis
Michael Owens
Orrick, Herrington & Sutcliffe, LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Telephone: (213) 629-2020
Facsimile: (213) 612-2499
Email:  jbrooks@orrick.com
Email:  acaridis@orrick.com
Email:  mowens@orrick.com

David E. Wang
Orrick, Herrington & Sutcliffe, LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
Email:  dwang@orrick.com

Mark P. Wine
Thomas S. McConville
Mark J. Shean
Glen Liu
Gino Cheng
Orrick, Herrington & Sutcliffe, LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
Telephone: (949) 567-6700
Facsimile: (949) 567-6710
Email:  mwine@orrick.com
Email:  tmcconville@orrick.com
Email:  mshean@orrick.com
Email:  gliu@orrick.com
Email:  gcheng@orrick.com