IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED,<br><br>   Plaintiff,<br><br> v.<br><br>TELLABS OPERATIONS, INC. and<br>TELLABS, INC.,<br><br>   Defendants.<br>─────────────────────────────<br>TELLABS OPERATIONS, INC.<br><br>   Plaintiff,<br><br> v.<br><br>FUJITSU LIMITED and FUJITSU<br>NETWORK COMMUNICATIONS, INC.,<br><br>   Defendants.<br>─────────────────────────────<br>FUJITSU LIMITED,<br><br>   Counter Claimant,<br><br> v.<br><br>TELLABS OPERATIONS, INC.,<br>TELLABS, INC., and TELLABS NORTH<br>AMERICA, INC.,<br><br>   Counter Defendants. | Nos. 08 C 3379 & 09 C 4530<br><br>Consolidated for Discovery |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

  Pending before the court is Tellabs's "Motion to Strike Portions of Fujitsu's Expert

Reports and to Preclude Reliance by Fujitsu on Theories, Evidence, or Analyses Precluded

Under the Court's Order of March 21, 2012." (Dkt. No. 568.) For the reasons set forth below, Tellabs's motion is granted in part and denied in part. Tellabs's motion is granted as to those portions of the Willner Infringement Report and the Willner Supplemental Infringement Report that rely on an analysis of the LIAM-E, LRAM-E, ELRAM-E, SPM-N, DPM, DCM, SPM, or APM modules for purposes of proving infringement of the '681 Patent. To the extent Tellabs's motion relates to the '737 Patent, the '163 Patent, and the '418 Patent, Tellabs's motion is denied without prejudice at this stage of the litigation. Additionally, Tellabs's motion is denied as moot with respect to the portions of the Willner Infringement Report, the Willner Supplemental Infringement Report, and the Fujitsu Damages Report voluntarily withdrawn by Fujitsu, including references to the modules excluded in the court's March 21, 2012 Order, (Dkt. No. 552 at 16 n.10), and references to the doctrine of equivalents. As to the portions of the Willner Infringement Report and the Willner Supplemental Infringement Report that analyze indirect infringement, Tellabs's motion is denied.

These determinations are explained below. Although the court is sensitive to the parties' concern for confidentiality, an adjudicative determination by a United States District Court must be explained on the public record, as the court has done here. *See Hicklin Engineering L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("What happens in the federal courts is presumptively open to public scrutiny. . . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.").

BACKGROUND

Tellabs's motion is directed at specific portions of four of Furjitsu's expert reports:

- "Expert Report of Dr. Alan E. Willner Regarding Infringement With Respect to U.S. Patent No. 7,227,681, U.S. Patent No. 5,521,737, and U.S. Patent No.

>
> 5,526,163" (Dkt. Nos. 568-2 to 568-6 FILED UNDER SEAL ("Willner Infringement Report"))
>
> • "Supplemental Expert Report of Dr. Alan E. Willner Re: Infringement of the MIAM Module With Respect to U..S. Patent No. 7,227,681" (Dkt. No. 568-7 FILED UNDER SEAL ("Willner Supplemental Infringement Report"))
>
> • "Expert Report of John Eaves Regarding Infringement With Respect to U.S. Patent No. 5,386,418" (Dkt. No. 568-8 FILED UNDER SEAL ("Eaves Infringement Report Re: '418 Patent"))
>
> • "Expert Report of Christopher J. Bokhart" (Dkt. No. 568-9 FILED UNDER SEAL ("Fujitsu Damages Report"))

The court assumes familiarity with the court's March 21, 2012 order, (Dkt. No. 552 ("3/21/12 Order")), as well as the general history of this patent litigation.

In light of the bifurcation of the issues pending before the court, and the court's decision to proceed to trial solely on the '681 Patent at this stage of the litigation, the court need not address Tellabs's contentions as they pertain to the '737 Patent, the '163 Patent, or the '418 Patent. To the extent Tellabs's motion addresses these additional patents, Tellabs's motion is denied without prejudice and may be renewed at an appropriate point in the litigation.

Additionally, Fujitsu has agreed to withdraw certain portions of the Willner Infringement Report addressing modules that were specifically identified in this court's March 21, 2012 Order denying Fujitsu's "Motion to Set a Schedule to Serve Final Infringement Contentions and in the Alternative to File Amended Final Infringement Contentions." (*See* 3/21/12 Order at 16, n.10.) Specifically, Fujitsu has agreed to withdraw, without prejudice, paragraphs 142-48; 260-78; 298; 383-87; 389-90; 392-93; 395-98; 400-01; 403-04; 407-08; 411-14; 416-17; 419-20; 422-669; 674; 678-90; 753; 758-59; 762-67; 769-72; 775-78; 783-86; 791; 799-802; 805-08; 811-14; 818-21; 825-28; 833; 899-916; 918; and 935 of the Willner Infringement Report, subject to Fujitsu's

proffer to the court. (*See* Dkt. No. 590 ("Fujitsu's Resp.") at 4, n.1.) Fujitsu has also agreed to voluntarily withdraw without prejudice the contested portions of the Fujitsu Damages Report. (*Id.* at 10.) Lastly, Fujitsu has promised that it "will not rely on any references [in Dr. Willner's expert reports] to . . . the doctrine of equivalents." (Fujitsu's Resp. at 8.) Tellabs's motion to strike is therefore moot with respect to these portions of Fujitsu's expert reports.

ANALYSIS

The remaining contentions raised in Tellabs's motion can be divided into two separate arguments.

1. Modules Not Identified in Fujitsu's November 4, 2008 Infringement Contentions

First, Tellabs argues that, "[i]n addition to the eleven modules identified . . . [in the court's March 21, 2012 order], Dr. Willner's expert report on infringement also seeks to analyze infringement of the '681 Patent in terms of three other optical amplifier modules (LIAM-E, LRAM-E, ELRAM-E) and five processor modules (SPM, SPM-N, DPM, APM, and DCM) that were not identified as allegedly infringing modules anywhere in Fujitsu's 2008 infringement contentions regarding the '681 Patent." (Dkt. No. 568 ("Tellabs's Mot.") at 3.) According to Tellabs, "Fujitsu's 2008 infringement contentions only identified the LOAM-E and MIAM modules as accused products with respect to the '681 Patent" and "[did] not mention a single processor module." (*Id.* at 3-4.)

Fujitsu argues that "the MIAM module and its controller (including the APM, which has been updated to the SPM (internally named the APM8250))" were "identified and analyzed" in Fujitsu's 2008 Infringement Contentions, which were "carefully charted . . . using a combination of narrative analysis backed by photographs and optical schematics of representative modules

4

and extensive excerpts and citations to Tellabs documentation." (Dkt. No. 590 ("Fujitsu's Resp.") at 4, 6.)[1] Specifically, Fujitsu invites the court to consider the 2008 Infringement Contentions' reliance on Figure 2-25 from the *Tellabs® 7100 Module and Hardware Description, 76.7100/4, Rev. A, 10/02 (2002)* ("Figure 2-25"). (*See, e.g.,* Dkt. No. 590-2 FILED UNDER SEAL ("Fujitsu's Modified 2008 Infringement Contentions") at 13-17.)

It is undisputed that the introduction to Fujitsu's November 4, 2008 "Infringement Claim Chart for U.S. Patent 7,227,681" (Dkt. No. 568-10 FILED UNDER SEAL ("2008 Infringement Contentions")), states as follows:

> Throughout Fujitsu's [2008 Infringement Contentions] . . . references will be made to Figures A-G, which are representative of the Accused Instrumentalities: Tellabs® 7100 Optical Transport System ("Tellabs® 7100") and Tellabs® 7100 Nano Optical Transport System ("Tellabs® 7100 Nano"). Figures A-G are of at least two types of Tellabs® 7100: (1) Tellabs® 7100 that include a **Line Output Amplifier Module-Enhanced ("LOAM-E")** manufactured by Avanex®; and (2) Tellabs® 7100 that include a **Metro Input Amplifier Module ("MIAM")** manufactured by RED-C®. Tellabs® 7100 Nano may use similar structures and methods with respect to the '681 Patent.

(2008 Infringement Contentions at 1 (emphasis added).) It is also undisputed that the 2008 Infringement Contentions do not specifically refer to either the APM processor module or the SPM processor module.

In relation to the '681 Patent's four independent claims (Claim 1, Claim 6, Claim 9, and Claim 14), the 2008 Infringement Contentions refer to Figure 2-25 for purposes of supporting Fujitsu's contention that "an optical gain block in a MIAM included in Tellabs® 7100 has 'Automatic Gain Control'" ["AGC"], which Fujitsu contends "indicat[es] Tellabs® 7100

---

[1] Fujitsu makes no argument with respect to the LIAM-E, LRAM-E, ELRAM-E, SPM-N, DPM, or DCM modules, as they relate to the '681 Patent. (Fujitsu's Resp. at 6.)

5

includes a controller which controls the gain to be approximately constant." (2008 Infringement Contentions at 23, 59, 92, 135.) In relation to four dependent claims of the '681 Patent (Claim 4, Claim 8, Claim 12, and Claim 16), the 2008 Infringement Contentions refer to the same Figure 2-25 for purposes of highlighting "a VOA [Variable Optical Attenuator] Driver in a MIAM included in Tellabs® 7100," which Fujitsu contends "indicat[es] that an attenuation level of an attenuator is changed to control the level of the amplified WDM optical signal." (*Id.* at 36, 68, 107, 144.) Both the AGC and the VOA Driver are depicted in Figure 2-25's diagram of an optical gain block in a MIAM included in Tellabs 7100:



Fujitsu argues that "[i]t is self-evident from Fig. 2-25, that the VOA Driver interfaces with the Optical Gain Block, and FPGA and a Serial EEPROM." (Fujitsu's Modified 2008 Infringement Contentions at 15). Additionally, Fujitsu argues that "Pages 4-48 and 4-47 of *Tellabs® 7100 Module and Hardware Description, 76.7100/4, Rev. A, 10/02 (2002)* contain[ ] further description of what the VOA driver does and confirm[ ] that the VOA driver receives its instructions from a CPU (*i.e.*, the APM, the newer version of which is the APM 8250, or SPM)." (*Id.* at 16.)

It is not clear to the court that Fujitsu's analysis of the newly cited materials is correct.[2] Even if Fujitsu is correct, however, that the VOA driver receives its instructions from an APM or SPM module, Fujitsu's 2008 Infringement Contentions do not specifically refer to either the APM module or the SPM module, nor do they explicitly rely on the new materials now cited by Fujitsu in support of its argument. Fujitsu has not identified any portion of Figure 2-25 that depicts either an APM module or an SPM module, or any other processor module, and Figure 2-25 was not cited in Fujitsu's 2008 Infringement Contentions for purposes of depicting or identifying a processor module.

---

[2] The cited description of the VOA driver states that the VOA driver receives information "fed by the CPU through the computer interface module (CIM) (CPU interface)." (*See* Fujitsu's Modified 2008 Infringement Contentions at 17.) This description does not specifically refer to either the APM processor module or the SPM processor module, but instead suggests that the VOA receives its instructions from the CIM module.

The cited description of the "Serial Peripheral Interface" ("SPI") does appear to support Fujitsu's contention that "the APM uses 'SPI links' to communicate with other modules in the 7100 system, including the MIAM as seen in Fig. 2-25," (Fujhitsu's Modified 2008 Infringement Contentions at 17), but Figure 2-25 does not depict any SPI links directly attached to the VOA Driver. Fujitsu does not cite any expert testimony to assist the court in understanding the newly cited evidence.

7

The question before the court is whether the relevant portions of the Willner Infringement Report and Willner Supplemental Infringement Report exceed the scope of Fujitsu's 2008 Infringement Contentions. This is not a question that can be answered by referring to the court's March 21, 2012 Order, which did not address the sufficiency or scope of Fujitsu's 2008 Infringement Contentions.

Infringement contentions are generally considered adequate if they "provide fair notice of the scope of [the plaintiff's] infringement theory." *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 786606, at *3 (E.D. Tex. Feb. 26, 2010) (Love, M.J.). In other words, infringement contentions must "set[ ] forth particular theories of infringement with sufficient specificity to provide defendants[ ] with notice of infringement beyond that which is provided by the mere language of the patents themselves." *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799, at *4 (N.D. Cal. Mar. 21, 2003) (Walker, J.). "Expert infringement reports may not introduce theories not previously set forth in infringement contentions." *Fenner Investments*, 2010 WL 786606, at *2.

In its 2008 Infringement Contentions, Fujitsu expressly identified "Tellabs® 7100 that include a Metro Input Amplifier Module ("MIAM")" as an accused product. (2008 Infringement Contentions at 1.) Dr. Willner opines, in relevant part, that "Tellabs' 7100 system with an SPM (or APM, hereinafter collectively 'SPM') and one or more MIAM modules infringes each asserted claim of Fujitsu's '681 Patent." (Willner's Supplemental Infringement Report ¶ 5.)

Fujitsu did not specifically identify either the SPM module or the APM module in its 2008 Infringement Contentions, nor did it identify any other example of an infringing processor module. At most, the 2008 Infringement Contentions suggest that there is some component of a

MIAM module included in Tellabs 7100 that changes the attenuation level of the attenuator. (*See* 2008 Infringement Contentions at 36, 68, 107, 144 (citing Figure 2-25 "illustrating a VOA Driver in a MIAM included in Tellabs® 7100" as an example "indicating that an attenuation level of an attenuator is changed to control the level of the amplified WDM optical signal").) It is Fujitsu's position that Tellabs could have used the "substantive information" included in Fujitsu's 2008 Infringement Contentions to ascertain that Fujitsu was claiming infringement based on the APM and SPM processor modules, as well as the LOAM-E and MIAM optical amplifier modules. (*Id.* at 7.) The court disagrees. The focus of the relevant portions of the 2008 Infringement Contentions was on the allegation that the attenuation level of an attenuator "is changed," rather that the process by which this change occurs. To the extent Dr. Willner's analysis depends on a specific difference between "Tellabs® 7100 that include a Metro Input Amplifier Module ("MIAM")," (2008 Infringement Contentions at 1), and "Tellabs' 7100 system with an SPM (or APM, hereinafter collectively 'SPM') and one or more MIAM modules," (Willner's Supplemental Infringement Report ¶ 5), the court finds, based on the language and substance of the 2008 Infringement Contentions, that Dr. Willner's expert opinion has exceeded the scope of Fujitsu's 2008 Infringement Contentions. In other words, Fujitsu failed to put Tellabs on notice of its contention that the specific use of an APM module or SPM module with a MIAM module in Tellabs's 7100 system results in infringement of the '681 Patent. Accordingly, Tellabs's motion to strike is granted with respect to those portions of the

Willner Infringement Report and the Willner Supplemental Infringement Report that rely on an analysis of the SPM or APM modules for purposes of proving infringement.[3]

2.  Allegedly "New" Theories of Indirect Infringement

Tellabs next argues that the court should strike portions of the Willner Infringement Report and the Willner Supplemental Infringement Report because they "improperly present[ ] theories of indirect (contributory and induced) infringement," contrary to the court's March 21, 2012 Order denying Fujitsu leave to amend its infringement contentions. (Tellabs's Mot. at 12.)

In its March 21, 2012 Order, the court stated that it was assuming, with respect to the optical amplifier patents (including the '681 Patent), that Fujitsu's proposed amended indirect infringement theories "differ from those presented in Fujitsu's 2008 infringement contentions," while noting "it is difficult for the court to discern what changes Fujitsu is seeking to make to its . . . indirect infringement theories." (3/21/12 Order at 17-18.) The court did not address the nature or scope of the infringement theories as they had been already set forth in Fujitsu's 2008 Infringement Contentions. Tellabs's reliance on the court's March 21, 2012 Order for purposes of resolving the current dispute is therefore misplaced.

In response to the pending motion, Fujitsu argues that its "Disclosure of Asserted Claims and Preliminary Infringement Contentions" (Dkt. No. 639-2 FILED UNDER SEAL ("Disclosure")),[4] "coupled with Fujitsu's 2008 Infringement Contentions, did provide fair and

---

[3] Tellabs's motion to strike is also granted with respect to those portions of the Willner Infringement Report and the Willner Supplemental Infringement Report that rely on an analysis of the LIAM-E, LRAM-E, ELRAM-E, SPM-N, DPM, or DCM modules, as these portions of Tellabs's motion were not contested with respect to the '681 Patent.

[4] Fujitsu did not include its Disclosure as an exhibit to its response. The court accepts Tellabs's representation that Exhibit C to the Supplemental Leftwich Declaration is a true and

adequate notice of Fujitsu's indirect infringement allegations." (Fujitsu's Resp. at 9-10.)  Fujitsu cites no other portion of the 2008 Infringement Contentions, other than the Disclosure, in support of its argument.

According to Tellabs, Fujitsu's Disclosure is "the cover pleading of Fujitsu's 2008 infringement contentions." (Dkt. No. 638 ("Tellabs's Reply") at 17.)  The court therefore assumes that the Disclosure was served on Tellabs on November 4, 2008, along with the 2008 Infringement Contentions.[5]  The Disclosure states, in relevant part:

> In addition, Fujitsu asserts that Tellabs commits contributory infringement and induces infringement of the asserted claims by others, including the customers of Tellabs who purchase, install and/or use the Accused Instrumentalities.

(Disclosure § IV.)  Relying on Patent Rule 3-1(b) for the Eastern District of Texas, Tellabs argues that this "boilerplate" language "[does] not identify any act of Tellabs that would give rise to liability for a customer's direct infringement." (Tellabs's Reply at 17 (emphasis in original).)

Of course, Fujitsu's 2008 Infringement Contentions with respect to the '681 Patent were never subject to the local patent rules for the Eastern District of Texas, as the '681 Patent is only at issue in the Illinois Action.  Nor were Fujitsu's 2008 Infringement Contentions subject to the then-non-existent Local Patent Rules of the Northern District of Illinois, as the Local Patent Rules did not come into effect until October 1, 2009—approximately eleven months *after* Fujitsu's 2008 Infringement Contentions were served on Tellabs.

---

correct copy of Fujitsu's Disclosure.

[5] Fujitsu states that "[t]he exact same text [as the Disclosure in the Texas Action] is also included in Fujitsu's *Disclosure* for the '681 filed in Illinois." (Fujitsu's Resp. at 9-10.)  Tellabs does not object to this statement.

Nevertheless, Fujitsu was specifically ordered by the court to serve Tellabs with infringement contentions. At a minimum, Fujitsu's 2008 Infringement Contentions were required to "provide fair notice of the scope of [the plaintiff's] infringement theory." *Fenner Investments*, 2010 WL 786606, at *3. As noted above, Fujitsu's "[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions." *Fenner Investments*, 2010 WL 786606, at *2.

While not a model of pleading, the court finds that a fair reading of Fujitsu's Disclosure makes clear at least Fujitsu's contention that Tellabs committed contributory infringement and induced infringement by selling the Accused Instrumentalities to Tellabs's customers for the customers' own use. The court therefore denies Tellabs's motion to strike "all paragraphs of Dr. Willner's expert reports that analyze indirect infringement." (Tellabs's Reply at 18.)

## CONCLUSION

For the reasons set forth above, Tellabs's "Motion to Strike Portions of Fujitsu's Expert Reports and to Preclude Reliance by Fujitsu on Theories, Evidence, or Analyses Precluded Under the Court's Order of March 21, 2012" (Dkt. No. 568) is granted in part and denied in part. Tellabs's motion is granted as to those portions of the Willner Infringement Report and the Willner Supplemental Infringement Report that rely on an analysis of the LIAM-E, LRAM-E, ELRAM-E, SPM-N, DPM, DCM, SPM, or APM modules for purposes of proving infringement of the '681 Patent. To the extent Tellabs's motion relates to the '737 Patent, the '163 Patent, and the '418 Patent, Tellabs's motion is denied without prejudice at this stage of the litigation. Additionally, Tellabs's motion is denied as moot with respect to the portions of the Willner Infringement Report, the Willner Supplemental Infringement Report, and the Fujitsu Damages

Report voluntarily withdrawn by Fujitsu, including references to the modules excluded in the court's March 21, 2012 Order, (Dkt. No. 552 at 16 n.10), and references to the doctrine of equivalents. As to the portions of the Willner Infringement Report and the Willner Supplemental Infringement Report that analyze indirect infringement, Tellabs's motion is denied.

      ENTER:

      *James F. Holderman*
      _____
      JAMES F. HOLDERMAN
      Chief Judge, United States District Court

Date: July 23, 2012