IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 09 C 4530 |
| ) | |
| TELLABS, INC., TELLABS OPERATIONS, ) | |
| INC., and TELLABS NORTH AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Pending before the court is "Tellabs' Motion and Memorandum of Law in Support of Summary Judgment of Invalidity of All Asserted Claims of U.S. Patent No. 5,386,418." (Dkt. No. 384.) For the reasons set forth below, Tellabs' motion is granted.

BACKGROUND

On January 29, 2008, plaintiff Fujitsu Limited ("Fujitsu")[1] filed a Complaint for patent infringement against Tellabs, Inc. and Tellabs Operations, Inc.[2] alleging infringement of U.S. Patent No. 5,386,418 (the "'418 Patent"). (Dkt. No. 1.) On March 21, 2008, Tellabs filed counterclaims for declaratory judgment of non-infringement of the '418 Patent and for declaratory judgment of invalidity of the '418 Patent. (Dkt. No. 21; *see also* Dkt. No. 441.) On

---

[1] Co-plaintiff Fujitsu Network Communications, Inc. was dismissed from this lawsuit on August 14, 2008. (Dkt. No. 42.)

[2] On December 15, 2011, Fujitsu filed a First Amended Complaint adding Tellabs North America, Inc. as a defendant. (Dkt. No. 449.) The court refers to Tellabs, Inc., Tellabs, Operations, Inc., and Tellabs North America, Inc. collectively as "Tellabs."

1

October 14, 2011, Tellabs filed the pending motion for summary judgment, arguing that the asserted claims, Claims 1 and 6-9 of the '418 Patent, are invalid because they are anticipated by certain alleged prior art and, in the alternative, because they are made obvious by the alleged prior art. (Dkt. No. 384 ("Tellabs' SJ Mot.").)

Specifically, Tellabs relies on two items of alleged prior art that it identifies as "technical articles authored by former Alcatel engineer Dale Krisher." (*Id.* at 2.) These two articles (together "the Krisher Contributions") are individually identified as:

- *Synchronization Management for Digital Networks*, T1 Contribution Doc. No. T1X1.3/91-012 & T1X1.5/91-017 (Jan. 1991) (Tellabs' SJ Mot., Ex. B ("9/27/11 Krisher Decl.") Ex. 1 ("*Synchronization Management*").)

- *Synchronization Messages for Digital Networks*, T1 Contribution Doc. No. T1X1.3/91-013 & T1X1.5/91-018 (Jan. 1991) (9/27/11 Krisher Decl., Ex. 2 ("*Synchronization Messages*").)

(Dkt. No. 385-9.) It is Tellabs' position that the Krisher Contributions invalidate the '418 Patent, either as anticipated or, in the alternative, as obvious.

Fujitsu argues there is a disputed question of fact whether the Krisher Contributions were published before the August 19, 1991 priority date of the '418 Patent, and therefore whether they qualify as prior art under 35 U.S.C. § 102(a). Fujitsu further argues that Tellabs is precluded from relying on the Krisher Contributions together to establish anticipation, because this argument was not set forth in Tellabs' September 29, 2008 invalidity contentions. Finally, Fujitsu argues that the Krisher Contributions cannot be considered prior art because they do not "enable one of ordinary skill in the art to practice the invention without undue experimentation."

("Dkt. No. 454 ("Fujitsu's Resp.") at 26.)[3] The court addresses each of these arguments in turn.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's role in reviewing a motion for summary judgment is simply "to determine based on the record whether there is a genuine issue of material fact requiring trial." *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011). In performing this analysis, the court views the evidence in the light most favorable to the non-movant. *Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010). The court does not, however, "weigh the evidence or decide which inferences should be drawn from the facts." *Costello*, 651 F.3d at 636. If there is no genuine issue of material fact requiring trial, summary judgment is appropriate in favor of the movant. *Berry*, 618 F.3d at 690-91.

While patents are presumed to be valid, claims of patent infringement are subject to the defense of invalidity. 35 U.S.C. § 282. A patent is invalid if its claimed subject matter is anticipated or obvious, as defined by statute. *See generally* 35 U.S.C. §§ 102, 103. "The

---

[3] Fujitsu appears to have abandoned its claim of independent creation. (*See* Dkt. No. 640 (agreeing "to strike those portions of the Eaves Report that are directed to or discuss a claim to priority prior to the August 19, 1991 filing date of the application that issued as the '418 Patent").) To the extent Fujitsu intended to and attempted to rely on Japanese-language documents in support of its argument (*see* Fujitsu's Resp. at 42), the court repeats its earlier admonishment that, "[f]or persons who do not read or speak Japanese, Japanese-language documents convey no information." (Dkt. No. 889 ("8/16/12 Order").) Fujitsu's citations to Exhibits P & Q, which are entirely in Japanese, are therefore unavailing. Even if Fujitsu has not abandoned its claim of independent creation, the court cannot find on this record that Fujitsu has satisfied its burden of producing evidence to corroborate the testimony of the inventors of the '418 Patent, as required under the law. *See Sandt Technology, Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) ("a party claiming his own prior inventorship must proffer evidence corroborating his testimony").

presumption of validity . . . requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art." *Sandt Technology, Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001).

ANALYSIS

1.  Tellabs' September 29, 2008 Invalidity Contentions

As a preliminary matter, the court addresses Fujitsu's argument that Tellabs should be barred from "assert[ing] a new invalidity theory not included in its now 'final' invalidity contentions." (Fujitsu's Resp. at 1, n.2.) In support of this argument Fujitsu notes that Tellabs, in its September 29, 2008 invalidity contentions, "never argued that the 018 Contribution [*Synchronization Messages*] was anticipatory and incorporated by reference the 017 Contribution [*Synchronization Management*]." (*Id.*)

Fujitsu is correct in asserting that Tellabs' September 29, 2008 invalidity contentions are deemed to be final in accordance with the applicable local patent rules and the law of the case. (*See* Dkt. No. 377 ("09/29/11 Order")) (applying E.D. Tex. P.R. 3-6 to find that Fujitsu's July 2008 Infringement Contentions were "final"). Fujitsu also correctly notes that Tellabs' September 29, 2008 invalidity contentions rely on only *Synchronization Management* for support of Tellabs' anticipation argument, and not on *Synchronization Messages* or both of the Krisher Contributions together. (Fujitsu's Resp., Ex. A.)

To the extent Tellabs' argument on summary judgment exceeds the scope of its September 29, 2008 invalidity contentions, the court agrees with Fujitsu that Tellabs is procedurally barred from advancing a new invalidity theory at this stage of the litigation. The court therefore focuses its analysis on Tellabs' obviousness argument.

2.  "Publication" of the Krisher Contributions

In its motion for summary judgment, Tellabs argues that the asserted claims of the '418 Patent are invalid due to obviousness under 35 U.S.C. § 103(a). Section 103(a) states, in relevant part:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a). "'Prior art' in the obviousness context includes the material identified in section 102(a)." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006) (citing *Riverwood Int'l Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003)). Section 102(a), in turn, identifies the relevant invalidating prior art as follows:

> the invention was . . . described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent

35 U.S.C. § 102(a). The date of invention for the '418 Patent is August 19, 1991—the filing date of Fujitsu's counterpart Japanese application, priority of which is claimed under 35 U.S.C. § 119. ('418 Patent, cover at [30]; *see also* discussion of independent creation defense *supra* n.3.)

Tellabs contends that the Krisher Contributions qualify as a "printed publication" under § 102(a) made publically available before the date of the invention, because the Krisher Contributions were "presented and distributed together to two T1X1 subcommittees between February 5-7, 1991, at a T1X1 meeting in Dallas, Texas." (Tellabs' SJ Mot. at 3.) Fujitsu argues that "genuine facts underlying whether the Krisher Contributions qualify as printed publications are in material dispute." (Fujitsu's Resp. at 6.)

The key inquiry of whether a reference constitutes a "printed publication" is whether the reference has been made "sufficiently accessible to the public interested in the art." *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004) (quoting *In re Cronyn*, 890 F.2d 1158, 1160 (Fed. Cir. 1989)). "A reference is publicly accessible upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (internal quotations and citations omitted). Dissemination of a printed reference "without restriction to at least six persons" has been held to be sufficient for purposes of establishing "publication," when "between 50 and 500 persons interested and of ordinary skill in the subject matter were actually told of the existence of the paper and informed of its contents by [an accompanying] oral presentation." *Mass. Inst. of Tech. v. AB Fortia*, 774 F.2d 1104, 1109 (Fed. Cir. 1985). The court's assessment of public accessibility is undertaken "on a case-by-case basis." *Kyocera Wireless Corp.*, 545 F.3d at 1350. "Where no facts are in dispute, the question of whether a reference represents a 'printed publication' is a question of law." *In re Klopfenstein*, 380 F.3d at 1347. As noted above, it is Tellabs' burden to prove the prior art status of the Krisher Contributions by clear and convincing evidence.

In 1991, an organization known as the "T1X1" committee was responsible for setting industry-wide standards in the telecommunications industry. (Tellabs' SJ Mot., Ex. E ("10/12/11 Kelly Decl."), Ex. 5 ("Boehm Dep.") at 10:4-7.) It is undisputed that the T1X1 committee held a three-day meeting on February 5-7, 1991, in Dallas, Texas, and that two T1X1 subcommittees — the T1X1.3 subcommittee (synchronization interfaces) and the T1X1.5 subcommittee (optical

6

hierarchical interfaces) — also held meetings on February 5-7, 1991, in Dallas, Texas. These two subcommittee meetings together were attended by 172 representatives from at least 50 different telecommunications companies over the course of three days. (*See* Dkt. No. 529 ("Tellabs' Reply"), 2/20/12 Kelly Decl., Ex. B at ALU-00003090 ("2/7/91 T1X1.3 Meeting Report") (noting "48 representatives in attendance"); Tellabs' SJ Mot., Ex. D ("7/28/11 Goode Decl."), Ex. R ("2/8/91 T1X1 Meeting Minutes") at 14 (noting "[t]he total number of attenders for [the T1X1.5 subcommittee] meeting was 124"); Tellabs' SJ Mot., Ex. C ("3/29/11 Goode Decl."), Ex. G, Attach. 17 (attendance list for February 1991 T1X1.5 subcommittee meeting).)

In his September 27, 2011 declaration, Krisher attested that he "orally presented the [Krisher Contributions] at the T1X1 meeting held in Dallas, Texas from February 5-7, 1991 (to the T1X1.3 subcommittee and the T1X1.5 subcommittee)" and that he also "followed [his] regular practice and brought at least 25 paper copies of each of these two documents to this meeting and placed these copies on a table in the meeting room, along with the multiple copies of the other contributions, for the attendees to pick up and take with them." (9/27/11 Krisher Decl." ¶ 14.) Krisher attested that his regular practice (e.g. "[e]very time I presented and distributed one of my technical contributions at a T1X1 meeting") was to place at least 25 paper copies of the relevant contribution "on a table in the meeting room for meeting attendees to pick up and take with them," that "[a]t no time was one of the T1X1 technical contributions I wrote subject to any type of limited distribution or confidentiality condition," and that T1X1 required its members to share contributions "without restriction." (*Id.* ¶ 10.) At his November 17, 2011 deposition, Krisher testified that he was unable to independently recall many of the details of the February 1991 T1X1 subcommittee meetings, including how many people attended the meetings

7

or the names of any individual attendees, exactly how long his presentations lasted, the specific content of his presentations, how many slides he presented, who was chairing the subcommittee meetings, how many copies of the Krisher Contributions he actually brought to the meetings, and whether any of the attendees took copies of the Krisher Contributions. (Dkt. No. 456-3 ("11/17/11 Krisher Dep.") at 53:2-55:22; 92:9-93:4.)[4]

Fujitsu argues that Tellabs has not provided "any proof that a single individual received a copy of either of the Krisher Contributions from this meeting or ever." (Fujitsu's Resp. at 11.) To the extent Tellabs has not provided testimonial evidence from any particular individual unequivocally stating that he or she received a copy of the Krisher Contributions at the February 1991 T1X1 subcommittee meetings, Fujitsu is correct. Tellabs has, however, provided a substantial amount of circumstantial evidence corroborating Krisher's testimony that the Krisher Contributions were presented and distributed at the February 1991 T1X1 subcommittee meetings. That evidence includes: the T1X1 identifiers assigned to each of the Krisher

---

[4] Fujitsu has argued in its "Motion to Strike Portions of the Declarations of Dale Krisher, Thomas Goode, and Andrew Singer" that Krisher's testimony regarding his presentation and distribution of the Krisher Contributions to the February 1991 T1X1 subcommittee meetings should be stricken because it is not supported by competent evidence. (Dkt. No. 451 ("Fujitsu's Mot. to Strike") (denied today by separate court order).) Federal Rule of Civil Procedure 56(c)(4) permits Tellabs to rely on affidavits based on personal knowledge, and Krisher testified at his November 17, 2011 deposition that he had "a specific recollection" of presenting the Krisher Contributions to the February 1991 T1X1 subcommittee meetings. (*See* 11/17/11 Krisher Dep. at 54:18-21.) Krisher is also competent to testify about his own "typical practice" regarding the distribution of his T1X1 contributions and, pursuant to Federal Rule of Evidence 406, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." F.R.E. 406; *see also* F.R.E. 602. The court understands Krisher's testimony to be that he does not specifically recall distributing paper copies of the Krisher Contributions at the February 1991 T1X1 subcommittee meetings in Dallas, Texas, but that he assumes he did so in accordance with his "regular practice."

Contributions (e.g. "T1X1.3/91-012 & T1X1.5/91-017" for *Synchronization Management* and "T1X1.3/91-013 & T1X1.5/91-018" for *Synchronization Messages*); Krisher's testimony regarding the significance of the T1X1 identifiers (9/27/11 Krisher Decl. ¶ 14.f; 11/17/11 Krisher Dep. at 69:4-24); the testimony of former T1X1.5 subcommittee vice-chairman, Dr. Grant Cyboron, that the presence of identifiers for both the T1X1.3 subcommittee and the T1X1.5 subcommittee on a single contribution indicates an issue that "would actually need to be discussed in both working groups in order to come up with a solution to the problem" (Tellabs' Reply, 2/20/12 Kelly Decl., Ex. G ("1/12/12 Cyboron Dep.") at 20:14-21:8); the February 8, 1991 T1X1 Meeting Minutes noting that contributions were generally made to the T1X1.3 subcommittee on the topic of "ESF/SONET synchronization messages" and that the T1X1.5 subcommittee "received 15 technical contributions related directly to its own work [and] 5 technical contributions submitted for information purposes related to synchronization messages (this topic is being worked primarily in T1X1.3)" (2/8/91 T1X1 Meeting Minutes at TLTX26015807 and TLTX26015811); Dr. Cyboron's testimony regarding the general practice of the T1X1.5 subcommittee that "[c]ontributions that were presented for information only were presented as – the contents of the contribution were presented by the author" (1/12/12 Cyboron Dep. at 67:6-9); the T1X1.5 February 5-7, 1991 Meeting Report identifying *Synchronization Messages* by number and title as a topic of presentation to the T1X1.5 subcommittee, with a description stating that *Synchronization Messages* "listed three message set solutions for each of the algorithms proposed in T1X1.5/91-017 [*Synchronization Management*]" (3/29/11 Goode Decl., Ex. F ("T1X1.5 Meeting Report") at 17); Dr. Cyboron's testimony that *Synchronization Messages* was presented to the T1X1.5 subcommittee (1/12/12 Cyboron Dep. at 41:23-42:3);

attendee William Powell's testimony that both of the Krisher Contributions were presented at the February 1991 T1X1.3 subcommittee meeting (Tellabs' Reply, 2/20/12 Kelly Decl., Ex. C ("2/3/12 Powell Dep.") at 28:6-29:15); Powell's notes from the T1X1.3 subcommittee meeting for "2/7/91 pm," including the notation "Dale's Sync Msg Contrib." followed by the T1X1.3 identifiers for both of the Krisher Contributions (Tellabs' Reply, 2/20/12 Kelly Decl., Ex. D at ALU-00005201); the February 7, 1991 T1X1.3 Meeting Report listing both Krisher Contributions by their T1X1.3 identifiers and titles, noting "Dale Krisher, Alcatel" as the presenter, and discussing the content of Krisher's presentation to the T1X1.3 subcommittee in a short paragraph of six sentences (2/7/91 T1X1.3 Meeting Report at ALU-00003092); the T1X1.3 Document Register noting the T1X1.3 assigned identifiers for both of the Krisher Contributions and the T1X1.3 assigned identifier for Krisher's "vu graph" presentation slides "used to present 91-012 and 91-013" (*id.* at ALU-00002874-75); the six "vu graph" slides themselves, labeled "D. Krisher" with a date of "Jan 30, 1991" (*id.* at ALU00003084-89); Powell's testimony that T1X1 members were generally "encouraged to bring at a minimum 25 extra copies" of "contributions that were to be discussed at meetings" (2/3/12 Powell Dep. at 27:16-19); and Dr. Cyboron's testimony that presenters "were expected to bring enough [copies of their contribution] to distribute it to everybody that came" (1/12/12 Cyboron Dep. at 25:2-4.).

  Tellabs further notes that three articles published after the February 1991 T1X1 meeting, and before the August 19, 1991 date of invention, cite to one or both of the Krisher Contributions. (10/12/11 Kelly Decl., Ex. 7 (English, Dan & Ellson, John, *Additional Clock Quality Indication Considerations*, T1 Contribution Doc. No. T1X1.3/91-051 & T1X1.5/91-049 (April 1991)) at 6 n.2; 7/28/11 Goode Decl., Ex. M (McAllum, Frank, *Data Channels to*

*Transport Synchronization Messages*, T1 Contribution Doc. No. T1X1.3/91-082 & T1X1.5/91-116 (July 1991)) at 4 nn. 1, 3.; 2/20/12 Kelly Decl., Ex. E at ALU-00003579-90 (Ohlweiler, Joe & Deb, Sam, *Synchronization Status Messages for Digital Networks*, T1 Contribution No. T1X1.3/91-080 (July 1991) at ALU-00003586.) Authors Dan English, Frank McAllum, and Joe Ohlweiler were each present at the T1X1.3 subcommittee meeting in February 1991, representing three different telecommunications companies. (2/20/12 Kelly Decl., Ex. B at ALU-00003102-3110.)

The only evidence in the record suggesting that the Krisher Contributions were not both presented and distributed at the February 1991 T1X1 subcommittee meetings are the following statements from Dr. Cyboron's December 19, 2011 declaration:

> My routine practice . . . as the T1X1.5 vice-chairman was . . . I would devote a new section to each presented T1 contribution, denoted by <u>underlining</u> and **bolding** its T1 contribution document number and by **bolding** its contributing company and title.
>
> * * *
>
> Considering the way I as the T1X1.5 vice-chairman regularly format minutes and lay out the template ahead of time, and judging from the way these meeting minutes are formatted by me in real-time, there is no indication that the contribution numbered T1X1.5/91-017 was presented at the February 5-7, 1991 meetings of T1X1.5. Conversely, there is every indication that the contribution numbered T1X1.5/91-017 was not presented at the February 5-7,1991 meetings of T1X1.5.

(Fujitsu's Resp., Ex. C ("12/19/11 Cyboron Decl.") ¶¶ 7, 11.)

The February 5-7, 1991 Meeting Report includes the following information:

**T1X1.5/91-018 (Alcatel NA)**

**"Synchronization messages for digital networks"**

> Abstract: This contribution describes the synchronization messages needed for SONET and ESF DS1 synchronized networks. It also discusses the need for additional definitions for the SONET and DS1 ESF channels

|  |  |  |
|---|---|---|
|  |  | used for these messages. |
| Discussion: | | Contribution listed three message set solutions for each of the algorithms proposed in T1X1.5/91-017.  Contributions are solicited on the selection of one of the three message sets. |
| Status: | | Provided for information; No action required. |

(T1X1.5 Meeting Report at 17.)  At his deposition, Dr. Cyboron distinguished between whether a contribution was "discussed" by the T1X1.5 subcommittee for purposes of "trying to reach resolution on an issue raised in the contribution" versus whether it was "presented for information only," in which case "the contents of the contribution were presented by the author [but] [the T1X1.5 subcommittee] would wait for the other group that was the primary target of those contributions to take action on them."  (1/12/12 Cyboron Dep. at 66:10-67:18.)

Viewing all of the evidence in the light most favorable to Fujitsu, as the court must do in evaluating Tellabs' motion for summary judgment, the court finds there to be a disputed question of fact on the question of whether Krisher presented *Synchronization Management* to the February 1991 T1X1.5 subcommittee meeting.  The court further finds, however, that the undisputed evidence in the record demonstrates by clear and convincing evidence that both of the Krisher Contributions were presented and distributed at the February 1991 T1X1.3 subcommittee meeting, such that "persons interested and ordinarily skilled in the subject matter" of the '418 Patent "exercising reasonable diligence" could easily "locate" the Krisher Contributions in February 1991.  *Kyocera Wireless Corp.*, 545 F.3d at 1350.  In other words, the only reasonable inference that can be drawn from the record before the court is that the Krisher Contributions were made publically available before the date of the invention, thus qualifying

12

the Krisher Contributions as prior art for purposes of Tellabs' § 103 argument.[5]

3.  Obviousness

In its opening brief, in a span of approximately four pages, Tellabs articulated a detailed argument that "in the alternative to being anticipated, claims 1 and 6-9 of the '418 Patent are rendered obvious by the Krisher [Contribtions]." (Tellabs' SJ Mot. at 23-26.) Tellabs also spanned approximately 19 pages explaining how "the Krisher [Contributions] disclose each of the claim elements/steps of claims 1 and 6-9 exactly as recited in those claims." (*Id.* at 4-23.)

Fujitsu did not respond directly to either of these arguments. Instead, Fujitsu took the position that "genuine issues of material fact remain regarding whether the [Krisher] Contributions meet the enablement requirement." (Fujitsu's Resp. at 25-41.)

The problem with Fujitsu's argument is that a determination of obviousness under § 103 does not require prior art references to be enabled. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1357 (Fed. Cir. 2003) ("Under § 103, however, a reference need not be enabled; it qualifies as a prior art, regardless, for whatever is disclosed therein."); *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1578 (Fed. Cir. 1991) ("While a reference must enable someone to practice the invention in order to anticipate under § 102(b), a non-enabling reference may qualify as prior art for the purpose of determining obviousness under § 103."); *Minnesota Min. and Mfg. Co. v. Blume*, 684 F.2d 1166, 1172 n.10 (6th Cir. 1982) ("there is no requirement that the prior art must make an enabling disclosure before it may be considered in determining

---

[5] The court has also considered Fujitsu's argument that Krisher's status as both a paid expert and a fact witness for Tellabs suggests that his testimony is biased. In light of the overwhelming amount of corroborating evidence set forth by Tellabs, the court finds Fujitsu's argument to be unpersuasive on this point.

13

obviousness, rather, the requirement is simply that the means which would enable the inventor to arrive at the product be obvious") (dictum).

As noted above, § 103(a) bars an inventor from obtaining a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). The test for obviousness under § 103 involves four factors: (1) the scope and content of the prior art; (2) the differences between the asserted claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations of nonobviousness, if any. *KSR Int'l Co. v. Telefax Inc.*, 550 U.S. 398, 406-07 (2007) (confirming that the factors identified in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), "continue to define the inquiry that controls"); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("A nonmovant may rebut a prima facie showing of obviousness with objective indicia of nonobviousness.").

In this case, Tellabs has argued that the asserted claims of the '418 Patent rely on a combination of prior art that is fully disclosed in the Krisher Contributions. In other words, it is Tellabs' position that "there is absolutely no difference between the claimed invention of the '418 Patent and the Krisher [Contributions]." (Tellabs' SJ Mot. at 25.) Fujitsu in response makes no attempt to articulate any differences between the disclosures contained in the Krisher Contributions and the asserted claims of the '418 Patent, and the court is not aware of any. Fujitsu also does not cite any indicia of nonobviousness or assert any argument on these grounds. Based on the *Graham* factors, therefore, the only remaining question before the court is whether it would have been obvious to a person of ordinary skill in the art before August 19, 1991, that

the two Krisher Contributions could be combined to produce the claimed invention.

*Synchronization Messages* explicitly states in its opening paragraph that its "companion contribution," *Synchronization Management*, "should be understood before studying this one." (*Synchronization Messages* at 2.) Additionally, *Synchronization Management* refers to *Synchronization Messages* three times within its text, including as a reference "for more information" on the subject of "an important fact that must not be overlooked." (*Synchronization Management* at 2.) This court has previously determined that a person of ordinary skill in the art for the '418 Patent would have "(1) at least four years of experience in synchronization techniques for synchronous optical networks, or (2) a Bachelor's degree in systems engineering or electrical engineering with at least two years of experience either in synchronization techniques for synchronous optical networks or in researching and designing components for synchronous optical networks." (Dkt. No. 379 ("9/29/11 Mem. Op. & Order") at 7-8.)
The court finds that, to such a person, the combination of the Krisher Contributions would have been obvious.

"Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR* at 427.

## CONCLUSION

For the reasons stated above in this opinion, under the undisputed material facts viewed in Fujitsu's favor, the court finds that the asserted claims of the '418 Patent are obvious under § 103(a) as a matter of law and Tellabs' motion for summary judgment is granted. Judgment is

15

accordingly ordered entered pursuant to Federal Rule of Civil Procedure 54(b) in favor of

Tellabs on its counterclaim for declaratory judgment of invalidity of the '418 Patent.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 26, 2012