IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 C 4530 |
| | ) | |
| TELLABS, INC., TELLABS OPERATIONS, | ) | |
| INC., and TELLABS NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER
GRANTING TELLABS' MOTION FOR
<u>SUMMARY JUDGMENT ON LOST PROFITS DAMAGES [593]</u>

JAMES F. HOLDERMAN, Chief Judge:

Defendants Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North America, Inc. (hereinafter collectively referred to as a singular group, "Tellabs") have moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the issue of whether plaintiff Fujitsu Limited can recover under the patent damages theory of lost profits if Tellabs' patent infringement liability were to be established in this case. [593].

Tellabs contends in its motion "that (1) Fujitsu Limited is not entitled to damages in the form of the lost profits because it sells no products in the United States and (2) Fujitsu Limited cannot claim the lost profits of its North American subsidiary and non-exclusive licensee, Fujitsu Network Communications, Inc." *Id.* Fujitsu Limited filed a Memorandum of Law in Opposition [683] and a Response to Tellabs' Statement of Material Facts [684] for itself and purportedly for Fujitsu Network Communications, Inc. ("FNC"). FNC does not own any of the patents-in-suit, and FNC is not a party to this case, having been dismissed more than four years ago pursuant to an agreed order entered on August 14, 2008 [42]. Consequently, Fujitsu Limited's references in

docket entries 683 and 684 to FNC as though FNC were a party to this case are stricken. Additionally, a brief statement regarding the background of this matter is in order.

BACKGROUND

Fujitsu Limited, a Japanese corporation, is the sole owner of the rights in the two United States patents that Fujitsu Limited continues to assert in this litigation, U.S. Patent No. 5,521,737 ("'737 Patent") and U.S. Patent No. 5,526,163 ("'163 Patent"). Although Fujitsu Limited owns those United States patents, which relate to telecommunications systems, Fujitsu Limited does not sell any telecommunications systems in the United States. Sales of Fujitsu Limited's patented telecommunications systems in the United States are made by a non-exclusive licensee, its wholly-owned United States subsidiary FNC, which is a California corporation and headquartered in Richmond, Texas.

Fujitsu Limited commenced this litigation on January 29, 2008 when it filed a complaint against Tellabs, Inc. and Tellabs Operations, Inc. in the United States District Court for the Eastern District of Texas ("Texas Action") alleging infringement of four of Fujitsu Limited's United States patents. The four initial patents-in-suit were the '737 Patent and the '163 Patent, as well as U.S. Patent No. 5,386,418 ("'418 Patent") and U.S. Patent No. 6,487,686 ("'686 Patent"). The Texas Action was transferred to this court on July 29, 2009 and was assigned Northern District of Illinois Case No. 09 C 4530. Fujitsu Limited's allegations regarding its '686 Patent were dismissed from this litigation pursuant to settlement on November 4, 2010 [249]. Fujitsu Limited's '418 Patent was determined to be invalid on September 26, 2012 [950].

On June 11, 2008, Tellabs Operations, Inc. filed Case No. 08 C 3379 against Fujitsu Limited and FNC in the United States District Court for the Northern District of Illinois

("Illinois Action") alleging infringement of Tellabs Operations, Inc.'s U.S. Patent No. 7,369, 772 ("'772 Patent'"). Fujitsu Limited filed a counterclaim in the Illinois Action against all three Tellabs entities alleging Tellabs' infringement of two other of Fujitsu Limited's U.S. Patents, Nos. 5,533,006 ("'006 Patent") and 7,227,681 ("'681 Patent") [61]. Tellabs in the Illinois Action, 08 C 3379, sought a declaratory judgment determination that Fujitsu Limited's '006 Patent and Fujitsu Limited's '681 Patent were invalid. This court on March 31, 2011 ruled in the Illinois Action that Fujitsu Limited's '006 Patent was invalid [Case No. 08 C 3379, 369]. Fujitsu Limited's allegations of Tellabs' infringement of the '681 Patent, along with Tellabs' assertion of the '681 Patent's invalidity, were tried to a jury in late August and early September 2012. The jury returned a verdict on September 7, 2012 finding that Tellabs did not infringe the '681 Patent and that the '681 Patent was not invalid [Case No. 08 C 3379, 564].

Although the Illinois Action, No. 08 C 3379, and Texas Action, No. 09 C 4530, were consolidated for discovery purposes, FNC's involvement is limited only to the Illinois Action that was brought by Tellabs Operations, Inc. accusing FNC, along with FNC's parent, Fujitsu Limited, of infringing Tellabs Operations, Inc's '772 Patent. FNC has asserted no claims and has sought no damages whatsoever from Tellabs, because FNC owns none of the patents-in-suit. The Illinois Action was bifurcated pursuant to Federal Rule of Civil Procedure 42(b) and proceeded to a jury trial on Fujitsu Limited's '681 Patent as stated above. Beyond that, the Illinois action was stayed as to any issue related to the '772 Patent, pending that patent's reexamination. [478; 929].

The lost profits damages issue relates only to the Texas Action, No. 09 C 4530, to which FNC is not a party.

The Genesis of the Lost Profits Damages Issue

In March 2012, Fujitsu Limited pursuant to Federal Rule of Civil Procedure 26(a)(2) submitted an expert report of its damages expert Christopher J. Bokart to Tellabs. That report includes damage calculations using the theory of lost profits regarding two contracts Tellabs obtained instead of FNC: the 2005 Verizon contract and the 2006 Qwest contract. Tellabs disputes that lost profits, in any form, are a proper measure of Fujitsu Limited's recoverable damages if patent infringement liability were proven against any of the Tellabs entities. Tellabs further asserts that Fujitsu Limited cannot recover lost profits of its wholly-owned subsidiary and non-exclusive licensee, FNC. Fujitsu Limited contends that its lost profits damages legal theory is proper if Tellabs' patent infringement liability were to be proven.

APPLICABLE LAW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's role in reviewing a motion for summary judgment is simply "to determine based on the record whether there is a genuine issue of material fact requiring trial." *Costello v. Grundon*, 651 F.3d 614, 636 (7th Cir. 2011). In performing this analysis, the court views the evidence in the light most favorable to Fujitsu Limited, the non-movant. *Berry v. Chicago Transit Authority*, 618 F.3d 688, 691 (7th Cir. 2010).

Title 35, United States Code, Section 284 states:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

The availability of lost profits damages under 35 U.S.C. § 284 to a patent owner as a result of infringement is a question of law. *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1544 (Fed. Cir. 1995) (*en banc*); *see also Poly-America, L.P. v. GSE Lining Tech., Inc.,* 383 F.3d 1303, 1311 (Fed. Cir. 2005) ("Whether lost profits are legally compensable in a particular situation is a question of law that we review *de novo.*").

A. <u>Patent Owner's Damages Recovery for Its Own Lost Profits</u>

Traditionally, patent owners seeking compensatory damages under § 284, "tend to fit their damages cases into the 'lost profits' framework or else fall back on the statutory grant of a reasonable royalty." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008). The Federal Circuit has held that the damages theory of lost profits "is not limited to the situation in which the patentee is selling the patented device." *Poly-America,* 383 F.3d at 1365. The patent owner is required, however, "to have been selling some item, the profits of which have been lost due to infringing sales." *Id.* As noted above, "[w]hether lost profits are legally compensable in a particular situation is a question of law." *Id.* The standard of review is *de novo*. *Id.* The Federal Circuit has recognized that a court's analysis of the correct measure of damages, however, is "highly case-specific and fact-specific." *Mars*, 527 F.3d at 1366.

B. <u>Patent Owner's Damages Recovery for Its Wholly-Owned Subsidiary's Lost Profits</u>

As noted above, Fujitsu Limited also seeks to recover as damages the profits that were allegedly lost by its domestic subsidiary, FNC, due to Tellabs' sales of the allegedly infringing systems pursuant to the 2005 Verizon and 2006 Quest contracts that Tellabs obtained.

The issue governing whether a parent company patent owner may be compensated under the damages theory of lost profits for its wholly-owned subsidiary's lost sales turns on whether

the subsidiary's profits "flowed inexorably" to the patent-owner parent. *Mars*, 527 F.3d at 1367. The mere fact that the subsidiary's lost sales "may have caused harm" to the parent company is not sufficient, by itself, to establish lost profits damages. *Id.* at 1365.

Judge Richard Linn's 2008 opinion in *Mars*, which was joined by Judges Clevenger and Prost, applied the reasoning of Judge Alan Lourie's 2004 opinion in *Poly-America*, which was joined by former Chief Judge Michel and current Chief Judge Rader. These cases are precedent that this court must follow in evaluating the undisputed material facts here.

In the *Mars* case, the corporate relationship was the same as here. Mars was the parent corporation of MEI, a wholly-owned subsidiary licensee of the patents-in-suit owned by Mars. The patents dealt with technology for coin changers. Mars sued Coinco for patent infringement of Mars' patents. Coinco was found to have infringed the Mars coin changer patents-in-suit, and Mars subsequently sought to recover lost profits. Before the trial on damages, Coinco moved for summary judgment on the lost profits issue, because Mars' coin changers were sold through its subsidiary MEI. Mars moved to amend its complaint to add MEI as a plaintiff. United States District Judge John Lifland of New Jersey denied that motion, because MEI did not own the patents-in-suit and therefore lacked standing to sue for infringement of those patents. Judge Lifland also granted Coinco's summary judgment motion prohibiting Mars from recovering lost profits on MEI's lost sales resulting from Coinco's infringement. Judge Lifland reasoned that "Mars itself did not lose any sales (because it did not sell coin changers itself), and that there was no evidence that profits from MEI's sales flowed inexorably to Mars." *Mars,* 527 F.3d at 1364. The Federal Circuit affirmed. *Id.*

In *Poly-America*, the patent owner, Poly-America L.P., was awarded $7.15 million in lost profits damages at the conclusion of a patent infringement jury trial. The jury also awarded Poly-America a reasonable royalty of $5.08 million. A key issue on appeal was whether Poly-America's claim for lost profits damages resulting from lost sales that Poly-America's sister corporation, Poly-Flex, Inc., had suffered was appropriate under the law. Poly-Flex was a non-exclusive licensee of the patent-in-suit. Judge Lourie, writing for the panel, acknowledged that a patentee claiming lost profits need not to have been selling the patented device, but "the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages [to itself from the infringer's infringement]." *Poly-America,* 383 F.3d at 1311 (citing *Rite-Hite,* 56 F.3d at 1548). Judge Lourie considered the fact that plaintiff Poly-America and its sister corporation Poly-Flex "have a common parent corporation" and "seem to share interests as two entities collaborating in the manufacture and sale of textured landfill liners," but Judge Lourie was unpersuaded that this relationship alone "permit[ted] Poly-America to claim Poly-Flex's lost profits from Poly-Flex's lost sales." *Id.* Noting that Poly-America and Poly-Flex "are separate corporate entities," Judge Lourie concluded that one limitation of a corporate structure "separating the owner of the patent from the seller of the patented product" was "the inability of the patent holder to claim the lost profits of its non-exclusive licensee." *Id.* Consequently, the Federal Circuit rejected Poly-America's argument that the lost profits of its licensee's, Poly-Flex's, lost sales were compensable to Poly-America, and reversed the district court judge's denial of defendant's motion for new trial on damages. *Id.* at 1312.

Additionally, Fujitsu Limited's counsel points to an unpublished Federal Circuit opinion, *Fisher-Price Inc. v. Safety 1st, Inc.,* 109 Fed. App'x 387 (Fed. Cir. 2004), authored by Judge

Alvin A. Schall, which was issued before the *Mars* and *Poly-America* opinions but was not chosen for publication. In the *Fisher-Price* case, the Federal Circuit decided "not disturb the district court's decision on [the lost profits] issue." *Id.* at 393. United States District Judge Gregory Sleet of Delaware had determined that a new trial on damages was necessary, and he denied defendant Safety1st's "motion for JMOL" on the plaintiff's potential recovery of lost profits. Judge Sleet's reasoning was because Fisher-Price's Director of Engineering, John Rhein, had explained that: "Fisher-Price is actually a wholly-owned subsidiary of Mattel" and that "any product that Mattel makes . . . is really under the control of Fisher-Price." *Fisher-Price, Inc. v. Safety 1st, Inc.*, 279 F. Supp.2d 530, 549 (D. Del. 2003).

In addition to the unpublished *Fisher-Price* opinion, non-precedential opinions written by several other judges sitting in various district courts across the country have been called to this court's attention by counsel.

In *Callaway Golf Company v. Acushnet Company*, 691 F. Supp. 2d 566 (D. Del. 2010), on remand from the Federal Circuit for a retrial regarding the issues of anticipation and obviousness, United States District Judge Sue L. Robinson stated without further analysis that, "where the profits of a wholly-owned subsidiary flow up to the parent, inclusion of such profits is appropriate." *Id.* at 575 (citing *Mars*, 527 F.3d at 1367).

In a determination by United States Magistrate Judge Barry M. Kurren, *Kowalski v. Mommy Gina Tuna Resources*, 574 F. Supp. 2d 1160 (D. Hi. 2008), applying *Mars* and *Poly-America*, Judge Kurren denied lost profit damages to an individual, plaintiff Kowalski, who was the patent owner and sole owner of the company Hawaii International Seafood, Inc. ("HISI"). Judge Kurren explained, "Here, the flow of profits from HISI to Kowalski is no more inexorable

than Kowalski's intent that it be so." *Id.* at 1163. Judge Kurren's conclusion focused on the fact that Kowalski "had complete discretion to dispose of the profits of the company as he saw fit" and, in "the absence of any evidence of inexorability, either contractual, structural or historical," *id.*, regarding the flow of profits from HISI to Kowalski, recovery under the lost profits damages theory was not appropriate.

Another district court case, *Novozymes A/S, v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007), is a pre-*Mars* but post-*Poly-America* decision by Circuit Judge Kent A. Jordan of the United States Court of Appeals for the Third Circuit sitting by designation in the District of Delaware where he had previously served as a district judge. In issuing his findings of fact and conclusions of law after a bench trial, Judge Jordan focused on "the organizational structure of Novozymes and its subsidiaries" in holding that the patent-owner, Novozymes, could not recover for the lost profits of its wholly-owned subsidiary, NZNA. *Id.* at 604. Judge Jordan explained,

> Like the corporations in *Poly-America*, Novozymes has structured itself and its subsidiaries for its own goals and purposes. Novozymes must take the burdens of that structure along with the benefits. Novozymes may not blur the legal distinction between itself and NZNA to recover damages that Novozymes has not directly suffered.

*Id.* at 604-05 (internal citation omitted). Similar to the factual circumstances of the *Mars* case, parent company Novozymes owned the patent-in-suit while its wholly-owned subsidiary, NZNA, held a non-exclusive license to manufacture and distribute the product whose "lost" sales were at issue. Judge Jordan deemed it irrelevant that Novozymes, the patent-owner parent, was a Danish company, while NZNA, the wholly-owned subsidiary, was an American company.

In *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 U.S. Dist. LEXIS 5000 (N.D. Ohio Feb. 9, 2006), United States District Judge Patricia A. Gaughan addressed the

9

question of lost profits in a discovery order. The patent-owner plaintiff, MPT, claimed lost profits based, in part, on the costs paid to its non-exclusive licensee and manufacturer, TKG. The defendant, Polymeric, sought discovery regarding TKG's production costs. Judge Gaughan began her analysis by noting "[a] patent plaintiff seeking lost profits must demonstrate that but for the infringing activities of the defendants, it would have made the profits at issue." *Id.* at 9 (citing *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003)). Judge Gaughan went on to note, "[n]owhere in *Poly-America* does the Federal Circuit indicate that courts should always blind themselves to the realities of corporate arrangements." *Id.* at 15. Judge Gaughan further commented on "the potential for manipulation of the lost profits award" due to the corporate relationship between MPT and TKG. *Id.* at *13. Judge Gaughan concluded that the sought-after discovery regarding TKG's production costs and sales was relevant to MPT's claimed profit margin, stating,

> While related companies may be able to allocate profits as they wish, a patent lost profits award — particularly an award that is based on a profit margin multiplier — cannot be based solely upon an accountant's choice as to which scenario will produce the highest award. To hold otherwise would allow patent plaintiffs to game the system for damage awards that exceed the amount they could actually receive 'but for' the infringement.

*Id.* at 20.

## ANALYSIS OF FACTS AND APPLICABLE LAW

Bearing in mind the legal authority discussed above, the court turns to the facts of this case that are undisputed and material to the lost profits issue. In doing so, the court notes that many of the facts added by Fujitsu Limited in responding to Tellabs' proposed facts and as "Proposed Counter-Findings of Material Facts" [684, pages 11-22] are not material to the court's

10

determination of the lost profits issue. Moreover, the court reiterates that only Fujitsu Limited, not FNC, may recover any damages if the alleged patent infringement is proven.

        A.        <u>Undisputed Material Facts as to the Issue of Lost Profits</u>

As stated earlier, Fujitsu Limited, a Japanese corporation, owns the patents-in-suit. FNC, a California corporation headquartered in Texas, is a separate entity from Fujitsu Limited but is its wholly-owned subsidiary. The sales in the United States of the Fujitsu FLASHWAVE 7500 operating system at issue are made only by FNC. FNC is a non-exclusive licensee of the Fujitsu Limited patents-in-suit. Fujitsu Limited has also licensed the patents-in-suit to IBM, Texas Instruments, and AT&T in the United States, as well as Hitachi and Nippon Telegraph and Telephone Corporation in Japan. Fujitsu Limited has never received any corporate dividends from FNC.

Fujitsu Limited, if it proves Tellabs' patent infringement liability, seeks to recover lost profits for sales of the Fujitsu FLASHWAVE 7500 operating system which FNC lost when Tellabs obtained each of two contracts: 1) the 2005 Verizon contract resulting from the 2005 Verizon DWDM Optical Transport Platform request for proposal; and 2) the 2006 Qwest Communications contract resulting from the 2006/2007 ROADM RFP. That both Verizon and Qwest would have purchased the Fujitsu FLASHWAVE 7500 operating system from FNC "but for" Tellabs' sales of Tellabs' product is a fact that is accepted by the court as material and undisputed for the purposes of this motion.

Approximately ninety percent of all of the component parts for the Fujitsu FLASHWAVE 7500 operating system are manufactured and assembled in Japan by Fujitsu Limited. Research and development for the Fujitsu FLASHWAVE 7500 operating system was

also done at Fujitsu Limited, whose engineers then supplied to FNC all of the technological "knowhow" related to the product. Certain mechanical items (e.g., shelf and filler panels) for the Fujitsu FLASHWAVE 7500 operating system are manufactured in the United States, because Fujitsu Limited determined that it was more cost-effective to manufacture these heavy parts in the United States, rather than have them shipped to FNC in the United States from Fujitsu Limited in Japan.

Although FNC has never declared or paid a dividend to Fujitsu Limited, FNC provides Fujitsu Limited revenue in the five following ways: (1) a fee for FNC's use of the "Fujitsu" brand, which includes Fujitsu Limited's trademark and trade names; (2) a manufacturing royalty payment that is based on FNC's sales volume for photonics components FNC does not purchase from Fujitsu Limited; (3) a payment for management allocation based on FNC's personnel and depreciation; (4) a separate fee to cover the 20 to 30 employees from Fujitsu Limited who at any time are assigned to work at FNC in Texas; and (5) a transfer price on the units and components FNC purchases from Fujitsu Limited for the Fujitsu FLASHWAVE 7500 operating system.

The transfer price (i.e., FNC's costs for the items it purchased from Fujitsu Limited) is what Fujitsu Limited argues are "profits" that FNC transfers to Fujitsu Limited. Fujitsu Limited also argues that it is entitled to recover damages for these "profits" it lost due to Tellabs' alleged patent infringement. Fujitsu Limited specifically stated in its Response to Tellabs' Statement of Material Facts: "Ultimately, the transfer price is determined by Fujitsu Limited based on Fujitsu Limited's overall corporate strategy and acceptable profitability ranges prescribed by the IRS." [Dkt. No. 684, page 9, paragraph 31.] Fujitsu Limited has conceded that it manipulates the transfer price for its corporate benefit.

B.  Fujitsu Limited's Own Lost Profits

Fujitsu Limited asserts that its lost profits theory of recovery is "what *Rite-Hite* allows: the profits it would have received 'but for' Tellabs infringement." [Dkt. No. 683, page 12.] In the *en banc* opinion in *Rite-Hite Corporation v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1994), Judge Lourie writing for the majority upheld certain of the district court's determinations on damages awarded to patent owner Rite-Hite, a manufacturer of devices to secure a vehicle to a loading dock to prevent the inadvertent separation of the vehicle from the dock during the loading and unloading of the vehicle, while vacating other portions of the district court's damages award. Specifically, the majority upheld the award of lost profits on Rite-Hite's lost sales of certain of its unpatented restraints, "ADL-100 devices" that Rite-Hite would have been able to sell but for defendant's infringement, but vacated the district court's lost profit damages award for "unpatented dock levers" because the dock levers "were merely items sold by Rite-Hite together with the restraints for convenience and business advantage." *Id.* at 1551. The facts relating to the damages determination in *Rite-Hite* are not the same as the facts before the court in this case where a domestic subsidiary, non-exclusive licensee sells the patented products of its foreign parent corporation.

*Novozymes A/S v. Genecor Int'l, Inc.,* 474 F. Supp. 2d 592, 612 (D. Del. 2007), a non-precedential district court case cited by Fujitsu Limited, also does not support Fujitsu Limited's position, because the district court in that case did not allow a lost profits recovery.

The material facts are clear and undisputed that the Fujitsu FLASHWAVE 7500 operating system is sold to customers in the United States not by Fujitsu Limited but by only FNC, Fujitsu Limited's wholly-owned subsidiary. Fujitsu Limited, itself, does not directly sell

13

and did not directly sell the Fujitsu FLASHWAVE 7500 operating system in the United States. Fujitsu Limited, itself, did not offer to sell the Fujitsu FLASHWAVE 7500 operating system to Verizon in 2005 or to Quest in 2006, and did not itself respond in any way to the respective requests for proposal from Verizon in 2005 or Quest in 2006. Fujitsu Limited itself did not compete in the United States market and itself lost no profits as a result of the alleged infringement of its patents.

### C. Fujitsu Limited's Ability to Recover FNC's Lost Profits

The facts are clear that none of the payments by FNC to Fujitsu Limited are the transfer of profits or the inexorable flow of profits from FNC to Fujitsu Limited, as the law discussed earlier in this opinion requires before a parent corporation patent holder may recover damages under the theory of profits lost by its non-exclusive licensee subsidiary as a result of patent infringement. The fact that Fujitsu Limited assigns 20 to 30 employees to work at FNC at all levels of FNC's operations, and the fact that customers or others do not appear to differentiate between Fujitsu Limited and FNC are not material to the lost profits issue. Moreover, the fee paid by FNC to Fujitsu Limited for use of the "Fujitsu" brand and the manufacturing royalty paid by FNC for photonics components that FNC does <u>not</u> purchase from Fujitsu Limited is more of an agreed upon inter-corporate penalty rather than the flow of profit.

The transfer price paid by FNC to Fujitsu Limited is regulated and calculated according to U.S. Tax Code requirements so as to avoid the consequences of 26 U.S.C. § 482, which is titled, "Allocation of income and deductions among taxpayers" and states:

> In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits,

>or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. In the case of any transfer (or license) of intangible property (within the meaning of section 936 (h)(3)(B)), the income with respect to such transfer or license shall be commensurate with the income attributable to the intangible.

The word "profits" does not appear in that statute. Likewise, the word "profits" appears nowhere in the business records prepared contemporaneously with the transactions of the transfer pricing adjustments between FNC and Fujitsu Limited, which Fujitsu Limited presented at the November 14, 2012 hearing. Fujitsu Limited's maneuvering of its income and costs between FNC and itself pursuant to the dictates of the Internal Revenue Service so as not to trigger "distribution, apportionment or allocation," as authorized by section 482, is nothing more than Fujitsu Limited's structuring its corporate relationships with its subsidiary FNC for Fujitsu Limited's corporate benefit. The fact that Fujitsu Limited periodically alters the price it charges FNC, which, of course, is tax deductible to FNC as a cost paid by FNC, does not convert Fujitsu Limited's tax avoidance strategy to the inexorable flow of profits required by *Mars,* 527 F.3d at 1367. Fujitsu Limited's tax strategy is designed to minimize the taxes Fujitsu Limited and FNC pay to governmental entities in their respective countries and is not a transfer of profits from FNC to Fujitsu Limited.

## CONCLUSION

For the reasons stated in this opinion, Tellabs Operations, Inc., Tellabs North America, Inc. and Tellabs, Inc.'s Motion for Summary Judgement on Lost Profit Damages [593] is granted. Tellabs' Motion to Renew Its Motion to Strike the Untimely Declarations of Randall

Eisenach, Rick Fiechtner, Yozaburo Tajima [722] and Tellabs Motion to Strike [1016] are denied as moot.

Fujitsu Limited will not be allowed to present the theory of lost profits as a theory of recoverable damages if patent infringement by Tellabs were to be prove at a trial in this case.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 21, 2012