IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUJITSU LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 4530 |
| | ) | |
| TELLABS, INC., | ) | |
| TELLABS OPERATIONS, INC., and | ) | |
| TELLABS NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER GRANTING TELLABS'
MOTION TO RENEW [955] IN ITS ENTIRETY AND GRANTING TELLABS'
RENEWED MOTION TO STRIKE [568] IN PART

JAMES F. HOLDERMAN, Chief Judge:

Remaining at issue in this case are U.S. Patent No. 5,521,737 (the "'737 Patent") and

U.S. Patent No. 5,526,163 (the "'163 Patent"), which are owned by plaintiff Fujitsu Limited and

allegedly infringed by defendants Tellabs, Inc., Tellabs Operations, Inc., and Tellabs North

America, Inc. ("Tellabs").[1]

In Tellabs' renewed "Motion to Strike Portions of Fujitsu's Expert Reports and to

Preclude Reliance by Fujitsu on Theories, Evidence, or Analyses Precluded Under the Court's

Order of March 21, 2012" (Dkt. No. 568 ("Renewed Motion")), it argues that portions of Fujitsu

Limited's expert reports should be stricken because they improperly exceed the scope of Fujitsu

---

[1] Both of these patents also remain at issue in the related case of *Fujitsu Limited v. Tellabs Operations, Inc.*, No. 12 C 3229 (N.D. Ill.) (the "2012 Case"). This opinion does not address the scope of the infringement contentions in the 2012 Case, other than to note that the 2012 Case has been limited by court order to include only newly-accused products. (*See* 12 C 3229, Dkt. No. 18.) The additional patents and claims previously litigated and resolved in the related case of *Tellabs Operations, Inc. v. Fujitsu Limited*, No. 08 C 3379 (N.D. Ill.) (the "2008 Case"), are irrelevant to the court's current analysis.

1

Limited's 2008 Infringement Contentions. For the reasons set forth below, Tellabs' Renewed Motion is granted in part and denied in part.

## BACKGROUND

Because Tellabs' pending motions require a familiarity with the procedural history of this case, the court will review the pertinent history of this litigation that explains the motions and court orders preceding the filing of Tellabs' Renewed Motion.

Northern District of Illinois case number 09 C 4530, referred to as the "Texas Action," was originally filed on January 29, 2008, in the United States District Court for the Eastern District of Texas. (Dkt. No. 1.) On July 28, 2008, while the case was pending before then District Judge, now Chief Judge Leonard Davis,[2] Fujitsu Limited served its infringement contentions on Tellabs ("2008 Infringement Contentions"). (*See* Dkt. No. 552 ("3/21/12 Order") at 3.) On June 12, 2009, Fujitsu Limited first moved for leave to amend its infringement contentions. (Dkt. No. 89.) Judge Davis denied Fujitsu Limited's motion without prejudice and granted Tellabs' motion to transfer the case to the Northern District of Illinois. (Dkt. No. 118.) The Texas Action was then transferred on July 29, 2009, and reassigned to this court on September 16, 2009, as related to case number 08 C 3379 (the "2008 Case"). (Dkt. Nos. 119, 145.)

Almost two years after the Texas Action was transferred to the Northern District of Illinois, on May 6, 2011, Fujitsu Limited moved to file an amended complaint. (Dkt. No. 318.) At a status hearing on June 21, 2011, Tellabs entered an oral motion objecting to the filing of an amended complaint and to the filing of any related amended infringement contentions. (Dkt. No. 327.) In ruling on both motions, this court noted that Fujitsu Limited's 2008 Infringement

---

[2] Judge Davis became Chief Judge of the United States District Court for the Eastern District of Texas in January 2012.

Contentions were deemed "final" at the time they were served on Tellabs, pursuant to the then-governing Eastern District of Texas Local Patent Rules, and that Fujitsu Limited had not shown good cause to amend its 2008 Infringement Contentions under the Northern District of Illinois's Local Patent Rules "which are now the controlling local patent rules for this case as it proceeds forward." (Dkt. No. 377 ("9/29/11 Order") at 2.)

Fujitsu Limited thereafter filed a "Motion to Set a Schedule to Serve Final Contentions and in the Alternative to File Amended Final Infringement Contentions." (Dkt. No. 397.) Noting that this motion was, "in some respects, a motion to reconsider this court's Sept. 29, 2011, ruling," the court denied Fujitsu Limited's motion. (3/21/12 Order at 2.) Specifically, the court denied Fujitsu Limited leave amend its 2008 Infringement Contentions to include "new versions" of Tellabs' accused products and to include new theories of indirect infringement and infringement under the doctrine of equivalents, while "assuming" that the proposed new theories "differ from those presented in Fujitsu's 2008 infringement contentions." (3/21/12 Order at 16.)

On April 16, 2012, Tellabs filed its original "Motion to Strike Portions of Fujitsu's Expert Reports and to Preclude Reliance by Fujitsu on Theories, Evidence, or Analyses Precluded Under the Court's Order of March 21, 2012." (Dkt. No. 568.) While the parties were briefing this motion, the parties and the court agreed to proceed to trial on one patent, U.S. Patent No. 7,227,681 (the "'681 Patent"), at issue in the related 2008 Case. Accordingly, the court denied Tellabs' motion without prejudice as moot with respect to the portions of the motion that involved the '737 Patent and the '163 Patent.[3] (Dkt. No. 736 ("7/23/12 Order") at 2-3.)

---

[3] Another patent that had been at issue in the Texas Action, U.S. Patent No. 5,386,418 (the "'418 Patent"), was later deemed invalid on summary judgment. (Dkt. No. 950.) The court therefore does not address Tellabs' Renewed Motion with respect to the '418 Patent as it pertains to the Texas Action. If the parties wish to renew their arguments with respect to the '418 Patent by separate motion in the 2012 Case, where the '418 Patent is currently at issue, they may do so at an appropriate point in that litigation.

After a temporary shift of focus during the trial of the '681 Patent, Tellabs filed a motion to renew its earlier motion to strike. (Dkt. No. 955.) Fujitsu Limited did not object to this motion, and the court therefore grants Tellabs' motion to renew its previously-filed motion to strike. With this procedural history now having been described, the court turns its attention to Tellabs' Renewed Motion as it pertains to the '737 Patent and the '163 Patent.

ANALYSIS

Pursuant to the Eastern District of Texas's Local Patent Rules, which governed at the time Fujitsu Limited served its 2008 Infringement Contentions, Fujitsu Limited's 2008 Infringement Contentions were required to contain the following information:

> (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

> (c) A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(E.D. Tex. P.R. 3-1(b) and (c).)

As this court has previously noted, "[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions." (7/23/12 Order at 8 (quoting *Fennder Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010) (Love, M.J.)).)

Tellabs' Renewed Motion is directed at specific portions of two of Fujitsu Limited's expert reports that Tellabs alleges go beyond the scope of the 2008 Infringement Contentions, as

interpreted by this court's March 21, 2012 order denying Fujitsu Limited leave to amend. The two expert reports at issue are:

- "Expert Report of Dr. Alan E. Willner Regarding Infringement With Respect to U.S. Patent No. 7,227,681, U.S. Patent No. 5,521,737, and U.S. Patent No. 5,526,163" (Dkt. Nos. 568-2 to 568-6 FILED UNDER SEAL ("Willner Infringement Report"))

- "Expert Report of Christopher J. Bokhart" (Dkt. No. 568-9 FILED UNDER SEAL ("Bokhart Damages Report"))

Tellabs moves the court to strike "those portions of [the two expert reports] that present theories of infringement precluded under the Court's [March 21, 2012] order or analyses based on products precluded under the Court's [March 21, 2012] order." (Renewed Mot. at 1.)

Although the court's March 21, 2012 order denying Fujitsu Limited leave to amend did touch upon the 2008 Infringement Contentions in various respects, the court takes this opportunity to again clarify that the March 21, 2012 order did not directly address "the sufficiency or scope of Fujitsu's 2008 Infringement contentions." (7/23/12 Order at 8.)

1.  Portions of Fujitsu Limited's Expert Reports Moot by Agreement

Fujitsu Limited has agreed to withdraw certain portions of the Willner Infringement Report addressing modules that were specifically identified in this court's March 21, 2012 Order denying Fujitsu Limited's "Motion to Set a Schedule to Serve Final Infringement Contentions and in the Alternative to File Amended Final Infringement Contentions." (*See* 3/21/12 Order at 16, n.10.) Specifically, Fujitsu Limited has agreed to withdraw, without prejudice, paragraphs 142-48; 260-78; 298; 383-87; 389-90; 392-93; 395-98; 400-01; 403-04; 407-08; 411-14; 416-17; 419-20; 422-669; 674; 678-90; 753; 758-59; 762-67; 769-72; 775-78; 783-86; 791; 799-802; 805-08; 811-14; 818-21; 825-28; 833; 899-916; 918; and 935 of the Willner Infringement Report, subject to Fujitsu Limited's proffer to the court. (*See* Dkt. No. 590 ("Fujitsu's Resp.") at 4, n.1.) Fujitsu Limited has also agreed to withdraw without prejudice the contested portions of

the Bokhart Damages Report. (*Id.* at 10.) Lastly, Fujitsu Limited has promised that it "will not rely on any references [in the Willner Infringement Report] to . . . the doctrine of equivalents." (Fujitsu's Resp. at 8.) Tellabs' Renewed Motion is therefore granted by agreement with respect to these portions of Fujitsu Limited's expert reports, to the extent they address the '737 Patent or the '163 Patent.

2.      Allegedly "New" Theories of Indirect Infringement

The court's July 23, 2012 analysis of Fujitsu Limited's theories of indirect infringement with respect to the '681 Patent applies with equal force to Fujitsu Limited's theories of indirect infringement with respect to the '737 Patent and the '163 Patent. (*See* 7/23/12 Order at 10-12.) As this court previously held, "a fair reading of Fujitsu's Disclosure [also addressing the '737 Patent and the '163 Patent] makes clear at least Fujitsu's contention that Tellabs committed contributory infringement and induced infringement by selling the Accused Instrumentalities to Tellabs's customers for the customers' own use." (*Id.* at 12.) The court therefore denies Tellabs' Renewed Motion with respect to these theories of infringement as applied to the '737 Patent and the '163 Patent.

3.      The '737 Patent

It is undisputed that Fujitsu Limited's July 2008 "Infringement Claim Chart for U.S. Patent 5,521,737" (Dkt. No. 639-3 FILED UNDER SEAL ("'737 Infringement Contentions")) identifies two specific modules as follows:

> Throughout Fujitsu's ['737 Infringement Contentions] . . . reference will be made to Figures 1-7, which are representative of the Accused Instrumentalities: Tellabs® 7100 Optical Transport System ("Tellabs® 7100"), Tellabs® 6325 Edge Node ("Tellabs® 6325"), and Tellabs® 6370 WDM Node ("Tellabs® 6370"). Figures 1-7 are based on at least one type of Tellabs® 7100: (1) Tellabs® 7100 that include a **Metro Input Amplifier Module ("MIAM")** manufactured by RED-C® and an **Optical Line Interface Module (OLIM)** manufactured by Avanex®. Tellabs® 6325 and Tellabs® 6370 may use similar structures and

methods with respect to the '737 Patent.

('737 Infringement Contentions at 1 (emphasis added).)[4] The '737 Infringement Contentions go on to describe in some detail how the MIAM and OLIM modules are alleged to practice the elements of the asserted claims of the '737 Patent, including the specific interactions of the MIAM and OLIM modules with other modules such as the **Dual Optical Supervisory Channel Module ("DOSC")** and the **Administrative Processor Module ("APM")**. (*Id.* at 22-24, 27-31.) The '737 Infringement Contentions also at times refer to the MIAM optical amplifier module and the **Metro Output Amplifier Module ("MOAM")** in language suggesting these two modules are interchangeable for purposes of Fujitsu Limited's infringement contentions. (*See, e.g.,* '737 Infringement Contentions at 22-23 ("For example, a first optical signal of a first wavelength and a second optical signal of a second wavelength in a DWDM signal is received from the OLIM, which is optically connected to MIAM (or MOAM) and a DOSC. As discussed above, the first optical signal is input into an optical fiber in the MIAM (or MOAM) and the second optical signal is branched to the DOSC.").)

Tellabs argues that, in addition to the five modules discussed above, the Willner Infringement Report also impermissibly asserts infringement of the '737 Patent by five modules "not analyzed in Fujitsu's July 2008 infringement contentions, including the LIAM-E, LRAM-E, ELRAM-E, SPM, and SPM-N" modules. (Tellabs' Mot. at 5.) Fujitsu Limited argues in response that its '737 Infringement Contentions "contained detailed information regarding the

---

[4] As noted in the court's July 23, 2012 order, the court is sensitive to the parties' concern for confidentiality, but must nevertheless explain its reasoning in the public record. (7/23/12 Order at 2.)

LIAM-E and LRAM-E [and SPM modules] and fairly provided notice to Tellabs of Fujitsu's '737 infringement theory." (Dkt. No. 590 ("Fujitsu's Resp.") at 6.)[5]

Claim 4 of the '737 Patent generally discloses "[a]n optical amplifier for amplifying a first optical signal of a first wavelength and receiving a second optical signal of a second wavelength," with the optical amplifier "comprising" four specific elements.[6] The '737 Infringement Contentions do not mention or analyze the LIAM-E, LRAM-E, or SPM modules in connection with any of the four elements comprising the optical amplifier asserted in Claim 4. By way of contrast, when Fujitsu Limited wanted to explain "where each element of each asserted claim is found within each Accused Instrumentality," (E.D. Tex. P.R. 3-1(c)), it did so with specificity by referencing "Tellabs® 7100 equipped with a MIAM manufactured by RED-C®," "Tellabs® 7100 equipped with an Optical Line Interface Module (OLIM) manufactured by Avanex®," or ""Tellabs® 7100 employing a Dual Optical Supervisory Channel Module (DOSC)." ('737 Infringement Contentions, Elements (b)-(e).)

The '737 Infringement Contentions do refer to the LIAM-E, LRAM-E, and SPM modules in support of the general, preliminary contention that the Tellabs® 7100 system includes "an optical amplifier for amplifying a first optical signal of a first wavelength and receiving a second optical signal of a second wavelength." (*Id.*, Element (a).) Specifically, the '737 Infringement Contentions cite various sections of the *Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* and the *Tellabs® 7100 Module and Hardware Description, 76.7100/4, Rev. A, 10/02 (2002)*, that together "describe[e]" nine different modules included in the Tellabs® 7100 system, including the SPM, LIAM-E, LRAM-E, LOAM-E, MIAM, MOAM, RIAM,

---

[5] Fujitsu Limited makes no argument with respect to the ELRAM-E optical amplifier module or the SPM-N processor module.
[6] The court's analysis pertaining to independent Claim 4 is equally applicable to the other three asserted claims of the '737 Patent: dependent Claim 5, independent method Claim 11, and dependent method Claim 12.

LRAM, and OLIM modules. (*Id.* at 2, 4-5.) This same section of the '737 Infringement Contentions includes a set of figures illustrating "amplifying a DWDM signal of a first wavelength and receiving an Optical Supervisory Channel (OSC) signal of a second wavelength in Tellabs® 7100 with 44 channels," which cites figures that include the LIAM-E, LRAM-E, and SPM modules. (*Id.* at 5-6 (citing Figures 8.12 and 8.15).)

As this court has previously noted, "local rules are meant to prevent a shifting sands approach to claim construction by forcing the parties to crystallize their theories of the case early in litigation." (3/21/12 Order at 7-8 (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotation marks omitted)).) Fujitsu Limited had a duty to be "as specific as possible" when identifying the "Accused Instrumentality," and to include in its infringement contentions "specifically where each element of each asserted claim is found within each Accused Instrumentality." (E.D. Tex. P.R. 3-1(b) and (c).) The '737 Infringement Contentions explicitly contend, in three separate statements with respect to Element (a), that "[t]he MIAM included in Tellabs® 7100 amplifies a first optical signal of a first wavelength and receives a second optical signal of a second wavelength." (*Id.* at 2-5.) The '737 Infringement Contentions do not contain a similar statement with respect to the LIAM-E or LRAM-E optical amplifier modules. Although Fujitsu Limited now asserts its intention to accuse all "Tellabs 7100 systems with 44-channel modules, *i.e.*, the LIAM-E and LRAM-E modules" and all modules "conceptually identical" to the MIAM module, (*see* Dkt. No. 590-1 FILED UNDER SEAL ("Modified '737 Infringement Contentions") at 5-10), this intention is not clear from the '737 Infringement Contentions' vague allusions to the LIAM-E, LRAM-E, and SPM modules. If Fujitsu Limited intended to rely on the inclusion of the LIAM-E, LRAM-E, or SPM modules in the Tellabs® 7100 system for purposes of proving infringement, it should

have explicitly said so. As drafted, the '737 Infringement Contentions do not put Tellabs on notice of Fujitsu Limited's intent to rely on the inclusion of the LIAM-E, LRAM-E, or SPM modules in the Tellabs® 7100 system for purposes of proving infringement.

Because the '737 Infringement Contentions do not assert infringement of the '737 Patent by the LIAM-E, LRAM-E, or ELRAM-E optical amplifier modules, or the SPM or SPM-N processor modules, Tellabs' Renewed Motion is granted with respect to those portions of the Willner Infringement Report that rely on an analysis of these modules for purposes of infringement.

4.    The '163 Patent

It is undisputed that Fujitsu Limited's July 2008 "Infringement Claim Chart for U.S. Patent 5,526,163" (Dkt. No. 568-11 FILED UNDER SEAL ("'163 Infringement Contentions")) specifically identifies two optical amplifier modules as follows:

> Throughout Fujitsu's ['163 Infringement Contentions] . . . references will be made to Figures 1-8, which are representative of the Accused Instrumentalities: Tellabs® 7100 Optical Transport System ("Tellabs® 7100"), Tellabs 6325 Edge Node ("Tellabs® 6325"), and Tellabs 6370 WDM Node ("Tellabs® 6370"). Figures 1-8 are of at least two types of Tellabs® 7100: (1) Tellabs® 7100 that include a **Line Output Amplifier Module Enhanced 81.71123B Rev. A ("LOAM-E")** manufactured by Avanex®; and (2) Tellabs® 7100 that include a **Metro Input Amplifier Module 81.71122 Rev. A ("MIAM")** manufactured by RED-C®. Tellabs® 6325 and Tellabs® 6370 may use similar structures and methods with respect to the '163 Patent.

('163 Infringement Contentions at 1 (emphasis added).)

Tellabs argues that the Willner Infringement Report also impermissibly asserts infringement of the '163 Patent by seven additional modules "that were not analyzed in Fujitsu's July 2008 infringement contentions," including the LIAM-E, LRAM-E, and ELRAM-E optical amplifier modules, and the ADM, DPM, SPM, and SPM-N processor modules. (Tellabs' Mot. at 6.)

Fujitsu Limited argues in response that its '163 Infringement Contentions contained "detailed information . . . for the LIAM-E and LRAM-E modules[7] in connection with the '163 Patent." (Fujitsu's Resp. at 6.) The court disagrees. There is only one explicit mention of the LIAM-E and LRAM-E modules in Fujitsu Limited's '163 Infringement Contentions. This one explicit mention is set forth in support of the general contention that "[t]he Accused Instrumentalities, including, but not limited to, Tellabs® 7100, Tellabs® 6325, and Tellabs® 6370, include an optical amplifier." ('163 Infringement Contentions at 3.) In support of this general contention, Fujitsu Limited cites various sections of the *Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* and the *Tellabs® 7100 Module and Hardware Description, 76.7100/4, Rev. A, 10/02 (2002)*, that together "describe[e]" eight different optical amplifier modules included in the Tellabs® 7100 system, including the LIAM-E, LRAM-E, LOAM-E, MIAM, MOAM, RIAM, LRAM, and Metro OAM modules. (*Id.*)

Claim 5 of the '163 Patent discloses an optical amplifier comprising six different elements.[8] The '163 Infringement Contentions do not mention or analyze the LIAM-E or LRAM-E optical amplifier modules in connection with any of the six specific elements comprising the optical amplifier asserted in Claim 5. By way of contrast, when Fujitsu Limited wanted to explain "where each element of each asserted claim is found within each Accused Instrumentality," (E.D. Tex. P.R. 3-1(c)), it did so with specificity by referencing either "Tellabs® 7100 equipped with a LOAM-E manufactured by Avanex®" or "Tellabs® 7100 equipped with a MIAM manufactured by RED-C®." (*See* '163 Infringement Contentions, Elements (b)-(g).) As drafted, the '163 Infringement Contentions do not put Tellabs on notice of

---

[7] Fujitsu Limited makes no argument with respect to the ELRAM-E optical amplifier module or the ADM, DPM, SPM, and SPM-N processor modules.

[8] The court's analysis pertaining to independent Claim 5 is equally applicable to the other two asserted claims of the '163 Patent: dependent Claim 6 and method Claim 24.

Fujitsu Limited's intent to rely on the inclusion of the LIAM-E or LRAM-E optical amplifier modules in the Tellabs® 7100 system for purposes of proving infringement.

Fujitsu Limited argues that its '163 Infringement Contentions did not need to be presented in "excruciating detail," in part because its infringement theory with respect to the LOAM-E optical amplifier module is the same as its infringement theory with respect to the LIAM-E and LRAM-E optical amplifier modules. (Fujitsu's Resp. at 6-7 (citing *Network Caching Tech. Corp. v. Novell, Inc.*, 2003 WL 21699799, at *4-5 (N.D. Cal. Mar. 21, 2003).)[9] Local Patent Rule 3-1 required Fujitsu Limited's identification of the "Accused Instrumentality" to be "as specific as possible," and that its infringement contentions include "specifically where each element of each asserted claim is found within each Accused Instrumentality." (E.D. Tex. P.R. 3-1(b) and (c).) If Fujitsu Limited intended to assert that the LIAM-E and LRAM-E optical amplifier modules infringed the '163 Patent in the same way as the LOAM-E optical amplifier module, it should have explicitly said so. Tellabs was not required to guess that Fujitsu Limited's theory of infringement also included these additional, unnamed, optical amplifier modules.

---

[9] Fujitsu Limited similarly argues in its "modified" infringement contentions that "[t]he LOAM-E module is representative of the 44-channel Enhanced (-E) family of modules, including the LIAM-E and the LRAM-E." (*See* Dkt. No. 590-3 FILED UNDER SEAL ("Modified '163 Infringement Contentions") at 8, 13, 16, 18, 21, 24, 29, 32, 35, 38, 41.) Fujitsu Limited cites no support for this assertion, and the literature quoted in Fujitsu Limited's "modified" infringement contentions suggests that the LOAM-E optical amplifier module differs from the LIAM-E and LRAM-E optical amplifier modules in certain respects. For example, the LOAM-E module amplifies an outgoing DWDM signal, while the LIAM-E and LRAM-E modules amplify an incoming DWDM signal. (Modified '163 Infringement Contentions at 3, 6 (quoting *Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* at 2-10, 2-90).) Likewise, the LOAM-E module is used only in SBOADM configurations, while the LIAM-E and LRAM-E modules are used in both SBOADM and OLA configurations. (*Id.* at 4-6 (quoting *Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* at 2-49, 2-63, 2-90).) The LOAM-E optical amplifier module also occupies a different position on the universal main shelf than the LIAM-E and LRAM-E optical amplifier modules. (*Id.* at 4 (quoting *Tellabs® 7100 General Description, 76.7100FP33/2, Rev. B, 2/06 (2006)* at 2-49).) It is therefore not immediately apparent that the LOAM-E optical amplifier module should be considered "representative" of the LIAM-E and the LRAM-E optical amplifier modules for purposes of infringement. Regardless, as explained herein, Tellabs was not required to guess that Fujitsu Limited was asserting infringement based on the inclusion of the LIAM-E or LRAM-E optical amplifier modules in the Tellabs® 7100 system.

Because the '163 Infringement Contentions do not assert infringement of the '163 Patent by the LIAM-E, LRAM-E, or ELRAM-E optical amplifier modules, or the ADM, DPM, SPM, or SPM-N processor modules, Tellabs' Renewed Motion is granted with respect to those portions of the Willner Infringement Report that rely on an analysis of these modules for purposes of infringement.

CONCLUSION

For the reasons set forth above, Tellabs' "Motion to Renew Its Motion to Strike" (Dkt. No. 955) is granted and Tellabs' renewed "Motion to Strike Portions of Fujitsu's Expert Reports and to Preclude Reliance by Fujitsu on Theories, Evidence, or Analyses Precluded Under the Court's Order of March 21, 2012" (Dkt. No. 568) is granted in part and denied in part. Tellabs' Renewed Motion (Dkt. No. 568) is granted as to those portions of the Willner Infringement Report that rely on an analysis of the LIAM-E, LRAM-E, ELRAM-E, SPM, and SPM-N modules for purposes of proving infringement of the '737 Patent, and as to those portions of the Willner Infringement Report that rely on an analysis of the LIAM-E, LRAM-E, ELRAM-E, ADM, DPM, SPM, and SPM-N modules for purposes of proving infringement of the '163 Patent. Tellabs' Renewed Motion (Dkt. No. 568) is granted by agreement with respect to the portions of the Willner Infringement Report and the Bokhart Damages Report voluntarily withdrawn by Fujitsu Limited, including references to the modules excluded in the court's March 21, 2012 Order, (Dkt. No. 552 at 16 n.10), and references to the doctrine of equivalents. Tellabs' Renewed Motion (Dkt. No. 568) is denied with respect to the portions of the Willner Infringement Report that analyze indirect infringement of the '737 Patent and the '163 Patent.

13

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 24, 2013